# 22-3194

## United States Court of Appeals
## for the
## Second Circuit

———————————

H and D, by their Attorney-in-Fact, RACHEL SOROTZKIN,
*Plaintiffs-Appellants*,

v.

EMBLEMHEALTH, INC. and GROUP HEALTH INCORPORATED,
*Defendants-Appellees*.

———————————

On Appeal from the United States District Court for the
Southern District of New York

**BRIEF FOR PLAINTIFFS-APPELLANTS**

Yaakov Pollak, Esq.
55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
ypollak@nbyjlaw.com
*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. iii

PRELIMINARY STATEMENT ........................................................................1

JURISDICTIONAL STATEMENT ..................................................................2

STATEMENT OF THE ISSUES.......................................................................2

STATEMENT OF THE CASE...........................................................................3

    a.    Factual Background...............................................................................3

    b.    Procedural History................................................................................3

SUMMARY OF THE ARGUMENT .................................................................5

STANDARD OF REVIEW ...............................................................................7

ARGUMENT .....................................................................................................8

POINT I CONTRARY TO THE DISTRICT COURT'S ASSERTION, THE
BREACH OF CONTRACT CAUSE OF ACTION ALLEGED A BREACH OF
SPECIFIC CONTRACTUAL PROVISIONS AND WAS ADEQUATELY
PLED...................................................................................................................8

    a.    The passage from the Complaint that the Court analyzed and found
    wanting was because it mysteriously focused on one section of the
    Complaint.......................................................................................................8

    b.    Plaintiffs' breach of contract claim was premised, in part, upon the
    theory that the insubstantial reimbursements fell short of the specific
    obligation to "cover" the services, a fact that the Court did not address in its
    ruling............................................................................................................10

    c.    Emblem's nominal reimbursements undermined the entire basis of the
    insurance contract, not merely a single provision thereof...........................11

    d.    As indicated in the Complaint, Emblem failed to post the Allowable
    Charge for ABA, demonstrating that there was no Allowable Charge and
    that reimbursements should have been based on a reliable index...............12

    e.    Plaintiffs' pleading was adequate as a matter of law..........................13

i

POINT II BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING WAS PLED AS A VALID ALTERNATIVE TO THE
BREACH OF CONTRACT CAUSE OF ACTION. ..........................................15

    a.    Emblem's conduct amounted to a breach of Good Faith under New
York law. ......................................................................................................16

    b.    In New York, where the meaning of a contract is in dispute, plaintiffs
may claim both ordinary breach of contract and breach of Good Faith.......17

    c.    The weight of authority supports Plaintiffs' position that Good Faith
was not fatally duplicative of ordinary breach. ............................................21

POINT III DENYING LEAVE TO AMEND WHEN THE DUPLICATION OF
THE CLAIMS COULD HAVE BEEN ELIMINATED BY REFILING
WITHOUT BREACH OF CONTRACT WAS A REVERSIBLE ERROR. .....23

    a.    The Court's dismissal overlooked the fact that the duplication of Good
Faith could have been remedied by dropping ordinary breach in an amended
filing, which it could not have done previously. ..........................................24

    b.    The District Court's assertion that leave to amend is moot post-
judgment is inapplicable to the circumstances and is contrary to the
Supreme Court's in Foman..........................................................................26

    CONCLUSION...............................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Allaire Corp. v. Okumus*, 433 F.3d 248, 249-250 (2d Cir. 2006)........................7

*Alto v. Sun Pharm.  Indus., Inc.*, No. 1:19-cv-09758 (S.D.N.Y. April 29, 2020) .................................................................................................................21

*Barker v. Time Warner Cable, Inc.*, 83 A.D.3d 750, 751–52 (N.Y. App. Div. 2011) ...........................................................................................................14

*Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E.2d 1163, 1165 (N.Y. 2003)(...........................................................................................................11

*Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (N.Y. App. Div. 2014)..................14

*Conley v. Gibson*, 355 U.S. 41, 48 (1957)....................................................14, 15

*Cooper v. Shumway*..............................................................................................28

*Courtien Communications, Ltd. v. Aetna Life Ins.*, 193 F. Supp. 2d 563, 571 (S.D.N.Y. 2002)...............................................................................................19

*Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ....................17

*Deutsche Bank Securities Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) ................................................................................................................18

*Deutshe Bank Nat'l Trust Co. v. Fed.  Deposit Ins.  Corp. et al.*, 784 F. Supp. 2d 1142, 1162 (Ca. Dis.  Ct. 2011).....................................................18, 20, 22

*Dougherty v. Town of North Hempstead Bd. of Zoning*, 282 F.3d 83, 87 (2d Cir. 2002) ................................................................................................................7

*Eaves, et al. v. Designs for Fin., Inc., et al.*, No. 09-cv-3952, n.23 (S.D.N.Y. March 30, 2011)...............................................................................................21

*Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667(LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008)......................................................................19, 21

*Foman v. Davis* ......................................................................................... passim

*Gianelli v. Re/Max of N.Y., Inc.* .........................................................................14

*Gross v. Empire Healthchoice Assurance, Inc.*, 847 N.Y.S.2d 896, 896 (Sup. Ct. 2007.........................................................................................................16, 17

iii

*Hard Rock Cafe Intern. v. Hard Rock Hotel Holdings*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) ..................................................................................19, 20, 21

*Hutchison v. Deutsche Bank Securities*, 647 F.3d 479, 490 (2d Cir. 2011) .........8

*In Re Ideal Mortgage Bankers, Ltd.*, Case No. 10-79280-dte, Adv. Pro. No. 12-08453-dte (Bankr. Ct. E.D.N.Y. Dec. 23, 2013) ............................................22

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) ...............28, 29

*Jackson v. Avanos Med., Inc.*, No. 16-CV-05093-LTS, at *6 (S.D.N.Y. Mar. 31, 2019) ...............................................................................................................29

*Janese v. Fay* .................................................................................................26, 28

*JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.*, 46 Misc. 3d 755, 775 (N.Y. Sup. Ct. 2014) ......................................................................................15

*L-3 Commc'ns Corp. v. Sparton Corp. et al.*, No. 6:13-cv-1481-Orl-TBS (M.D. Fl. May 15, 2014) ...........................................................................................22

*Lehman Brothers Int'l (Europe) v. AG Fin. Prods., Inc.*, N.Y. Slip Op 50368(U) (N.Y. Sup. Ct. March 12, 2013) .....................................................21

*Leki Aviation A/S v. B/E Aerospace, Inc.*, 2013 NY Slip Op 31318(U), ¶¶ 10-11 ........................................................................................................................21

*LMEG Wireless, LLC v. Farro*, 140 N.Y.S.3d 593, 596–97 (N.Y. App. Div. 2021) ...............................................................................................................14

*MacGregor v. Milost Glob., Inc.*, No. 17-CV-6691-LTS-KHP, at *2 (S.D.N.Y. July 1, 2019)....................................................................................................30

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 170 (2d Cir. 2020) ..............................7

*Mayes v. 490 Habitat*, 18-CV-1427 (SJF), at *3 (E.D.N.Y. Feb. 6, 2020) ..25, 29

*Melwani, et al. v. Lipton, et al.*, No. 17 Civ. 8308 (S.D.N.Y. Sep. 20, 2019)....21

*Metzler Inv. v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 144 (2d Cir. 2020) ..........................................................................................25, 27, 28, 29

*Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 178 (2d Cir. 2019) .............27, 28

*Mtume v. Sony Music Entertainment* ..................................................................19

*National Petrochemical Co. of Iran v. M/T Stolt Sheaf* ......................................28

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 92 N.E.3d 743, 762 (N.Y. 2017) ................................................11

*Nuance Commc'ns, Inc. v. Int'l Bus. Machs. Corp.*, Civil Action No. 16-5173 (S.D.N.Y. June 21, 2021).................................................................................21

*Obra Pia Ltd. v. Seagrape Inv'rs* , 19-CV-7840 (RA), at *12 (S.D.N.Y. May 18, 2021) .............................................................................................................29

*Olson v. Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).........................29

*Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022) ............................29

*Park v. FDM Grp., Inc.*, No. 16-CV-1520-LTS, at *6 (S.D.N.Y. Aug. 28, 2018) ...............................................................................................................30

*Phoenix Co., Inc. V. Concentrix Ins. Admin. Sols.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021) ..............................................................................................18

*Phoenix Light SF Ltd., et al. v. The Bank of N.Y. Mellon*, No. 14-cv-10104 (S.D.N.Y. Sep. 29, 2015)................................................................................21

*Raglan Realty Corp. v. Tudor Hotel Corp.*, 149 A.D.2d 373, 375 (App. Div. 1st Dept. 1989) ....................................................................................................20

*Raven Capital Mgmt. LLC, et al. v. Ga. Film Fund 72, LLC*, N.Y. Slip Op 30393(U) (N.Y. Sup. Ct. Feb. 8, 2021) ...........................................................22

*Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 263 (2d. Cir. 1999)........20

*Rowe v. Great Atlantic & Pacific Tea Co.*, 46 N.Y.2d 62, 69 (1978)..........12, 17

*Saggio v. Select Portfolio Servicing, Inc.*, No. 15-cv-04300 (S.D.N.Y. Nov. 5, 2015) .............................................................................................................21

*Sandler, M.D. v. Montefiore Health Sys, Inc., et al.*, No. 16-cv-2258 (S.D.N.Y. Sep. 27, 2018) ................................................................................................20

*Smith v. Hogan* ............................................................................................26, 28

*Trireme Energy Holdings, Inc., et al. v. Innogy Renewables US LLC*, No. 20-cv-5015 (S.D.N.Y. Aug. 17, 2021)......................................................................21

*Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003)......11

*Williams v. Citigroup Inc.*,...............................................................25, 27, 28, 29

**Statutes**

28 U.S.C. § 1291 ...............................................................................................2

28 U.S.C. §1332(a)(1)........................................................................................2

## Other Authorities

*Attorney General of the State of New York, In the Matter of Group Health Incorporated*, Assurance No.: 14-181 ............................................................13

*Cover, Ballentine' Law Dictionary* (3rd ed.) .......................................................10

*Cover, Ballentine's Law Dictionary* (3rd ed.) ......................................................10

*Cover, Merriam-Webster.com*, https://www.merriam-webster.com (Nov. 23, 2020) ...............................................................................................................10

## Rules

Fed.R.Civ.P. 60(b) ..............................................................................................28

Fed.R.Civ.P. 59(e)...............................................................................................28

Fed.R.Civ.P. 8(d)(2)–(3) .....................................................................................22

Fed.R.Civ.P. 12(b)(6)............................................................................................7

Fed.R.Civ.P. 15(a).........................................................................................27, 28

## PRELIMINARY STATEMENT

Plaintiff D suffers from an autism spectrum disorder ("ASD") and is being treated with applied behavioral analysis ("ABA")—the gold standard for ASD treatment and the only source of optimism for D and his family. Unfortunately, quality ABA is costly and beyond the reach of most middle-class families. The only hope is medical insurance that covers ABA, as mandated by the state.

D's mother, H, is a New York City employee who signed up for an EmblemHealth employee-sponsored plan that purportedly covered ABA. But when claims were submitted, EmblemHealth refused to cover ABA in any meaningful sense and paid a mere fraction of the costs. EmblemHealth did not merely under-reimburse; they paid nominal amounts designed to silence, not to satisfy. Out of desperation, Plaintiffs filed this lawsuit.

The District Court dismissed the breach of contract claim for failing to specify a specific provision that was breached, despite the fact that Plaintiffs have continuously argued that Defendants were in breach of their obligation to "cover" ABA. As if a demand that an insurance policy function as it was designed is not specific enough. The District Court then dismissed Plaintiffs' claim that Defendants' conduct was a breach of the implied covenant of good faith and fair dealing because it was duplicative of ordinary breach, despite its being pled in the alternative and ordinary breach's dismissal. When Plaintiffs moved for

1

reconsideration and requested to eliminate the duplication by amending their Complaint and dropping ordinary breach, they were denied. The District Court erred in the foregoing decisions, and this Court should reverse.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the District Court entered judgment dismissing the action on August 8, 2020, and denied reconsideration on November 22, 2022, and Plaintiffs-Appellants filed a timely notice of appeal on December 22, 2022.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in dismissing the breach of contract cause of action and in determining that Plaintiffs failed to specify a contractual provision that was breached to the extent that the claim should be dismissed.

2.     Whether the District Court erred in dismissing the breach of the implied covenant of good faith and fair dealing cause of action on the basis that it was duplicative of the breach of contract cause of action, where:

     i.  The ambiguity of the contract was at issue;

     ii.  Breach of the implied covenant of good faith and fair dealing was pled in the alternative; and

     iii.  The breach of contract cause of action was dismissed by the Court.

2

3.     Whether the District Court erred in denying Plaintiffs leave to amend their complaint, especially after they suggested that omitting the breach of contract in an amended complaint would render breach of the implied covenant of good faith and fair dealing non-duplicative.

## STATEMENT OF THE CASE

### a. *Factual Background*

Plaintiffs H and D, through their attorney-in-fact, Rachel Sorotzkin ("Plaintiffs"), brought this action to recover health benefits due to them under a health insurance policy (the "Plan") offered by EmblemHealth, Inc. and Group Health Incorporated (collectively, "Emblem") to employees of the City of New York ("NYC"). (JA32). H, an NYC employee, participates in the Plan, and D is a qualified dependent therein. (JA34 ¶¶ 10,14).

D is being treated for his autism spectrum disorder ("ASD") with applied behavioral analysis ("ABA") by Brainbuilders, LLC. (JA34 ¶9). Despite Emblem's undeniable obligation to cover the treatment, they have only paid a small fraction of the billed amount—well below the overhead for ABA—and, thereby, placing D's future in doubt. (JA35 ¶¶ 18–22).

### b. *Procedural History*

On August 18, 2020, Plaintiffs commenced this action against Emblem and NYC in New Jersey Superior Court. (JA11). Defendants then removed the case

to the U.S. District Court of New Jersey. (ECF Doc. No. 1). On the 19th and 20th of October, 2020, Emblem and NYC, respectively, moved to dismiss the Complaint. (ECF Doc. Nos. 11,13). On November 9, 2020, Plaintiffs amended their Complaint to avoid unnecessary challenges.[1] (JA22; ECF Doc. No. 16). On May 21, 2021, the New Jersey District Court ruled that it lacked personal jurisdiction over the defendants and transferred the matter to the Southern District of New York. (ECF Doc. Nos. 26—28). The case was assigned to Judge Katherine Polk Failla.

On July 13, 2021, Plaintiffs filed the Second Amended Complaint ("SAC") (JA32; ECF Doc. No. 34),[2] and on September 10, 2021, both Emblem and NYC filed a motion to dismiss (ECF Docs. No. 47–50), challenging each of Plaintiffs' causes of action in the SAC. On August 8, 2022, the District Court issued an Opinion and Order granting the dismissal of the SAC in its entirety and denying Plaintiffs leave to amend. (JA239; ECF Doc. No. 56). Pertinently, the Court ruled that Plaintiffs incurably failed to state a claim upon which relief may be granted because if failed to specify a specific contractual provision that was breached (JA256), and that breach of the implied covenant of good faith and fair dealing

---

[1] The first amendment was without leave, pursuant to Rule 15, to avoid having to defend the validity of an entity as attorney-in-fact under New Jersey law.

[2] The second amendment was filed when the case was transferred to the Southern District of New York and was to correct typographical errors.

4

("Good Faith") was duplicative of ordinary breach (JA257).

On August 8, 2022, Plaintiffs moved for reconsideration of the dismissal of the breach of Good Faith, arguing that it is not duplicative if asserted in the alternative and ordinary breach is dismissed. (ECF Doc. No. 58). Additionally, Plaintiffs argued they should granted leave to amend. (*Id.*). On September 6, 2022, Emblem filed its opposition to the reconsideration (ECF Doc. No. 59), and, on September 14, 2022, Plaintiffs filed a reply (ECF Doc. No. 62). On November 22, 2022, the District Court denied the motion for reconsideration (ECF Doc. No. 63), and on, December 22, 2022, Plaintiffs filed a notice of appeal from foregoing dismissal and denial of reconsideration (ECF Doc. No. 65).

## SUMMARY OF THE ARGUMENT

Plaintiffs' position boils down to this: An insurer is in breach of contract if its reimbursements are so low that they fail to "cover" in any meaningful way. In the alternative, even if nominal reimbursements are in technical compliance, the insurer is in breach of the implied covenant of good faith and fair dealing ("Good Faith") for failing to deliver on the anticipated protection. These are primarily questions of fact and appropriate for a jury to decide. On the other hand, Emblem contends that, no matter how unreasonable, its decisions are unassailable because the plan says that coverage amounts "are based upon data collected by GHI and agreed to by the City of New York." (*See* JA75).

5

The District Court dismissed Plaintiffs' Complaint in its entirety for failure to state a claim. (JA240). This Appeal focuses on the dismissal of the first two causes of action—breach of contract and breach of Good Gaith—in favor of Emblem. (JA54–57). This Appeal does not address the dismissal of the causes of action against The City of New York, the New York City Office of Labor Relations, and the New York City Department of Education.

Without addressing Plaintiffs' counterarguments, the District Court dismissed the breach of contract cause of action for allegedly failing to "allege that any specific contractual provision was purportedly breached." (JA256). Then, contrary to its own precedent, the Court dismissed the breach of Good Faith cause of action for being duplicative of the ordinary breach cause of action, despite the former being pled in the alternative and the latter's dismissal. (JA257). The dismissal was with prejudice, and Plaintiffs were denied the right to amend their Complaint on the grounds of futility and having had prior opportunity to do so. (JA281–82).

The District Court also denied Plaintiffs' motion for reconsideration, in which they sought leave to file an amended Complaint, and suggested in the reply that they could drop ordinary breach altogether. (JA284). Doing so would have solved the duplication of breach of Good Faith. Moreover, it would have eliminated the arguments of futility and prior opportunity. But the Court rejected

6

the motion for the same reasons, adding that post-judgment leave to amend is moot contrary to the Supreme Court's ruling on the matter. (JA293–95).

As Plaintiffs repeatedly questioned, would the Court say that no "specific contractual provision" was breached even if Defendant paid a single penny for the services?! Clearly, there is a threshold under which the carrier would be in breach. The determination of that threshold is a question for a jury to decide. And, even if there was no breach, there surely was a breach of Good Faith, which may be alleged in the alternative. For these reasons, this Court should reverse the District Court's dismissal of this action and vacate its ruling concerning breach of contract, breach of Good Faith, and the denial of leave to amend.

## STANDARD OF REVIEW

A dismissal pursuant to Rule 12(b)(6) is reviewed *de novo,* "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-250 (2d Cir. 2006). Conclusions of law, and mixed questions of law and fact, are reviewed *de novo*. *See Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 170 (2d Cir. 2020) (internal citation omitted). Denial of leave to amend is reviewed for an abuse of discretion unless leave was denied based on an interpretation of law, such as a determination that amendment would be futile, in which case it is reviewed *de novo*. *Dougherty v. Town of North Hempstead Bd. of Zoning*, 282 F.3d 83, 87 (2d Cir. 2002) (internal

7

citation omitted); *Hutchison v. Deutsche Bank Securities*, 647 F.3d 479, 490 (2d Cir. 2011).

## ARGUMENT

### POINT I

**CONTRARY TO THE DISTRICT COURT'S ASSERTION, THE BREACH OF CONTRACT CAUSE OF ACTION ALLEGED A BREACH OF SPECIFIC CONTRACTUAL PROVISIONS AND WAS ADEQUATELY PLED.**

The notion that Plaintiffs did not allege the breach of a specific contractual provision does not accord with the record. The Court quoted one passage under the "Cause of Action" heading and disregarded all the preceding paragraphs. (JA255; *see also* JA38 ¶34). Then, the Court said, that the one passage was "inadequate to state a claim for breach of contract." (JA256). But Plaintiffs said much more than that one passage, and together with the preceding paragraphs there was more than enough to state a claim upon which relief can be granted.

a. ***The passage from the Complaint that the Court analyzed and found wanting was because it mysteriously focused on one section of the Complaint.***

As stated, the Court mysteriously disregarded the paragraphs appearing in the Complaint's "Factual Background" section. (JA34). As a result, the Court mischaracterized Plaintiffs' claim as consisting solely of the statement: "Defendants by only covering a small fraction of the costs of [the Insured]'s treatments have breached their respective agreements," and asserted that

Plaintiffs, thus, fail to "allege that any specific contractual provision was purportedly breached, let alone how or why it was breached." (JA255–56). This oversight led the Court to erroneously conclude that the pleading was inadequate.

Plaintiffs' Complaint contained much more than the passage mentioned above. The "Factual Background" of the Complaint (JA34) references a rider to the Plan that says that Emblem "will *cover* the screening, diagnosis and treatment of autism spectrum disorder," including ABA. (*See id.* ¶19; ECF Doc. No. 22, Y. Pollak Dec., Ex. A at 58 (emphasis added)). The Complaint also reads—

> By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein. To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage."

JA34 ¶12, and—

> Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA. Six-percent *is well below Brainbuilders' cost*, forcing it to "balance bill" D's caregivers for the rest. Meaning, despite its obligation to do so, *the Plan fails to cover ABA in any meaningful sense*.

JA35–34 ¶22 (emphasis added). Additionally, the Complaint accuses Emblem of a "failure to provide reasonable reimbursement," *Id.* ¶23, says that the coverage was at a "low and arbitrary rate," JA36–37 ¶27, accuses Emblems of refusing "to protect Plaintiffs from the financial consequences of D's autism," *Id.*

9

¶32, and that Emblem "den[ied] substantial coverage for D's treatments," JA39 ¶46.

In short, Plaintiffs accused Emblem of (i) failing to cover and protect against the financial burden of the services, (ii) failing to alleviate a substantial part of the cost burden, (iii) failing to cover ABA in a meaningful sense, (iv) failure to provide reasonable reimbursement, (v) paying low and arbitrary rates, (vi) failing to provide substantial coverage, and (vii) paying a mere 6% of billed amounts, which is well below the cost of providing the services. It is hard to imagine what more can be done to lay the grounds for a plausible claim.

**b.** ***Plaintiffs' breach of contract claim was premised, in part, upon the theory that the insubstantial reimbursements fell short of the specific obligation to "cover" the services, a fact that the Court did not address in its ruling.***

Plaintiffs contended that Emblem failed to provide "coverage" as promised. (JA34,34 ¶¶ 12,22). *Ballentine's Law Dictionary* defines "cover" as "as applied to insurance, it means to protect by means of insurance." *Cover, Ballentine's Law Dictionary* (3rd ed.). Likewise, the *Merriam Webster Online Dictionary* defines the verb "cover," in relevant part, as "to afford protection or security [to insure]; to afford protection against or compensation; . . . to defray the cost of." *Cover, Merriam-Webster.com*, https://www.merriam-webster.com (Nov. 23, 2020). "Under our well-established rules of contract interpretation,

courts look to the plain language of contracts when interpreting their meaning." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 92 N.E.3d 743, 762 (N.Y. 2017) (internal citations omitted).

When Emblem said, "[it] will *cover* the screening diagnosis and treatment of [ASD]," including ABA, it meant that it would protect its insureds from the unbearable burden of such treatments. (*See* ECF Doc. No. 22, Y. Pollak Dec., Ex. A at 58 (emphasis added)). Plaintiffs asserted in their Complaint that Emblem's nominal reimbursements failed to afford such protection. (JA37 ¶32).

### c. *Emblem's nominal reimbursements undermined the entire basis of the insurance contract, not merely a single provision thereof.*

In addition to the foregoing, Emblem's assertion that Plaintiffs failed to point to a "specific contractual provision" that was breached misses the forest for the trees. (*See* JA256). Plaintiffs did much more than that. Plaintiffs said that Emblem breached the entire foundation and premise of the Plan, not merely a single provision thereof. A contract must "be read as a whole, and every part [must] be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." *Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003) (internal citation omitted). "All parts of a contract must be read in harmony to determine its meaning." *Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E.2d 1163, 1165 (N.Y. 2003) (internal

11

citation omitted). "A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Rowe v. Great Atlantic & Pacific Tea Co.*, 46 N.Y.2d 62, 69 (1978) (internal citation omitted).

As previously quoted from Plaintiffs' Complaint, there are levels of reimbursement that are inconsistent with the promise of protection inherent in an insurance policy. (JA37 ¶32). If Emblem reimbursed one dollar for a treatment, it would be indisputable that such reimbursement would be a breach. Whether Emblem's reimbursements fall on the side of breach or the side of fulfillment is a question of fact appropriately decided by a jury.

**d.** ***As indicated in the Complaint, Emblem failed to post the Allowable Charge for ABA, demonstrating that there was no Allowable Charge and that reimbursements should have been based on a reliable index.***

In addition to the above, Emblem's opaqueness concerning the reimbursements for ABA is more evidence of a breach. The Plan provides that—

> [t]here may be occasions where GHI does not have an Allowed Charge for a particular service. When this is the case, GHI will make payment based upon either Medicare guidelines and/or the Relative Value Scale to determine comparability between procedures. The Relative Value Scale is a standard of rating generally acceptable in the health insurance field.

(JA75). In other words, Emblem's reimbursements are based on either (a) the Allowable Charge (i.e., "based upon data collected by GHI and agreed to by the City of New York" (*id.*), or (b) the Relative Value Scale (i.e., FairHealth or

12

similar index). There is evidence that Emblem did not have a predetermined Allowable Charge and that its payments were well below any reputable indices.

Under a 2014 agreement with the Attorney General of the State of New York (the "AG Agreement"), Emblem committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers." See *Attorney General of the State of New York, In the Matter of Group Health Incorporated*, Assurance No.: 14-181. Contrary to the AG Agreement, Emblem did not make available its so-called Allowable Charges for the ABA codes. Emblem's failure to publish the Allowable Charge suggests an absence of legitimately predetermined Allowable Charge for ABA codes.

Emblem's reimbursements could not have been based on a legitimate index either. In response to internal appeals, Emblem expressly stated that their initial rate was in accordance with their Allowable Charge, not an index. (*See, e.g.*, JA238). More importantly, it is highly unlikely—if not impossible—that there is a reputable index that would suggest a rate well below the cost to the provider. These are purely factual questions and are not subject to dismissal by way of a motion to dismiss.

**e. *Plaintiffs' pleading was adequate as a matter of law.***

Plaintiffs fulfilled the pleading requirements by putting Emblem on notice

13

of the facts and spelling out the legal theory for recovery. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957). Plaintiffs will still have to prove at trial that (a) the reimbursements were, in fact, insubstantial and do not amount to reasonable "coverage," and that (b) as a legal matter, the Plan requires Emblem to substantially "cover" for the services. These questions are not expected to be proven by a preponderance of the evidence at the pleading stage.

The District Court cited *Gianelli v. Re/Max of N.Y., Inc.* for the proposition that a breach of contract claim fails "in the absence of any showing that a specific provision of the contract was breached." JA256; *see also* 144 A.D.3d 861, 862 (N.Y. App. Div. 2016). But the issue in *Gianelli* was whether there was an agreement at all concerning the assignment of a telephone number, not the degree of the assignment. Here, there is no question that Defendant was obligated to cover; instead, the question is whether what they did was, in fact, cover. *See LMEG Wireless, LLC v. Farro*, 140 N.Y.S.3d 593, 596–97 (N.Y. App. Div. 2021) (quoting *Gianelli* and distinguishing between whether the uncertainty surrounds the existence of an underlying agreement or the specificity of its terms); *Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (N.Y. App. Div. 2014) (using the same rule as *Gianelli* to uphold the dismissal of claim where the agreement itself was in question); *Barker v. Time Warner Cable, Inc.*, 83 A.D.3d 750, 751–52 (N.Y. App. Div. 2011) (same); *JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.*, 46

14

Misc. 3d 755, 775 (N.Y. Sup. Ct. 2014) (same).

A 12(b)(6) deficiency is about the speculation of facts. *See Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Plaintiffs do not base their claims on speculation; they are rooted in facts known to both Plaintiffs and Emblem. By referencing those facts, Plaintiffs gave Emblem "fair notice of what the [Plaintiffs'] claim is and the grounds upon which it rests." *See Conley*, 355 U.S. at 48 (quoted by *Twombly*, 550 U.S. at 555).

## POINT II

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS PLED AS A VALID ALTERNATIVE TO THE BREACH OF CONTRACT CAUSE OF ACTION.

Plaintiffs' pleading of breach of Good Faith was precisely as intended. Nonetheless, the Court said that because Plaintiffs repeat the claim that they covered "a small fraction of D's treatment" for both breach of contract and breach of Good Faith, the latter is "duplicative" and should be dismissed. (JA257). The notion that breach of Good Faith is duplicative of ordinary breach despite its dismissal undermines the concept of a breach of Good Faith cause of action and is contrary to the Court's own precedent.

As stated, Plaintiffs claimed ordinary breach because they believed that Emblem breached explicit provisions of the Plan. Plaintiffs then pled breach of

Good Faith, in the alternative, in the event that ordinary breach fails. As if to say, even if Emblem is correct that it technically complied, it still fell short of its Good Faith obligations. The Court nevertheless ruled that Good Faith was fatally duplicative of ordinary breach. Then it refused to reconsider because Plaintiffs failed to cite the precedents in the first instance, despite having argued on point extensively. (JA288–89). This Court should follow the District Court's precedent and reverse the dismissal of breach of Good Faith.

### a. *Emblem's conduct amounted to a breach of Good Faith under New York law.*

In New York, a breach of Good Faith occurs when a party "exercises a contractual right as part of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain," even if there is no breach of the contract's "express contractual obligations." *Gross v. Empire Healthchoice Assurance, Inc.*, 847 N.Y.S.2d 896, 896 (Sup. Ct. 2007) (internal citations omitted). A claim for breach of Good Faith "does not depend on a breach of the contract," and "a plaintiff may bring such a claim, whether or not there is a viable breach of contract claim." *Id.* The notion that Good Faith is a mere duplicate of ordinary breach undermines the entire body of caselaw undergirding the Good Faith doctrine. *See id.*

New York's courts have expressly recognized the existence of the implied

16

covenant of good faith and fair dealing in insurance contracts. *Gross*, 847 N.Y.S.2d at 896. Good Faith stands for the proposition that "[a] promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Rowe*, 46 N.Y.2d at 69 (internal citation omitted). The doctrine includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) (quoting *Rowe*, 46 N.Y.2d at 69). Every purchase of an insurance policy is with the expectation that medical expenses would be *covered*. Nominal reimbursements do not afford protection and do not meet those reasonable expectations.

If paying one dollar for each claim is not a breach of an explicit contract, there is no arguing that it is a breach of Good Faith. Likewise, Emblem's nominal reimbursements were, at the very least, a breach of Good Faith.

**b. *In New York, where the meaning of a contract is in dispute, plaintiffs may claim both ordinary breach of contract and breach of Good Faith.***

The law in New York is clear; a plaintiff may assert a claim for ordinary breach of contract and, simultaneously, for breach of Good Faith in the alternative. Accordingly, Plaintiffs' claim for breach of Good Faith was proper and should not have been dismissed.

Nonetheless, the District Court wrote:

17

> Plaintiffs' breach of contract and breach of implied covenant claims are predicated on the same allegations that Defendants covered only a small fraction of the cost of D's treatments. Accordingly, the Court dismisses the implied covenant claim as duplicative of Plaintiffs' breach of contract claim.

(JA257). In support of its decision, the Court cited to *Phoenix Cos., Inc. V. Concentrix Ins. Admin. Sols.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021), which, in turn, relies upon *Deutsche Bank Securities Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008). However, in those cases, the claim for ordinary breach was not dismissed, and the claims for breach of the covenant of good faith were truly "redundant." *See id.* Here, on the other hand, the ordinary breach claim was dismissed, leaving Good Faith to play the role for which it was designed.

Judge Failla, in another case, wrote, "when there is a *bona fide* dispute over whether a contract covers the contested issue" and there is no risk of redundant recovery, "a plaintiff may assert a claim for breach of the implied covenant of good faith and fair dealing in the alternative." *LCM XXII Ltd., et al.*, No. 21 Civ. 3987 (Failla, J.).[3] "The law in New York is that a party may assert causes of action

---

[3] Judge Failla drew a distinction between this case and her ruling in *LCM XXII Ltd.* that in this case it is uncontested that the Plan includes ABA, that reimbursements are based on data "collected by GHI and agreed to by the City of New York," and that the contract makes no assurances as to the sum of those reimbursements, whereas "Plaintiffs' claim could fall within the scope of the Plan, but the Plan may only require reimbursement of a small percentage of that claim." (JA290). "Accordingly," she wrote, in this case, "there is no *bona fide* dispute concerning the existence of a contract or whether the contract covers the dispute in issue." (*Id.* internal quotation omitted)). However, the distinction is difficult to follow and contradicts the reason for the Court's dismissal of ordinary breach. If, as the Court said, Emblem did not breach

in both breach of contract and quasi-contract where there is a bona fide dispute . . . whether the contract covers the dispute in issue." *Courtien Communications, Ltd. v. Aetna Life Ins.*, 193 F. Supp. 2d 563, 571 (S.D.N.Y. 2002) (internal citations and quotation marks omitted). "Where the existence or meaning of a contract is in doubt, a party may plead a claim for breach of the covenant of good faith and fair dealing in the alternative. *Hard Rock Cafe Intern. v. Hard Rock Hotel Holdings*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (internal citation and quotation marks omitted). "Alternative pleading is permitted because [a] party is only precluded from recovering on both theories at the same time." *Id.* (internal citation and quotation marks omitted). "On a summary judgment motion where the contract meaning is yet to be determined, a party can continue in both a claim for breach of contract and one for breach of the covenant of good faith and fair dealing." *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667(LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008).[4]

---

any specific provision of the Plan, then, by definition, the contract does not cover "the dispute in issue." And, if "Plaintiffs' claim could fall within the scope of the Plan," then they *could*, by the same token, fall outside the scope of the Plan, and the dispute is not covered by the contract. The Court's dismissal of breach of Good Faith is irreconcilable with it dismissal of ordinary breach. Moreover, the very question before the Court was whether the contract obligated Emblem to reasonable rates. In other words, the "scope" of the contract was in question, and to the extent that it is outside the scope, breach of Good Faith was proper.

[4] In their opposition to the motion for reconsideration, Defendants cited *Mtume v. Sony Music Entertainment* that discounted *Fantozzi* because it equated Good Faith with quasi-contracts while ignoring all the cases cited above that cited *Fantozzi* favorably and understood the comparison. ECF Doc. No. 59 at 4; *see also* No. 18 Civ. 6037 (ER), 2020 U.S. Dist. LEXIS

Defendants argued—and the Court accepted—that the insurance policy in question does not explicitly commit to a specific level of coverage. (JA256). In other words, the Court ruled that the contract does not cover the contested issue and that the matter is outside the "scope or enforceability of the putative contract" and Good Faith should have taken effect. *Fantozzi*, No. 07 Civ. 2667(LMM), at *7 (citing *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 263 (2d. Cir. 1999); *Deutshe Bank Nat'l Trust Co. v. Fed. Deposit Ins. Corp. et al.*, 784 F. Supp. 2d 1142, 1162 (Ca. Dis. Ct. 2011) (citing *Fantozzi*); *see also Sandler, M.D. v. Montefiore Health Sys, Inc., et al.*, No. 16-cv-2258 (S.D.N.Y. Sep. 27, 2018).

As the above authorities confirm, Plaintiffs were correct to plead Good Faith in the alternative. "It is well established that a party may plead alternative theories, even on the basis of allegations that contradict each other." *Raglan Realty Corp. v. Tudor Hotel Corp.*, 149 A.D.2d 373, 375 (App. Div. 1st Dept. 1989). Moreover, plaintiffs are not required to state that they are pleading "in the alternative." *Leki Aviation A/S v. B/E Aerospace, Inc.*, 2013 NY Slip Op

---

150143, at *15 (S.D.N.Y. Aug. 19, 2020). Concerning *Hard Rock*, Defendants said that its holding is distinguishable because in *Hard Rock* the defendants allegedly "subverted the contract's purpose" as opposed to here, where there was no subversion. However, the *Hard Rock* court did not say that Good Faith is not duplicative because of the alleged subversion, and the statement is unrelated to its central holding. *See Hard Rock Café Int'l, (USA), Inc.,* 808 F. Supp. 2d at 567–68. Besides, "subverted the contract's purpose" is precisely what Plaintiffs are alleging. Plaintiffs have repeatedly asserted that reimbursing a nominal amount for insurance claims undermines and subverts the entire concept of insurance and the agreement between the parties.

31318(U), ¶¶ 10-11. Similarly, like in some of the cases cited above, the fact that the Good Faith is based on the same factual predicate as the ordinary breach does not detract from the claim's legitimacy. *See, e.g.*, *Hard Rock Cafe Intern.*, 808 F. Supp. 2d at 567; *Fantozzi*, 2008 WL 4866054, at *7.

    **c.** ***The weight of authority supports Plaintiffs' position that Good Faith was not fatally duplicative of ordinary breach.***

      Numerous courts came to a similar conclusion and the weight of authority is distinctly on Plaintiffs' side. *See, e.g.*, *Nuance Commc'ns, Inc. v. Int'l Bus. Machs. Corp.*, Civil Action No. 16-5173 (S.D.N.Y. Jun. 21, 2021) (citing *Hard Rock*); *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-cv-09758 (S.D.N.Y. April 29, 2020) (citing *Fantozzi*); *Melwani, et al. v. Lipton, et al.*, No. 17 Civ. 8308 (S.D.N.Y. Sep. 20, 2019) (same); *Saggio v. Select Portfolio Servicing, Inc.*, No. 15-cv-04300 (S.D.N.Y. Nov. 5, 2015) (same); *Eaves, et al. v. Designs for Fin., Inc., et al.*, No. 09-cv-3952, n.23 (S.D.N.Y. Mar. 30, 2011) (same); *Phoenix Light SF Ltd., et al. v. The Bank of N.Y. Mellon*, No. 14-cv-10104 (S.D.N.Y. Sep. 29, 2015) (relying on *Fantozzi* to uphold Good Faith claim in part); *Trireme Energy Holdings, Inc., et al. v. Innogy Renewables US LLC*, No. 20-cv-5015 (S.D.N.Y. Aug. 17, 2021) (relying on *Fantozzi*); *Lehman Brothers Int'l (Europe) v. AG Fin. Prods., Inc.*, N.Y. Slip Op 50368(U) (N.Y. Sup. Ct. Mar. 12, 2013) (citing *Fantozzi* and *Hard Rock*); *Raven Capital Mgmt. LLC, et al. v. Ga. Film Fund 72,*

*LLC*, N.Y. Slip Op 30393(U) (N.Y. Sup. Ct. Feb. 8, 2021) (same).[5]

Dismissing breach of Good Faith because it is "duplicative" of ordinary breach cannot be reconciled with Federal Rule 8(d)(2)–(3), which allows alternative pleading and gives the plaintiff "wide latitude in framing its right to recover." *See In Re Ideal Mortgage Bankers, Ltd*., Case No. 10-79280-dte, Adv. Pro. No. 12-08453-dte (Bankr. Ct. E.D.N.Y. Dec. 23, 2013) (internal citation and quotation marks omitted) (adopting the same position as *Fantozzi* and *Hard Rock* and saying that holding otherwise is inconsistent with the Rules); *see also Deutshe Bank Nat'l Trust Co.*, 784 F. Supp. 2d at 1163 (rejecting the notion that "a plaintiff must use magic words" and spell out that they are pleading in the alternative"); *L-3 Commc'ns Corp. v. Sparton Corp. et al.*, No. 6:13-cv-1481-Orl-TBS (M.D. Fl. May 15, 2014) (adopting *Hard Rock* and attempting to reconcile it with the cases that reach a contrary conclusion).

Plaintiffs could have eliminated the duplication of Good Faith by omitting ordinary breach in an emended complaint. The remedy demonstrates the incongruity of the so-called duplication issue and the extent to which it is at odds with the federal pleading standard. How can ordinary breach's mere existence

---

[5] The District Court curiously equated not citing an authority that is on point to a failure to make the argument at all, and said that reconsideration of its breach of Good Faith dismissal can be denied on that basis alone. (JA288–¬89). Plaintiffs' arguments were asserted extensively in their opposition to the motion to dismiss, and their failure to cite to an authority on point, which they did not believe to be necessary, is immaterial.

pre-dismissal be fatal to another cause of action?!

Hiding behind technical compliance and denying Plaintiffs' actual coverage and a reasonable means to treat D's ASD diagnosis is a manifest injustice. Plaintiffs deserve to enjoy the benefits of their bargain and should not face the critical choice of inadequate care for D or financial ruin.

LCM XXII Ltd. was correctly decided by Judge Failla, and its holding is consistent with the holdings of all the courts cited above. *See LCM XXII Ltd., et al.*, No. 21 Civ. 3987 (Failla, J.). This case is indistinguishable from LCM XXII Ltd., and this Court should apply Judge Failla's ruling in that case and reverse the dismissal of breach of Good Faith.

## POINT III

## DENYING LEAVE TO AMEND WHEN THE DUPLICATION OF THE CLAIMS COULD HAVE BEEN ELIMINATED BY REFILING WITHOUT BREACH OF CONTRACT WAS A REVERSIBLE ERROR.

The Court erred in denying Plaintiffs the opportunity to remedy the so-called duplication of the Good Faith cause of action. (JA282,83). Plaintiffs could have eliminated the defect by refiling their complaint without ordinary breach. The Court denied Plaintiffs the opportunity—and with it any recourse for their injury—on the grounds of futility and prior opportunity. (JA281,82). When the aforementioned amendment was suggested in the reply to the motion for reconsideration, the Court reiterated its previous rationale and added that a

motion for leave to amend is moot post-judgment. (JA293–95).

However, refiling without ordinary breach is obviously not futile, and because doing so would have forfeited the cause of action, Plaintiffs could not have been expected to do so before it was dismissed. As to the mootness of the motion, the Supreme Court said in *Foman v. Davis* that denial on that basis alone is an abuse of discretion. 371 U.S. 178, 182 (1962). The Court's denial of leave to amend was factually and legally erroneous and should be reversed.

### a. *The Court's dismissal overlooked the fact that the duplication of Good Faith could have been remedied by dropping ordinary breach in an amended filing, which it could not have done previously.*

The District Court's reliance on futility and prior opportunity for its denial of leave to amend were factually erroneous. As pointed out in their motion for reconsideration, Plaintiffs could have filed an amended complaint with breach of Good Faith without ordinary breach. (ECF Doc. No. 58 at 1–2,6). Doing so would not be futile whatsoever. Moreover, because the amendment would have forfeited the more traditional breach of contract, doing so before the Court's decision on its viability was not an option. The Court abused its discretion by not granting leave to amend, and its decision should be reversed.

Before dismissing the Complaint with prejudice, the District Court considered whether to grant Plaintiffs leave to amend and decided against it (JA281,82). The Court's decision was because "Plaintiffs have not identified any

24

amendments that would alter the Court's analysis, and their prior failures to correct the deficiencies in the pleadings suggest that they are unlikely to be able to do so," and because "Plaintiffs have already taken advantage of two opportunities to amend their complaint." (*Id.*). In short, the Court denied leave to amend on the grounds of futility and prior opportunity, both of which are at odds with reality.

Concerning futility, it is plainly obvious that filing an amended complaint without ordinary breach would not be futile in eliminating the duplication of Good Faith. Whether the fix was suggested at the motion to dismiss stage or in Plaintiffs' reconsideration reply is immaterial. As this Court said in *Williams v. Citigroup Inc.*, "*Foman* makes unmistakably clear there is no such rule" that a party must seek leave upon answering the motion to dismiss. *See* 659 F.3d 208, 214 (2d Cir. 2011); *See also Metzler Inv. v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 144 (2d Cir. 2020) (citing *Williams*); *Mayes v. 490 Habitat*, 18-CV-1427 (SJF), at *3 (E.D.N.Y. Feb. 6, 2020) (same).

Similarly, concerning prior opportunity, Plaintiffs could not have been expected to amend their complaint to exclude their primary cause of action—ordinary breach—before the Court unexpectedly accepted Defendants dubious duplication argument.

Moreover, contrary to the Court's statement, Plaintiffs "prior failures to

correct the deficiencies in the pleadings" do not "suggest that they are unlikely to be able to do so." (JA282). Plaintiffs' "failure" to previously amend their Complaint merely suggests that they believed in the viability of their ordinary breach claim more than they were convinced by Defendants' duplication argument, not that they did not have a way to amend their Complaint effectively. The Court's reliance on futility and prior opportunity fails to address the suggested amendment and should be overruled.

**b.** ***The District Court's assertion that leave to amend is moot post-judgment is inapplicable to the circumstances and is contrary to the Supreme Court's in Foman.***

The District Court's mootness rationale for denying the opportunity to amend is similarly inapplicable to the circumstances. (*See* JA293–94). Furthermore, to the extent that the authorities relied upon by the Court are on point, they are overruled by the Supreme Court's decision in *Foman* and this Court's subsequent rulings. *See, e.g.*, *Foman*, 371 U.S. at 182.

In its decision on Plaintiffs' motion for reconsideration, the District Court said that unrelated to the reasons of futility and prior opportunity, leave to amend is moot once judgment has been rendered (JA293–94). The Court relied on the decisions in *Janese v. Fay* and *Smith v. Hogan*. JA294; 692 F.3d 221, 229 (2d

Cir. 2012); 794 F.3d 249, 256 (2d Cir. 2015).[6]  However, *Janese* and *Smith* are distinguishable, and to the extent they are not, they are overruled by *Foman* and this Court's subsequent decisions.

In *Foman,* the Supreme Court said that in light of Rule 15(a)'s declaration that leave to amend "shall be freely given when justice so requires," denying leave to amend post-judgment and with it "the opportunity to test [a] claim on the merits," is an abuse of discretion."  *See Foman*, 371 U.S. at 182; *see also Williams*, 659 F.3d at 214 (confirming that *Foman* was about a post-judgment motion for leave to amend); *Metzler*, 970 F.3d at 144 (same); *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 178 (2d Cir. 2019) (same).

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182.

As discussed, futility and prior opportunity are inapplicable to the proposed amendment, in which case *Foman* is unequivocal that mootness alone is

---

[6] Arguably, the Court only used *Janese* and *Smith* because it was operating under the assumption that futility and prior opportunity apply, and that it would not have entertained mootness had it appreciated that they are inapplicable. (*See* JA293–94). Nevertheless, we will address the Court's implication that mootness alone is grounds to deny leave to amend, even without futility, prior opportunity, or the like.

incompatible with Rule 15(a). "The *Foman* holding cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered." *Williams*, 659 F.3d at 214.

The foregoing is true for several reasons. First, *Janese* and *Smith*, which the District Court cited, invoke *National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, and *National Petrochemical* itself leaves open the door to "[taking] into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *See* 930 F.2d 240, 245 (2d Cir. 1991).

Second, the District Court's denial of leave to amend was part of the reason it granted the motion to dismiss in the first place. (JA281–82) Had the Court not denied leave to amend, it would not have dismissed the Complaint. Rather than taking the judgment for granted, Plaintiffs were questioning the propriety of the judgment in the first place. To the extent that the District Court erred in denying leave to amend, the entry of judgment was likewise in error.[7]

---

[7] Even if the Court had not addressed leave to amend in its dismissal, a motion for leave to amend may itself be grounds to vacate the judgment, provided that the motion was put forward within the framework of a Rule 59(e) or Rule 60(b) motion. The earliest case in this Circuit on the matter is *National Petrochemical Co. of Iran*, which, in turn, invokes *Cooper v. Shumway*, which says so explicitly. 930 F.2d at 245; 780 F.2d 27, 29 (10th Cir. 1985). *Cooper* said that "once judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed.R.Civ.P. 59(e) or 60(b)," and goes on to say why, in that particular instance, those rules do not provide relief. *Cooper*, 780 F.2d at 29; *see also National Petrochemical*, 930 F.2d at 245 ("it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment"); *Mirkin*, 931 F.3d at 178 (implying the same); *Metzler*, 970 F.3d at 142 (same); *Ind. Pub. Ret. Sys v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (same).

Finally, subsequent decisions by this Court make undeniably clear that the rule set out in *Foman* and *Williams* is still good law and that judgment resulting from dismissal is not grounds for denying leave to amend. *See, e.g.*, *Metzler Inv.*, 970 F.3d at 145 (citing *Foman* and *Williams* for the rule that post-judgment leave to amend is appropriate in the absence of prior opportunity); *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 178 (2d Cir. 2019) (citing *Foman* and *Williams* to reverse a post-judgment denial of leave to amend); *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016).

District court decisions followed in the same vein. *See, e.g.*, *Olson v. Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020*), affirmed by Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022) ("However, where a party moves for reconsideration for the purpose of filing an amended complaint, the strictness of this standard is tempered by Rule 15's requirement that "courts 'should freely give leave' to amend a complaint 'when justice so requires."); *Obra Pia Ltd. v. Seagrape Inv'rs* , 19-CV-7840 (RA), at *12 (S.D.N.Y. May 18, 2021) (quoting *Foman* and *Williams* favorably and denying leave on the grounds of prior opportunity); *Mayes*, 18-CV-1427(SJF), at *2 (following *Foman* and *Williams*); *Jackson v. Avanos Med., Inc.*, No. 16-CV-05093-LTS, at *6 (S.D.N.Y. Mar. 31, 2019) (quoting *Williams* and *Janese* favorably and denying leave to amend on the grounds of futility); *MacGregor v. Milost Glob., Inc.*, No. 17-CV-6691-LTS-

29

KHP, at *2 (S.D.N.Y. July 1, 2019) (quoting *Williams* favorably and denying leave to amend on the grounds of bad faith); *Park v. FDM Grp., Inc.*, No. 16-CV-1520-LTS, at *6 (S.D.N.Y. Aug. 28, 2018) (following *Williams* and rejecting contrary authorities in which the plaintiffs failed to show that the underlying deficiencies could be cured).

For the avoidance of doubt, the arguments concerning leave to amend are not limited to the above-mentioned remedy. Plaintiffs also seek review of the denial of their suggested remedy to amend the Complaint to elucidate the difference between ordinary breach and Good Faith so that they no longer use identical language, which is what the Court focused on. (*See* ECF Doc. No. 58 at 1–2,6; JA257,93–95). The above arguments apply to this suggestion as well, albeit less pronounced.[8]

This Court should follow the above-mentioned authorities and reverse the District Court's denial of leave to amend and give Plaintiffs a chance to have their case decided on its merits.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed.

---

[8] It would not be futile or difficult to alter the language, and prior opportunities were not taken advantage of due to the dubiousness of the duplication argument and the focus concerning amending on the arguments for dismissal of ordinary breach. (*See* ECF Doc. No. 44 at 9).

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed.

Respectfully Submitted,

____/s/ Yaakov Pollak____
Yaakov Pollak, Esq.
55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
ypollak@nbyjlaw.com
*Attorney for Plaintiffs-Appellants*

31

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7(B)), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☑ this document contains 7,627 words, **or**

    ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    ☑ this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2301 in 14-point Times New Roman, **or**

    ☐ this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(s) Yaakov Pollak

Attorney for Appellants

Dated: 2/16/2023