# 22-3194

## United States Court of Appeals
## for the
## Second Circuit

ROCHEL SOROTZKIN, Attorney in Fact for H and D,
*Plaintiff-Appellant*,

BRAINBUILDERS LLC, Attorney in Fact for H and D, H and D, H and D, by
their Attorney in Fact, ROCHEL SOROTZKIN,
*Plaintiffs*,

*v.*

NEW YORK CITY DEPARTMENT OF EDUCATION, EMBLEMHEALTH
INC., GROUP HEALTH INCORPORATED, NEW YORK CITY OFFICE OF
LABOR RELATIONS,  THE CITY OF NEW YORK,
*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of New York

### JOINT APPENDIX (Pages JA1 to JA297)

Yaakov Pollak, Esq.
55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
ypollak@nbyjlaw.com
*Counsel for Plaintiffs-Appellants*

# JOINT APPENDIX

## TABLE OF CONTENTS

| DATE | DOCKET | DESCRIPTION | PAGE |
|---|---|---|---|
| N/A | N/A | Relevant Docket Entries, *Brainbuilders LLC et al v. EmblemHealth, Inc. et al.*, No. 1:21-cv-04627-KPF | JA1 |
| 08/18/2020 | D.I. 1 | Complaint | JA11 |
| 11/09/2020 | D.I. 16 | First Amended Complaint | JA22 |
| 07/13/2021 | D.I. 34 | Second Amended Complaint | JA32 |
| 09/10/2021 | D.I. 47 | Notice of Motion to Dismiss the Second Amended Complaint | JA43 |
| 09/10/2021 | D.I. 48 | Declaration of Luz Campos in Support of Motion to Dismiss the Second Amended Complaint | JA45 |
| | | Ex. A to Dec. of L. Campos; Second Amended Complaint | JA47 |
| | | Ex. B to Dec. of L. Campos; EmblemHealth Summary Plan Description | JA59 |
| | | Ex. C to Decl of L. Campos; Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss | JA200 |
| 10/29/2021 | D.I. 49 | Declaration of Howard S. Wolfson in Support of Motion to Dismiss the Second Amended Complaint | JA225 |
| | | Ex. A to Dec. of H. Wolfson; Plaintiffs' Power of Attorney | JA227 |
| | | Ex. B to Dec. of H. Wolfson; Status Report of Brainbuilders LLC | JA231 |
| 09/10/2021 | D.I. 51 | Declaration of Yaakov Pollak in Opposition to Motion to Dismiss | JA235 |
| | | Ex. B to Dec. of Y. Pollak; Internal Appeal Determination | JA237 |
| 08/08/2022 | D.I. 56 | Opinion and Order re: Motion to Dismiss Second Amended Complaint | JA239 |
| 11/22/2022 | D.I. 63 | Opinion and Order re: Motion for Reconsideration | JA284 |
| 12/22/2022 | D.I. 65 | Notice of Appeal | JA297 |

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21−cv−04627−KPF

| | |
|---|---|
| BRAINBUILDERS LLC et al v. EMBLEMHEALTH, INC. et al | Date Filed: 05/24/2021 |
| Assigned to: Judge Katherine Polk Failla | Date Terminated: 08/10/2022 |
| Case in other court:  New Jersey, 3:20−cv−12703 | Jury Demand: Plaintiff |
| Cause: 28:1441in Petition for Removal− Insurance Contract | Nature of Suit: 110 Insurance |
| | Jurisdiction: Diversity |

**Plaintiff**

**Brainbuilders LLC**                    represented by  **YAAKOV POLLAK**
BURTON JACOBOVITCH LAW
GROUP LLC
500 RIVER AVENUE
SUITE 215
LAKEWOOD, NJ 08701
732−806−8181
Email: ypollak@nbyjlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brainbuilders LLC**                    represented by  **YAAKOV POLLAK**
*ATTORNEY−IN−FACT FOR H AND D*          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yaakov Pollak**
55 Rena Lane
Ste Rena ln.
Lakewood
Lakewood Township, NJ 08701
732−364−0898
Email: jgjpmail@gmail.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**H and D**                              represented by  **YAAKOV POLLAK**
*H and D, by their Attorney−in−Fact,*    (See above for address)
*Rochel Sorotzkin*                       *ATTORNEY TO BE NOTICED*

**Yaakov Pollak**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rochel Sorotzkin**                     represented by  **Yaakov Pollak**
*Attorney in Fact for H and D*           (See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**NEW YORK CITY DEPARTMENT**             represented by  **Robert Bruce Funkhouser**
**OF EDUCATION**                         NYC Law Department, Office of the
Corporation Counsel
100 Church Street
New York, NY 10007

212 356–2559
Fax: 212 356–1088
Email: rfunkhou@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Patrick Bridge**
New York City Law Department
100 Church Street
Ste 3–245
New York, NY 10007
212–356–2548
Email: sbridge@law.nyc.gov
*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*

**Defendant**

**EmblemHealth Inc.**                     represented by   **Howard S. Wolfson**
Morrison Cohen LLP
909 Third Avenue
27th Floor
New York, NY 10022
(212) 735–8872
Fax: (212) 735–8708
Email: hwolfson@morrisoncohen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joaquin Javier Ezcurra**
Morrison Cohen, LLP (NY)
909 Third Avenue
New York, NY 10022
212–735–8600
Fax: 212–735–8708
Email: jezcurra@morrisoncohen.com
*ATTORNEY TO BE NOTICED*

**Alvin C Lin**
Morrison Cohen, LLP (NY)
909 Third Avenue
New York, NY 10022
(212)–735–8873
Fax: (212)–735–8708
Email: alin@morrisoncohen.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Group Health Incorporated**            represented by   **Howard S. Wolfson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joaquin Javier Ezcurra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alvin C Lin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**New York City Office of Labor**        represented by   **Robert Bruce Funkhouser**
**Relations**                                            (See above for address)

JA2

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Patrick Bridge**
(See above for address)
*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*

**Defendant**

**The City of New York**                    represented by  **Robert Bruce Funkhouser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Patrick Bridge**
(See above for address)
*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/15/2020 | 1 | NOTICE OF REMOVAL by EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED from Superior Court of Monmouth County, case number MON–L–002594–20. ( Filing and Admin fee $ 400 receipt number ANJDC–11356031), filed by EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED. (Attachments: # 1 Exhibit 1 – Complaint, # 2 Exhibit 2 – Notice of Filing of Notice of Removal, # 3 Exhibit 3 – Consent to Notice of Removal, # 4 Civil Cover Sheet)(LIN, ALVIN) Modified on 9/15/2020 (jc, ). [Transferred from New Jersey on 5/24/2021.] (Entered: 09/15/2020) |
| 09/15/2020 | 2 | Corporate Disclosure Statement by EMBLEMHEALTH, INC.. (LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/15/2020) |
| 09/15/2020 | 3 | Corporate Disclosure Statement by GROUP HEALTH INCORPORATED identifying HEALTH INSURANCE PLAN OF GREATER NEW YORK as Corporate Parent.. (LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/15/2020) |
| 09/15/2020 | | Chief Judge Freda L. Wolfson and Magistrate Judge Tonianne J. Bongiovanni added. (abr) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/15/2020) |
| 09/15/2020 | 4 | CERTIFICATE OF SERVICE by EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED re 3 Corporate Disclosure Statement (aty), 1 Notice of Removal, 2 Corporate Disclosure Statement (aty) (LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/15/2020) |
| 09/15/2020 | 5 | ORDER SCHEDULING CONFERENCE: Scheduling Conference set for 10/20/2020 11:00 AM in Trenton – Courtroom 6E before Magistrate Judge Tonianne J. Bongiovanni. Signed by Magistrate Judge Tonianne J. Bongiovanni on 09/15/2020. (jdb) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/16/2020) |
| 09/17/2020 | 6 | CONSENT ORDER for admission Pro Hac Vice as to Howard S. Wolfson and Joaquin Ezcurra. Signed by Magistrate Judge Tonianne J. Bongiovanni on 9/17/2020. (mg) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/17/2020) |
| 09/17/2020 | 7 | CONSENT ORDER extending Defendants time to answer, move or otherwise respond to the Complaint until 10/21/2020. Signed by Magistrate Judge Tonianne J. Bongiovanni on 09/17/2020. (jdb) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/17/2020) |
| 09/18/2020 | 8 | Certification of of Alvin C. Lin concerning citizenship of Plaintiff Brainbuilders LLC on behalf of EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED. (Attachments: # 1 Exhibit 1 – Status Report, # 2 Exhibit 2 – Email dated September 17, 2020)(LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/18/2020) |

| 09/23/2020 | 9 | Notice of Request by Pro Hac Vice Joaquin Ezcurra to receive Notices of Electronic Filings. (LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/23/2020) |
|---|---|---|
| 09/23/2020 | 10 | Notice of Request by Pro Hac Vice Howard S. Wolfson to receive Notices of Electronic Filings. (LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/23/2020) |
| 09/23/2020 | | Pro Hac Vice fee of $300 received as to Howard S. Wolfson and Joaquin Ezcurra. Receipt number TRE114279 (jdb) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/24/2020) |
| 09/24/2020 | | Pro Hac Vice counsel, HOWARD S. WOLFSON and JOAQUIN EZCURRA, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (abr) [Transferred from New Jersey on 5/24/2021.] (Entered: 09/24/2020) |
| 10/19/2020 | 11 | MOTION to Dismiss by EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED. (Attachments: # 1 Declaration Declaration of Luz Campos, # 2 Exhibit A – Complaint, # 3 Exhibit B – City of New York GHI CBP Certificate of Insurance (NYC CBP ), # 4 Exhibit C – City Employment Claim Form, # 5 Brief Memorandum of Law in Support of Defendants Emblemhealth, Inc. and Group Health Inc.'s Motion to Dismiss the Complaint, # 6 Text of Proposed Order Proposed Order)(LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/19/2020) |
| 10/20/2020 | 12 | NOTICE of Appearance by SCOTT PATRICK BRIDGE on behalf of NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY OFFICE OF LABOR RELATIONS, THE CITY OF NEW YORK (BRIDGE, SCOTT) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/20/2020) |
| 10/20/2020 | | Text Minute Entry for proceedings held before Magistrate Judge Tonianne J. Bongiovanni: Initial Pretrial Conference held on 10/20/2020. Discovery is stayed pending resolution of the Motions to Dismiss. (mm) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/20/2020) |
| 10/20/2020 | | Set Deadlines as to 11 MOTION to Dismiss . Motion set for 11/16/2020 before Chief Judge Freda L. Wolfson. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (abr, ) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/20/2020) |
| 10/21/2020 | 13 | MOTION to Dismiss *the Complaint* by NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY OFFICE OF LABOR RELATIONS, THE CITY OF NEW YORK. Responses due by 11/16/2020 (Attachments: # 1 Declaration Declaration of Judy E. Nathan, # 2 Declaration Declaration of Dean S. Weltman, # 3 Declaration Declaration of Scott P. Bridge, # 4 Exhibit Ex. A – Complaint, # 5 Exhibit Ex. B – Notice of Claim, # 6 Brief Memorandum of Law of the City, OLR, and DOE in Support of their Motion to Dismiss, # 7 Text of Proposed Order Proposed Order)(BRIDGE, SCOTT) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/21/2020) |
| 10/22/2020 | | Set Deadlines as to 13 MOTION to Dismiss *the Complaint*. Motion set for 11/16/2020 before Chief Judge Freda L. Wolfson. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (abr, ) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/22/2020) |
| 10/29/2020 | 14 | MOTION for Extension of Time to File Response/Reply *by Consent of all Parties* by All Plaintiffs. (POLLAK, YAAKOV) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/29/2020) |
| 10/30/2020 | 15 | LETTER ORDER granting Plaintiff's request for an adjournment on the return date of the Motions to Dismiss (ECF Nos. 11 , 13 ). The new motion date is 12/21/2020. Signed by Chief Judge Freda L. Wolfson on 10/30/2020. (jdb) [Transferred from New |

| | | |
|---|---|---|
| | | Jersey on 5/24/2021.] (Entered: 10/30/2020) |
| 10/30/2020 | | Reset Deadlines as to 11 MOTION to Dismiss , 13 MOTION to Dismiss *the Complaint*. Motion reset for 12/21/2020 before Chief Judge Freda L. Wolfson. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jdb) [Transferred from New Jersey on 5/24/2021.] (Entered: 10/30/2020) |
| 11/09/2020 | 16 | AMENDED COMPLAINT against All Defendants All Defendants., filed by BRAINBUILDERS LLC, H and D.(POLLAK, YAAKOV) [Transferred from New Jersey on 5/24/2021.] (Entered: 11/09/2020) |
| 11/18/2020 | 17 | Letter from Alvin C. Lin respectfully requesting that Your Honor deem the pending motions to dismiss to be directed against Plaintiffs' Amended Complaint. (LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 11/18/2020) |
| 11/19/2020 | 18 | LETTER ORDER deeming Defendants' pending motions to dismiss to be directed against Plaintiffs' Amended Complaint. Signed by Chief Judge Freda L. Wolfson on 11/19/2020. (jdb) [Transferred from New Jersey on 5/24/2021.] (Entered: 11/19/2020) |
| 11/23/2020 | 19 | MEMORANDUM in Opposition filed by All Plaintiffs re 11 MOTION to Dismiss (Attachments: # 1 Exhibit Exhibits to Opposition)(POLLAK, YAAKOV) [Transferred from New Jersey on 5/24/2021.] (Entered: 11/23/2020) |
| 12/03/2020 | 20 | Letter from Scott P. Bridge Respectfully Requesting Your Honor to Approve Revised Briefing Schedule for Motions to Dismiss Consented to by All Parties. (BRIDGE, SCOTT) [Transferred from New Jersey on 5/24/2021.] (Entered: 12/03/2020) |
| 12/07/2020 | 21 | LETTER ORDER that the return dates for City Defendants' motion to dismiss 13 and GHI's motion to dismiss 11 are both adjourned to 1/19/2021. Signed by Chief Judge Freda L. Wolfson on 12/7/2020. (mg) [Transferred from New Jersey on 5/24/2021.] (Entered: 12/07/2020) |
| 12/10/2020 | 22 | MEMORANDUM in Opposition filed by All Plaintiffs re 13 MOTION to Dismiss *the Complaint* (Attachments: # 1 Exhibit Exhibits to Opposition to Motion to Dismiss)(POLLAK, YAAKOV) [Transferred from New Jersey on 5/24/2021.] (Entered: 12/10/2020) |
| 12/16/2020 | | Reset Deadlines as to 11 MOTION to Dismiss , 13 MOTION to Dismiss *the Complaint*. Motion set for 1/19/2021 before Chief Judge Freda L. Wolfson. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (mg) [Transferred from New Jersey on 5/24/2021.] (Entered: 12/16/2020) |
| 01/12/2021 | 23 | AFFIDAVIT in Support filed by EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED re 11 MOTION to Dismiss *Reply Declaration of Alvin C. Lin in Support of Motion to Dismiss the Amended Complaint* (Attachments: # 1 Exhibit A– Power of Attorney, # 2 Brief Defendants Emblemhealth, Inc and Group Health Incorporated's Reply Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint)(LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 01/12/2021) |
| 01/12/2021 | 24 | REPLY BRIEF to Opposition to Motion filed by NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY OFFICE OF LABOR RELATIONS, THE CITY OF NEW YORK re 13 MOTION to Dismiss *the Complaint* (Attachments: # 1 Declaration Declaration of Scott P. Bridge, # 2 Exhibit Ex. A – Amended Complaint)(BRIDGE, SCOTT) [Transferred from New Jersey on 5/24/2021.] (Entered: 01/12/2021) |
| 02/25/2021 | 25 | Letter from Alvin C. Lin writing to provide notice of a supplemental authority in connection with GHI Defendants' Motion to Dismiss. (Attachments: # 1 Exhibit Decision in O'Brien v. Aetna, Inc.)(LIN, ALVIN) [Transferred from New Jersey on 5/24/2021.] (Entered: 02/25/2021) |
| 05/21/2021 | 26 | OPINION filed. Signed by Chief Judge Freda L. Wolfson on 5/21/2021. (abr, ) [Transferred from New Jersey on 5/24/2021.] (Entered: 05/21/2021) |

| | | |
|---|---|---|
| 05/21/2021 | 27 | ORDER that New York Defendants motion to dismiss for lack of personal jurisdiction 13 is GRANTED; In lieu of dismissal, this matter is transferred to the United States District Court for the Southern District of New York; GHIs motion to dismiss 11 is DENIED without prejudice, with the right to refile the motion in the transferee court ***CIVIL CASE TERMINATED. Signed by Chief Judge Freda L. Wolfson on 5/21/2021. (abr, ) [Transferred from New Jersey on 5/24/2021.] (Entered: 05/21/2021) |
| 05/24/2021 | 28 | CASE TRANSFERRED IN from the United States District Court – District of New Jersey; Case Number: 3:20–cv–12703. Original file certified copy of transfer order and docket entries received. (sjo) (Entered: 05/24/2021) |
| 05/24/2021 | | Case Designated ECF. (sjo) (Entered: 05/24/2021) |
| 05/24/2021 | | Magistrate Judge Kevin Nathaniel Fox is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018–06/AO–3.pdf. (sjo) (Entered: 05/24/2021) |
| 05/24/2021 | | NOTE TO OUT OF STATE ATTORNEYS: Please visit the Court's website at https://nysd.uscourts.gov/ for information regarding admission to the S.D.N.Y. Bar and the CM/ECF Rules & Filing Instructions..(sjo) (Entered: 05/24/2021) |
| 06/04/2021 | 29 | LETTER MOTION for Conference *Pre–Motion Conference and Request for Leave to Move to Dismiss* addressed to Judge Katherine Polk Failla from Scott P. Bridge dated June 4, 2021. Document filed by NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York..(Bridge, Scott) (Entered: 06/04/2021) |
| 06/04/2021 | 30 | NOTICE OF APPEARANCE by Howard S. Wolfson on behalf of EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 06/04/2021) |
| 06/04/2021 | 31 | NOTICE OF APPEARANCE by Joaquin Javier Ezcurra on behalf of EmblemHealth Inc., Group Health Incorporated..(Ezcurra, Joaquin) (Entered: 06/04/2021) |
| 06/04/2021 | 32 | LETTER MOTION for Conference *pre–motion conference in anticipation of moving to dismiss the Amended Complaint* addressed to Judge Katherine Polk Failla from Howard S. Wolfson dated June 4, 2021. Document filed by EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 06/04/2021) |
| 06/10/2021 | 33 | NOTICE OF INITIAL PRETRIAL CONFERENCE: This case has been assigned to me for all purposes. It is hereby ORDERED that counsel for all parties appear for an initial pretrial conference with the Court on July 22, 2021, at 10:30 a.m. The conference will be held telephonically. At the scheduled date and time, the parties are to call (888) 363–4749 and enter access code 5123533. And as set forth herein. SO ORDERED. Initial Conference set for 7/22/2021 at 10:30 AM before Judge Katherine Polk Failla. (Signed by Judge Katherine Polk Failla on 6/10/2021) (ama) (Entered: 06/10/2021) |
| 07/13/2021 | 34 | AMENDED COMPLAINT amending 16 Amended Complaint against EmblemHealth Inc., Group Health Incorporated, NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York with JURY DEMAND.Document filed by Brainbuilders LLC(ATTORNEY–IN–FACT FOR H AND D), H and D, Rochel Sorotzkin. Related document: 16 Amended Complaint..(Pollak, Yaakov) (Entered: 07/13/2021) |
| 07/14/2021 | 35 | ORDER denying as moot 29 Letter Motion for Conference re: 29 LETTER MOTION for Conference *Pre–Motion Conference and Request for Leave to Move to Dismiss* addressed to Judge Katherine Polk Failla from Scott P. Bridge dated June 4, 2021., 32 LETTER MOTION for Conference *pre–motion conference in anticipation of moving to dismiss the Amended Complaint* addressed to Judge Katherine Polk Failla from Howard S. Wolfson dated June 4, 2021. ; denying as moot 32 Letter Motion for Conference re: 29 LETTER MOTION for Conference *Pre–Motion Conference and Request for Leave to Move to Dismiss* addressed to Judge Katherine Polk Failla from Scott P. Bridge dated June 4, 2021., 32 LETTER MOTION for Conference *pre–motion conference in anticipation of moving to dismiss the Amended Complaint* addressed to Judge Katherine Polk Failla from Howard S. Wolfson dated June 4, 2021. |

| | | Accordingly, Defendants' applications for a pre–motion conference are DENIED as moot. The Clerk of Court is directed to terminate the letter motions at docket entries 29 and 32. Defendants are directed to file their responses to the Second Amended Complaint on or before July 28, 2021. Moreover, the initial pretrial conference scheduled for July 22, 2021, is hereby ADJOURNED to August 12, 2021 at 3:00 p.m. The parties' joint letter and Proposed Case Management Plan and Scheduling Order will be due on or before August 5, 2021. (Signed by Judge Katherine Polk Failla on 7/14/2021) (ate) (Entered: 07/14/2021) |
|---|---|---|
| 07/14/2021 | | Set/Reset Hearings: Initial Conference set for 8/12/2021 at 03:00 PM before Judge Katherine Polk Failla. (ate) (Entered: 07/14/2021) |
| 07/14/2021 | | Set/Reset Deadlines: EmblemHealth Inc. answer due 7/28/2021; Group Health Incorporated answer due 7/28/2021; NEW YORK CITY DEPARTMENT OF EDUCATION answer due 7/28/2021; New York City Office of Labor Relations answer due 7/28/2021; The City of New York answer due 7/28/2021. (ate) (Entered: 07/19/2021) |
| 07/28/2021 | 36 | MOTION to Dismiss *Second Amended Complaint*. Document filed by NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York. Responses due by 8/11/2021 (Attachments: # 1 Declaration of Scott P. Bridge, # 2 Exhibit A – Second Amended Complaint, # 3 Exhibit B – Notice of Claim, # 4 Exhibit C – Payment Appeal Denial, # 5 Memorandum of Law in Support of the City, OLR, and DOE's Motion to Dismiss).(Bridge, Scott) (Entered: 07/28/2021) |
| 07/28/2021 | 37 | LETTER MOTION for Conference *pre–motion conference in anticipation of moving to dismiss the Amended Complaint (ECF Doc. No. 34)* addressed to Judge Katherine Polk Failla from Howard S. Wolfson dated July 28, 2021. Document filed by EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 07/28/2021) |
| 07/29/2021 | 38 | LETTER MOTION for Conference *Pre–Motion Conference for the City, OLR, and DOE's Motion to Dismiss the Second Amended Complaint* addressed to Judge Katherine Polk Failla from Scott P. Bridge dated July 29, 2021. Document filed by NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York..(Bridge, Scott) (Entered: 07/29/2021) |
| 07/29/2021 | 39 | ORDER denying 36 Motion to Dismiss; granting 37 Motion for Conference re: 36 MOTION to Dismiss *Second Amended Complaint.*, 37 LETTER MOTION for Conference *pre–motion conference in anticipation of moving to dismiss the Amended Complaint (ECF Doc. No. 34)* addressed to Judge Katherine Polk Failla from Howard S. Wolfson dated July 28, 2021. The City Defendants' motion is accordingly DENIED without prejudice due to its noncompliance with the Court's Individual Rules. However, given that Defendants EmblemHealth, Inc. and Group Health Incorporated (the "GHI Defendants") have separately requested a premotion conference (see Dkt. #37), the Court hereby CONVERTS the initial pretrial conference scheduled for August 12, 2021, at 3:00 p.m., to a premotion conference. The Court will hear from the parties at the conference regarding both the GHI Defendants' and the City Defendants' anticipated motions. Any response from Plaintiffs to the GHI Defendants pre–motion letter will be due on or before August 3, 2021. Moreover, the Court expects that Plaintiffs' counsel will determine his ability to appear in this District, and submit any applicable pro hac vice motion in advance of the August 12, 2021 conference. The Clerk of Court is directed to terminate the motions at docket entries 36 and 37. SO ORDERED. ( Pre–Motion Conference set for 8/12/2021 at 03:00 PM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 7/29/21) (yv) Modified on 8/13/2021 (yv). (Entered: 07/29/2021) |
| 07/29/2021 | 40 | LETTER RESPONSE to Motion addressed to Judge Katherine Polk Failla from Yaakov Pollak dated July 29, 2021 re: 37 LETTER MOTION for Conference *pre–motion conference in anticipation of moving to dismiss the Amended Complaint (ECF Doc. No. 34)* addressed to Judge Katherine Polk Failla from Howard S. Wolfson dated July 28, 2021., 38 LETTER MOTION for Conference *Pre–Motion Conference for the City, OLR, and DOE's Motion to Dismiss the Second Amended Complaint* addressed to Judge Katherine Polk Failla from Scott P. Bridge dated July 29, 2021. . Document filed by Brainbuilders LLC(ATTORNEY–IN–FACT FOR H AND D), |

| | | |
|---|---|---|
| | | Rochel Sorotzkin..(Pollak, Yaakov) (Entered: 07/29/2021) |
| 07/29/2021 | 41 | ORDER with respect to 38 Letter Motion for Conference re: 38 LETTER MOTION for Conference *Pre–Motion Conference for the City, OLR, and DOE's Motion to Dismiss the Second Amended Complaint* addressed to Judge Katherine Polk Failla from Scott P. Bridge dated July 29, 2021. The Court is in receipt of the above pre–motion letter from Defendants City of New York, New York City Office of Labor Relations, and New York City Department of Education (collectively, the "City Defendants"). Any response from Plaintiffs to the City Defendants' letter will be due on or before August 3, 2021. The Court will hear from the parties regarding the City Defendants' anticipated motion at the pre–motion conference scheduled for August 12, 2021.. (Signed by Judge Katherine Polk Failla on 7/29/2021) (rro) (Entered: 07/29/2021) |
| 07/29/2021 | | Set/Reset Deadlines: Responses due by 8/3/2021 (rro) (Entered: 07/29/2021) |
| 07/29/2021 | 42 | MEMO ENDORSEMENT on re: 40 Response to Motion,, filed by Rochel Sorotzkin, Brainbuilders LLC. ENDORSEMENT: The Court is in receipt of Plaintiffs' above letter in response to its July 29, 2021 Order (Dkt. #39). The Court expects that Plaintiffs' counsel will file his notice of appearance in t his casepromptly. (Signed by Judge Katherine Polk Failla on 7/29/2021) (rro) (Entered: 07/29/2021) |
| 07/30/2021 | 43 | NOTICE OF APPEARANCE by Yaakov Pollak on behalf of Brainbuilders LLC(ATTORNEY–IN–FACT FOR H AND D), Rochel Sorotzkin..(Pollak, Yaakov) (Entered: 07/30/2021) |
| 08/12/2021 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Initial Pretrial Conference held on 8/12/2021. Attorney Yaakov Pollak representing Plaintiff present. Attorney Scott Patrick Bridge representing New York City Defendants present. Attorney Howard S. Wolfson representing EmblemHealth Defendants present. Briefing on defendants' motion to dismiss is due 9/10/2021, a joint opposition (of up to 40 pages) is due 10/15/2021, and replies are due 10/29/2021. EmblemHealth Defendants are to order a copy of today's transcript. (See transcript.) (Court Reporter Kristen Carannante) (tn) (Entered: 08/12/2021) |
| 08/31/2021 | 44 | TRANSCRIPT of Proceedings re: CONFERENCE held on 8/12/2021 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Kristen Carannante, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/21/2021. Redacted Transcript Deadline set for 10/1/2021. Release of Transcript Restriction set for 11/29/2021..(Moya, Goretti) (Entered: 08/31/2021) |
| 08/31/2021 | 45 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 8/12/21 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 08/31/2021) |
| 09/10/2021 | 46 | MOTION to Dismiss *Second Amended Complaint*. Document filed by NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York. Responses due by 10/15/2021 (Attachments: # 1 Declaration of Scott P. Bridge, # 2 Exhibit A – Second Amended Complaint, # 3 Exhibit B – Notice of Claim, # 4 Exhibit C – Payment Appeal Denial, # 5 Memorandum of Law in Support of the City, OLR, and DOE's Motion to Dismiss).(Bridge, Scott) (Entered: 09/10/2021) |
| 09/10/2021 | 47 | MOTION to Dismiss *the Second Amended Complaint*. Document filed by EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 09/10/2021) |
| 09/10/2021 | 48 | DECLARATION of Luz Campos in Support re: 47 MOTION to Dismiss *the Second Amended Complaint*.. Document filed by EmblemHealth Inc., Group Health Incorporated. (Attachments: # 1 Exhibit A – Second Amended Complaint, # 2 Exhibit B – City of New York GHI CBP Certificate of Insurance (NYC CBP ), # 3 Exhibit C |

| | | – Plaintiffs' Memorandum of Law in Opposition).(Wolfson, Howard) (Entered: 09/10/2021) |
|---|---|---|
| 09/10/2021 | 49 | DECLARATION of Howard S. Wolfson in Support re: 47 MOTION to Dismiss *the Second Amended Complaint.*. Document filed by EmblemHealth Inc., Group Health Incorporated. (Attachments: # 1 Exhibit A – Power of Attorney, # 2 Exhibit B – Status Report).(Wolfson, Howard) (Entered: 09/10/2021) |
| 09/10/2021 | 50 | MEMORANDUM OF LAW in Support re: 47 MOTION to Dismiss *the Second Amended Complaint*. . Document filed by EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 09/10/2021) |
| 10/15/2021 | 51 | MEMORANDUM OF LAW in Opposition re: 46 MOTION to Dismiss *Second Amended Complaint.*, 47 MOTION to Dismiss *the Second Amended Complaint*. . Document filed by Brainbuilders LLC(ATTORNEY–IN–FACT FOR H AND D), Rochel Sorotzkin, H and D. (Attachments: # 1 Affidavit Declaration with Exhibits in Opposition to Motions to Dismiss).(Pollak, Yaakov) (Entered: 10/15/2021) |
| 10/29/2021 | 52 | REPLY MEMORANDUM OF LAW in Support re: 46 MOTION to Dismiss *Second Amended Complaint*. . Document filed by NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York..(Bridge, Scott) (Entered: 10/29/2021) |
| 10/29/2021 | 53 | REPLY MEMORANDUM OF LAW in Support re: 47 MOTION to Dismiss *the Second Amended Complaint*. . Document filed by EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 10/29/2021) |
| 02/07/2022 | | Magistrate Judge Jennifer Willis is so redesignated. (aea) (Entered: 02/07/2022) |
| 05/04/2022 | 54 | NOTICE of Substitution of Attorney. Old Attorney: Scott Bridge, New Attorney: Robert Funkhouser, Address: New York City Law Dept., 100 Church Street, Room 3–100, New York, NY, USA 10128, 212–356–2559. Document filed by NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations..(Funkhouser, Robert) (Entered: 05/04/2022) |
| 05/05/2022 | 55 | MEMO ENDORSEMENT on re: 54 Notice of Substitution of Attorney, filed by New York City Office of Labor Relations, NEW YORK CITY DEPARTMENT OF EDUCATION. ENDORSEMENT: Application GRANTED. The Clerk of Court is directed to terminate Scott Bridge as counsel of record in this matter, and to substitute Robert Funkhouser as counsel for the Defendants listed in the above notice. Attorney Robert Bruce Funkhouser for NEW YORK CITY DEPARTMENT OF EDUCATION,Robert Bruce Funkhouser for New York City Office of Labor Relations,Robert Bruce Funkhouser for The City of New York added. Attorney Scott Patrick Bridge terminated. (Signed by Judge Katherine Polk Failla on 5/5/2022) (rro) (Entered: 05/05/2022) |
| 08/08/2022 | 56 | OPINION AND ORDER re: 46 MOTION to Dismiss *Second Amended Complaint*. filed by The City of New York, New York City Office of Labor Relations, NEW YORK CITY DEPARTMENT OF EDUCATION, 47 MOTION to Dismiss *the Second Amended Complaint*. filed by Group Health Incorporated, EmblemHealth Inc.. For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiffs' claims are dismissed. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. SO ORDERED. (Signed by Judge Katherine Polk Failla on 8/8/2022) (kv) Transmission to Orders and Judgments Clerk for processing. (Entered: 08/08/2022) |
| 08/10/2022 | 57 | CLERK'S JUDGMENT re: 56 Memorandum & Opinion in favor of EmblemHealth Inc., Group Health Incorporated, NEW YORK CITY DEPARTMENT OF EDUCATION, New York City Office of Labor Relations, The City of New York against Brainbuilders LLC, H and D, Rochel Sorotzkin. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated August 8, 2022, Defendants' motions to dismiss are GRANTED, and Plaintiffs' claims are dismissed; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 8/10/2022) (Attachments: # 1 Right to Appeal) (km) (Entered: 08/10/2022) |

| 08/10/2022 | | Terminate Transcript Deadlines (km) (Entered: 08/10/2022) |
|---|---|---|
| 08/22/2022 | 58 | MOTION for Reconsideration re; 56 Memorandum & Opinion,, . Document filed by Rochel Sorotzkin..(Pollak, Yaakov) (Entered: 08/22/2022) |
| 09/06/2022 | 59 | MEMORANDUM OF LAW in Opposition re: 58 MOTION for Reconsideration re; 56 Memorandum & Opinion,, . . Document filed by EmblemHealth Inc., Group Health Incorporated..(Wolfson, Howard) (Entered: 09/06/2022) |
| 09/07/2022 | 60 | LETTER addressed to Judge Katherine Polk Failla from Yaakov Pollak dated September 7, 2022 re: Opportunity to Reply. Document filed by Rochel Sorotzkin..(Pollak, Yaakov) (Entered: 09/07/2022) |
| 09/07/2022 | 61 | MEMO ENDORSEMENT on re: 60 Letter filed by Rochel Sorotzkin. ENDORSEMENT: Application GRANTED. Plaintiffs shall file a reply on or before September 14, 2022. SO ORDERED. ( Replies due by 9/14/2022.) (Signed by Judge Katherine Polk Failla on 9/7/2022) (vfr) (Entered: 09/07/2022) |
| 09/14/2022 | 62 | REPLY MEMORANDUM OF LAW in Support re: 58 MOTION for Reconsideration re; 56 Memorandum & Opinion,, . . Document filed by Rochel Sorotzkin..(Pollak, Yaakov) (Entered: 09/14/2022) |
| 11/22/2022 | 63 | OPINION AND ORDER re: 58 MOTION for Reconsideration re; 56 Memorandum & Opinion,, . filed by Rochel Sorotzkin. The Court DENIES Plaintiffs' motion for reconsideration and/or leave to amend. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. (Signed by Judge Katherine Polk Failla on 11/22/2022) (rro) (Entered: 11/22/2022) |
| 12/22/2022 | 64 | **FILING ERROR – NO ORDER SELECTED FOR APPEAL –** NOTICE OF APPEAL. Document filed by Rochel Sorotzkin. Filing fee $ 505.00, receipt number ANYSDC–27122449. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Pollak, Yaakov) Modified on 12/22/2022 (tp). (Entered: 12/22/2022) |
| 12/22/2022 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Yaakov Pollak to RE–FILE Document No. 64 Notice of Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re–file the appeal using the event type Notice of Appeal found under the event list Appeal Documents – attach the correct signed PDF – select the correct named filer/filers – select the correct order/judgment being appealed – Do Not Pay Appeal Fee Again. (tp)** (Entered: 12/22/2022) |
| 12/22/2022 | 65 | NOTICE OF APPEAL from 63 Memorandum & Opinion, 56 Memorandum & Opinion,, 57 Clerk's Judgment,,. Document filed by Rochel Sorotzkin. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Pollak, Yaakov) (Entered: 12/22/2022) |
| 12/22/2022 | | Appeal Fee Paid electronically via Pay.gov: for 65 Notice of Appeal. Filing fee $ 505.00. Pay.gov receipt number ANYSDC–27122449, paid on 12/22/2022. (tp) (Entered: 12/22/2022) |
| 12/22/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 65 Notice of Appeal. (tp) (Entered: 12/22/2022) |
| 12/22/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 65 Notice of Appeal filed by Rochel Sorotzkin were transmitted to the U.S. Court of Appeals. (tp) (Entered: 12/22/2022) |

Yaakov Pollak, Esq. (236842017)
**BURTON JACOBOVITCH LAW GROUP LLC**
500 River Avenue – Suite 215
Lakewood, New Jersey 08701
(732) 806-8181
*Attorneys for Plaintiffs*

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, BRAINBUILDERS LLC, | **SUPERIOR COURT OF NEW JERSEY MONMOUTH COUNTY – LAW DIVISION** |
| Plaintiffs, | **CIVIL ACTION** |
| vs. | |
| EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, | **DOCKET NO.:** **COMPLAINT** |
| Defendants. | |

Plaintiffs Brainbuilders LLC, and H, and D, by their Attorney-in-Fact, Brainbuilders LLC, brings this action by way of Complaint, and in support thereof aver as follows:

## PARTIES

1.      Brainbuilders LLC ("Brainbuilders"), a New Jersey limited liability company, is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders ("ASDs").  These services include applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy.   H, on behalf of herself and on behalf of her minor child, D. (collectively, "Plaintiff" and together with Brainbuilders, "Plaintiffs") executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders, which assignment is valid at least as it pertains to NYC

Defendants (hereinafter defined) (document will be made available pursuant to an order satisfying the Health Insurance Portability and Accountability Act of 1996 (45 C.F.R. §§ 164.501 & 160.103) ("HIPAA")).

2.    H, on behalf of herself and on behalf of her minor child, D, appointed plaintiff Brainbuilders LLC as their attorney-in-fact, with authority to pursue all legal and administrative remedies under their health insurance plan (document will be made available pursuant to an order satisfying the HIPAA requirements).

3.    Upon information and belief, defendant EmblemHealth, Inc. is a New York corporation, with its principal place of business located at 55 Water Street, Suite CONC1, New York, New York 10041, is the parent of defendant GHI (hereinafter defined) and has its name and logo featured on plans that are offered by GHI.

4.    Upon information and belief, Group Health Incorporated ("Group Health," and, together with EmblemHealth, Inc., "GHI") is a New York corporation, with its principal place of business located at 441 Ninth Avenue New York, NY 10001.

5.    Defendant City of New York ("NYC"), is the employer of H, and accepts service at its Corporation Counsel, located at 100 Church Street, New York, NY 10007.

6.    Defendant New York City Office of Labor Relations, located at 22 Cortlandt St floor 12-14, New York, NY 10007 ("OLR"), is a subdivision of defendant NYC and administers the NYC Health Benefits Program, of which the Plan (herein defined) is a part.

7.    Defendant New York City Department of Education, located at 52 Chambers Street, New York, NY 10007 ("DOE" and, together with NYC and OLR, the "NYC Defendants"), is a subdivision of defendant NYC and is the direct employer of H.

**JURISDICTION AND VENUE**

8.      Jurisdiction and venue are proper in this court because Defendants have specifically directed their dealings and conduct that give rise to this Action at a resident of this County.

## FACTUAL BACKGROUND

9.      D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder ("ASD") and was and is being treated for such disorder by the dedicated staff of Brainbuilders from May of 2017 to the present.

10.     H, D's mother and guardian, is employed by NYC and DOE as a day school teacher.

11.     Pursuant to an agreement between DOE and United Federation of Teachers (UTF), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans" (the "Commitment").

12.     By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein.  To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage."

13.     In line with the Commitment, DOE employees, like all NYC employees, are offered a choice of healthcare plans.

14.     H has chosen and is insured by the GHI Comprehensive Benefit Plan (the "Plan"), a policy created by defendants GHI and NYC Defendants for NYC employees, and under which D is covered as a qualified dependent.

15.     Insurance companies typically contract with healthcare providers to participate in their provider network and treat their members for negotiated and discounted rates.  The insurance companies then offer their customers two options: policies that only cover in-network services, and those that include out-of-network ("OON") services as well.  In exchange for the expanded

options, insurance companies typically charge substantially higher premiums for policies that cover OON services.

16.     The Plan includes OON services, a privilege that GHI agreed to in advance and is, presumably, well compensated for.

17.     ABA is the single most effective and widely practiced treatment for individuals diagnosed with an ASD.  For most such individuals, ABA represents the only hope that they will grow up to lead independent and meaningful lives.

18.     In the State of New York, GHI, like all insurance companies, is required to provide coverage for the screening, diagnosis, and treatment of ASDs, including, but not limited to, ABA. See NY Ins L § 3221 (l)(17)(A).

19.     Accordingly, as set forth in a Rider to the Plan's Certificate of Insurance, the Plan includes coverage for ABA.

20.     Per the Plan's Certificate of Insurance, the Plan "meets the standard for basic medical insurance as defined by the New York State Insurance Department," making compliance with New York State insurance laws and regulations contractual commitments as well as statutory.

21.     D was diagnosed with an ASD in 2009, and since May of 2017, he has been receiving ABA and other services from Brainbuilders, with very positive results.

22.     Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA.  Six-percent is well below Brainbuilders' cost, forcing it to "balance bill" D's caregivers for the rest.  Meaning, despite its obligation to do so, the Plan fails to cover ABA in any meaningful sense.

23.     Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York."  By

implication, the failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and NYC Defendants to shortchange Plaintiffs. GHI is in breach of the agreement with its member, and NYC Defendants are in breach of their commitment to their employee and are complicit in GHI's breach.

24.     Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers," (the "AG Order"). See Attorney General of the State of New York, In the Matter of Group Health Incorporated, Assurance No.: 14-181.

25.     In partial compliance with the AG Order, GHI has created a website for its members to seek information on its reimbursement amounts. However, contrary to the AG Order, there is no reimbursement information available on the website for the CPT/HCPCS codes related to ABA (0359T, 0364T, 0365T, 0368T, 0369T, 0370T, 97151, 97153, 97155, and 97156).

26.     Upon information and belief, the Plan violates the Mental Health Parity and Addiction Equity Act (the "MHPAEA"), which requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services. 29 USC § 1185a.

27.     Moreover, per the MHPAEA, which fully applies to grandfathered non-ERISA healthcare plans, GHI was required to make available the reasons for its reimbursement determinations. See 29 § CFR 2590.712(d). GHI has not made its reasons available, and to do so would be impossible given the low and arbitrary rate.

28.     Brainbuilders offers a full array of services, including but not limited to center-based group ABA.  Upon information and belief, GHI's designated network is inadequate to satisfy D's treatment specifications.

29.     Plaintiffs have continuously complied with the Plan's internal appeal procedures, despite GHI ignoring many of their appeals, in further violation of the Plan's provisions.

30.     The Plan is governed by New York Law.

31.     Within ninety-days of the course of conduct herein, a Notice of Claim was served on behalf of H upon NYC Defendants in accordance with New York's General Municipal Law. More than thirty-days has elapsed since such service, and NYC Defendants have refused to pay said claim or adjust the same.

32.     The egregious nature of Defendants' denial of D's sole lifeline and his only prospect of leading a fulfilling life, in utter disregard of their duties, and their refusal to protect Plaintiffs from the financial consequences of D's autism, warrants the imposition of punitive damages on the basis of claims sounding in contract, tort, or both.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

33.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

34.     Defendants by only covering a small fraction of the costs of D's treatments have breached their respective agreements.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements.

## THIRD CAUSE OF ACTION
### PROMISSORY ESTOPPEL

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan.

40.     Plaintiffs relied on Defendants' promises and did not accept or seek alternative employment or insurance coverage.

41.     Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.

## FOURTH CAUSE OF ACTION
### FRAUD

42.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.     Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.

44.     Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments.

## FIFTH CAUSE OF ACTION
## CIVIL CONSPIRACY

45.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

46.      Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein.

## SIXTH CAUSE OF ACTION
## CIVIL AIDING AND ABETTING

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Each Defendant aided the other Defendants in the breach of their duties.

## SEVENTH CAUSE OF ACTION
## NEW YORK PROMPT PAY LAW

40.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

41.     New York Insurance Law § 3224-a provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

42.     GHI failed to comply with the New York Prompt Pay Law.

## EIGHTH CAUSE OF ACTION
## NEW YORK CONSUMER PROTECTION LAW

43.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

44.      New York General Business Law § 349 provides protection against "[d]eceptive acts or practices in the conduct of any business, trade or commerce  or  in  the furnishing of any service."

45.      Defendants have engaged in actions that violated the foregoing provision.

## NINTH CAUSE OF ACTION
## NEW YORK AUTISM MANDATE

46.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

47.      The State of New York mandates that all health insurance policies cover autism services, including ABA (the "Mandate").

48.      The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim.

## TENTH CAUSE OF ACTION
## FEDERAL MENTAL HEALTH PARITY

49.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

50.      The MHPAEA requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services.  29 USC § 1185a.

51.      The Plan violates the MHPAEA by not covering autism services, a mental health condition, on par with medical and surgical services.

## ELEVENTH CAUSE OF ACTION
## DECLARATORY JUDGEMENT

52.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

53.     Plaintiffs are entitled to full reimbursement for the treatment of D going forward.

**WHEREFORE**, Plaintiffs demand judgement in their favor against Defendants as follows:

A.     Ordering Defendants to reimburse Plaintiffs for the billed amount for past treatment of D.

B.     Declaring that Plaintiffs are entitled to reimbursement for the billed amount for future treatment of D.

C.     Awarding of reasonable attorney's fees and costs.

D.     Awarding punitive damages.

E.     Awarding all other relief to which Plaintiffs are entitled.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that the firm Burton Jacobovitch Law Group LLC is designated as trial counsel in this matter.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO R 4:5-1

I certify that to my knowledge and based on the information available to me at this time, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and that no additional parties are known at this time who should be added.

Dated: August 18, 2020                    Respectfully submitted,

/s/ Yaakov Pollak
Yaakov Pollak, Esq.
**BURTON JACOBOVITCH LAW GROUP LLC**

500 River Avenue – Suite 215
Lakewood, New Jersey 08701
(732) 806-8181
*Attorneys for Plaintiffs*

Yaakov Pollak, Esq. (236842017)
**BURTON JACOBOVITCH LAW GROUP LLC**
500 River Avenue, Suite 215
Lakewood, New Jersey 08701
(732) 806-8181
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, ROCHEL SOROTZKIN, <br><br> Plaintiffs, <br> vs. <br><br> EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, <br><br> Defendants. | Civil Action No.: 3:20-cv-12703-FLW-TJB <br><br><br> **AMENDED COMPLAINT** |

Plaintiffs Brainbuilders LLC, and H, and D, by their Attorney-in-Fact, Rochel Sorotzkin, brings this action by way of Complaint, and in support thereof aver as follows:

### PARTIES

1.      Brainbuilders LLC ("Brainbuilders"), a New Jersey limited liability company, is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders ("ASDs"). These services include applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy.   H, on behalf of herself and on behalf of her minor child, D. (collectively, "Plaintiff" and together with Brainbuilders, "Plaintiffs") executed an assignment of benefits and

an assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders, which assignment is valid at least as it pertains to NYC Defendants (hereinafter defined) (document will be made available upon request).

2.      H, on behalf of herself and on behalf of her minor child, D, appointed Rochel Sorotzkin, residing at 780 Albert Avenue, Lakewood, New Jersey, as their attorney-in-fact, with authority to pursue all legal and administrative remedies under their health insurance plan (document will be made available upon request).

3.      Upon information and belief, defendant EmblemHealth, Inc. is a New York corporation, with its principal place of business located at 55 Water Street, Suite CONC1, New York, New York 10041, is the parent of defendant GHI (hereinafter defined) and has its name and logo featured on plans that are offered by GHI.

4.      Upon information and belief, Group Health Incorporated ("GHI," and, together with EmblemHealth, Inc., "Defendants") is a New York corporation, with its principal place of business located at 441 Ninth Avenue New York, NY 10001.

5.      Defendant City of New York ("NYC"), is the employer of H, and accepts service at its Corporation Counsel, located at 100 Church Street, New York, NY 10007.

6.      Defendant New York City Office of Labor Relations, located at 22 Cortlandt St floor 12-14, New York, NY 10007 ("OLR"), is a subdivision of defendant NYC and administers the NYC Health Benefits Program, of which the Plan (herein defined) is part.

7.      Defendant New York City Department of Education, located at 52 Chambers Street, New York, NY 10007 ("DOE" and, together with NYC and OLR, the "NYC Defendants"), is a subdivision of defendant NYC and is the direct employer of H.

## JURISDICTION AND VENUE

8.      Jurisdiction and venue are proper in this court because Defendants have specifically directed their dealings and conduct that give rise to this Action at a resident of this County.

## FACTUAL BACKGROUND

9.      D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder ("ASD") and was and is being treated for such disorder by the dedicated staff of Brainbuilders from May of 2017 to the present.

10.     H, D's mother, is a NYC and DOE Employee.

11.     Pursuant to an agreement between DOE and United Federation of Teachers (UTF), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans" (the "Commitment").

12.     By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein.  To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage."

13.     In line with the Commitment, DOE employees, like all NYC employees, are offered a choice of healthcare plans.

14.     H has chosen and is insured by the GHI Comprehensive Benefit Plan (the "Plan"), a policy created by defendants GHI and NYC Defendants for NYC employees, and under which D is covered as a qualified dependent.

15.     Insurance companies typically contract with healthcare providers to participate in their provider network and treat their members for negotiated and discounted rates.  The insurance companies then offer their customers two options: policies that only cover in-network services, and those that include out-of-network ("OON") services as well.  In exchange for the expanded

options, insurance companies typically charge substantially higher premiums for policies that cover OON services.

16.    The Plan includes OON services, a privilege that GHI agreed to in advance and is well compensated for.

17.    ABA is the single most effective and widely practiced treatment for individuals diagnosed with an ASD.  For most such individuals, ABA represents the only hope that they will grow up to lead independent and meaningful lives.

18.    In the State of New York, GHI, like all insurance companies, is required to provide coverage for the screening, diagnosis, and treatment of ASDs, including, but not limited to, ABA. See NY Ins L § 3221 (l)(17)(A).

19.    Accordingly, as set forth in a Rider to the Plan's Certificate of Insurance, the Plan includes coverage for ABA.

20.    D was diagnosed with an ASD in 2009, and since May of 2017, he has been receiving ABA and other services from Brainbuilders, with very positive results.

21.    Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA.  Six-percent is well below Brainbuilders' cost, forcing it to "balance bill" D's caregivers for the rest.  Meaning, despite its obligation to do so, the Plan fails to cover ABA in any meaningful sense.

22.    Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York."  By implication, the failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and NYC Defendants to shortchange Plaintiffs.  GHI is in breach of the

agreement with its member, and NYC Defendants are in breach of their commitment to their employee and are complicit in GHI's breach.

23.     Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers," (the "AG Order").  See Attorney General of the State of New York, In the Matter of Group Health Incorporated, Assurance No.: 14-181.

24.     In partial compliance with the AG Order, GHI has created a website for its members to seek information on its reimbursement amounts.  However, contrary to the AG Order, there is no reimbursement information available on the website for the CPT/HCPCS codes related to ABA (0359T, 0364T, 0365T, 0368T, 0369T, 0370T, 97151, 97153, 97155, and 97156).

25.     Upon information and belief, the Plan violates the Mental Health Parity and Addiction Equity Act (the "MHPAEA"), which requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services.  29 USC § 1185a.

26.     Moreover, per the MHPAEA, which fully applies to grandfathered non-ERISA healthcare plans, GHI was required to make available the reasons for its reimbursement determinations.  See 29 § CFR 2590.712(d).  GHI has not made its reasons available, and to do so would be impossible given the low and arbitrary rate.

27.     Brainbuilders offers a full array of services, including but not limited to center-based group ABA.  Upon information and belief, GHI's designated network is inadequate to satisfy D's treatment specifications.

28. Plaintiffs have continuously complied with the Plan's internal appeal procedures, despite GHI ignoring many of their appeals, in violation of the Plan's provisions.

29. The Plan is governed by New York Law.

30. Within ninety-days of the course of conduct herein, a Notice of Claim was served on behalf of H upon NYC Defendants in accordance with New York's General Municipal Law. More than thirty-days has elapsed since such service, and NYC Defendants have refused to pay said claim or adjust the same.

31. The egregious nature of Defendants' denial of D's sole lifeline and his only prospect of leading a fulfilling life, in utter disregard of their duties, and their refusal to protect Plaintiffs from the financial consequences of D's autism, warrants the imposition of punitive damages on the basis of claims sounding in either contract or tort.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

32. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

33. Defendants by only covering a small fraction of the costs of D's treatments have breached their respective agreements.

### SECOND CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements.

### THIRD CAUSE OF ACTION
### PROMISSORY ESTOPPEL

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan.

40.     Plaintiffs relied on Defendants' promises and did not accept alternative employment or insurance coverage.

41.     Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.

### FOURTH CAUSE OF ACTION
### FRAUD

42.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.     Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.

44.     Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments.

### FIFTH CAUSE OF ACTION
### CIVIL CONSPIRACY

45. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

46. Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein.

### SIXTH CAUSE OF ACTION
### CIVIL AIDING AND ABETTING

38. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39. Each Defendant aided the other Defendants in the breach of their duties.

### SEVENTH CAUSE OF ACTION
### NEW YORK PROMPT PAY LAW

40. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

41. New York Insurance Law § 3224-a provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

### EIGHTH CAUSE OF ACTION
### NEW YORK CONSUMER PROTECTION LAW

42. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.     New York General Business Law § 349 provides protection against "[d]eceptive acts or practices in the conduct of any business, trade or commerce  or  in  the furnishing of any service."

44.     Defendants have engaged in actions that violated the foregoing provision.

45.

## NINTH CAUSE OF ACTION
## NEW YORK AUTISM MANDATE

46.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

47.     The State of New York mandates that all health insurance policies cover autism services, including ABA (the "Mandate").

48.     The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim.

## TENTH CAUSE OF ACTION
## DECLARATORY JUDGEMENT

49.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

50.     Plaintiffs are entitled to full reimbursement for the treatment of D going forward.

**WHEREFORE**, Plaintiffs demand judgement in their favor against Defendants as follows:

A.      Ordering Defendants to reimburse Plaintiffs for the billed amount for past treatment of D.

B.      Declaring that Plaintiffs are entitled to reimbursement for the billed amount for future treatment of D.

C.     Awarding of reasonable attorney's fees and costs.

D.     Awarding punitive damages.

E.     Awarding all other relief to which Plaintiffs are entitled.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Yaakov Pollak, Esq. is designated as trial counsel in this matter.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO R 4:5-1

I certify that to my knowledge and based on the information available to me at this time, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and that no additional parties are known at this time who should be added.

Dated: November 9, 2020                    Respectfully submitted,

                                           /s/ Yaakov Pollak
                                           Yaakov Pollak, Esq.
                                           **BURTON JACOBOVITCH LAW GROUP LLC**
                                           500 River Avenue, Suite 215
                                           Lakewood, New Jersey 08701
                                           (732) 806-8181
                                           *Attorneys for Plaintiffs*

Yaakov Pollak, Esq. (5597893)
55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, ROCHEL SOROTZKIN,<br><br>               Plaintiffs,<br>vs.<br><br>EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>               Defendants. | Civil Action No.: 1:21-cv-04627-KPF<br><br>**AMENDED COMPLAINT** |

Plaintiffs Brainbuilders LLC, and H, and D, by their Attorney-in-Fact, Rochel Sorotzkin, brings this action by way of Complaint, and in support thereof aver as follows:

## <u>PARTIES</u>

1.      Brainbuilders LLC ("Brainbuilders"), a New Jersey limited liability company, is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders ("ASDs"). These services include applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy. H, on behalf of herself and on behalf of her minor child, D. (collectively, "Plaintiff" and together with Brainbuilders, "Plaintiffs") executed an assignment of benefits and

an assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders, which assignment is valid at least as it pertains to NYC Defendants (hereinafter defined) (document will be made available upon request).

2. H, on behalf of herself and on behalf of her minor child, D, appointed Rochel Sorotzkin, residing at 780 Albert Avenue, Lakewood, New Jersey, as their attorney-in-fact, with authority to pursue all legal and administrative remedies under their health insurance plan (document will be made available upon request).

3. Upon information and belief, defendant EmblemHealth, Inc. is a New York corporation, with its principal place of business located at 55 Water Street, Suite CONC1, New York, New York 10041, is the parent of defendant GHI (hereinafter defined) and has its name and logo featured on plans that are offered by GHI.

4. Upon information and belief, Group Health Incorporated ("GHI," and, together with EmblemHealth, Inc., "GHI Defendants") is a New York corporation, with its principal place of business located at 441 Ninth Avenue New York, NY 10001.

5. Defendant City of New York ("NYC"), is the employer of H, and accepts service at its Corporation Counsel, located at 100 Church Street, New York, NY 10007.

6. Defendant New York City Office of Labor Relations, located at 22 Cortlandt St floor 12-14, New York, NY 10007 ("OLR"), is a subdivision of defendant NYC and administers the NYC Health Benefits Program, of which the Plan (herein defined) is a part.

7. Defendant New York City Department of Education, located at 52 Chambers Street, New York, NY 10007 ("DOE" and, together with NYC and OLR, the "NYC Defendants"), is a subdivision of defendant NYC and is the direct employer of H.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## **FACTUAL BACKGROUND**

9.      D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder ("ASD") and was and is being treated for such disorder by the dedicated staff of Brainbuilders from May of 2017 to the present.

10.      H, D's mother, is a NYC and DOE Employee.

11.      Pursuant to an agreement between DOE and United Federation of Teachers (UTF), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans" (the "Commitment").

12.      By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein.  To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage." The beneficiaries of a health insurance plan reasonably expect that covered services will in fact be covered in a meaningful way.  That is the benefit of the bargain.

13.      In line with the Commitment, DOE employees, like all NYC employees, are offered a choice of healthcare plans.

14.      H has chosen and is insured by the GHI Comprehensive Benefit Plan (the "Plan"), a policy created by defendants GHI and NYC Defendants for NYC employees, and under which D is covered as a qualified dependent.

15.     Insurance companies typically contract with healthcare providers to participate in their provider network and treat their members for negotiated and discounted rates.  The insurance companies then offer their customers two options: policies that only cover in-network services, and those that include out-of-network ("OON") services as well.  In exchange for the expanded options, insurance companies typically charge substantially higher premiums for policies that cover OON services.

16.     The Plan includes OON services, a privilege that GHI agreed to in advance and is well compensated for.

17.     ABA is the single most effective and widely practiced treatment for individuals diagnosed with an ASD.  For most such individuals, ABA represents the only hope that they will grow up to lead independent and meaningful lives.

18.     In the State of New York, GHI, like all insurance companies, is required to provide coverage for the screening, diagnosis, and treatment of ASDs, including, but not limited to, ABA. See NY Ins L § 3221 (l)(17)(A).

19.     Accordingly, as set forth in a Rider to the Plan's Certificate of Insurance, the Plan includes coverage for ABA.

20.     Per the Plan's Certificate of Insurance, the Plan "meets the standard for basic medical insurance as defined by the New York State Insurance Department," making compliance with New York State insurance laws and regulations contractual commitments as well as statutory.

21.     D was diagnosed with an ASD in 2009, and since May of 2017, he has been receiving ABA and other services from Brainbuilders, with very positive results.

22.     Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA.  Six-percent is well below

Brainbuilders' cost, forcing it to "balance bill" D's caregivers for the rest. Meaning, despite its obligation to do so, the Plan fails to cover ABA in any meaningful sense.

23.     Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York." By implication, the failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and NYC Defendants to shortchange Plaintiffs. GHI is in breach of the agreement with its member, and NYC Defendants are in breach of their commitment to their employee and are complicit in GHI's breach.

24.     Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers," (the "AG Order"). See Attorney General of the State of New York, In the Matter of Group Health Incorporated, Assurance No.: 14-181.

25.     In partial compliance with the AG Order, GHI has created a website for its members to seek information on its reimbursement amounts. However, contrary to the AG Order, there is no reimbursement information available on the website for the CPT/HCPCS codes related to ABA (0359T, 0364T, 0365T, 0368T, 0369T, 0370T, 97151, 97153, 97155, and 97156).

26.     Upon information and belief, the Plan violates the Mental Health Parity and Addiction Equity Act (the "MHPAEA"), which requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services. 29 USC § 1185a.

27.     Moreover, per the MHPAEA, which fully applies to grandfathered non-ERISA healthcare plans, GHI was required to make available the reasons for its reimbursement

determinations.  *See* 29 § CFR 2590.712(d).  GHI has not made its reasons available, and to do so would be impossible given the low and arbitrary rate.

28.    Brainbuilders offers a full array of services, including but not limited to center-based group ABA.  Upon information and belief, GHI's designated network is inadequate to satisfy D's treatment specifications.

29.    Plaintiffs have continuously complied with the Plan's internal appeal procedures, despite GHI ignoring many of their appeals, in further violation of the Plan's provisions.

30.    The Plan is governed by New York Law.

31.    Within ninety-days of the course of conduct herein, a Notice of Claim was served on behalf of H upon NYC Defendants in accordance with New York's General Municipal Law. More than thirty-days has elapsed since such service, and NYC Defendants have refused to pay said claim or adjust the same.

32.    The egregious nature of Defendants' denial of D's sole lifeline and his only prospect of leading a fulfilling life, in utter disregard of their duties, and their refusal to protect Plaintiffs from the financial consequences of D's autism, warrants the imposition of punitive damages on the basis of claims sounding in either contract or tort.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**BREACH OF CONTRACT**
(all Defendants)

33.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

**JA37**

34.     Defendants by only covering a small fraction of the costs of D's treatments have breached their respective agreements.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements.

## THIRD CAUSE OF ACTION
## PROMISSORY ESTOPPEL
### (all Defendants)

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan.

40.     Plaintiffs relied on Defendants' promises and did not accept or seek alternative employment or insurance coverage.

41.     Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.

## FOURTH CAUSE OF ACTION
## FRAUD
### (all Defendants)

42.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43. Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.

44. Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments.

## FIFTH CAUSE OF ACTION
### CIVIL CONSPIRACY
(all Defendants)

45. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

46. Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein.

## SIXTH CAUSE OF ACTION
### CIVIL AIDING AND ABETTING
(all Defendants)

38. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39. Each Defendant aided the other Defendants in the breach of their duties.

## SEVENTH CAUSE OF ACTION
### NEW YORK PROMPT PAY LAW
(GHI Defendants)

40. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

41. New York Insurance Law § 3224-a provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or

certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

42.     GHI failed to comply with the New York Prompt Pay Law.

## EIGHTH CAUSE OF ACTION
### NEW YORK CONSUMER PROTECTION LAW
(GHI Defendants)

43.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

44.     New York General Business Law § 349 provides protection against "[d]eceptive acts or practices in the conduct of any business, trade or commerce  or  in  the furnishing of any service."

45.     Defendants have engaged in actions that violated the foregoing provision.

## NINTH CAUSE OF ACTION
### NEW YORK AUTISM MANDATE
(GHI Defendants)

46.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

47.     The State of New York mandates that all health insurance policies cover autism services, including ABA (the "Mandate").

48.     The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim.

## TENTH CAUSE OF ACTION
### FEDERAL MENTAL HEALTH PARITY
(GHI Defendants)

49.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

50. The MHPAEA requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services. 29 USC § 1185a.

51. The Plan violates the MHPAEA by not covering autism services, a mental health condition, on par with medical and surgical services.

## ELEVENTH CAUSE OF ACTION
### DECLARATORY JUDGEMENT

(all Defendants)

52. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

53. Plaintiffs are entitled to full reimbursement for the treatment of D going forward.

**WHEREFORE**, Plaintiffs demand judgement in their favor against Defendants as follows:

A. Ordering Defendants to reimburse Plaintiffs for the billed amount for past treatment of D.

B. Declaring that Plaintiffs are entitled to reimbursement for the billed amount for future treatment of D.

C. Awarding of reasonable attorney's fees and costs.

D. Awarding punitive damages.

E. Awarding all other relief to which Plaintiffs are entitled.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Yaakov Pollak, Esq. is designated as trial counsel in this matter.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

Dated: July 12, 2021       Respectfully submitted,

/s/ Yaakov Pollak
Yaakov Pollak, Esq.

55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, ROCHEL SOROTZKIN, | CIVIL ACTION NO.: 1:21-CV-04627-KPF |
| Plaintiffs, | ORAL ARGUMENT REQUESTED |
| -against- | |
| EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATION and NEW YORK CITY DEPARTMENT OF EDUCATION, | |
| Defendants. | |

## DEFENDANTS EMBLEMHEALTH, INC. AND GROUP HEALTH INCORPORATED'S NOTICE OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

PLEASE TAKE NOTICE THAT, upon the accompanying Memorandum of Law dated September 10, 2021, the Declaration of Luz Campos dated September 10, 2021 and the exhibits annexed thereto, the Declaration of Howard S. Wolfson dated September 10, 2021 and the exhibits annexed thereto, and all prior proceedings, pleadings, and filings in this action, Defendants EmblemHealth, Inc. and Group Health Incorporated will move this Court, before the Honorable Katherine Polk Failla, United States District Judge, at the United States District Court for the Southern District of New York, 40 Foley Square, New York, New York 10007, for an Order pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6) dismissing with prejudice the Second Amended Complaint (ECF Doc. No. 34) in its entirety, and for such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         September 10, 2021

By:      _____/s/ Howard S. Wolfson_____
         Howard S. Wolfson (hwolfson@morrisoncohen.com)
         Alvin C. Lin (alin@morrisoncohen.com)
         Joaquin Ezcurra (jezcurra@morrisoncohen.com)
         MORRISON COHEN LLP
         909 Third Avenue, 27th Floor
         New York, New York  10022
         (212) 735-8600
         *Attorneys for Defendants*
         *EmblemHealth, Inc. and*
         *Group Health Incorporated*

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRAINBUILDERS LLC, and H and D, by their
Attorney-in-Fact, ROCHEL SOROTZKIN,

                              Plaintiffs,

              vs.

EMBLEMHEALTH, INC., GROUP HEALTH
INCORPORATED, THE CITY OF NEW YORK, NEW
YORK CITY OFFICE OF LABOR RELATIONS, and
NEW YORK CITY DEPARTMENT OF EDUCATION,

                              Defendants.

Civil Action No. 1:21-CV-04627-KPF

**DECLARATION OF LUZ CAMPOS**
**IN SUPPORT OF DEFENDANTS**
**EMBLEMHEALTH, INC. AND**
**GROUP HEALTH INCORPORATED'S**
**MOTION TO DISMISS THE SECOND**
**AMENDED COMPLAINT**

I, LUZ CAMPOS, declare as follows:

1.      I am the Lead Paralegal for Defendant Group Health Incorporated ("GHI" and,
together with Defendant EmblemHealth, Inc., the "GHI Defendants").  I make this declaration on
personal knowledge and based on my review of GHI's business records.

2.      Annexed hereto as Exhibit "A" is a true and correct copy of the Second Amended
Complaint dated July 12, 2021 (the "SAC," ECF Doc. No. 34.)

3.      Annexed hereto as Exhibit "B" is a true and correct copy of the "GHI
Comprehensive Benefits Plan for the City of New York Employees and Retiree" referenced in the
SAC.

4.      Annexed hereto as Exhibit "C" is a true and correct copy of Plaintiffs'
Memorandum of Law in Opposition to Defendants EmblemHealth, Inc. and Group Health
Incorporated's Motion to Dismiss the Complaint filed November 23, 2020 (ECF Doc. No. 19).

5.    I declare under penalties of perjury that the foregoing is true and correct.

Dated: New York, New York
        September 10, 2021

_Luz N. Campos_
        Luz Campos

#10592509 v1 \016962 \0035

2

JA46

# EXHIBIT A

Yaakov Pollak, Esq. (5597893)
55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, ROCHEL SOROTZKIN, <br><br>          Plaintiffs, <br> vs. <br><br> EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, <br><br>          Defendants. | Civil Action No.: 1:21-cv-04627-KPF <br><br><br> **AMENDED COMPLAINT** |

Plaintiffs Brainbuilders LLC, and H, and D, by their Attorney-in-Fact, Rochel Sorotzkin, brings this action by way of Complaint, and in support thereof aver as follows:

## PARTIES

1. Brainbuilders LLC ("Brainbuilders"), a New Jersey limited liability company, is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders ("ASDs"). These services include applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy. H, on behalf of herself and on behalf of her minor child, D. (collectively, "Plaintiff" and together with Brainbuilders, "Plaintiffs") executed an assignment of benefits and

an assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders, which assignment is valid at least as it pertains to NYC Defendants (hereinafter defined) (document will be made available upon request).

2.      H, on behalf of herself and on behalf of her minor child, D, appointed Rochel Sorotzkin, residing at 780 Albert Avenue, Lakewood, New Jersey, as their attorney-in-fact, with authority to pursue all legal and administrative remedies under their health insurance plan (document will be made available upon request).

3.      Upon information and belief, defendant EmblemHealth, Inc. is a New York corporation, with its principal place of business located at 55 Water Street, Suite CONC1, New York, New York 10041, is the parent of defendant GHI (hereinafter defined) and has its name and logo featured on plans that are offered by GHI.

4.      Upon information and belief, Group Health Incorporated ("GHI," and, together with EmblemHealth, Inc., "GHI Defendants") is a New York corporation, with its principal place of business located at 441 Ninth Avenue New York, NY 10001.

5.      Defendant City of New York ("NYC"), is the employer of H, and accepts service at its Corporation Counsel, located at 100 Church Street, New York, NY 10007.

6.      Defendant New York City Office of Labor Relations, located at 22 Cortlandt St floor 12-14, New York, NY 10007 ("OLR"), is a subdivision of defendant NYC and administers the NYC Health Benefits Program, of which the Plan (herein defined) is a part.

7.      Defendant New York City Department of Education, located at 52 Chambers Street, New York, NY 10007 ("DOE" and, together with NYC and OLR, the "NYC Defendants"), is a subdivision of defendant NYC and is the direct employer of H.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## FACTUAL BACKGROUND

9.      D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder ("ASD") and was and is being treated for such disorder by the dedicated staff of Brainbuilders from May of 2017 to the present.

10.      H, D's mother, is a NYC and DOE Employee.

11.      Pursuant to an agreement between DOE and United Federation of Teachers (UTF), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans" (the "Commitment").

12.      By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein.  To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage." The beneficiaries of a health insurance plan reasonably expect that covered services will in fact be covered in a meaningful way.  That is the benefit of the bargain.

13.      In line with the Commitment, DOE employees, like all NYC employees, are offered a choice of healthcare plans.

14.      H has chosen and is insured by the GHI Comprehensive Benefit Plan (the "Plan"), a policy created by defendants GHI and NYC Defendants for NYC employees, and under which D is covered as a qualified dependent.

15.    Insurance companies typically contract with healthcare providers to participate in their provider network and treat their members for negotiated and discounted rates. The insurance companies then offer their customers two options: policies that only cover in-network services, and those that include out-of-network ("OON") services as well. In exchange for the expanded options, insurance companies typically charge substantially higher premiums for policies that cover OON services.

16.    The Plan includes OON services, a privilege that GHI agreed to in advance and is well compensated for.

17.    ABA is the single most effective and widely practiced treatment for individuals diagnosed with an ASD. For most such individuals, ABA represents the only hope that they will grow up to lead independent and meaningful lives.

18.    In the State of New York, GHI, like all insurance companies, is required to provide coverage for the screening, diagnosis, and treatment of ASDs, including, but not limited to, ABA. See NY Ins L § 3221 (l)(17)(A).

19.    Accordingly, as set forth in a Rider to the Plan's Certificate of Insurance, the Plan includes coverage for ABA.

20.    Per the Plan's Certificate of Insurance, the Plan "meets the standard for basic medical insurance as defined by the New York State Insurance Department," making compliance with New York State insurance laws and regulations contractual commitments as well as statutory.

21.    D was diagnosed with an ASD in 2009, and since May of 2017, he has been receiving ABA and other services from Brainbuilders, with very positive results.

22.    Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA. Six-percent is well below

Brainbuilders' cost, forcing it to "balance bill" D's caregivers for the rest. Meaning, despite its obligation to do so, the Plan fails to cover ABA in any meaningful sense.

23.    Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York." By implication, the failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and NYC Defendants to shortchange Plaintiffs. GHI is in breach of the agreement with its member, and NYC Defendants are in breach of their commitment to their employee and are complicit in GHI's breach.

24.    Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers," (the "AG Order"). See Attorney General of the State of New York, In the Matter of Group Health Incorporated, Assurance No.: 14-181.

25.    In partial compliance with the AG Order, GHI has created a website for its members to seek information on its reimbursement amounts. However, contrary to the AG Order, there is no reimbursement information available on the website for the CPT/HCPCS codes related to ABA (0359T, 0364T, 0365T, 0368T, 0369T, 0370T, 97151, 97153, 97155, and 97156).

26.    Upon information and belief, the Plan violates the Mental Health Parity and Addiction Equity Act (the "MHPAEA"), which requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services. 29 USC § 1185a.

27.    Moreover, per the MHPAEA, which fully applies to grandfathered non-ERISA healthcare plans, GHI was required to make available the reasons for its reimbursement

determinations. *See* 29 § CFR 2590.712(d). GHI has not made its reasons available, and to do so would be impossible given the low and arbitrary rate.

28. Brainbuilders offers a full array of services, including but not limited to center-based group ABA. Upon information and belief, GHI's designated network is inadequate to satisfy D's treatment specifications.

29. Plaintiffs have continuously complied with the Plan's internal appeal procedures, despite GHI ignoring many of their appeals, in further violation of the Plan's provisions.

30. The Plan is governed by New York Law.

31. Within ninety-days of the course of conduct herein, a Notice of Claim was served on behalf of H upon NYC Defendants in accordance with New York's General Municipal Law. More than thirty-days has elapsed since such service, and NYC Defendants have refused to pay said claim or adjust the same.

32. The egregious nature of Defendants' denial of D's sole lifeline and his only prospect of leading a fulfilling life, in utter disregard of their duties, and their refusal to protect Plaintiffs from the financial consequences of D's autism, warrants the imposition of punitive damages on the basis of claims sounding in either contract or tort.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**BREACH OF CONTRACT**
(all Defendants)

33. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

34.     Defendants by only covering a small fraction of the costs of D's treatments have breached their respective agreements.

### SECOND CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements.

### THIRD CAUSE OF ACTION
### PROMISSORY ESTOPPEL
(all Defendants)

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan.

40.     Plaintiffs relied on Defendants' promises and did not accept or seek alternative employment or insurance coverage.

41.     Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way.

### FOURTH CAUSE OF ACTION
### FRAUD
(all Defendants)

42.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.     Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare.

44.     Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments.

## FIFTH CAUSE OF ACTION
### CIVIL CONSPIRACY
(all Defendants)

45.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

46.      Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein.

## SIXTH CAUSE OF ACTION
### CIVIL AIDING AND ABETTING
(all Defendants)

38.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

39.     Each Defendant aided the other Defendants in the breach of their duties.

## SEVENTH CAUSE OF ACTION
### NEW YORK PROMPT PAY LAW
(GHI Defendants)

40.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

41.     New York Insurance Law § 3224-a provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or

certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

42.     GHI failed to comply with the New York Prompt Pay Law.

## EIGHTH CAUSE OF ACTION
### NEW YORK CONSUMER PROTECTION LAW
#### (GHI Defendants)

43.      The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

44.     New York General Business Law § 349 provides protection against "[d]eceptive acts or practices in the conduct of any business, trade or commerce  or  in  the furnishing of any service."

45.     Defendants have engaged in actions that violated the foregoing provision.

## NINTH CAUSE OF ACTION
### NEW YORK AUTISM MANDATE
#### (GHI Defendants)

46.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

47.     The State of New York mandates that all health insurance policies cover autism services, including ABA (the "Mandate").

48.     The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim.

## TENTH CAUSE OF ACTION
### FEDERAL MENTAL HEALTH PARITY
#### (GHI Defendants)

49.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

50.    The MHPAEA requires that healthcare plans cover mental health services quantitatively and nonquantitatively on par with medical/surgical services.  29 USC § 1185a.

51.    The Plan violates the MHPAEA by not covering autism services, a mental health condition, on par with medical and surgical services.

## ELEVENTH CAUSE OF ACTION
## DECLARATORY JUDGEMENT

### (all Defendants)

52.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

53.    Plaintiffs are entitled to full reimbursement for the treatment of D going forward.

**WHEREFORE**, Plaintiffs demand judgement in their favor against Defendants as follows:

A.    Ordering Defendants to reimburse Plaintiffs for the billed amount for past treatment of D.

B.    Declaring that Plaintiffs are entitled to reimbursement for the billed amount for future treatment of D.

C.    Awarding of reasonable attorney's fees and costs.

D.    Awarding punitive damages.

E.    Awarding all other relief to which Plaintiffs are entitled.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Yaakov Pollak, Esq. is designated as trial counsel in this matter.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

Dated: July 12, 2021       Respectfully submitted,

/s/ Yaakov Pollak
Yaakov Pollak, Esq.

55 Rena Lane
Lakewood, New Jersey 08701
(732) 833-3421
*Attorney for Plaintiffs*

# EXHIBIT B



**City of New York Employees and Retirees**

# HEALTH INSURANCE FOR YOU AND YOUR DEPENDENTS

## GHI Comprehensive Benefits Plan (CBP)



WHAT CARE FEELS LIKE.

EH-1

JA60

EH-2

## Important Notice

We believe this Policy is a "grandfathered health plan" under the Patient Protection and Affordable Care Act (the Affordable Care Act). As permitted by the Affordable Care Act, a grandfathered health plan can preserve certain basic health coverage that was already in effect when that law was enacted. Being a grandfathered health plan means that this Policy may not include certain consumer protections of the Affordable Care Act that apply to other plans, for example, the requirement for the provision of preventive health services without any cost sharing. However, grandfathered health plans must comply with certain other consumer protections in the Affordable Care Act, for example, the elimination of lifetime limits on benefits.

Questions regarding which protections apply and which protections do not apply to a grandfathered health plan and what might cause a plan to change from grandfathered health plan status can be directed to Customer Service by calling **(212) 501-4444** or visiting our Web site at **www.emblemhealth.com**. You may also contact the U.S. Department of Health and Human Services at **www.healthreform.gov**. Your group must notify us if the group or the plan sponsor changes the premium contribution rate that applies to your coverage under this Policy at any point during the plan year.

EH-3

EH-4

# TABLE OF CONTENTS

**Section I – Certificate of Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**Section II – Riders** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

**Section III – Additional Program Information** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .109

EH-5

EH-6

# SECTION I
# Certificate of Insurance

EH-7

EH-8

# GROUP HEALTH INCORPORATED

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001

## HEALTH INSURANCE FOR YOU AND YOUR DEPENDENTS



## FOR THE CITY OF NEW YORK EMPLOYEES AND RETIREES COMPREHENSIVE BENEFITS PLAN (CBP)



## GROUP HEALTH INCORPORATED

The insurance evidenced by this Certificate meets the minimum standards for basic medical insurance
as defined by the New York State Insurance Department.

It does not provide basic hospital insurance or major medical insurance.

THIS CERTIFICATE IS NOT A MEDICARE SUPPLEMENT PLAN.

If you are eligible for Medicare, review the Guide to Health Insurance for People with Medicare available from GHI.

This Certificate replaces any Certificates and riders previously issued to you.

PLC-1032E

EH-10

# TABLE OF CONTENTS

**SECTION ONE**
Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

**SECTION TWO**
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

**SECTION THREE**
Use of Participating Providers for Paid-in-Full Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

**SECTION FOUR**
Use of Non-Participating Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

**SECTION FIVE**
Covered Medical Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**SECTION SIX**
NYC HEALTHLINE Pre-Admission Review Program/Mandatory Second Surgical Consultation Program and Voluntary Second Surgical
Consultation Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

**SECTION SEVEN**
Principal Limitations and Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

**SECTION EIGHT**
Coordination of Benefits (COB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

**SECTION NINE**
Filing of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

**SECTION TEN**
Termination of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

**SECTION ELEVEN**
Continuation of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

**SECTION TWELVE**
Direct Payment Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

**SECTION THIRTEEN**
Miscellaneous Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

**SECTION FOURTEEN**
Medicare Eligible Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

Optional Rider for Medicare Eligible Subscribers Covered under Section Fourteen . . . . . . . . . . . . . . . . . . . . . . . . .38

**SECTION FIFTEEN**
Catastrophic Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

Optional Rider for Active Employees and Non-Medicare Eligible Retirees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

## SECTION ONE: Introduction

**1. Your Coverage Under GHI/CBP.** The City of New York has entered into a Group Contract with Group Health Incorporated (GHI) to provide health insurance benefits. Under this Group Contract, GHI will provide the benefits described in this booklet to persons enrolled in the New York City Employee Benefits Program. These benefits are known as the GHI Comprehensive Benefits Plan (GHI/CBP) and will be referred to in this booklet as GHI/CBP or "this Plan." This booklet is your Certificate of Insurance. It is evidence of your coverage under the Group Contract between GHI and the City of New York. It is not a contract between you and GHI. You should keep this booklet with your other important papers so that it is available for your future reference.

**2. Who is Covered.** Eligibility for coverage is determined by the City of New York Employee Benefits Program. Please refer to the Health Benefits Summary Program Description booklet for information on your eligibility for coverage. Also, please refer to that booklet for an explanation of how you enroll in GHI/CBP, and when your coverage becomes effective.

**3. Coverage of Spouse and Dependent Children.** Benefits are available for your spouse and unmarried dependent children under the age of 19 covered by your plan. Unmarried dependent children are covered until the end of the month in which they attain age 19. Your newborn child is covered at birth. You must add the child to your Contract according to procedures described in your Health Benefits Summary Program Description booklet.

If you have individual coverage, you may elect to cover your newborn child from the moment of birth for injury or sickness. You must add the newborn child to your coverage within 30 days of the child's birth. This will change your present coverage to family coverage.

If a child of yours gives birth, the newborn grandchild is not eligible for coverage unless the child meets the rules for dependents who are not natural children. These rules are listed below.

Please note, an ex-spouse is never covered under this plan regardless of the provisions of any divorce judgment or settlement agreement. The submitting of a claim by or for an ex-spouse of a covered employee is insurance fraud.

A dependent who is not your spouse or natural child is covered at the earliest of the following dates:

(a) The child becomes an adoptive child or step-child or lives with you in a regular parent/child relationship. The child must be dependent upon you for support and maintenance. You must claim the child as a dependent on your Federal Income Tax return. A dependent adoptive child will be covered on the same basis as a natural child during any waiting period prior to finalization of the adoption.

(b) A court of law accepts a consent to adopt and you enter into an agreement to support the dependent child.

(c) A court of law makes you legally responsible for the support and maintenance of the dependent child.

(d) If you have family coverage, an adopted newborn is covered from the moment of birth for injury and sickness. You must take physical custody of the newborn upon the newborn's release from the hospital. You must also file a petition for adoption or an application for temporary guardianship pursuant to Section 115(c) of the New York State Domestic Relations Law within 30 days after the child's birth. Benefits for the adopted newborn's initial hospital stay are not available under this Plan if a natural parent has insurance coverage available to cover the newborn.

**4. Coverage of Dependent Students.** Coverage for unmarried dependent full-time students ages 19 to 23 is provided only under the Optional Rider. If you are covered under the Basic CBP Program only, your dependent children who are 19 years of age or older will not be covered. To qualify for dependent student coverage, the student must be enrolled in an accredited educational institution. The institution must grant a degree or diploma. You must supply at least 50% of the student's support. The student must be listed as a dependent when you enroll for coverage. Benefits are available for all covered services. An unmarried dependent student loses eligibility if he or she marries, loses dependent status or loses full time student status. An unmarried dependent student is covered until the end of the calendar year of the student's 23rd birthday or graduation, whichever occurs first.

**5. Coverage of Dependent Children Incapable of Self-Sustaining Employment.** An unmarried child over age 19 (or over age 23 in the case of a dependent student) may also be eligible for benefits. In order to be eligible, he or she must meet all of the conditions set forth below.

EH-12 PLC-1032E

(a) He or she must be incapable of self-sustaining employment due to mental illness, developmental disability, mental retardation as defined in the New York State Mental Hygiene Law, or physical handicap.

(b) He or she must have been so incapable before the age at which dependent coverage would otherwise terminate.

(c) He or she must have been eligible for benefits before the age at which dependent coverage would otherwise terminate.

(d) The child's condition must be certified by a physician.

(e) Proof of the condition must be submitted to GHI within 31 days of the date the dependent reaches the age limitation.

GHI has the right to check whether a child is eligible and continues to qualify under this provision.

**6. Domestic Partners.** Benefits are available for your covered domestic partner and his or her eligible dependents. The domestic partnership must consist of two people who are 18 years of age or older and who live together and have been living together on a continuous basis for at least six (6) months. The domestic partnership must involve a close and committed personal relationship. Neither you nor your domestic partner may be married or related by blood in a manner that would bar marriage in New York State. Your domestic partner must be chiefly dependent upon you for support and maintenance.

In order to be eligible for coverage, you must show that you and your domestic partner are economically interdependent by meeting the criteria set forth below.

(a) The domestic partnership must be registered under the Domestic Partnership Registration Program of the City of New York Office of the Mayor as well as with the City Clerk. (In the case of retirees living outside of the City of New York, an alternate affidavit of domestic partnership recognized by the City of New York may be presented in lieu of registration.)

(b) You must supply proof of cohabitation. This may be shown by means of drivers' licenses, tax returns or other proof recognized by the City of New York.

(c) You must present evidence of at least two of the indications of economic interdependency set forth below.

- A joint bank account.
- A joint credit or charge card.
- A joint obligation on a loan.
- Status as an authorized signatory on your domestic partner's bank account, credit card or charge card.
- Joint ownership or holding of investments.
- Joint ownership of a residence.
- Joint ownership of real estate other than a residence.
- Listing of both you and your domestic partner as tenants on the lease of a shared residence.
- Shared rental payments for a residence.
- Listing of you and your domestic partner as tenants on a lease or shared rental payments for property other than a residence.
- A common household and shared household expenses, such as grocery bills, utility bills and telephone bills.
- Shared household budget for purposes of receiving government benefits.
- Status of one as representative payee for the other's government benefits.
- Joint ownership of major items of personal property, such as appliances and furniture.
- Joint ownership of a motor vehicle.
- Joint responsibility for child care. This may be shown be means of school documents, guardianship papers or similar documents.
- Shared child care expenses, such as baby sitting, day care and school bills.
- Execution of wills naming each other as executor and/or beneficiary.
- Designation of one as beneficiary under the other's life insurance policy.

- Designation of one as beneficiary under the other's retirement benefits account.
- Mutual grant of power of attorney.
- Mutual grant of authority to make health care decisions, such as a health care power of attorney.
- Affidavit by a creditor or other individual able to testify to your partner's financial interdependence.
- Other items of proof acceptable to the City of New York showing economic interdependency.

**7. If You Are Disabled on the Date Your Coverage Becomes Effective.** On the day your coverage becomes effective you may be confined due to a disability, in a hospital, another institution, or in your home under the care of a doctor. If this is the case, you are not eligible for benefits until you are no longer confined.

The dependent children of your covered domestic partner are also covered. The eligibility terms set forth in paragraphs 3, 4 and 5 above apply.

**8. Scope of Coverage.** This Plan consists of two types of benefits. The type of benefit you receive is dependent on whether or not you use a Participating Provider. A Participating Provider is any doctor or other Provider who has agreed with GHI to accept GHI's payment as payment in full for covered services, except in cases where a Co-pay Charge is applicable. If you use a Participating Provider, payments are generally made directly to that Provider. These payments are made in accordance with the CBP Schedule of Allowances. Except for home and office visits, specialist consultations, diagnostic, X-ray and laboratory tests which are subject to a Co-pay Charge, these benefits are paid at 100% of the CBP Schedule and are not subject to co-insurance, deductibles, or lifetime maximums. Most, but not all, of your benefits are available through Participating Providers.

If you use a non-participating Provider, payment is made directly to you. Payment is determined under the City of New York Non-Participating Provider Schedule. These benefits are subject to deductibles, co-insurance and calendar year and lifetime maximums.

Special terms apply to coverage of private duty professional nursing services, durable medical equipment, home care services and home infusion therapy. (See Section Five, Paragraphs 15, 16, 24 and 25 respectively).

**9. Medicare.** If you are eligible for Medicare, your benefits may be different than the benefits described in the main body of this booklet. Refer to Section Fourteen for an explanation of your benefits.

**10. Criteria for Coverage.** You are covered only for the services listed in this Contract. The services must be rendered by a licensed Provider. The Provider must act within the scope of his or her license. GHI does not cover services unless they are medically necessary.

Medically necessary services are health care services that are rendered by a Hospital or a licensed Provider and are determined by GHI to meet all of the criteria listed below:

- They are provided for the diagnosis, or direct care or treatment of the condition, illness, disease, injury or ailment;
- They are consistent with the symptoms or proper diagnosis and treatment of the medical condition, disease, injury or aliment;
- They are in accordance with accepted standards of good medical practice in the community;
- They are furnished in a setting commensurate with the patient's medical needs and condition;
- They cannot be omitted under the    standards referenced above;
- They are not in excess of the care indicated by generally accepted standards of good medical practice in the community;
- They are not furnished primarily for the convenience of the patient, the patient's family or the Provider; and
- In the case of a hospitalization, the services cannot be rendered safely or adequately on an outpatient basis and, therefore, require that the patient receive acute care as a bed patient.

In making a determination regarding medical necessity, GHI will examine your treatment and your condition. GHI will examine your doctor's reasons for providing or prescribing the care, and any unusual circumstances. However, the fact that your doctor prescribed or provided the care does not automatically mean that the care qualifies for payment under this Plan.

GHI may require that a Provider's statement be furnished detailing the nature and necessity of a rendered service. This statement must be provided, if requested, in order for your claim to be processed. It must be in a form acceptable to GHI.

EH-14 PLC-1032E

## SECTION TWO: Definitions

The following definitions apply to your benefits:

**l. Schedule of Allowances.** The CBP Schedule of Allowances ("Schedule") is GHI's listing of the payments for covered medical services rendered by Participating Providers. Payment is made under the Schedule directly to a Participating Provider.

The City of New York Non-Participating Provider Allowed Charge refers to the amount allowed for reimbursement to Non-Participating Providers. This amount less any applicable deductible or co-insurance is reimbursed directly to you. See Section Four. (See definition number 9 below.)

A listing of the Schedule of Allowances and Allowed Charges is on file at GHI's home and regional offices and with the Superintendent of Insurance, State of New York Insurance Department. It is available for your inspection, at these locations, upon your request, at any reasonable time during regular business hours.

**2. Provider.** A "Provider" is a medical practitioner or covered facility recognized by GHI for reimbursement purposes. A Provider may be any of the providers listed below, subject to the conditions set forth in this paragraph.

1. A doctor of medicine.
2. A doctor of osteopathy.
3. A dentist.
4. A chiropractor.
5. A doctor of podiatric medicine.
6. A physical therapist.
7. A nurse midwife.
8. A certified and registered psychologist.
9. A certified and qualified social worker.
10. An optometrist.
11. A nurse anesthetist.
12. A speech therapist.
13. An audiologist.
14. A clinical laboratory.
15. A screening center.
16. A general hospital.
17. Any other type of practitioner or facility specifically listed in this Certificate as a practitioner or facility recognized by GHI for reimbursement purposes.

A Provider must be licensed or certified to render the covered service. The covered service must be within the scope of the Provider's license or certification. Please note that not all services rendered by a specific class of Providers listed above are covered services. In order for you to be covered, the service rendered to you must be covered. In addition, the practitioner or facility rendering the service must be listed in this Certificate as a Provider who is recognized by GHI to render the covered service. Please refer to the benefit description to find out if a service is covered.

**3. Participating Provider.** A Participating Provider is any doctor or other Provider who has agreed with GHI to accept GHI's payment as payment in full for covered services, except in cases where a Co-pay Charge is applicable. Consult your Directory of Participating Physicians and other Providers for the names of Participating Providers. You may also call or write GHI for this information. Most, but not all, covered services are available through Participating Providers.

**4. You.** The word "you" refers to you, the employee or retiree and to any members of your family who are covered under this Plan.

**5. Group Contract.** The Group Contract is the agreement GHI has with the City of New York.

**6. Certificate of Insurance.** This document is your Certificate of Insurance. It is evidence of your coverage under the Group Contract.

**7. Contract.** The word "Contract" in the text refers to this Certificate.

**8. Hospital.** Hospital means a psychiatric hospital or general hospital that has medical and surgical facilities for the care and treatment of the sick. A hospital is not one of the following:

(a) An old age, rest or nursing home.

(b) A convalescent home or similar institution.

(c) A sanitarium.

(d) A camp, school, college or university infirmary.

(e) A facility for the treatment of mental problems, tuberculosis, drug abuse or alcoholism.

(f) A weight loss or fitness center.

(g) A skilled nursing center or facility.

(h) An institution utilized primarily for custodial care or as a domicile.

(i) Health resorts or spas.

(j) Places for hospice care treatment.

(k) Rehabilitation facilities.

**9. Allowed Charge.** Allowed Charges are the various scheduled amounts which GHI will reimburse for covered services rendered by non-participating providers. The Allowed Charge schedules may vary depending upon the type of covered service you receive, and the applicable level of benefits. Allowed Charges are based upon data collected by GHI and agreed to by the City of New York.

Allowed Charges for basic benefits for covered services which are rendered by non-participating providers are based upon 1983 procedure allowances. Some allowances have been increased from time to time. The Allowed Charge may be less than the fee charged by a non-participating provider. You must pay any difference between the Allowed Charge and the non-participating provider's fee as well as any applicable cost sharing provision.

The Optional Rider provides an enhanced Allowed Charge schedule which results in greater reimbursement for most covered services. See the Optional Rider for Active Employees and Non-Medicare Eligible Retirees in this booklet for a description of the Optional Rider coverage.

There are different Allowed Charge schedules that apply to excess hospitalization coverage, catastrophic coverage and ambulance coverage.

There may be occasions where GHI does not have an Allowed Charge for a particular service. When this is the case, GHI will make payment based upon either Medicare guidelines and/or the Relative Value Scale to determine comparability between procedures. The Relative Value Scale is a standard of rating generally acceptable in the health insurance field.

In the event that the Provider's actual and customary billed charge is less than GHI's Allowed Charge, GHI will consider the Provider's charge to be GHI's Allowed Charge for the covered service rendered to you.

**10. Co-Pay Charge.** Co-Pay Charge refers to a fixed dollar amount you must pay to a Participating Provider for certain services.

## SECTION THREE: Use of Participating Providers for Paid-In-Full Benefits

**1. Participating Providers.** GHI Participating Providers accept GHI's Schedule of Allowances as payment in full for covered services. There is no deductible or co-insurance when you use a Participating Provider. However, there is a $10 Co-pay Charge for each home or office visit and out-of-hospital consultation.

You are also subject to a $10 Co-pay Charge for diagnostic X-rays and laboratory tests. This Co-pay Charge will apply to each diagnostic X-ray and laboratory test performed by a Participating Provider. A maximum of one Co-pay Charge will apply per date of service, per provider. This means that if one Participating Provider performs two tests on the same day, you will be subject to one $10 Co-pay Charge only. However, if two different Participating Providers perform one or more lab tests each on the same day, you will be subject to a maximum of two Co-pay Charges of $10 each. A maximum of two diagnostics Co-pay Charges will apply per date of service. This maximum applies regardless of the number of Participating Providers you see on that date.

Special terms apply to coverage of private duty professional nursing services, durable medical equipment, home care services and home

EH-16 PLC-1032E

infusion therapy. (See Section Five, Paragraphs 23, 24, 21 and 22 respectively).

The use of Participating Providers controls your out-of-pocket expenses. Consult your Directory of Participating Physicians and other Providers or phone GHI to obtain the names of Participating Providers in your area.

You must advise the Participating Provider of your GHI/CBP coverage before the service is rendered. You must verify that the Provider is a Participating Provider. You should not pay the provider directly for any covered services except for the $10 Co-pay Charge when applicable.

**2. Services Provided by Participating Providers.** Participating Providers have agreed to accept GHI's payment as payment in full for the following:

(a)  General Medical Care, subject to the $10 Co-pay Charge.

(b)  In-Hospital Medical and Psychiatric Care.

(c)  Surgical Services.

(d)  Assistants at Surgery.

(e)  Administration of Anesthesia.

(f)  Radiation Therapy.

(g)  Shock Therapy.

(h)  Specialist Consultations, subject to the $10 Co-pay Charge.

(i)  Diagnostic X-ray Examinations, subject to the $10 Co-pay Charge.

(j)  Diagnostic Laboratory Tests, subject to the $10 Co-pay Charge.

(k)  Maternity Care.

(l)  Care of Premature and Ill Infants.

(m) Chiropractic Care, subject to the $10 Co-pay Charge.

(n)  Physiotherapy, subject to the $10 Co-pay Charge.

(o)  Speech Therapy, subject to the $10 Co-pay Charge.

(p)  Intermittent Nurse Service in Your Home (Visiting Nurse Service).

(q)  Allergy Desensitization, subject to the $10 Co-pay Charge.

(r)  Osteopathic manipulations, subject to the $10 Co-pay Charge.

(s)  Mammography Screening Examinations.

(t)  Orthoptic services (eye muscle exercise), subject to the $10 Co-pay Charge.

**3. Benefits Available.** Most, but not all services covered under this Certificate are available through Participating Providers.

## SECTION FOUR: Use of Non-Participating Providers

**1. Non-Participating Providers.** You may choose any Provider you want for covered services. You may select a non-participating Provider. Non-participating Providers do not have an agreement with GHI to limit fees. You must pay them directly. Reimbursement for covered services will be made directly to you according to the City of New York Non-Participating Provider Schedule. These benefits are subject to deductibles, co-insurance, and maximums.

**2. Benefits.** When you use a non-participating Provider, benefits are paid under the City of New York Non-Participating Provider Schedule in accordance with the Allowed Charge for all services. (See Section Two, paragraph 9).

These benefits are subject to the following provisions:

(a) **Annual Deductible.** You are subject to an annual deductible of $175 per person up to a maximum deductible for a family of three or more of $500 in each calendar year. GHI will make payment to you after you have paid this amount. The amount credited to your deductible shall be based on the Allowed Charge.

(b) **Common Accident Provision.** More than one family member may be involved in an accident. If that occurs, only $175 in allowed expenses are required to satisfy the deductible for that accident, for all covered persons involved. The $175 is first applied towards the Subscriber's deductible. If the Subscriber was not involved, it is applied toward the oldest member of the family who was involved.

(c) **GHI Payments.** After you have met your deductible, GHI will pay 100% of the Allowed Charge for covered services.

(d) **Annual Maximum.** Each person is subject to a calendar year maximum of $200,000 in covered expenses. Only $100,000 of this maximum may be used toward Private Duty Professional Nursing Services.

(e) **Lifetime Maximum.** Each person is subject to a lifetime maximum of $1,000,000 in covered expenses.

Special terms apply to coverage of private duty professional nursing services, durable medical equipment, home care services and home infusion therapy. (See Section Five, Paragraphs 23, 24, 21 and 22 respectively).

## SECTION FIVE: Covered Medical Services

GHI provides benefits for the covered medical services listed below. Unless otherwise specified, benefits are available through both Participating and non-participating Providers.

All claims for services must contain specifics as to the services rendered. GHI reserves the right to delay the processing of claims when the Provider only lists a general fee until GHI receives the specifics as to the services rendered.

**l. General Medical Care.** You are covered for home and office visits. Payments are made for the following types of services:

(a) Treatment or diagnosis of illness or injury.

(b) Allergy desensitization.

(c) Physiotherapy.

(d) Speech therapy.

(e) Chiropractic care (limited to a maximum of 8 visits per calendar year).

(f) Emergency first aid service.

(g) Osteopathic manipulation.

(h) Orthoptic services.

Under the Participating Provider Program, a $10 Co-pay Charge applies to home and office visits.

All visits are subject to utilization review. As with all covered services, the service that is rendered to you must be medically necessary. GHI may require that a current Provider's statement, acceptable to GHI, be furnished detailing the medical necessity of any service. In some cases, GHI may request that a treatment plan and statement be filed at the commencement of your treatment. In all cases, GHI will require that a current Provider's statement be furnished after the following number of visits for the following services:

(a) Speech therapy, l6 visits.

(b) Allergy desensitization, l6 visits.

(c) Physiotherapy, 8 visits.

(d) Osteopathic manipulations, 8 visits.

(e) Orthoptic services, 8 visits

**2. Preventive Care.** You are covered for Preventive Care services set forth below. Please see Paragraph 23 of this Section for covered

preventive and primary care services for dependent children.

(a) Mammography Screening. You are covered for mammography screening as set forth below. A "mammography screening" is a breast X-ray which is done using dedicated mammography equipment.

    1. A mammography at any time if recommended by a physician.

    2. A single baseline mammography if you are 35 through 39 years of age.

    3. A mammography every two year if you are 40 through 49 years of age. This benefit may be covered more frequently if recommended by your physician.

    4. An annual mammography if you are 50 years of age or older.

(b) Pap Smear Screening. You are covered for one annual Pap smear screening. You must be 18 years of age or older. Your Pap smear screening includes the following:

    (i) An annual pelvic examination.

    (ii) Then collection and preparation of a Pap smear.

    (iii) The laboratory and diagnostic services needed to examine and evaluate the Pap smear.

You are not covered for the following Preventive Care services, except as set forth above.

(a) Annual physicals.

(b) Immunizations.

(c) Screening examinations.

**3. Surgery.** You are covered for surgical procedures in or out of the hospital. The customary pre- and post-operative visits are included in your payment. In order for you to receive benefits, the surgeon may not be an employee of the hospital.

Certain surgical procedures are subject to the requirements of the NYC HEALTHLINE Program and may require a mandatory second surgical opinion. If the requirements of the NYC HEALTHLINE Program are not met, you may be subject to penalties. (See Section Six).

If multiple surgical procedures are performed through the same incision, GHI will pay the rate for the procedure with the highest allowance. If multiple surgical procedures are performed through different incisions, GHI will pay 100% of the surgical allowance for the most expensive procedure being performed plus one-half the allowance for any other procedure being performed.

You are covered for the services of assistant surgeons. Payment for the first assistant surgeon are based upon 20% of the Surgical Allowance. Payment for a second assistant are based upon 10% of the Surgical Allowance. A physician's assistant is covered in lieu of an assistant surgeon. The first physician's assistant is covered at 15% of the surgical allowance. The second physician's assistant is covered at 7.5% of the surgical allowance.

**4. Dental/Dental Related Benefits.** The following benefits are the only dental/dental related benefits covered under this Certificate. They may be performed by either a physician or dentist.

(a) Excision of impacted teeth.

(b) Reduction of fractures of the jaw or facial bones.

(c) Treatment of salivary gland disorders.

(d) Cutting surgery on tissue of the mouth other than the gums and alveolar bone. The surgery cannot be rendered in connection with the extraction, repair or replacement of the teeth. Implants and implant sugery, including preparation of the alveolar process for the insertion of dental implants, are not covered. Removal of cysts of dental origin is not covered.

(e) Treatment rendered within one year of the date of an accident for the repair of injury to natural teeth sustained accidentally.

(f) Visits for the purpose of diagnosis or treatment of temporo-mandibular joint dysfunction (TMJ) syndrome. However, dental examinations and/or dental x-rays, even if taken in conjunction with a TMJ syndrome diagnosis, are not covered. Treatment of TMJ syndrome by occlusional adjustment is not covered. You are not covered for intra-oral appliances or orthopedic devices and their maintenance.

**5. Administration of Anesthesia.** You are covered for the administration of Anesthesia. In order for you to receive benefits, your Provider may not be your surgeon, an assistant surgeon, or a hospital employee. The anesthesia must be rendered in connection with a covered surgical or obstetrical service. Payments for anesthesia include the administration of blood and other fluids during surgery.

Payments for the administration of Anesthesia will be based on the surgical procedure performed and the amount of time spent by the anesthesiologist.

**6. Maternity Care.** You are covered for childbirth and for certain conditions related to pregnancy. This includes operations for extra-uterine pregnancies and the treatment of miscarriages. You are also covered for terminations of pregnancies. GHI's payment includes the usual care given before and after the delivery or termination of pregnancy.

GHI shall pay maternity benefits in three installments. Two payments shall be made for pre-natal care and one payment for delivery and post-partum care. Payments shall be made only for services rendered. A claim for the services must be filed with GHI for each installment. GHI shall pay 15% of the Scheduled or Allowed amount at the first installment. GHI shall pay 25% of the Scheduled or Allowed amount at the second installment. And GHI shall pay 60% of the Scheduled or Allowed amount at the third installment. In no event shall GHI pay more than the 100% of the Scheduled or Allowed amount in its total payments.

Claims for services rendered may only be submitted after the installment date. Please note, you may still submit your entire claim after delivery.

The following is GHI's schedule of installment dates:

(a) First installment: Three months after conception.

(b) Second installment: Six months after conception.

(c) Third installment: After delivery.

Maternity care must be rendered by a doctor or certified nurse midwife. The nurse midwife must be permitted to perform the service under the laws of the State where the services are rendered.

Complications of pregnancy are covered as part of your maternity benefit. Separate reimbursement is not available for such complications.

Benefits are available for maternity upon enrollment. Deliveries occurring after your coverage terminates are not covered under this Plan, except as provided in Section Ten, Paragraph 2.

**7. In-Hospital Medical Care.** You are covered for medical care rendered in the hospital. In order to be covered, the care may not be provided by a hospital employee. The Provider's service must be unrelated to surgery.

In-hospital medical care consists of the following:

(a) Routine Medical Care.

(b) Psychiatric Care rendered by a physician, certified and registered psychologist or a certified social worker. The social worker must be qualified as a Provider for third-party reimbursement under the laws of New York State. He or she must have six years of post-Masters Degree supervised Psychotherapy experience. Psychiatric care may be rendered in either a general or psychiatric hospital. Custodial care is not covered.

(c) Care of premature infants and illness of newborns.

(d) Intensive Care.

**8. Radiation Therapy.** You are covered for the administration of radiation therapy. This Certificate does not cover the cost of radium or other radioactive materials.

**9. Chemotherapy.** You are covered for chemotherapy. Coverage for chemotherapy includes coverage for drugs dispensed by a physician or pharmacy.

**10. Specialist Consultations**. Your doctor may want you to see a Specialist. The Specialist may or may not be a Participating Provider. If you wish to use a Specialist who is a Participating Provider, you may call GHI for a list of Participating Specialists in your area. Under the

Participating Program, a $10 Co-pay Charge applies to Specialist consultations.

You are covered for one out-of-hospital consultation in each specialty per calendar year, for each condition being treated.

You are covered for one in-hospital consultation in each specialty per confinement, for each condition being treated.

You are not covered for consultations in the fields of pathology, roentgenology, or anesthesiology.

Consultations are covered only upon the direct referral and advice of your attending physician. In order for the service to be covered, the consultant must submit a report to the referring physician.

Second surgical consultations are available through NYC HEALTHLINE. (See Section Six of this booklet and the "New York City Summary Program Description" booklet.)

**11. Diagnostic Procedures, X-Ray Examinations and Laboratory Tests.** You are covered for diagnostic procedures. These consist of diagnostic laboratory and X-ray procedures performed out of the hospital by a doctor or an independent laboratory. In-hospital services are covered only if billed by independent physicians, who are not hospital employees.

You are covered for the separate interpretation of X-rays and laboratory tests. A non-participating radiologist or pathologist must give you a separate bill for this service. Payment shall be made based upon 30% of the radiology or laboratory procedure allowance after your deductible has been satisfied. Under the Participating Provider Program, a $10 Co-pay Charge applies. (See Section Three, Paragraph 1.)

You are not covered for screening exams except as provided in Paragraph 2.

**12. Shock Therapy.** You are covered for shock therapy. It may be given in or out of the hospital. There is no annual maximum number of treatments for this benefit.

**13. Ambulance Service.** You are covered for emergency ambulance service. This benefit is an indemnity benefit only. It is not available as a paid-in-full benefit through Participating Providers. It is also not subject to a deductible. GHI will reimburse you at 80% of the Allowed Charge, up to a maximum of $1,000 per trip.

You are not covered for ambulette service. You are not covered for air ambulance. However air ambulance services from one hospital to another may be covered under your Blue Cross Coverage.

**14. Excess Hospitalization Coverage/Inpatient Hospital Charges.**

You are covered for hospital charges in excess of your Blue Cross benefits. Coverage is available only for charges described in this paragraph. GHI covers hospital services ordinarily covered by Blue Cross. Your Blue Cross deductible is not covered.

Charges for full days covered by Blue Cross are never covered by GHI. GHI covers admissions for diagnostic studies, physical therapy and medical rehabilitation. (See Paragraph 18 of this Section). These admissions may be in specialized rehabilitation facilities. You are not covered for custodial hospital care.

Coverage for Hospital Charges includes the following:

(a) Room and Board. The charge may not exceed the hospital's most common semi-private room rate.

(b) Special Hospital Services. This includes services rendered by hospital staff or other hospital employees.

(c) Drugs supplied by the hospital.

(d) Diagnostic tests performed by the hospital.

Special Limitations Applicable to Inpatient Hospital Charges Only.

(a) If you have the 75-day or the 365 day Blue Cross Program, your benefit for hospital charges is subject to the $200,000 annual maximum per person.

(b) All payments for hospital charges count towards the applicable annual and lifetime maximum and are subject to deductibles and co-insurance.

**15. Outpatient Hospital Charges.** You are covered for outpatient hospital charges only if the service provided is not covered by Blue Cross. The service must be rendered in an Out-Patient Department of a Hospital. The service is not covered if it is the result of an accident or a sudden or serious illness which is covered under your Blue Cross coverage. Related diagnostic X-rays, laboratory tests and charges by physicians who are not hospital employees are covered.

**16. Hemodialysis Service.** You are covered for hemodialysis service. However, please see Section                         Fourteen, Parag limitations concerning individuals with End-Stage Renal Disease.

**17. Centers of Specialized Care.** You may be eligible for paid-in-full benefits for select cardiac procedures and heart transplants under the GHI Centers of Specialized Care Program. The GHI Centers of Specialized Care Program is a network of hospitals designed to offer you paid in full hospital and medical benefits for select cardiac tests and surgeries and heart transplants.

This Program is available to you only if you are:

(a) an active employee;

(b) a non-Medicare eligible retiree; or

(c) a covered dependent of an active employee or a non-Medicare eligible retiree.

You must also have your primary insurance coverage through the City of New York in order to be eligible to participate in this Program.

(a) **Paid-in-Full-Benefits.** Hospitals and physicians who participate in the GHI Centers of Specialized Care network have agreed to accept GHI's payment as payment in full for the cardiac and heart transplant procedures covered under the Program. When you choose a network hospital, you incur no out of pocket expenses for covered cardiac or heart transplant procedures. Also, your hospital deductible is waived. If you choose to receive services outside of the network, your care will be covered under your standard GHI/CBP/ Empire Blue Cross Blue Shield Plans. Accordingly, your benefits will be subject to the deductibles and maxima that normally apply to your coverage.

(b) **Access to the Program.** You must call NYC HEATHLINE at 1-800-521-9574 in order to participate in the GHI Centers of Specialized Care Program. Only certain cardiac services are covered under this Program. As such, you should call NYC HEATHLINE as soon as possible after you learn that you need cardiac care. For example:

- If cardiac surgery may be necessary, and you are referred to a cardiologist for tests, call NYC HEATHLINE if you wish to have the tests provided through the network.

- If cardiac surgery is necessary, and your physician refers you to a heart surgeon, call NYC HEATHLINE if you wish to have the surgery provided through the network. All admissions under the GHI Centers of Specialized Care Program must be precertified. Call at least 10 days prior to your admission to maximize your benefits and avoid penalties. NYC HEATHLINE will refer your case to GHI. A GHI nurse consultant will answer your questions. He or she will also coordinate the arrangements for your care. If you wish, you may contact GHI directly by calling 1-800-223-9870.

(c) **Limitations.** The GHI Centers of Specialized Care Program covers cardiac care only. Any in-hospital medical care and other services provided to you in a network hospital during your stay which are not incidental to your cardiac procedure or heart transplant will not be covered as part of the GHI Centers of Specialized Care Program. They will be covered under your standard GHI/CBP/Empire Blue Cross Blue Shield Plans. Coverage for such care and services will be subject to the deductibles, co-insurance and maxima applicable to your standard plan. As with all planned hospital admissions, you must precertify your admission to a GHI Centers of Specialized Care network hospital with NYC HEATHLINE.

**18. Hospital Admissions Primarily for Physical Therapy, Physical Rehabilitation or Physical Medicine.** You are covered for up to 30 days per calendar year for hospital stays the primary purpose of which is physical therapy, physical medicine, physical rehabilitation, or a combination of these services. Coverage may be extended beyond 30 days if authorized (through GHI or NYC HEATHLINE) based on medical necessity. Coverage for these services is subject to the deductibles and maxima set forth in Section Four.

**19. Diabetes Management.** You are covered for equipment and supplies for the treatment of diabetes. You are also covered diabetes self-management education. Your coverage is described below.

(a) **Equipment and Supplies**. You are covered for certain equipment and supplies for the treatment of diabetes. In order to be covered,

EH-22 PLC-1032E

a Provider must recommend or prescribe the equipment and supplies. The Provider must be legally authorized to write a prescription. You are covered for the items described in this paragraph. The Commissioner of the New York State Department of Health may provide and periodically update by rule or regulation a list of additional diabetes equipment and related supplies such as are medically necessary for the treatment of diabetes. Such additional equipment and supplies are also covered.

You are covered for the equipment set forth below.

(1) Blood glucose monitors. This includes blood glucose monitors for the legally blind.

(2) Data management systems.

(3) Test strips for glucose monitors and visual reading and urine testing strips.

(4) Injection aids.

(5) Cartridges for the legally blind.

(6) Insulin pumps and appurtenances thereto.

(7) Insulin infusion devices.

The equipment listed above is covered in full if you obtain it from a GHI Preferred Provider of durable medical equipment (DME). If you obtain it from a provider who is not a Preferred Provider, it is covered subject to the deductible and maxima set forth in Section Four. For the names of GHI DME Preferred Providers, please call (212) 501-4GHI. (See also Paragraph 24 of this Section).

You are also covered for the items set forth below.

(1) Insulin.

(2) Needles and Syringes.

(3) Oral agents for controlling blood sugar.

If you are covered under an Optional Rider to this Plan, these items are reimbursed according to the terms of your Optional Rider. They are not reimbursed according to the terms of this paragraph. Please refer to your Optional Rider for a description of your benefits and for instructions for filing of claim forms.

If you are not covered under an Optional Rider to this Plan, these items are covered under this paragraph. You are subject to a $5 Co-pay Charge for these items. They are not available from Participating Providers. You must pay the full cost for these items. You must obtain a receipt for your purchase. You must submit a claim form to GHI. GHI will reimburse you directly. You will be paid in full for these items, less the $5 Co-Co-Pay Charge.

(b) **Education**. You are also covered for diabetes self-management education. This includes education relating to proper diet. Diabetes self-management education ensures that persons with diabetes are informed as to the proper self-management and treatment of their diabetic condition. It is covered only if it is conducted by a Provider. The Provider must be legally authorized to write a prescription. It may also be provided by a member of the Provider's staff. It must be part of an office visit for diabetes diagnosis or treatment. It is covered only in the instances set forth below.

(1) Upon the diagnosis of diabetes.

(2) Upon a physician's diagnosis of a significant change in symptoms or conditions which require changes in self management.

(3) Where reeducation or refresher education is necessary.

Diabetes self-management education may also be conducted by one of the following:

(1) A certified diabetes nurse educator.

(2) A certified nutritionist.

(3) A certified or registered dietician.

In order to be covered, you must be referred by a Provider. The Provider must be authorized to write a prescription. The education must be provided in a group setting if practicable. A home visit is covered only if it is medically necessary.

Diabetes self management education is covered according to the terms of Sections Three and Four.

**20. Preventive and Primary Care Services for Dependent Children.** Your covered dependent child is covered for preventive and primary care services as described below from birth until age 19. The services must be provided by or under the supervision of a Provider set forth below.

- A physician.

- A licensed nurse practitioner eligible for reimbursement by law.

The services must be performed in the Provider's office or in a hospital as defined in Section 2801 of the Public Health Law.

The services described below are not subject to a Co-pay Charge when rendered by a Participating Provider.

(a) **Initial In-Hospital Pediatric Visit**. You are covered for an initial in-hospital well-baby visit for your newborn in accordance with the prevailing clinical standards of the American Academy of Pediatrics.

(b) **Well Child Visits**. You are covered for well child visits scheduled in accordance with the prevailing clinical standards of the American Academy of Pediatrics. Each visit shall include services in accordance with these prevailing clinical standards.including:

   1. Medical history.

   2. Complete physical examination.

   3. Developmental assessment.

   4. Anticipatory guidance.

   5. Appropriate immunizations and laboratory tests. These must be ordered at the time of the visit. They must be performed in the Provider's office or in a clinical laboratory.

(c) **Necessary immunizations**. Coverage is provided for necessary immunizations as determined by the New York State Superintendent of Insurance in consultation with the New York State Commissioner of Health. These consist of at least adequate dosages of vaccine against the diseases set forth below. The dosages of vaccine must meet standards approved by the United States Public Health Service for such biological products.

   a. Diphtheria.

   b. Pertussis.

   c. Tetanus.

   d. Polio.

   e. Haemophilus influenza type b.

   f. Measles.

   g. Mumps.

   h. Rubella.

   i. Hepatitus b.

**21. Home Care Services.** You are covered for home care services. The extent of your coverage is described below. In order to be eligible for paid-in-full benefits, the home care services must be precertified with GHI Coordinated Care and rendered by a GHI participating home care agency.

(a) **Type of Home Care Agency Covered.** GHI will pay for home care visits made by a Certified Home Care Agency. The Agency must have an Operating Certificate to provide home care issued under Article 36 of the New York State Public Health Law. Payment will not be made for care rendered by a licensed home care agency unless the home care agency has an Operating Certificate under Article 36.

(b) **Conditions for Home Care Coverage.** GHI will pay for Home Care visits only if the following conditions are met.

   (i) If you had not received Home Care visits, you would have had to have been hospitalized or cared for in a Skilled Nursing Facility. The Home Care visits must be a substitution for hospital care or care in a Skilled Nursing Facility.

   (ii) Home Care services must commence no later than 21 days following:

   - your discharge from the hospital; or

EH-24 PLC-1032E

- the onset of the condition requiring your confinement.

(iii) A plan for your Home Care must have been established and approved in writing by a physician.

(c) **Covered Home Care Services.** You are covered for the following Home Care services provided by a Certified Home Care Agency.

(i) Part-time or intermittent home nursing care by or under the supervision of a registered professional nurse (R.N.).

(ii) Part-time or intermittent home health aide services which consist primarily of caring for the patient.

(iii) Medical social worker visits.

(iv) Physical, occupational, or speech therapy if the Home Care Agency provides these services.

(v) Laboratory services, X-rays and EKG services provided by or on behalf of the Home Care Agency.

(vi) Drugs prescribed by a physician when dispensed by a certified home health agency.

(vii) Ambulance or ambulette to or from the nearest hospital if medically necessary. Medical supplies are covered only when provided by a GHI Preferred Provider of durable medical equipment (DME). They must be prescribed by a doctor.

(d) **Extent of Coverage.** The extent of your coverage varies. It depends upon whether you receive services from a GHI participating home care services provider or any other eligible home care services provider.

(i) **Participating Provider.** If you receive covered services from a GHI participating home care services provider, you are covered in full for up to 200 home care visits per person per calendar year. You must precertify the home care services with GHI Coordinated Care by calling:

- in New York City (212) 615-4662;
- outside New York City 1-800-223-9870.

Home care services are subject to concurrent review by GHI Coordinated Care. For the names of GHI participating home care services providers in your area, please call GHI Coordinated Care.

If you are outside of GHI's home care services participating provider operating area and cannot use a participating provider, please contact GHI Coordinated Care. If you pre-certify out-of-area services with GHI Coordinated Care, you are eligible for coverage of up to 200 home care visits per person per calendar year. GHI will pay you up to 100% of the average payment it makes to a GHI participating home care services provider for covered services. If you do not precertify the services, you are covered as set forth item (ii) below.

(ii) **Any Other Home Care Services Provider.** You are also covered for services rendered by a non-participating home care services provider. You are subject to a $50 deductible per person per episode of care. After you have met this deductible, you are covered for up to 40 visits per person per calendar year. GHI will pay you up to 80% of the average payment it makes to a GHI participating home care services provider for the type of services you receive. You must pay any difference between GHI's payment and the provider's charge.

GHI will pay for Home Care visits and for the other services listed above only for as long as you would otherwise have had to be confined in a Hospital or in a Skilled Nursing Facility.

However, GHI will not pay for more visits than set forth in paragraphs (i) and (ii) above in each calendar year.

Each visit by a member of a Home Care team is counted as one Home Care visit. Up to four hours of home health aide service are counted as one Home Care Visit.

**22. Home Infusion Therapy.** You are covered only for home infusion therapy rendered by a GHI Preferred home infusion therapy provider. Your coverage includes:

- Antibiotic Therapy.
- Hydration Therapy.
- Pain Management.

- Chemotherapy.
- Total Parenteral Nutrition (TPN).
- Aerosolized Pentamidine.

(a) **Conditions for Home Infusion Therapy Coverage.** GHI will pay for home infusion therapy only if the following conditions are met.

   (i) A physician must give specific written orders authorizing home infusion therapy.

   (ii) The home care infusion services are precertified with GHI Coordinated Care.

   (iii) The services are rendered by a GHI participating home infusion therapy provider.

     You are not covered for home infusion therapy rendered by a non-participating provider. However, the individual component services of the home infusion therapy (e.g. - private duty nursing, prescription drugs, and durable medical equipment) may be covered under other provisions of this Certificate.

     If you are outside of GHI's home infusion therapy participating provider operating area and cannot use a participating provider, please contact GHI Coordinated Care.

(b) **Covered Home Infusion Therapy Services.** GHI will pay a participating home infusion therapy provider directly for the services set forth below. The services must be medically necessary and related to the home infusion therapy. The provider must supply and bill for the services.

- Supplies and equipment for the administration of home infusion therapy.
- Drugs.
- Nursing Services. This includes nursing assessment, patient education and training and nursing visits.

## 23. Private Duty Professional Nursing Service.
You are covered for Private Duty Nursing Services. The service may be rendered at home or in a hospital. The doctor in charge of he case must file a statement acceptable to GHI that there is a medical need for the skilled nursing service. The doctor must prescribe a plan of skilled nursing care. The patient's condition must be unstable and require constant monitoring. The skilled nursing service must relate to the patient's diagnosis and condition.

An R.N. must render the service. The charges for the service must be submitted based upon the time spent by the nurse. An L.P.N. may render this service only if an R.N. was not available to render this service. A statement to that effect, acceptable to GHI, must be filed with GHI. This service is never covered when it is or could be rendered by home health aides, homemakers, housekeepers, home attendants, or similar practitioners.

If you receive these services from a GHI Participating Provider of private duty nursing services, you are covered in full. You must precertify the services with GHI Coordinated Care by calling (212) 615-4662 in New York City or 1-800-223-9870 outside New York City.

If you receive these services from a non-participating provider, you are subject to a separate $250 deductible per person per calendar year for covered private duty nursing services. After you have met this deductible, GHI will cover this service. Payment will be made at 80% of the average payment GHI makes to a GHI Participating Provider of private duty nursing services for covered services.

You are covered for private duty professional nursing services rendered by Participating and non-participating Providers up to a maximum of $100,000 per calendar year. Payments made by GHI toward private duty nursing also count toward your overall annual and lifetime maxima. You are not covered for private duty nursing services in connection with a normal delivery unless medically necessary.

Custodial care is not covered. Custodial care is care that is provided primarily for personal needs and care that can be provided by aides who have no professional skills or training. Help in walking or getting in or out of bed are examples of custodial care. Assistance in bathing, dressing, eating or orally taking medicine is also considered custodial. Custodial care is never covered even if rendered by an R.N. or L.P.N. In determining what is custodial care, GHI shall also be guided by the standards established by Medicare.

## 24. Durable Medical Equipment ("DME") Equipment.
You are subject to a separate deductible for the rental or purchase of Durable Medical Equipment ("DME"). The deductible is $100 per person, per calendar year. Once you have met your annual DME deductible, GHI will cover this service. The extent of coverage will depend on whether you use a "Preferred Provider" or another provider.

EH-26 PLC-1032E

**Covered Items.** You are covered for the rental, purchase and repair and maintenance (when not covered by a manufacturer's warranty or purchase agreement) of the following items of Durable Medical Equipment when medically necessary.

(a) Hospital Beds.

(b) Crutches.

(c)  Walkers.

(d) Wheelchairs.

(e) Belts and trusses.

(f) Lamps and diathermy equipment.

(g) Artificial eyes, limbs and other prosthetic appliances, which replace internal body organs.

(h) Orthopedic and incontinence appliances.

(i) Oxygen and oxygen equipment.

(j) Other durable medical equipment or appliances may be covered. In order to be covered, you must submit evidence of the medical necessity of the item to GHI at the time of submission of the claim. The evidence of medically necessity must be acceptable to GHI.

The following are examples of items not covered as Durable Medical Equipment.

(a) Splints.

(b) Casts.

(c) Orthopedic or orthotic devices for the feet.

(d) Air conditioning devices.

(e) De-humidifiers.

(f) Elevator stairs.

(g) Wigs, hairplugs or other hairpieces.

(h) Intra-oral appliances and/or intra-oral orthopedic devices and their maintenance; intra-osseous devices and their maintenance.

(i) Adjustable beds or other beds which are not strictly hospital beds.

(j) Over-the-counter items, such as antiseptics, alcohol, cotton balls, gels, ointments and other similar items.

In determining what is payable, GHI will be guided by Medicare guidelines. Appliances, Equipment and Oxygen are not available as paid-in-full benefits from Participating Providers. Co-insurance charges, deductibles, and maximums are applicable to this benefit.

Certain DME items cannot be acquired through Preferred Providers, but are covered under this Certificate. They are as follows:

- Mastectomy Bras. You are covered for the purchase of two mastectomy bras per calendar year. You will be reimbursed directly by GHI at 100% of the Allowed Charge subject to the deductible for DME.

- Prosthetic devices and orthotic devices are not available through Preferred Providers. GHI will reimburse you at 80% of the allowed charge for covered prosthetic devices and orthotic devices after you have met your DME deductible.

- Syringes are covered and dispensed through your pharmacy. You must meet your DME deductible. Thereafter, then you will be reimbursed directly by GHI at 80% of the Allowed Charge

**Preferred Providers.** If you use a Preferred Provider for any other covered DME, GHI will reimburse the Provider in full after you have met your annual deductible for DME. Certain DME items for the treatment of diabetes are not subject to this deductible. These items are always covered in full when obtained from a Preferred Provider. These items are listed in Paragraph 19 of this Section. For the names of GHI DME Preferred Providers, please call (212) 501-4GHI.

**Other Providers.** If you receive DME from a provider who is not a Preferred Provider, GHI will reimburse you at 50% of the allowed charge after you have met the deductible. You are responsible for any difference between GHI's payment to you and the Provider's charge.

Certain DME items for the treatment of diabetes are subject to different payment terms. Please refer to Paragraph 19 of this Section for the list of these items and a description of your coverage.

**Pre-Authorization.** When the charge for DME equals or exceeds $2,000 you must receive pre-authorization from GHI. The DME supplier must call GHI's Coordinated Care Department at 1-800-223-9870 for pre-authorization of this equipment. However, you must call GHI's Coordinated Care Department at 1-800-223-9870 for pre-authorization of all prosthetic devices, orthotic devices, and infusion therapy

**Maxima.** Payments made for DME count toward the overall $200,000 annual and $1,000,000 lifetime maxima under the Certificate. These payments count toward the maxima if the service is provided by a Preferred Provider or by another provider.

## 25. The GHI-Behavioral Management Program.

You are covered under the Behavioral Management Program (BMP).

The GHI Behavioral Management Plan is a mental health and chemical dependency benefits program. It was developed with the New York City Employee Benefits Program and the City's Municipal Unions. If you are a City employee or a non-Medicare eligible City retiree, the BMP is part of your coverage. Your non-Medicare eligible dependents are also covered if you have family coverage.

The BMP helps you receive covered services at an appropriate level of care. To be eligible for full benefits, you must call the Clinical Referral Line prior to receiving covered services. The telephone number is 1-800-NYC-CITY (1-800-692-2489).

The Clinical Referral Line is staffed by trained clinicians. You may call 24 hours a day, 365 days a year. The clinicians will help you determine the best form of care. They can help you select a provider who is best suited to your needs. You may also call the Clinical Referral Line in case of an emergency. The clinician will refer you to the closest facility or emergency room.

The BMP offers a network of Participating practitioners and facilities. Except where noted, you may select a Participating or non-participating provider. You may obtain the names of Participating providers in your area by calling the Clinical Referral Line.

Participating providers must pre-certify covered services under the Plan. They may not bill you for covered services which were not pre-certified. You must pre-certify care rendered by non-participating providers. To pre-certify care, you must call the Clinical Referral Line.

## BMP-COVERED OUTPATIENT TREATMENT

## 1. Chemical Dependency Benefits.

**A. Benefits.** You are covered for outpatient visits for the diagnosis and treatment of alcoholism. You are covered for outpatient visits for the diagnosis and treatment of substance abuse and dependence. The visits must take place in an approved facility for treatment. (See paragraph C below). GHI will not pay for visits in programs of a social, recreational, or companionship nature.

To be covered, each visit must consist of at least one of the services listed below.
- Individual or group counseling.
- Activity therapy.
- Diagnostic evaluations by a doctor or other licensed medical professional to determine the nature and extent of your illness or disability.

All covered services must be provided by an employee of the facility. GHI will not make any payments to an individual who provides any of the covered services. No payment will be made if the facility turns the payments over to the individual who provided the service.

**B. Number of Visits Covered.** You are covered for a total of 60 outpatient visits for the above services in each calendar year. There is no Co-pay Charge for such visits. GHI will pay for 1 visit per day. However, GHI will pay for a family therapy visit and an individual visit that takes place on the same day.

If you have family coverage, up to 20 of the 60 visits available to the person with the alcohol or substance abuse problem may be used for family therapy. The 20 family therapy visits are covered even if the person with the alcohol or substance abuse problem is not receiving

treatment. The family therapy visits may only be used by members of the family who are covered under this Plan. Regardless of the number of covered family members, only 20 family visits are available for the treatment of the family member with the alcohol or substance abuse problem.

Family therapy consists of visits for members of a family. The purpose of these visits is to aid in the understanding of the illness. These visits also help family members play a meaningful role in the recovery. Payment for a family therapy session will be the same as for an individual visit. This is true, regardless of the number of family members who attend the session.

**C. Approved Facilities for Treatment.** In New York State, the facility must be certified by the Division of Alcoholism and Alcohol Abuse or by the Division of Substance Abuse Services to provide the service.

You may receive covered treatment outside of New York State. The facility must be accredited to provide an alcohol or substance abuse treatment program by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

**D. Payments.** The amount of GHI's payment for outpatient services will vary. It will depend on whether the facility is a Participating or a non-participating facility.

- **Participating Facility.** A Participating Facility is an approved facility which has an agreement to provide care to covered persons. GHI will pay the facility directly. Payment will be made in full for covered services. You will not have to make any payments.
- **Non-Participating Facility.** A non-participating facility is an approved facility which does not have an agreement with GHI. GHI will pay 75% of the average payment it would have made to a Participating Facility for the kind of care you receive. GHI's payment may not fully cover the charge to you. You must pay any balance.

**2. Mental Health Benefits.**

**A. Benefits.** You are covered for outpatient psychiatric care. Psychiatric care is defined as the diagnosis or treatment of mental, nervous or emotional disorders and ailments. The BMP will use the most recent edition of the American Psychiatric Association's Diagnosis and Statistical Manual of Mental Disorders (DSM) to determine what conditions are covered. The care must be rendered by a Provider listed below.

- A physician.
- A registered or certified psychologist.
- A certified social worker. The social worker must be qualified as a Provider for third-party reimbursement under the laws of New York State. He or she must have six years of post-masters' degree supervised psychotherapy experience.

The service may be rendered in a clinic, psychiatric center or Hospital outpatient department. Payment will not be made unless the service is rendered by one of the Providers set forth above. Services which are merely supervised or directed by a such a Provider are not covered.

In order to be covered, outpatient psychiatric care must be rendered by a Participating Provider. GHI will pay a Participating Provider directly for covered services. Payment will be made in accordance with the Plan's Allowances. Each visit is subject to a $10 Co-pay Charge.

Outpatient psychiatric care is not covered when rendered by a non-participating Provider. Benefits for such services are provided only under the Optional Benefits Rider. (See below.)

**B. Number of Visits Covered.** You are covered for a total of 30 outpatient visits for the above services in each calendar year. Group and individuals' visits are counted as one visit.

**3. Diagnostic Evaluations.** You are covered for diagnostic evaluations to determine the nature and extent of your condition or illness. You are covered for a total of 5 evaluations in each calendar year. These visits do not count as part of the outpatient visits described above. To be covered, you must call the Clinical Referral Line prior to receiving care. You will be referred to a specialist.

**4. Treatment Plan.** All covered services must be medically necessary. A treatment plan must be pre-certified before you begin any covered outpatient treatment.

Participating Providers will pre-certify your treatment plan. Participating providers may not bill you for covered services which were not pre-certified. You must call the Clinical Referral Line to pre-certify care rendered by non-participating Providers. The telephone number is

1-800-NYC-CITY (1-800-692-2489).

All care is reviewed for medical necessity.

**5. Appeals.** You may appeal if your treatment plan is not approved. To appeal, call the Clinical Referral Line. Your appeal will be decided within 60 days. This is measured from the date of receipt of all necessary information from you and your Provider.

## BMP-COVERED INPATIENT TREATMENT

### 1. Chemical Dependency Benefits.

**A. Benefits.** You are covered for the diagnosis and treatment of alcoholism and alcohol abuse. You are also covered for the diagnosis and treatment of substance abuse and dependence. You are also covered for detoxification. The detoxification treatment must be provided in an approved hospital or detoxification facility. (See Paragraph C below.)

Rehabilitation care is also covered. You must be confined in a Participating Facility. These services are not covered when rendered in a non-participating facility. Coverage for such services is only provided under the Optional Benefits Rider.

**B. Number of Days Covered.** You are covered for 30 days of active treatment in each calendar year. There is a lifetime maximum of 60 days. Visits for detoxification or rehabilitation each count as one visit.

**C. Approved Facilities for Treatment.** In New York State, the facility must be certified by the Division of Alcohol and Alcohol Abuse or by the Division of Substance Abuse Services to provide the treatment.

You may receive covered inpatient care outside New York State. The facility must be accredited by the JCAHO to provide alcoholism or substance abuse treatment.

**D. Payments.** The amount of GHI's payment for inpatient services will vary. It depends on whether you receive treatment in a Participating or non-participating facility.

- Participating Facility. A Participating facility is an approved facility which has an agreement to provide to covered persons. GHI will pay the facility directly. Payment will be made in full for covered services. You will not have to make any payments.

- Non-Participating Facility. GHI will pay for covered detoxification services rendered in an approved non-participating facility. Such a facility has no agreement with GHI. GHI will pay 100% of the average payment it makes to Participating facilities for the services. GHI's payment may not fully cover the charge to you. You must pay any balance. GHI will not pay for rehabilitation services rendered in a non-participating facility.

### 2. Mental Health Benefits.

**A. Benefits.** You are covered for inpatient psychiatric care. Your confinement must be for mental, nervous or emotional disorders. The BMP will use the most recent edition of the DSM to determine what conditions are covered.

**B. Number of Days Covered.** You are covered for 30 days of active treatment in each calendar year. There is no lifetime maximum for this care.

**C. Payments.** The amount of GHI's payment for covered services will vary. It will depend on whether you receive treatment in a Participating or non-participating facility.

- **Participating Facility.** A Participating Facility has an agreement to provide care to covered persons. GHI will pay the facility directly. Payment will be made in full for covered services. You will not have to make any payments.

- **Non-Participating Facility.** GHI will pay for covered services rendered in a non-participating facility. Such a facility has no agreement with GHI. GHI's payment may not fully cover the charge to you. You must pay any balance. GHI will pay 50% of the average payment it makes to a Participating facility for the type of service you receive. After you have paid $4,000 in coinsurance expenses for this service per person per calendar year, GHI will make payment at 100% of the average payment it makes to a Participating Facility for covered services for the balance of covered days. Care that is not pre-certified is subject to a penalty of

EH-30 PLC-1032E

$1,000. In no event, however, will the penalty exceed 50% of the benefit otherwise payable.

**3. Pre-Certification Procedures.** To be eligible for full benefits, all inpatient care must be pre-certified by calling the Clinical Referral Line. The telephone number is 1-800-NYC-CITY (1-800-692-2489).

- If your doctor recommends confinement, your care must be pre-certified prior to the admission date.
- If you are hospitalized due to an emergency, your care must be certified within one (1) business day of the admission. If you are not medically able to call within that time, you must call as soon as you are medically able to do so. An "emergency" is a condition requiring immediate inpatient care to avoid jeopardy to the patient's life or serious impairment to the patient's bodily functions.
- Written notice will be sent within forty-eight (48) hours of the pre-certification.
- Participating providers must pre-certify your care. They may not bill you for covered services which were not pre-certified. You must pre-certify care rendered in a non-participating facility.

**4. Appeals.** If you fail to pre-certify inpatient care due to extenuating circumstances, you may appeal. To appeal, you must call the Clinical Referral Line. GHI will decide your appeal within 60 days. This is measured from the date of receipt of all necessary information from you and your Provider.

# SECTION SIX: NYC HEALTHLINE Pre-Admission Review Program/Mandatory Second Surgical Consultation Program and Voluntary Second Surgical Consultation Program

### NYC HEALTHLINE

To maintain your full insurance coverage, you must call NYC HEALTHLINE before you have certain medical or hospital services. A full description of NYC HEALTHLINE is provided in the "3 Smart Reasons" brochure. You may obtain this brochure from your employing agency, your Plan, or from the New York City Employee Benefits office. You should refer to this brochure for a description of NYC HEALTHLINE.

If you are a City employee or a non-Medicare eligible City retiree, NYC HEALTHLINE is part of your coverage. NYC HEATHLINE is also part of the coverage provided to your covered spouse and covered dependent children if this Plan provides their primary medical coverage. NYC HEALTHLINE is a managed care program that was developed by the Employee Benefits Program of the New York City Office of Labor Relations and the Municipal Labor Unions.

If you or a member of your family is scheduled for certain office surgery, any outpatient surgery at a hospital or surgi-center, or any elective, non-emergency hospital admission (surgical, maternity, medical, psychiatric, or pediatric) you must call NYC HEALTHLINE at least 10 days before the surgery or admission and within 24 hours after an emergency admission to maintain your health benefits. If you are not medically able to call NYC HEALTHLINE within 24 hours after an emergency, you must call NYC HEALTHLINE as soon as you are medically able to do so. With the help of qualified health care professionals, NYC HEALTHLINE can help you make important health care decisions in managing your treatment and getting the most for your health care dollars.

The telephone number for NYC HEALTHLINE can be found on your identification cards. The telephone number is 1-800-521-9574 NYC HEALTHLINE will help you:

(a) Make informed decisions about your own health care. In most cases, your Medical Review Specialist will approve your plan of care immediately. In other cases, alternatives may be available to you. Depending on your medical problem, you might benefit from a second surgical opinion, ambulatory surgery, pre-admission testing, or early discharge with home care. All you have to do is to remember to call NYC HEALTHLINE.

(b) Preserve your health benefits and avoid penalties. It is your responsibility to call NYC HEALTHLINE. If you go ahead with a non-emergency hospital admission or certain office procedures (see paragraph [b] in NYC HEALTHLINE Mandatory Second Surgical Consultation Program description) without first calling NYC HEALTHLINE, or fail to notify NYC HEALTHLINE within 24 hours after an emergency admission your coverage may be reduced in one of two ways. For any hospital admission, or ambulatory surgery in a hospital facility or surgi-center, your Empire Blue Cross and Blue Shield coverage will be reduced by the lesser of $250 per day or 50%, up to a maximum of $500. You will be responsible for that amount.

You must call NYC HEALTHLINE if:

(a) You are a City employee, or a City retiree who is not eligible for Medicare, or you are purchasing City coverage directly under COBRA continuation coverage; and

(b) GHI provides your primary health coverage or you are a spouse or covered dependent (under 19 years old) of a City employee or retiree and GHI provides your primary health coverage.

You must call NYC HEALTHLINE at least 10 days prior to:

(a) Any scheduled non-emergency hospital admission for you or a covered family member; or

(b) Any scheduled outpatient surgical procedure at a hospital facility or surgi-center; or

(c) Any scheduled procedure in a doctor's office as listed in paragraph (b) below;

(d) For maternity admissions, as soon as the delivery date is known; or

(e) Within 24 hours of an emergency admission (or as soon as you are medically able to call if you are not medically able to call within 24 hours). Do not call NYC regarding claims or membership issues. (For questions about medical claims or membership, see Section Nine, Paragraph 3).

## NEW YORK CITY HEALTHLINE MANDATORY SECOND SURGICAL CONSULTATION PROGRAM

(a) **General.** The surgical procedures listed below REQUIRE a second surgical opinion. This second opinion must be obtained through NYC HEALTHLINE. Your failure to obtain a mandatory second surgical opinion will result in diminished benefits. The second opinion must be obtained in order to avoid a reduction in your benefits. All expenses related to the listed surgical procedures are subject to a reduction if you fail to obtain the mandatory second surgical opinion. The failure of a covered individual to obtain a second opinion shall result in reduced benefits, as outlined below. Please note that if you fail to obtain the mandatory second surgical opinion, the paid-in-full feature of using a Participating Provider is no longer applicable. You must pay the Provider directly and file a claim with GHI. Payment will be made in accordance with the CBP Schedule less any applicable penalty. To arrange for your cost-free mandatory second surgical opinion, call 1-800-521-9574. The surgical consultant whom you see may not confirm the need for surgery. If you are undecided about whether to proceed with the surgery, you are entitled to have a third opinion completely free of charge. This third opinion, in order to be covered, must also be arranged through NYC HEALTHLINE. All Consultants will be Specialists. The Specialist will provide an independent opinion. However, he or she has agreed not to treat you or to perform the surgery for the procedure in question. You may fail to obtain a second opinion for one of the listed services, but believe your failure was due to extenuating circumstances. If this is the case, you may appeal for special consideration of your case. This appeal should be addressed to NYC HEALTHLINE. The decision will be made on your appeal within 30 days of receipt of all the complete and necessary information from your Provider.

(b) **Services Requiring a Second Surgical Consultation.** The following elective surgical procedures shall require a second surgical consultation:

1. Surgery of the foot.
2. Surgery of the nose.
3. Surgery of the eye.
4. Surgery of the tonsils.
5. Surgery of the adenoids.
6. Surgery of the knee.
7. Surgery of the breast.
8. Surgery to correct a hernia.

(c) **Penalties.** *If you fail to obtain the required second surgical opinion for a service listed above, your benefits in excess of the deductible shall be reduced by 50% up to a maximum of $500. Please note that if you fail to obtain the mandatory second surgical opinion, the paid-in-full feature of using a Participating Provider is no longer applicable.* If you have a second surgical opinion, you shall receive full benefits regardless of whether or not the consultant confirmed the need for the surgery. The choice of whether or not to have the surgery shall always be yours. In order to be covered, however, the surgery must be medically necessary.

EH-32 PLC-1032E

**REMEMBER THESE IMPORTANT NYC HEALTHLINE TIPS**

(a) You do not have to call NYC HEALTHLINE if the City policyholder has Medicare or primary coverage elsewhere or is a covered dependent student.

(b) If you are required to get a second surgical opinion (see above), you must get it from one of the specialists recommended by your Medical Review Specialist at no cost to you.

**PENALTY APPEAL PROCESS FOR NYC HEALTHLINE**

(a) If benefits are reduced by your health plan, you will receive a letter advising you of the reduction. This letter contains information and instructions regarding appeals. To submit an appeal you must sign the letter and provide documentation or an explanation of why you feel benefits should be restored.

(b) If NYC HEALTHLINE agrees that benefits should be restored, you will be notified and the claim will be adjusted accordingly. If NYC HEALTHLINE disagrees, you will receive a letter advising you that if you wish to appeal further, it would be through the New York City Employee Benefits Program.

(c) If the Employee Benefits Program agrees that benefits should be restored, you will be notified and the claim will be adjusted accordingly. If they disagree, you will receive a letter advising you that if you wish to appeal further, it would be through your health plan. If the penalty is for a hospital admission your final appeal would be to Empire Blue Cross. If your penalty is for medical/surgical services in a physician's office your final appeal would be to GHI. The appeal to the health plan is the final step in the appeal process. If it is agreed that benefits should be restored, you will be notified and the claim will be adjusted accordingly. If the appeal is denied, you will receive a letter advising that the penalty remains your responsibility.

**OPTIONAL SECOND SURGICAL CONSULTATION PROGRAM**

If your doctor tells you that you need surgery, you may wish to have the need for the surgery confirmed. Certain procedures require a second surgical opinion. See Mandatory Second Surgical Opinion Program above.

Your benefits include the GHI Second Surgical Consultation Program. The surgery must be of non-emergency nature and must require hospitalization. By using this program, you will be better able to determine whether surgery is necessary and if there are other methods of treatment available to you. You may secure a second opinion directly through GHI at no cost to you.

**1. How the Program Works.** If your doctor tells you surgery is required, you may obtain a voluntary second surgical opinion through the GHI Second Surgical Consultation by calling (212) 615-0943. You will be asked for your Certificate, Category, and Group Numbers. These numbers are listed on your GHI Identification Card.

A form enabling GHI to obtain your medical reports will be sent to you. Please sign and return it to GHI without delay. Where possible, GHI will furnish you with the names of two or more consultants participating in the Program. You must then arrange an appointment with the consultant you select. You must telephone GHI's Coordinated Care Department at (212) 615-4662 in New York City or 1-800-223-9870 outside of New York City and notify GHI of your selected consultant and date of appointment.

Program benefits are provided without cost to you. It is not necessary to complete a Claim Form for the service or for any diagnostic tests the consultant may order. Following the examination the consultant will discuss his or her recommendation with you. A copy of the report will be sent to your primary doctor. The surgical consultant whom you see may not confirm the need for surgery. If so, and if you are undecided about the procedure, you are entitled to a third opinion through the program at no cost to you. The final decision about whether or not to undergo surgery is yours.

If you wish to obtain a voluntary second surgical opinion through NYC HEALTHLINE, you may call 1-800-521-9574.

**2. The Consultants.** Consultants on the GHI panel are Board Certified. They are usually affiliated with medical schools and teaching hospitals. In order that complete objectivity be maintained they have agreed under this Program not to perform the actual surgery, when required, or to treat the patient.

**3. Principal Limitations and Exclusions under the Second Surgical Consultation Program.** The Program does not cover all types of surgery. It does not cover emergency surgery, in-hospital consultations, or out-of-hospital surgery. Workers' Compensation cases are not covered.

Hospital admissions for diagnostic procedures such as a biopsy or cystoscopy are not covered. Cases where a prior second surgical consultation has been received under any other program are not covered under this Plan.

# SECTION SEVEN: Principal Limitations and Exclusions

Benefits are not available for the following:

**l. Eye and Hearing Care.** Payment will not be made for eyeglasses, contact lenses (except post-cataract lenses) or hearing aids. Neither will payments be made for routine eye examinations or for examinations for the prescription or fitting of the above items.

**2. Cosmetic Surgery and Treatment.** Payment will not be made for services in connection with elective cosmetic surgery or treatment which is primarily intended to improve your appearance. However, payment will be made for services in connection with reconstructive surgery when such service is incidental to or follows surgery resulting from trauma, infection or other diseases of the part of the body involved. Payment will also be made for reconstructive surgery because of congenital disease or anomaly of a covered child which has resulted in a functional defect.

**3. Dental Services.** Payment will not be made except as provided in Section Five, Paragraph 4. Please note that you are covered for treatment rendered within one year of the date of an accident for the repair of an injury to natural teeth which was sustained accidentally.

**4. Preventive Care.** Payment will not be made for certain Preventive Care services. See Section Five, Paragraph 2.

**5. Workers' Compensation.** Payment will not be made for care for any injury, condition or disease if payment is available to you under a Workers' Compensation law or similar legislation. GHI will not make any payments even if you do not claim benefits you are entitled to receive under the Workers' Compensation Law. Also, payment will not be made even if you bring a lawsuit against the person who caused the injury or condition. Payment will not be made even if you receive money from that lawsuit and you have repaid the Hospital or other Provider.

**6. Services Covered by Government.** Except for Medicaid, payment will not be made for services covered even in part, under the laws of the United States or any State or Municipality. Payment will not be made for service related-injuries or conditions provided in a Veteran Affairs facility.

**7. War.** Payment will not be made for services for care of illness or injury due to war, declared or undeclared.

**8. Care Furnished Without Charge.** Payment will not be made for any care if the care is furnished or would normally be furnished to you without charge. You are not covered for services rendered for which no legally enforceable charge is incurred.

**9. Medicare.** If you are eligible for Medicare, the benefits described in this booklet may not be available to you. See Section Fourteen for a description of your benefits.

**10. No-Fault Automobile Insurance.** Payment will not be made for any service for which mandatory automobile no-fault benefits are recovered or recoverable.

**11. Experimental Treatment and Treatment Not Conforming to Accepted Medical Standards.** Payment will not be made for treatment considered to be experimental according to GHI's criteria for experimental treatment. All services must conform to accepted standards of medical or psychiatric practice. Services received which are beyond the scope of the license of the person rendering the service are not covered.

**12. Services Through Your Employer, Union, or Welfare Fund.** You are not covered for services rendered in a hospital, department or clinic run by your employer, labor union or welfare fund for which there is no charge.

**13. Excessive Care.** Payment will not be made for medical services in excess of those services normally required for the treatment of a

EH-34 PLC-1032E

condition.

**14. Services Not Listed or Not Performed.** Payment will not be made for services which are not listed in this booklet as being covered or which are not actually performed.

**15. Prescription Drugs.** Payment will not be made for prescription drugs, unless you have the Optional Rider.

**16. Out-of-Hospital Psychiatric Care.** Payment will not be made for Out-of-Hospital Psychiatric Care, except as specifically provided herein.

**17. Nutritionists and Related Services.** Except as specifically set forth in this Certificate, you are not covered for the services of nutritionists or for special dietary products. You are not covered for weight counseling performed by any Provider other than a covered licensed Provider. Weight control treatment provided by a medical doctor must be deemed medically necessary in order to be covered.

**18. Occupational Therapy.** Payment will not be made for occupational therapy except as part of the home care services benefit. (See Section Five, Paragraph 21.) Physical therapy rendered by a licensed occupational therapist is covered.

**19. Convalescent or Custodial Care.** You are not covered for services related to bed rest, rest cures, convalescent care, or custodial care. You are not covered for sanitarium care. You are not covered for care in a nursing home.

**20. Educational or Vocational Services.** You are not covered for services which are either educational or vocational in nature.

**21. Mandatory Second Surgical Opinion.** In order to receive full benefits, you must in certain cases have a second surgical opinion. See NYC HEALTHLINE Section Six for details.

**22. Medical Summaries.** You are not covered for Medical Summaries and/or medical invoice preparation.

**23. Alcoholism and Substance Abuse.** You are not covered for services for alcoholism or substance abuse, except as specifically provided herein.

**24. Duplicate Services.** You are not covered for duplicate services actually provided by both a certified nurse-midwife and a physician.

**25. Routine Podiatric Services.** You are not covered for routine podiatric care. This refers to the services set forth below rendered in connection with the routine care of the feet.
  (a) Orthopedic shoes and other supportive devices.
  (b) Services or supplies for the treatment of the following unless open surgery is necessary:
    (i) Weak feet.
    (ii) Strained feet.
    (iii) Flat feet.
    (iv) Any instability or imbalance of the feet.
    (v) Metatarsalgia (pain in the sole of the foot in the region of the arch).
    (vi) Bunions.
  (c) Services or supplies for the treatment of any of the following services, except when the treatment is prescribed for a metabolic disease:
    (i) Corns.
    (ii) Calluses.
    (ii) Toenails.

**26. Stand-by Services.** You are not covered for stand-by services. Stand-by services are services that a Provider performs relating to being available to provide services on a contingent basis. Mere standing by is not covered. Stand-by services may be deemed to be rendered by any Provider.

  Listed below are examples of two types of stand-by services.

**Example One.** The administration of anesthesia is not a stand-by service. It is a covered service. The services listed below when rendered by an anesthesiologist are not covered. They are deemed "stand-by services."

(a)  Preparing a contingency anesthesia plan.

(b)  Merely being in the operating area.

(c)  Merely being in the Hospital.

(d)  Being available for diagnosis or treatment on a contingent basis if needed.

**Example Two.** Stand-by services may also be provided by a surgeon. Surgery or assisting at surgery are not stand-by services. They are covered services. The services listed below when performed by a surgeon are not covered. They are deemed "stand-by services."

(a)  Preparing a contingency surgery plan.

(b)  Merely reviewing a patient's chart.

(c)  Merely being in the operating area.

(d)  Merely being in the Hospital.

(e)  Merely being available for diagnosis, treatment or surgery on a contingent basis if needed.

**27. Prohibited Referrals.** You are not covered for clinical laboratory services, X-ray or imaging services, pharmacy services or other services provided pursuant to a referral prohibited by Section 238-a(1) of the New York State Public Health Law. This law prohibits a Provider from referring patients to a practitioner or facility for these services when the Provider or a member of the Provider's immediate family has a financial relationship with the practitioner or facility. It also prohibits the Provider, the practitioner and the facility for billing or filing an insurance claim in connection with such services.

## SECTION EIGHT: Coordination of Benefits (COB)

**1. General.** You may be covered by two or more group health benefit plans. These plans may provide similar benefits. Should you have services covered by more than one plan, GHI will coordinate benefit payments with the other plan. In this case, one plan pays its full benefit as a primary benefit. The other plan pays secondary benefits. This prevents duplicate payments and overpayments. In no event shall payments exceed 100% of a Provider's charge.

In order to determine which plan is primary, certain rules have been established. GHI follows these rules. These rules apply whether or not you make a claim under both plans.

If GHI pays you more than you should have been paid under this provision, it has the right to recover the overpayment. GHI may recover the overpayment from you or any other person, insurance company, or other organization which gained from the overpayment. You must help GHI in recovering any overpayment. This help may mean filing claim forms with another company. It may mean endorsing checks over to GHI.

GHI has the right to decide which facts it needs in order to coordinate benefits.  GHI may get needed facts from or give needed facts to any organization or person.  GHI need not tell or obtain the consent of any person to do this, except as required by Article 25 of the New York General Business Law.  You must give GHI any facts it needs to process a claim and coordinate benefits.

**2. Definition of Plan.** A plan is a form of group coverage other than Medicaid on which these rules of coordination of benefits are allowed.

A plan may include:

(a)  Group insurance, group or group remittance subscriber certificates.

(b)  Uninsured group coverage.

(c)  Prepayment group coverage including HMOs, group practice and individual practice plans.

(d)  Blanket contracts, except blanket school accident coverages or such coverages issued to a substantially similar group, where the policy holder pays the premium.

(e)  The medical benefits coverage in group and individual mandatory automobile no-fault contracts.

**3. Rules of Coordination.** The rules for determining primary and secondary benefits are as follows:

(a)  The plan covering you as an employee is primary before a plan covering you as a dependent.

(b)  The plan of a parent whose birthday occurs first in the year is primary for dependent children covered under plans maintained by both parents. Birthday refers only to the month and day on which the parent is born and not the year. If both parents have the same birthday, the plan covering you the longer time is primary. If the other plan does not have the rule set forth above, but has a rule based upon the gender of the parent, that plan's rule will determine the order of benefits.

(c)  If no other criteria apply, the plan covering you the longest is primary. However, the plan covering you as a laid-off or retired employee, or as a dependent of such a person, shall be secondary and the plan covering you as an active employee or a dependent of an active employee shall be primary as long as the other plan has a COB provision similar to this one.

**4. Special Rules for Dependents of Separated or Divorced Parents.**

(a)  If there is a court decree that imposes financial responsibility for the health care expenses of the dependent child on one parent, that parent's plan is primary. That plan must have actual knowledge of the decree. GHI has the right to request a copy of the portion of the decree pertaining to the health care expenses of the dependent child.

(b)  If there is no court decree, the plan covering the parent with custody of a dependent child is primary.

(c)  If there is no court decree and the parent with custody of a dependent child remarries, that parent's plan is primary. The step-parent's plan is secondary. The plan covering the parent without custody is tertiary.

**5. Payment of Benefits.**

(a)  When GHI is the primary plan, GHI will pay its full benefits. The other plan will pay secondary benefits.

(b)  When GHI is deemed secondary, GHI will reduce its benefits so that the combined payment or benefit from all plans are not more than the actual charge for the covered service. Please note that GHI will never pay more than its full benefits as a secondary plan, even if the benefits or payments of the combined plans are less than 100% of charges.

**6. Plans with Different COB Rules.** Group plans are written in many states. Not all states or groups follow the same rules. Some plans have language that states that the plan is an "excess" plan or is "always secondary". In that event, GHI will coordinate as follows:

(a)  If GHI would be primary under the rules listed above, it will pay primary benefits.

(b)  If GHI would be secondary under the rules listed above, it will pay its benefits first. However, the amount of benefits paid will be determined as if GHI was the secondary plan. Such payment will be the limit of GHI's liability.

(c)  In order to determine benefits under (b), GHI may need information from the other plan. If that plan does not provide the information necessary for GHI to determine benefits within 30 days of a request to do so, GHI will assume the benefits of the other plan are identical to GHI's. Benefits will then be paid accordingly. Adjustments will be made if information becomes available as to the benefits of the other plan.

# SECTION NINE: Filing of Claims

**1. How To File a Claim.** Claims must be filed directly with GHI by you or your Provider. They must be filed within the time limits described below. In order to expedite processing, claims should be submitted on the appropriate GHI claim form. Participating Providers will have a supply of claim forms. You should complete the subscriber portion of the form at the time the services are rendered. The Provider should complete the Provider's portion of the form and mail the form to GHI. If the Provider's charges have been paid or if the Provider is not a Participating Provider, GHI will forward its payment directly to you.

Non-Medical claims should be filed with GHI on the appropriate GHI claim form. Non-Medical claims are Private Duty Skilled Nursing and Durable Medical Equipment. Payment of these claims shall be made directly to you.

Psychiatric claims under the Optional Rider should be filed with GHI on claim form number 2074. All information requested by GHI must be supplied in order to process a psychiatric claim. Payment of these claims shall be made directly to you.

**2. When To File a Claim.** In order to receive benefits you must promptly complete and file your claim form. You must file your form with GHI within 180 days after the end of the calendar year in which the services were rendered. If you fail to file your claim on time, GHI may still pay the claim if it was not reasonably possible for you to have filed your claim on time. You must file your claim as soon as it becomes reasonably possible to do so.

**3. Telephone Inquiry and Claims Mailing.** For information on specific claims, enrollment and general information, call: (212) 501-4GHI, Florida residents may call (800) 358-5500

For additional names of Participating Physicians or for Physicians in other areas, call: (212) 501-4GHI

Mail written inquiries and claim forms to:

> GHI
> P.O. Box 300
> New York, NY 10116-300

## SECTION TEN: Termination of Coverage

**1. Termination.** Your coverage under this Certificate terminates in the event of any of the following:

(a) You are no longer eligible for benefits. (Check your Health Benefits Summary Program Description booklet on eligibility for the specific rules.) Examples of loss of eligibility would include termination of employment, divorce, death of a spouse or a dependent child reaching the age limitation.

(b) The Group Contract between the City of New York and GHI is terminated.

(c) By operation of law. You will be notified as required by law.

If your coverage terminates because of loss of eligibility or termination of the Group Contract, you may purchase a direct payment contract from GHI. The conversion privilege is available to the former spouse of a member upon divorce or annulment of the marriage of the member. It is also available to the surviving spouse and other dependents covered under this Certificate upon the death of the member. The conversion privilege is available to a dependent who is no longer within the definition of family under the Certificate.

**2. Benefits after Termination.** When your coverage terminates benefits are available only for the following:

(a) If you are receiving In-Hospital Medical Care at the time of termination, you shall remain covered for the service until you leave the Hospital. If you enter a Hospital within 31 days after termination, you remain covered for this service, as long as you are admitted for a condition that existed at the time of termination.

(b) Surgery and related covered services are covered for 31 days after termination. The condition requiring surgery must have been in existence at the date of termination.

(c) If on the date of termination you are totally disabled as a result of an injury, pregnancy or illness, you remain covered, with respect to that disability only, up to a maximum of 18 additional months. This extension is not available, if coverage is afforded for the total disability under another group plan.  You must be totally disabled as determined by GHI.

If you believe you are totally disabled and entitled to benefits please write to GHI at:

> Group Health Incorporated
> P.O. Box 1701
> New York, NY 10023-9476

## SECTION ELEVEN: Continuation of Coverage

EH-38 PLC-1032E

**1. Continuation of Coverage.** For the purpose of this Section, a Group Member is defined as an employee or retiree to whom coverage is made available. Under Federal law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), continuation of current group benefits may be available after loss of eligibility for coverage. Group Subscribers, their spouses and their dependent children may be eligible for continuation. In order to qualify for continuation of coverage, you must no longer be eligible for health care benefits because of any of the following qualifying events:

(a)  Termination of employment.

(b)  A decrease in benefits due to a reduction in hours of employment.

(c)  Loss of coverage because of a divorce, legal separation, or the death of the Group Member.

(d)  Loss of eligibility for coverage as a dependent of a Group Member.

(e)  Loss of coverage of the spouse and dependents when a covered employee or a covered retiree becomes entitled to Medicare.

(f)  Loss of eligibility for coverage as a covered retiree or covered spouse, dependent, or widow of a retiree whose employer filed for bankruptcy on or after July 1, 1986.

This coverage is available without evidence of insurability. Continuation is not available for certain non-resident aliens. However, these non-resident aliens may be entitled to a continuation of coverage as provided under New York State law. See Paragraph 2 below. If you have a question regarding your status for eligibility to continue coverage under Federal law, kindly contact your group.

Continuation coverage is subject to the following conditions:

(a)  COBRA continuation of coverage is not available if you are covered under Medicare or could be covered under Medicare. COBRA continuation of coverage is also not available if you become covered by another group policy which provides similar benefits, unless that policy contains a pre-existing condition limitation. COBRA continuation of coverage is also not available if the reason for termination of employment was gross misconduct. However, if you were terminated due to gross misconduct you may be entitled to a continuation of coverage as provided under New York State law. See Paragraph 2 below.

(b)  A Group Member, spouse, or dependent child must notify the Plan of a divorce, legal separation, or change in dependent status. This notice must be sent to the Plan within 60 days of the later of either of the following:

(i)   The date of the qualifying event.

(ii)  The date coverage would otherwise be lost.

(c)  You must request continuation of coverage in writing within 60 days of the later of either of the following:

(i)   The date your coverage would otherwise terminate under your group Plan.

(ii)  The date notice of your right to continue coverage is sent to you.

(d)  You must pay your group contract holder 102% of the group rate for continuation of coverage. The required premium includes 2% of the group rate to cover administration costs. If you are disabled and extend coverage from 18 to 29 months, you must pay a different premium for the 19th through 29th month. You must pay your group contract holder 150% of the group rate for the continuation of coverage. This premium may be collected on a monthly basis.

(e)  Your continuation of coverage will terminate on the first of the following dates:

(i)   You become eligible for Medicare.

(ii)  You become covered under another group health care plan as an employee or dependent, unless that plan contains a pre-existing condition limitation and you had a break in coverage of more than 63 days.

(iii) 18 months, if the qualifying event is termination of employment or reduction of hours, unless you are disabled, as determined by Social Security. The 18 months will be measured from the date of the qualifying event. Your Plan may elect to measure the 18 months from the loss of coverage.

(iv) 29 months after termination of employment or reduction of hours if you are disabled. The 29 months will be measured from the date of the qualifying event. Your plan may elect to measure the 29 months from the loss of coverage. You must be disabled as determined by Social Security. You must be disabled on the date of termination of employment or reduction of hours or

PLC-1032E

EH-39

become disabled within 60 days of termination of employment. You must notify your Plan of Social Security's determination of your disability. The notice must be provided within sixty (60) days of Social Security's determination and before the end of the 18-month continuation period. If Social Security determines that you are no longer disabled, you must notify the plan administrator of this. You must notify the plan administrator of this within thirty (30) days from Social Security's final determination. If you are no longer disabled, COBRA continuation coverage may terminate earlier than 29 months.

(v)  36 months for all other qualifying events. The 36 months will be measured from the date of the qualifying event. You may elect to measure the 36 months from the loss of coverage.

(vi) The end of the period for which you made premium payments, if you fail to make timely payment of the required premium.

(vii) The date on which your group plan terminates coverage with GHI. However, if the group plan is replaced by the group contract holder with similar coverage, you have the right to become covered under the other coverage for the balance of the period that you would have remained covered thereunder.

An 18-month period of continuation may be extended to a 36-month period if a second qualifying event occurs during the 18-month period. The second qualifying event must be of the type that would allow the covered Group Member or his or her dependents to continue coverage for 36 months. The 36-month period in this case will be measured from the first qualifying event. Your Plan may elect to calculate your period of continuation coverage from the date of loss of coverage instead of the date of the qualifying event. Contact your group to determine whether the group has elected this option. This option is not available if the loss of coverage occurs because a covered employee becomes entitled to Medicare. In such a case, the period of continuation coverage for the spouse and dependents begin on the date the covered employee becomes entitled to Medicare.

When your continued coverage terminates you may purchase a direct payment conversion contract from GHI. (See Section Twelve.)

## 2. Continuation of Coverage under New York State Law.

**2. Continuation of Coverage under New York State Law.** There are cases where you may lose eligibility for coverage under this Certificate but not be eligible for continuation of coverage under Federal law. If the loss of eligibility is due to termination of employment or loss of membership in the class or classes eligible for coverage, you may be entitled to continued coverage under New York State law. Continued coverage is available without evidence of insurability. If continuation is available to the Group Member under Federal law, then the New York State continuation law does not apply. The New York State law does not apply if you become eligible for coverage under Medicare or another group health policy.

The following criteria apply to New York State continuation of coverage:

(a)  Continuation of coverage is not available if you are covered under Medicare or could be covered under Medicare. Continuation of coverage is also not available if you become covered or could be covered by another group policy which provides similar benefits, unless this policy contains a pre-existing condition limitation.

(b)  You must request continuation of coverage in writing and submit your first premium payment within 60 days of the later of either of the following:

(i)  The date your coverage would otherwise terminate under your group Plan.

(ii) The date notice of your right to continue coverage is provided to you.

(c)  You must pay your group contract holder 102% of the group rate for continuation of coverage.

(d)  Your continuation of coverage will terminate on the first of the following dates:

(i)  You become eligible for Medicare.

(ii) You become covered under another group health care plan as an employee or dependent, unless that plan contains a pre-existing condition limitation.

(iii) 18 months, if the qualifying event is termination of employment or membership in the class or classes eligible for coverage.

(iv) 29 months after termination of employment or membership in the class or classes eligible for coverage if you are disabled. The 29 months will be measured from the date coverage would otherwise be lost. You must be disabled as determined by Social Security. You must be disabled on the date of termination of employment or membership. You must notify your Plan of Social Security's

determination of your disability. If you are no longer disabled, continuation coverage will terminate on the later of the following:

- • 18 months from the date coverage would otherwise be lost.
- • The month that begins more than 31 days after Social Security determines that you are no longer disabled.

(v) 36 months if you are an eligible dependent who will otherwise lose coverage due to the death of the Group Member, divorce, legal separation, change in dependent status or the Group Member becoming eligible for Medicare. The 36 months will be measured from the date coverage would otherwise be lost.

(vi) The end of the period for which you made premium payments, if you fail to make timely payment of the required premium.

(vii) The date on which your group plan terminates coverage with GHI. However, if the group plan is replaced by the group contract holder with similar coverage, you have the right to become covered under the other coverage for the balance of the period that you would have remained covered thereunder. The replacement plan must provide at least the same level of benefits provided by the prior group plan, reduced by any benefits payable under that plan. The prior group plan must provide benefits to the extent of its accrued liabilities and extension of benefits.

When your continued coverage terminates, you may purchase a direct payment conversion contract from GHI. (See Section Twelve).

**3. Special Provisions for Members of the Armed Forces on Active Duty.** If the Group Member is a member of a reserve component of the armed forces of the United States, including the National Guard, and on active duty, you may be entitled to:

(a) supplementary continuation of current group benefits under New York State law and conversion to a direct payment contract from GHI upon termination of continued coverage (See Paragraph B below); or

(b) suspension of coverage during the period of active duty. (See Paragraph D below).

**A. Eligibility.** In order to be eligible for the rights set forth in this Paragraph 3, the Group must not voluntarily maintain coverage for the Group Member during the period of active duty. Also, the Group Member must have:

(a) Voluntarily or involuntarily entered active duty (other than to determine physical fitness or for training); or

(b) Had his or her active duty voluntarily or involuntarily extended. This must occur during a period when the President of the United States is authorized to order units of the ready reserve or member of a reserve component to active duty. The extended active duty must be at the request and for the convenience of the federal government; and;

(c) Served no more than four years of active duty.

**B. Supplementary Continuation of Coverage.** If your group does not voluntarily maintain coverage for the Group Member during the period of active duty, you are eligible for supplementary continuation of coverage under the group contract. This supplementary continuation of coverage is available without evidence of insurability.

You must apply for supplementary continuation within 60 days of being ordered to active duty. You must pay 100% of the group premium on a monthly basis.

Continuation of coverage is not available if you are covered under Medicare or could be covered under Medicare. It is also not available if you become covered by another group policy. Supplementary continuation of coverage will be terminated when the Group Member returns to civilian status. In certain circumstances, supplementary continuation may terminate earlier. Continuation of coverage will terminate earlier on the first of the following dates:

(i) You become eligible for Medicare.

(ii) You become covered under another group health care plan as an employee or dependent.

(iii) The end of the period for which you made premium payments, if you fail to make timely payment of the required premium.

(iv) The date on which the group plan terminates coverage with GHI. However, if your group replaces the Group Contract with similar coverage, you have the right to become covered under that other coverage for the balance of the period that you would have remained covered thereunder.

(v) The Group Member has served four years of active duty.

If the Group Member dies while on active duty, supplementary continuation of coverage will terminate for the surviving spouse and covered dependents of the Group Member. In the event of divorce or annulment of the marriage to the Group Member, supplementary continuation of coverage will terminate for the former spouse. In these circumstances, the former spouse and the surviving spouse and covered dependents are eligible for conversion. (See Paragraph C below).

When the Group Member returns to civilian status and he or she is reemployed or restored to participation in the group, coverage under the group plan will be resumed. Supplementary continuation of coverage will terminate on the date that coverage under the group plan becomes effective. Coverage will not be subject to limitations, conditions, exclusions or waiting periods unless:

(a)  a waiting period was imposed and had not been completed prior to the period of suspension; or

(b)  the Group Member's condition arose during the period of active duty and was incurred in the line of duty.

When the Group Member returns from active duty and does not become reemployed or restored to participation in the group, the Group Member may be entitled to:

(a)  continue coverage under New York State Law and purchase a direct payment conversion contract from GHI upon termination of continued coverage (See Paragraph 2 of this Section); or

(b)  purchase a direct payment conversion contract from GHI. (See Section Twelve).

## C. Conversion.

**1. Availability.** When your supplementary continuation of coverage terminates, you may purchase a direct payment contract from GHI. Conversion is available to the former spouse of a Group Member upon divorce or annulment of the marriage of the Group Member. The divorce or annulment must have occurred while the Group Member was on active duty. In addition, conversion is available to the surviving spouse and other dependents covered under the contract upon the death of the Group Member. The death must have occurred during the Group Member's active duty. Conversion is also available to a dependent who is no longer within the definition of family under the contract while the Group Member is on active duty.

**2. When to Apply for the New Conversion Contract.** You must apply for the new contract within 31 days of the later of the following:

(i)  the date the Group Member's active duty terminated; or

(ii)  the date the Group Member is discharged from the Hospital. The hospitalization must have resulted from active duty. It cannot exceed one year.

Payment of the first premium must be made at the time you apply for the direct payment contract.

**D. Suspension of Coverage.** If the group does not voluntarily maintain coverage for the Group Member and you do not continue your group benefits, your coverage will be suspended during the period of active duty. When the Group Member returns to participation in the group plan, coverage under the group plan will be resumed. Coverage will be retroactive to the date active duty terminated. Coverage will not be subject to limitations, conditions, exclusions or waiting periods unless:

(a)  a waiting period was imposed and had not beencompleted prior to the period of suspension; or

(b)  the Group Member's condition arose during the period of active duty and was incurred in the line of duty.

If the Group Member returns from active duty and does not become reemployed or restored to participation in the group, the Group Member may be entitled to:

(a)  continue coverage under New York State Law and purchase a direct payment conversion contract from GHI upon termination of continued coverage (See Paragraph 2 of this Section); or

(b)  purchase a direct payment conversion contract from GHI. (See Section Twelve).

**4. Questions.** The laws regarding continuation of benefits are complicated. If your coverage under this Certificate is terminating, you should contact your Group if you are interested in continuing your benefits.

EH-42 PLC-1032E

## SECTION TWELVE: Direct Payment Conversion

If your coverage terminates because of loss of eligibility or termination of the Group Contract, you may purchase a direct payment contract from GHI. The conversion privilege is available to the former spouse of a member upon divorce or annulment of the marriage of the member. The conversion privilege is available to the surviving spouse and other dependents covered under the Certificate upon the death of the member. The conversion privilege is available to a dependent who is no longer within the definition of family under the Certificate.

**1. When to Apply for the New Contract.** You may apply to GHI for a direct payment contract. If you are an employee and your coverage terminates, you should receive written notice from GHI which informs you of your right to purchase a direct payment contract. You must apply for the new contract within 45 days receipt of notice. However, if you do not receive a notice at all, you must apply for direct payment within 90 days after your coverage terminated. If you are a dependent and your coverage terminates because you no longer qualify under this Plan as a dependent, you will not receive a written notice. You must apply for the direct payment contract within 90 days from the date your coverage terminated. Payment of the first premium must be made at the time you apply for the direct payment contract.

**2. The New Contract.** The direct payment contract you receive will be the GHI Standard Conversion Contract issued to direct payment subscribers. That Contract contains benefits which are different from those listed herein. GHI will issue you a direct payment contract then being offered on a direct payment basis which provides benefits most nearly comparable to the benefits of this Plan.

## SECTION THIRTEEN: Miscellaneous Provisions

**1. No Assignment.** You cannot assign any benefits or monies due from GHI to any person, corporation or other organization. Any assignment by you will be void. Assignment means the transfer to another person or organization of your right to the services provided or your right to collect from GHI for those services.

**2. Your Medical Records.** In order to process your claims it may be necessary for GHI to obtain your medical records and information from hospitals, skilled nursing facilities, doctors, pharmacists or other practitioners who treated you. When you become covered you give GHI permission to obtain and use these records. The information will be kept confidential.

**3. Recovery of Overpayments.** If GHI pays benefits under this Plan for services incurred on your account and it is found that GHI paid more benefits than should have been paid because you were: (a) not covered; (b) the services were not covered; (c) payment was in an amount greater than that to which you are entitled under this Plan; or (d) payment was in an amount greater than that to which you are entitled because you were repaid for all or some of those expenses by another source; then GHI will have the right to a refund from you. You must return the amount of the overpayment within 60 days of GHI's request.

**4. Right to Develop Guidelines.** GHI reserves the right to develop or adopt standards and criteria which set forth in more detail the circumstances under which it will make payment.

**5. Lawsuits.** A lawsuit against GHI regarding this Certificate or Group Contract must be started within two years from the date you received the medical or hospital service for which you want GHI to pay.

**6. Suits against GHI for Actions of Others.** You cannot sue GHI for the actions of any person or organization which renders covered medical or hospital services to you.

**7. New York Law.** This Contract is in all respects governed by the laws of New York State.

**8. Patient's Relationship with the Provider.** Nothing in this certificate shall force a Provider to accept you as a patient. This Certificate is not meant to change the normal relationship between the provider and patient. At all times the provider's usual rules will govern the service provided to the patient. GHI cannot guarantee receipt of any particular service or accommodation.

**9. Who Receives Payment Under this Plan.** Payments for covered services rendered by a Participating Provider will be made directly to that Provider. If you receive covered services from a non- participating Provider GHI reserves the right to pay you or the non-participating Provider.

**10. Authorization for Medicare Carriers to Submit Medical Information to GHI for Payment of Supplemental and Complementary Benefits.** When you become covered under this plan, you authorize the parties listed below to provide medical information to GHI or its designee.

PLC-1032E

EH-43

a. Health Care Financing Administration.

b. Medicare intermediaries.

c. Medicare carriers.

GHI must receive this information in order to:

a. process Medicare related claims; and

b. provide benefits.

These terms remain in effect until all Medicare related claims incurred by you are processed.

## SECTION FOURTEEN: Medicare Eligible Coverage

**1. General.** Your coverage under GHI/CBP changes when you become eligible for Medicare.

**A. Medicare Eligible Members.** If you or any of your covered dependents are eligible for Medicare, you must enroll in Medicare (both Part A and Part B) to avoid a reduction in your benefits. If you are not eligible for Medicare this Section does not affect your benefits, as listed in this booklet. If you are eligible for Medicare by reason of age, you will receive only those benefits listed in this Section Fourteen. If you are eligible for Medicare by reason of disability, Medicare is your primary carrier. GHI is your secondary carrier and will coordinate your benefits with those provided by Medicare. However, if your are an active employee or the spouse of an active employee the special rules listed in Paragraph (B) apply to you.

**B. Special Rules for Active Employees.** If you are an active employee, regardless of your age, coverage for yourself and your dependents is provided under GHI/CBP as your primary plan. Medicare is your secondary plan. See Paragraph C below for special rules for subscribers with End Stage Renal Disease.

**C. Special Provisions for Those with End-Stage Renal Disease.** If you are disabled due to end-stage renal disease, your benefits for covered services incurred due to that disease will be paid as follows:

(a) During the first eighteen months during which you incur covered services for renal disease your benefits will be paid as follows:

(i) This Plan will be the Primary Payor, subject to Coordination of Benefits provisions of this Certificate.

(ii) Medicare will be a Secondary Payor.

(b) After the first eighteen months during which you incurred covered for renal disease your benefits will be paid as follows:

(i) Medicare will be the Primary Payor of benefits and will pay the benefits available under Medicare.

(ii) This Plan will be a Secondary Plan subject to the Coordination of Benefits provisions of this Certificate. Benefits will be paid only to the extent that benefits are not paid under Medicare. Payments will be made consistent with this Section Fourteen.

**2. Benefits and Limitations.**

**A. Covered Services.** If you receive any of the services listed below, GHI will pay 20% of the reasonable charge as determined by Medicare, after Medicare has paid 80% of the reasonable charge. You are not covered for the Medicare Part B (medical) deductible. After the deductible has been met, Medicare will pay 80% of the reasonable charge of your covered service. GHI will pay the 20% balance. In certain instances, by operation of law, Medicare may reduce its payment below 80% of the Medicare reasonable charge. If this occurs, GHI will continue to reimburse you 20% of the Medicare reasonable charge. As a result, the total combined reimbursement by Medicare and GHI may be less than 100% of the Medicare reasonable charge. Charges in excess of the reasonable and customary standard set by Medicare are not covered. These charges are your responsibility. You must first file for your Medicare benefits before filing for your GHI benefits. When filing a GHI claim, please attach the Explanation of Medicare Benefits form to your GHI Claim Form. You are subject to the same standards of coverage listed throughout this booklet. Please note that if you receive covered services from a Provider who accepts Medicare assignment or who participates with GHI, GHI will reimburse the Provider directly.

The following services are covered:

EH-44 PLC-1032E

(1) Home and Office Visits (except for Chiropractic care).

(2) Surgery, Assistant Surgery, and the Administration of Anesthesia.

(3) Dental Surgery.

(4) Maternity Care.

(5) In-Hospital Medical Care.

(6) Radiation Therapy and Chemotherapy.

(7) Specialist Consultation.

(8) Diagnostic Procedures, X-ray examinations and Laboratory Tests.

(9) Shock Therapy.

(10) Intermittent Nurse Service is your home (visiting nurse service).

Please note that routine foot care and psychiatric services are not covered. GHI does not provide coverage in those instances where Medicare denies coverage, except for services rendered outside of the United States of America.

**B. Additional Covered Services.** You are covered for the services listed below. You are subject to a $25 annual deductible per contract (individual or family). Thereafter, GHI will pay 80% of the Allowed Charge for private duty professional nursing service. After the deductible is met, GHI will pay 20% of the Medicare approved amount for ambulance service, durable medical equipment and oxygen. There is no lifetime maximum. However, no more than $2,500 is payable in any calendar year for the services listed below. GHI will not duplicate payments made by Medicare for any of these services.

The following services are covered under this Paragraph "B":

(1) Ambulance Service.

(2) Private Duty Professional Nursing Service.

(3) Durable Medical Equipment and Oxygen.

**C. Second Surgical Consultation Program.** You are eligible for the benefits listed in Section Six, Second Surgical Consultation Program. However, the requirement of NYC HEALTHLINE are not applicable.

**D. Optional Rider.** You are eligible to sign up for the benefits listed in the Optional Benefits Rider for Medicare Eligibles.

**E. When Medicare Benefits are Not Available.** Medicare does not cover services rendered outside the country. GHI covers you for these services to the same extent as if you were not eligible for Medicare. Payments will be made for services listed as covered in this booklet.

**F. Standards of Coverage, Limitation and Exclusions.** The standards of coverage, limitations and exclusions listed in this booklet apply to all benefits.

## Optional Rider for Medicare Eligible Subscribers Covered Under Section Fourteen

**1. General Information.** This Rider is available to you through payroll or pension deduction. If you have elected to purchase this Rider, you are entitled to the additional benefits listed in this Rider. Your Union Welfare Fund may provide like or similar benefits. When that is the case, the benefits provided by your Welfare Fund will be covered only through your welfare fund and not under the Rider. Appropriate adjustments will be made to your pension deduction.

In determining what are like or similar benefits, GHI will be guided by the determination made by the City of New York Employee Benefits Program.

**2. Hospitalization.** This benefit increases your Blue Cross coverage to 365 days of full coverage. See Blue Cross booklet for details.

**3. GHI Prescription Drug Coverage.**

(a) **Covered Items.** You are covered for drugs which by law require a written prescription. The drugs must be dispensed by a licensed registered pharmacist. A Provider must have written the prescription. That Provider must be legally authorized to write the prescription. Payment will be made only when the drug is prescribed for your use. In addition to covered prescription drugs, you are covered for nutritional supplements for the therapeutic treatment of a condition set forth below.

   (i)   Phenylketonuria.

   (ii)  Branched chain ketonuria.

   (iii) Galactosemia.

   (iv)  Homocystinuria.

In order to be covered, the supplement must be written on a prescription and administered under the direction of a physician.

(b) **Acute Prescription Drug Coverage.** You are subject to a prescription drug deductible of $150 per person, per calendar year up to a maximum of $450 per family. A yearly maximum of $2,500 applies to this benefit. Benefits under this paragraph will vary depending upon whether you use a GHI Participating PAID Pharmacy or any other pharmacy.

   (i)  **Prescription Drugs Obtained at a GHI Participating PAID Pharmacy.** If you use a GHI Participating PAID pharmacy, you must present your PAID Prescriptions I.D. Card at the time of purchase. The pharmacy will fill your prescription and credit the amount paid towards the deductible and/or charge the appropriate coinsurance. After you have met your deductible, the pharmacy will be reimbursed directly at 80% of the Allowed Charge for a generic drug or a brand name drug which does not have a generic substitute. The pharmacy will be reimbursed at 60% of the Allowed Charge for a brand name drug if a generic substitute exists. You must pay the difference between the payment made to the pharmacy and the pharmacy's charge to you. If you do not present your PAID Prescriptions I.D. Card at the time of purchase, you must pay the full cost of the prescription. You will be paid as if you had gone to any other pharmacy. (See below.) Information on the location of GHI Participating PAID Pharmacies may be obtained by calling PAID Prescriptions at 1-800-272-PAID.

   (ii) **Prescription Drugs Obtained at a Pharmacy that is not a GHI Participating PAID Pharmacy.** If you use a pharmacy that is not a GHI Participating PAID Pharmacy, you must pay the full cost of the prescription. You must obtain a receipt for your purchase. You must submit a claim form. You may obtain a claim form by calling 1-800-272-PAID. Send your completed claim forms to: PAID Prescriptions, Inc. P.O. Box 6121, Fairlawn, New Jersey 07410-0999. The claim form **must** be completed by the pharmacist. Prescription receipts alone will not be accepted. After you meet the deductible, you will be reimbursed directly at 80% of the Allowed Charge for the drug. However, you will only be reimbursed at 60% of the Allowed Charge for a brand name if a generic substitute is available.

(c) **Maintenance Drug Program.** Your benefits include coverage under a Maintenance Drug Program. This Program is available only through NRx Services Inc. (NRx). A maintenance drug is one that is prescribed for a chronic condition that requires constant medication. Certain conditions require the use of prescription drugs on a day-to-day, year-round basis. The Maintenance Drug Program permits long-term prescriptions to be filled. Under this Program you may receive a supply of up to 60 consecutive days. The Program saves you time. It will also reduce paperwork. There is no need to file a claim form. When you become covered under this Program, you will receive information about how to obtain a maintenance drug. There is a $8 Co-pay Charge for generic drugs obtained through the Maintenance Drug Program.  A generic drug is a drug that is marketed under its non-proprietary name after expiration of the patent of a brand name drug. You are subject to a $15 Co-pay Charge for a brand name drug. To take part in the Program, ask your doctor if a maintenance quantity is suitable for you. If so, have a doctor specify the maintenance quantity of the drug to be dispensed. For example, one per day (60 doses), two per day (120 doses). Remember, prescriptions should always be sent to NRx and never to GHI. You may contact NRx at 1-800-445-9707.

(d) **Diabetes Management.** You are covered for the items set forth below in connection with diabetes management.

   (i)   Insulin.

   (ii)  Needles and Syringes.

   (iii) Oral agents for controlling blood sugar.

Coverage of these items may vary. It will depend upon whether you receive these items from a GHI Participating PAID Pharmacy or any other pharmacy. Coverage for these items is not subject to a deductible. These items are also not subject to a maximum.

(i) GHI Participating PAID Pharmacies. When the items listed are obtained through a GHI Participating PAID Pharmacy, they are covered subject to the lesser of:

- a $5 Co-pay Charge; or

- the applicable percent coinsurance or Co-pay Charge for other prescription drugs.

You must present your PAID Prescriptions I.D. card at the time of purchase. If you do not present your PAID Prescriptions I.D. card at the time of purchase, you must pay the full cost of the prescription. You will be paid as if you had gone to any other pharmacy. (See below).

(ii) **Pharmacies that are not GHI Participating PAID Pharmacies.** If you obtain the items listed above from a pharmacy that is not a GHI Participating PAID Pharmacy, you must pay the full cost of the prescription. You must obtain a receipt for your purchase. You must submit a claim form. You will be paid directly. You will be paid the amount that would have been paid to a GHI Participating PAID Pharmacy. You must pay any difference between the payment and the pharmacy's charge to you.

(e) **Items Not Covered.** You are not covered for the following:

(1) Over-the-counter drugs which can be purchased without prescription, except insulin.

(2) Over-the-counter vitamins, minerals or food supplements, except as specifically provided above.

(3) Drugs dispensed while you are a bed patient in a hospital or other institution or dispensed while you are receiving covered Home Health Care by or on behalf of a certified home health agency.

# SECTION FIFTEEN: Catastrophic Coverage

**Benefits.** In the event that you receive any of the covered services described below rendered by a Non-Participating Provider and incur out-of-pocket expenses in a calendar year of more than the catastrophic deductibles, GHI will then pay the catastrophic benefit.

(a) **Covered Services.** Covered services under Catastrophic Coverage include:

(i) Surgery.

(ii) Administration of Anesthesia.

(iii) Chemotherapy and Radiation Therapy.

(iv) Covered In-hospital Services.

(v) Maternity.

(b) **Catastrophic Deductible.** Benefits under this coverage do not begin until you incur, during a calendar year, more than $3,000 in out-of-pocket expenses. Out-of-pocket expenses are calculated based only upon the Allowed Charge for covered services.

(c) **Catastrophic Benefit.** After the $3,000 catastrophic deductible has been met, the benefits for the Covered Services set forth above are payable at 100% of the Allowed Charge. A $200,000 annual maximum applies for all services covered under this Certificate.

(d) **Formula.** The catastrophic coverage benefit may best be understood by the formula set forth below.

**Allowed Charge for Covered Catastrophic Services**

MINUS

**All payments for Covered Catastrophic Services**

MINUS

**$3,000 Catastrophic Deductible**

EQUALS

**Catastrophic Benefit Payment**

# Optional Rider for Active Employees and Non-Medicare Eligible Retirees

**1. General Information.** This Rider is available to you through payroll or pension deductions. If you have elected to purchase this Rider, you are entitled to the benefits listed in this Rider. Your Union Welfare Fund may provide like or similar benefits. If this is the case, the benefits provided by your Welfare Fund will be covered only through your Welfare Fund and not under this Rider. Appropriate adjustments

will be made to your payroll or pension deductions.

In determining what are like or similar benefits, GHI willbe guided by the determination made by the City of New York Employee Benefits Program.

**2. Benefits.** Election of the Optional Rider entitles you to the benefits set forth below.

(a) **Enhanced Non-Participating Provider Reimbursement Schedule.** The amount you are reimbursed for services rendered by non-participating provider is enhanced for the following services:

(i) Surgery.

(ii) Administration of Anesthesia

(iii) In-hospital medical services.

(iv) Maternity.

The enhanced schedule for covered services is in aggregate approximately 165% of the New York City Non-Participating Provider Schedule.

(b) **Psychiatric Care and Chemical Dependency**. You are covered for the benefits set forth below. These benefits are provided through the GHI Behavioral Management Program (BMP). You must call the Clinical Referral Line prior to receiving covered services. The telephone number is 1-800-NYC-CITY. BMP Participating Providers must pre-certify covered services. You must pre-certify care rendered by non-participating providers. To pre-certify care, you must call the Clinical Referral Line prior to receiving services.

1. **Outpatient Mental Health Benefits.** You are covered for outpatient psychiatric care. The care may be rendered by a Participating or non-participating Provider. GHI's payments will not vary. However, if you use a Participating Provider, you are covered for charges in excess of your basic outpatient psychiatric benefits.

GHI will pay 50% of the Plan's Allowances for each covered visit. There is a maximum payment of $30 for each visit. This maximum applies to individual and group visits. There is an overall maximum of $900 per person in each calendar year. Each covered individual is subject to a lifetime maximum of $1,800. You must pay any difference between the Provider's charge and GHI's payment.

Psychiatric care is defined as the diagnosis or treatment of mental, nervous, or emotional disorders and ailments. In determining what is and what is not a disorder or ailment, the BMP will be guided by the American Psychiatric Association's Diagnosis and Statistical Manual of Mental Disorders, Third Edition, Revised. In order to be covered the service must be rendered by one of the following Providers:

(i) A physician.

(ii) A registered or certified psychologist.

(iii) A certified social worker. The social worker must be qualified as a Provider for third-party reimbursement under the laws of New York State. He or she must have six years of post-Master Degree supervised psychotherapy experience. The service may be rendered in a clinic, psychiatric center or hospital outpatient department. If that is the case, payment will not be made unless the service is rendered by one of the Providers listed above. Services which are merely supervised or directed by one of the above Provider's are never covered. Regardless of the diagnosis or symptoms present, you are not covered for out-of-hospital psychiatric care which may be used for or credited to:

• the earning of a degree.

• the furtherance of one's education or training.

2. **Chemical Dependency Benefits.** You are covered for the inpatient treatment of alcoholism and substance abuse. Care must be rendered in an approved facility.The amount of GHI's payment will vary. It depends on whether you receive treatment in a participating or non-participating Facility.

• **Participating Facility.** You are covered for an additional 30 days of active treatment in each calendar year. Your coverage includes benefits for detoxification and rehabilitation care. This is in addition to the 30 days provided under the basic plan.

EH-48 PLC-1032E

There is no lifetime limit. Payment will be made in full for covered services. The facility must pre-certify your care. You will not have to make any payments.

- **Non-Participating Facility**. You are covered for up to 30 days for rehabilitation care. This is a lifetime limit. GHI will pay 75% of the average payment it makes to a Participating facility for the type of care you receive. After you have paid $1,000 in coinsurance expenses per admission, GHI will pay you at 100% of the average payment it makes to a Participating Facility for covered services. You must pay any difference between the Facility's charge and GHI's payment. You must pre-certify your care. To pre-certify, call the Clinical Referral Line. Care that is not pre-certified is subject to a $500 penalty. This is in addition to the coinsurance charge. In no event, however, will the penalty exceed 50% of the benefit otherwise payable.

(c) **Prescription Drugs.**

(i) Covered Items. You are covered for drugs which by law require a written prescription. The drugs must be dispensed by a registered licensed pharmacist. A Provider must have written the prescription. That Provider must be legally authorized to write the prescription. Payment will be made only when the drug is prescribed for your use. Insulin is covered whether or not it is dispensed by a written prescription.

In addition to covered prescription drugs, you are covered for nutritional supplements for the therapeutic treatment of a condition set forth below.

- Phenylketonuria.
- Branched chain ketonuria.
- Galactosemia.
- Homocystinuria.

In order to be covered, the supplement must be administered under the direction of a physician.

(ii) Acute Prescription Drug Coverage. You are subject to a prescription drug deductible of $150 per person, per calendar year up to a maximum of $450 per family. Benefits under this paragraph will vary depending upon whether you use a GHI Participating PAID Pharmacy or any other pharmacy.

1. **Prescription Drugs Obtained at a GHI Participating PAID Pharmacy.** If you use a GHI Participating PAID Pharmacy, you must present your PAID Prescriptions I.D. Card at the time of purchase. The pharmacy will fill your prescription and credit the amount paid towards the deductible and/or charge the appropriate coinsurance. After you have met your deductible, the pharmacy will be reimbursed directly at 80% of the Allowed Charge for a generic drug or a brand name drug which has a generic substitute. The pharmacy will be reimbursed at 60% of the Allowed Charge for a brand name drug if a generic substitute exists. You must pay the difference between the payment made to the pharmacy and the pharmacy's charge to you. If you do not present your PAID Prescriptions I.D. Card at the time of purchase, you must pay the full cost of the prescription. You will be paid as if you had gone to any other pharmacy. (See below.) Information on the location of GHI Participating PAID Pharmacies may be obtained by calling PAID Prescriptions at 1-800-272-PAID.

2. **Prescription Drugs Obtained at a Pharmacy that is not a GHI Participating PAID Pharmacy.** If you use a pharmacy that is not a GHI Participating PAID Pharmacy, you must pay the full cost of the prescription. You must obtain a receipt for your purchase. You must submit a claim form. You may obtain a claim form by calling 1-800-272-PAID. Send your completed claim forms to: PAID Prescription, Inc. P.O. Box 6121, Fairlawn, New Jersey 07410-0999. The claim form must be completed by the pharmacist. Prescription receipts alone will not be accepted. After you have meet the deductible, you will be reimbursed directly at 80% of the Allowed Charge for the drug. However, you will be reimbursed at 60% of the Allowed Charge for a brand name if a generic substitute is available.

(iii) **Maintenance Drug Program.** Your benefits include coverage under a Maintenance Drug Program. This Program is available only through NRx Services Inc. (NRx). A maintenance drug is one that is prescribed for a chronic condition that requires constant medication. Certain conditions require the use of prescription drugs on a day-to-day, year-round basis. The Maintenance Drug Program permits long-term prescriptions to be filled. Under this Program you may receive a supply of up to 60 consecutive days. The Program saves you time. It will also reduce paperwork. There is no need to file a claim form. When you become covered

PLC-1032E

EH-49

under this Program, you will receive information about how to obtain a maintenance drug. There is a $8 Co-pay Charge for generic drugs obtained through the Maintenance Drug Program. A generic drug is a drug that is marketed under its non-proprietary name after expiration of the patent of a brand name drug. You are subject to a $15 Co-pay Charge for a brand name drug. To take part in the Program, ask your doctor if a maintenance quantity is suitable for you. If so, have a doctor specify the maintenance quality of the drug to be dispensed. For example, one per day (60 doses), two per day (120 doses). Remember, prescriptions should always be sent to NRx and never to GHI. You may contact NRx at 1-800-445-9707.

(iv) **Diabetes Management.** You are covered for the items set forth below in connection with diabetes management.

    1. Insulin.

    2. Needles and Syringes.

    3. Oral agents for controlling blood sugar.

Coverage of these items may vary. It will depend upon whether you receive these items from a GHI Participating PAID or any other pharmacy. Coverage for these items is not subject to a deductible. These items are also not subject to a maximum.

(a) **GHI Participating PAID Pharmacies.** When the items listed above are obtained through a GHI Participating PAID Pharmacy, they are covered subject to the lesser of:

- a $5 Co-pay Charge; or

- the applicable percent coinsurance or Co-pay Charge for other prescription drugs.

    You must present your PAID Prescriptions I.D. card at the time of purchase. If you do not present your PAID Prescriptions I.D. card at the time of purchase, you must pay the full cost of the prescription. You will be paid as if you had gone to any other pharmacy. (See below.)

(b) **Pharmacies that are not GHI Participating PAID Pharmacies.** If you obtain the items listed above from a pharmacy that is not a GHI Participating PAID Pharmacy, you must pay the full cost of the prescription. You must obtain a receipt for your purchase. You must submit a claim form. You will be paid directly. You will be paid the amount that would have been paid to a GHI Participating PAID Pharmacy. You must pay any difference between the payment and the pharmacy's charge to you.

(c) **Items not Covered.** You are not covered for the following:

    (1) Over-the-counter drugs which can be purchased without prescription, except insulin.

    (2) Over-the-counter vitamins, minerals or food supplements, except as specifically provided above.

    (3) Drugs dispensed while you are a bed patient in a hospital or other institution or dispensed while you are receiving covered Home Health Care by or on behalf of a certified home health agency.

(d) **Hospitalization.** Election of the Optional Rider extends your Blue Cross coverage to 365 days. These benefits are provided by Blue Cross.*

(e) **Dependents to Age 23.** Election of the Optional Rider extends your coverage of full-time unmarried dependent students until the end of the calendar year in which dependent reaches the age of 23.

(f) **Annual Maximum.** Election of the Optional Rider increases your annual calendar year CBP maximum benefit to $400,000 except for private duty nursing care coverage which remains subject to an annual calendar year maximum benefit of $200,000. Payments made towards private duty nursing will continue to count towards the overall annual maximum benefit.

* See your Blue Cross booklet for details.

# SECTION II
# Riders

EH-51

EH-52

**GROUP HEALTH INCORPORATED ("GHI")**

An EmblemHealth Company

55 Water Street
New York, New York 10041



**NEW YORK STATE CONTINUATION OF COVERAGE
AND YOUNG ADULT OPTION COVERAGE**

**GROUP HEALTH INCORPORATED**

This rider amends your GHI Certificate of Insurance as set forth below.

**1.** This rider changes the section of your Certificate entitled "Continuation of Coverage". It deletes the terms contained in the paragraph(s) entitled "Continuation of Coverage under New York State Law" and replaces them with the new terms set forth below.

**Continuation of Coverage under New York State Law.** There are cases where you may lose eligibility for coverage under this Policy, but not be eligible to continue coverage under Federal law. If the loss of eligibility is due to termination of employment or loss of membership in the class(es) eligible for coverage, you may be entitled to continue coverage under New York State law. Continued coverage is available without evidence of insurability. If continuation is available to the Group member under Federal law (COBRA), then the New York State continuation law does not apply. However, if you are eligible for less than thirty-six months (36) months of continuation benefits under Federal law, you may continue coverage under New York State law for up to thirty-six (36) months from the date your continuation of coverage under Federal law began.

The terms set forth below apply to New York State continuation of coverage.

(a) Continuation of coverage is not available if you are covered under Medicare or could be covered under Medicare. It is also not available if you become covered or could be covered by another group policy that provides similar benefits, unless that policy contains a pre-existing condition limitation.

(b) You must make a request to continue coverage in writing and submit your first premium payment within sixty (60) days of the later of the dates set forth below.

  (i) The date your coverage under this plan would otherwise terminate.

  (ii) The date notice of your right to continue coverage is issued to you.

(c) You must pay your group one hundred and two percent (102%) of the group rate to continue coverage.

(d) Your continuation of coverage will terminate on the first of the dates set forth below.

  (i) You become eligible for Medicare.

  (ii) You become covered under another group health care plan as an employee or dependent, unless that plan contains a pre-existing condition limitation.

  (iii) Thirty-six (36) months, if the qualifying event is termination of employment or membership in the class or classes eligible for coverage.

  (iv) Thirty-six (36) months if you are an eligible dependent who will otherwise lose coverage due to the death of the Group Member, divorce, legal separation, change in dependent status or the Group Member becoming eligible for Medicare. The thirty-six (36) months will be measured from the date coverage would otherwise be lost.

  (v) The end of the period for which you made premium payments, if you fail to make timely payment of the required premium.

  (vi) The date that your group terminates coverage with GHI. However, if the group coverage is replaced by the group contract holder with similar coverage, you have the right to become covered under the other coverage for the balance of the period that you would have remained covered hereunder. The replacement plan must provide at least the same level of benefits provided by the prior group plan, reduced by any benefits payable under that plan. The prior group plan must provide benefits to the extent of its accrued liabilities and extension of benefits.

When your New York State continuation of coverage terminates, you may purchase a direct payment conversion contract from GHI. (See the section of your Certificate of Insurance entitled "Direct Payment Conversion.")

**2.** This rider changes the section of your Certificate entitled "Continuation of Coverage". It adds the new terms set forth below to the end of that section. This rider adds the following terms to your Certificate of Insurance.

**New York State Young Adult Option.** If your group provides coverage for dependents under this Policy and has not elected to cover unmarried children through age twenty-nine (29), you have the option to continue coverage of an eligible child under this Policy through age twenty-nine (29) at your own cost and without evidence of insurability while you remain covered under the Group Contract.

To be eligible to continue coverage under this young adult option, your child must be:

- Age twenty-nine (29) or younger;
- Unmarried;
- Not eligible for coverage under any employee health benefit plan, whether insured or self-insured, as an employee or member (except as a COBRA or state continuation of coverage beneficiary);
- Not covered under Medicare; and
- Living, working or residing in New York State or our service area.

The young adult option coverage will be the same coverage that is provided to the parent. You or the young adult must pay the premium rate that applies to individual only coverage under the Group Contract for this coverage. The young adult will be subject to his or her own separate co-pays, deductibles, coinsurance, coinsurance maximum and dollar and benefit maximums, as applicable, and the coverage will be subject to all of the terms and conditions of the Group Contract, including, but not limited to, any pre-existing condition limitation. If the parent's coverage changes, the young adult option coverage will also change in the same manner. A young adult's children are not eligible for coverage under this option.

You or the eligible young adult may request this continuation of coverage from your group in writing at the times set forth below:

- Within sixty (60) days following the date that the dependent would otherwise lose coverage based on reaching the dependent limiting age that applies to this Policy. In such a case, the coverage will be effective on the date that the coverage would have otherwise terminated.
- Within sixty (60) days after meeting the eligibility requirements for this coverage if the dependent's coverage previously terminated. In such a case, coverage will be prospective  no later than thirty (30) days after the request and payment of the first premium.
- During the annual thirty (30) day open enrollment period that applies to your plan. In such a case, coverage will be prospective no later than thirty (30) days after the request and payment of the first premium.
- During the twelve (12) month period following the first renewal, issue or amendment date of the Group Contract on or after September 1, 2009, you or the child may elect prospective coverage through age twenty-nine (29) for a child whose coverage terminated under the terms of the Group Contract prior to that renewal, issue or amendment date. In such a case, coverage will be prospective no later than thirty (30) days after the request and payment of the first premium.

Your written request for this continuation of coverage together with the first premium payment must be given to your group within the time periods described above. Check with your group about how to request and pay for this continuation of coverage. You should pay the required premiums to your group, but not more often than on a monthly basis in advance, by the due date. A thirty (30) day grace period applies to these premium payments.

GHI will give you written notice of the right to continue coverage under the young adult option and the time period in which you must request it at least sixty (60) days before a dependent reaches the normal limiting age when coverage would otherwise terminate.

Young adult option coverage will terminate under this Policy on the earliest of the times set forth below.

- the date the young adult voluntarily terminates the coverage according to the terms of the contract;
- the date the young adult no longer meets the eligibility requirements;
- the end of the period for which premium was paid, if there is a failure to pay premium within the thirty (30) day grace period;
- the date the young adult's parent is no longer covered under the Group Contract (including as a COBRA or state continuation of coverage beneficiary);

- the date the Group Contract is terminated. (Note that if the group coverage is replaced by another group policy, then the young adult may be eligible to continue coverage under that new policy.)

3. Except as specifically provided otherwise in this rider, all other terms, conditions, limitations and exclusions of your Certificate of Insurance apply.

# GROUP HEALTH INCORPORATED ("GHI")

An EmblemHealth Company

55 Water Street
New York, New York 10041



## PATIENT PROTECTION AND AFFORDABLE CARE ACT
## GRANDFATHERED PLAN RIDER

### GROUP HEALTH INCORPORATED

This Rider changes provisions in, or adds provisions to, your Certificate of Insurance, including any affected riders, endorsements or other amendments thereto, (hereinafter collectively "Policy) issued by Group Health Incorporated as required by the federal Patient Protection and Affordable Care Act. Except as otherwise provided in this Rider, the provisions herein apply to all persons covered under the Policy ("Members"). All of the terms, conditions, and limitations of the Policy to which this Rider is attached also apply to this Rider, except where they are specifically changed by this Rider. This Rider shall take effect on your Policy renewal date on or after September 23, 2010.

1. **Grandfathered Plan**. We believe this Policy is a "grandfathered health plan" under the Patient Protection and Affordable Care Act (the Affordable Care Act). As permitted by the Affordable Care Act, a grandfathered health plan can preserve certain basic health coverage that was already in effect when that law was enacted. Being a grandfathered health plan means that this Policy may not include certain consumer protections of the Affordable Care Act that apply to other plans, for example, the requirement for the provision of preventive health services without any cost sharing. However, grandfathered health plans must comply with certain other consumer protections in the Affordable Care Act, for example, the elimination of lifetime limits on benefits.

   Questions regarding which protections apply and which protections do not apply to a grandfathered health plan and what might cause a plan to change from grandfathered health plan status can be directed to Customer Service by calling **(212) 501-4444** or visiting our Web site at **www.emblemhealth.com**. You may also contact the U.S. Department of Health and Human Services at **www.healthreform.gov**. Your group must notify us if the group or the plan sponsor changes the premium contribution rate that applies to your coverage under this Policy at any point during the plan year.

2. **Annual Limits**. Any annual dollar limit under the Policy that applies to Essential Benefits, whether such annual limit applies only to a covered Essential Benefit or includes covered Essential Benefits and other covered services, is hereby deleted. "Essential Benefits" include ambulatory care; emergency services; hospitalization; maternity and newborn care; mental health and substance use disorder services, including behavioral health treatment; prescription drugs; rehabilitative and habilitative care; laboratory services; preventive and wellness services and chronic disease management; pediatric services including oral and vision care; and any other services set forth in regulations issued pursuant to the Patient Protection and Affordable Care Act. Not all Essential Benefits may be covered under your Contract and/or Certificate. Only the Essential Benefits listed as covered services in your Contract or Certificate are covered. Note that annual dollar limits may remain in effect for specific covered services other than Essential Benefits. Also, if you have prescription drug coverage and you have a separate annual dollar limit on certain covered items that are not prescription drugs, such as enteral formulas and modified solid food products, that annual dollar limit will continue to apply.

3. **Pre-Existing Conditions**. Under this Rider, the provision, if any, in the Policy that allows us to exclude or otherwise limit coverage for Pre-Existing Conditions until a Member has been continuously covered under the Policy for a stated period is hereby deleted in its entirety with respect to all Members under the age of 19.

4. **Lifetime Dollar Limits Deleted**. Any lifetime dollar limit under the Policy that applies to Essential Benefits, whether such lifetime limit applies only to an Essential Benefit or includes covered Essential Benefits and other covered services, is hereby deleted in its entirety. "Essential Benefits" include ambulatory care; emergency services; hospitalization; maternity and newborn care; mental health and substance use disorder services, including behavioral health treatment; prescription drugs; rehabilitative and habilitative care; laboratory services; preventive and wellness services and chronic disease management; pediatric services, including oral and vision care; and any other services set forth in regulations issued pursuant to the Patient Protection and Affordable Care Act. Not all Essential Benefits may be covered under your Certificate. Only the Essential Benefits listed as covered services in your Certificate are covered. Note that lifetime dollar limits for specific covered services other than Essential Benefits remain in effect.

5. **Dependent Children Covered to Age 26**. If the Policy makes coverage of dependents available, this Rider applies to coverage of children as follows:

   A. If you selected other than individual coverage, your children who are under the age of 26 may be covered under the Policy. Coverage lasts until the end of the month in which the child turns 26 years of age. Your children need not be financially dependent upon you for support or claimed as dependents on your tax return; residents of your household; enrolled as students; or unmarried. Children-in-law (spouses of children) and grandchildren are not covered under this Rider. If your children are eligible for employer-sponsored coverage on their own, then they are not eligible for dependent coverage to age 26. Coverage for these children ceases on the date otherwise specified under the Policy.

HCR-GF-2010

EH-58

Coverage for Your child who is incapable of self-sustaining employment by reason of mental illness, developmental disability, mental retardation, or physical handicap and who became so incapable prior to attaining age 26 shall not terminate while your coverage remains in effect and the child remains in such condition, if You submit proof of Your child's incapacity within 31 days of Your child's attaining age 26. You must periodically submit proof of your child's continued incapacity upon our request.

B.  "Children" include your natural children, a legally adopted child; a step child; and a child for whom you are the proposed adoptive parent and who is dependent upon you during the waiting period prior to the adoption period.  Coverage lasts until the end of the month in which the child turns 26 years of age.

C.  A child chiefly dependent upon you for support and for whom you have been appointed the legal guardian by court order is covered. Coverage lasts until the end of the month in which the child turns 26 years of age.

D.  Coverage shall be provided for any unmarried dependent child, regardless of age, who is incapable of self-sustaining employment because of mental retardation, mental illness, or developmental disability as defined in the New York Mental Hygiene Law, or because of physical handicap and who became so incapable prior to attainment of the age at which dependent coverage would otherwise terminate.

E.  The provisions of any Rider to the Policy that extends coverage for young adults through age 29 (for example, the provision requiring that the child be unmarried) shall remain in effect for children ages 26 through 29 and are not changed by provisions set forth above in this Paragraph 5 that apply to children under the age of 26.

6.  **Rescission**.  We may rescind your coverage if you or your group commit fraud or make an intentional misrepresentation of material fact.  We will give you 30 days notice before we rescind your coverage.

7.  **Other Provisions**.  All of the terms, conditions, and limitations of the Policy to which this Rider is attached also apply to this Rider, except where they are specifically changed by this Rider.

EH-59

HCR-GF-2010

EH-60

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER
AMENDING COVERAGE FOR DENTAL/DENTAL-RELATED BENEFITS**

**GROUP HEALTH INCORPORATED**

This rider amends your Contract or Certificate.  It amends the section that is entitled "Covered Medical Services."  It amends the paragraph entitled "Dental/Dental Related Benefits".  It adds the following new subparagraph:

"(g)      Dental care or treatment necessary due to congenital disease or anomaly."

All other terms and conditions of your Contract or Certificate apply.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER FOR
CITY OF NEW YORK EMPLOYEES AND RETIREES**

**GROUP HEALTH INCORPORATED**

Group Insurance Certificate Rider to Be Attached To Group Insurance Certificate Issued under Group Policy PLC-1032E by Group Health Incorporated To:

## CITY OF NEW YORK EMPLOYEES AND RETIREES
(Herein called the Employer)

Group Health Incorporated certifies that as of the later of (a) July 1, 1998, or (b) the effective date of your certificate, your insurance under the above-mentioned Group Policy is modified as follows:

1. By substituting the following for subparagraph "(e)" which appears in paragraph "1. General Medical Care," in **SECTION FIVE: Covered Medical Services** of the certificate.

"(e) Chiropractic Care."

2. By adding a new 2nd paragraph to paragraph "3. Surgery," in **SECTION FIVE: Covered Medical Services** of the certificate.

"You are covered for surgery to reconstruct a breast.  The surgery must follow a mastectomy.  You are covered for all stages of reconstruction of the breast on which the mastectomy has been performed.  You are also covered for surgery and reconstruction of the other breast.  This surgery must be to produce a symmetrical appearance. You are also covered for reconstructive surgery. Such surgery must be incidental to or follow surgery resulting from trauma, infection or other disease of the part of the body involved. You are also covered for reconstructive surgery performed due to congenital disease or anomaly of a covered child which has resulted in a functional defect."

3. By adding the following paragraph No. "26. Second Medical Opinion for Cancer Diagnosis and Treatment," to **SECTION FIVE: Covered  Medical Services** of the certificate.

"Second Medical Opinion for Cancer Diagnosis and Treatment. You are covered for a second medical opinion in any of the events set forth below.
- A positive diagnosis of cancer.
- A negative diagnosis of cancer.
- A recurrence of cancer.
- A recommendation of a course of treatment for cancer.

If your physician gives you a written referral to a specialist for the second opinion, then you  are covered for that opinion.  You only need a written referral when the second opinion is going to be from a non-participating specialist.  Coverage will be subject to the Co-pay Charge that applies to a specialist consultation rendered by a Participating Provider. This applies even if the referral is made to a non-participating Provider. If you have written referral, then you must submit it to GHI with your claim form.

If you do not have a written referral, then you are also covered for the second opinion.  Coverage will be subject to the terms that apply to covered medical services rendered by non-participating providers.  You must pay the provider directly.  You are responsible to pay any difference between GHI's payment and the provider's charge.

In order to be covered, the second opinion must be rendered by an appropriate specialist."

4. By substituting the following for subparagraph "(a)" which appears in paragraph "3. GHI Prescription Drug Coverage," in **SECTION FOURTEEN: Medicare Eligible Coverage** of the certificate.

"(a) Covered Items.  You are covered for drugs which by law require a written prescription.  The drugs must be dispensed by a licensed pharmacist.  A Provider must have written the prescription.  That Provider must be legally authorized to write the pre-scription.  Payment will be made only when the drug is prescribed for your use.  Insulin is covered whether or not it is dispensed by a written prescription.

PLC-1367A

EH-64

In addition to covered prescription drugs, you are covered for enteral formulas if each of the criteria set forth below are met.

- A covered Provider has given a written order and/or a prescription.
- It must be proven effective as a disease-specific treatment regimen for persons who are or will become malnourished or suffer from disorders which, if left untreated, cause chronic disability, mental retardation or death.

You are also covered for modified solid food products that are low in protein or contain modified protein if each of the criteria set forth below are met.

- An authorized Provider has given a written order and/or a prescription.
- It must be for the treatment of certain inherited diseases of amino acid and organic acid metabolism.

You are covered for these modified food products up to a maximum of $2,500 per calendar year or any continuous twelve (12) month period. You must submit your written order or prescription and store receipt for modified food products along with a completed claim form to: GHI, P.O. Box 2868, New York, New York 10116-2868."

5. By substituting "30 visits" for "$900" and "60 visits" for "$1,800" where they appear in subparagraph "1. Outpatient Mental Health Benefits" in **SECTION FIFTEEN: Catastrophic Coverage** of the certificate.

6. By adding the following paragraph No. "11. Subrogation and Reimbursement," to **SECTION THIRTEEN: Miscellaneous Provisions** of the certificate.

"Subrogation and Reimbursement. This paragraph applies when another party (including any insurance carrier) is, or is alleged to be, liable for your injury, illness or other condition and GHI has provided benefits in connection with that injury, sickness or condition. GHI is subrogated to all of your rights against any such party (including any insurance carrier) to the extent of the reasonable value of the benefits provided to you under this plan. This means that GHI has the right independently of you, or as a plaintiff-intervenor in any action you may have commenced, to proceed against the party responsible for your injury, illness or condition to recover the benefits that have been provided under the GHI plan. You must provide reasonable cooperation with GHI in proceeding against the party responsible for your injury, illness or condition to recover the benefits GHI has provided. In addition, in GHI's sole discretion, if you (or your legal representative, estate or heirs) make a recovery from any liable party (including any insurance carrier), you will promptly reimburse GHI for any benefits provided by GHI in connection with the injury, illness or condition from any settlement, verdict or insurance proceeds received to the extent that such settlement, verdict or other amounts received is specifically identified as being for medical expenses paid out.

7. By substituting the following for subparagraph "(i)" of paragraph "(c) Prescription Drugs." which appears in the last section of the certificate entitled "**Optional Rider for Active Employees and Non-Medicare Eligible Retirees**."

"(i) Covered Items. You are covered for drugs which by law require a written prescription. The drugs must be dispensed by a licensed pharmacist. A Provider must have written the prescription. That Provider must be legally authorized to write the prescription. Payment will be made only when the drug is prescribed for your use. Insulin is covered whether or not it is dispensed by a written prescription.

In addition to covered prescription drugs, you are covered for enteral formulas if each of the criteria set forth below are met.

- A covered Provider has given a written order and/or a prescription.
- It must be proven effective as a disease-specific treatment regimen for persons who are or will become malnourished or suffer from disorders which, if left untreated, cause chronic disability, mental retardation or death.

You are also covered for modified solid food products that are low in protein or contain modified protein if each of the criteria set forth below are met.

- An authorized Provider has given a written order and/or a prescription.
- It must be for the treatment of certain inherited diseases of amino acid and organic acid metabolism.

You are covered for these modified food products up to a maximum of $2,500 per calendar year or any continuous twelve (12) month period.  You must submit your written order or prescription and store receipt for modified food products along with a completed  claim form to:  GHI, P.O. Box 2868, New York, New York 10116-2868."

## APPLICABILITY OF OTHER PROVISIONS

The Group Policy provides that all of its provisions and conditions not inconsistent with the provisions and conditions referred to in this Rider shall apply to this insurance.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER ADDING COVERAGE FOR PROSTATE CANCER SCREENING**

**GROUP HEALTH INCORPORATED**

This rider amends your GHI Contract or Certificate as set forth below.

**COVERED MEDICAL SERVICES.**

This rider amends the section of your Contract or Certificate that is entitled as "Covered Medical Services." It adds coverage for Prostate Cancer Screening by adding the following new provision:

Prostate Cancer Screening. GHI will cover prostate cancer screening as set forth below.

- At Any Age- Coverage will be provided for standard diagnostic testing including, but not limited to, coverage for:

  i) Digital Rectal Examination; and

  ii) Prostate-Specific Antigen Test for men at any age who have a prior history of prostate cancer.

- Age Fifty (50) and Older- Coverage will be provided for an annual standard diagnostic examination including, but not limited to, coverage for:

  i) Digital Rectal Examination; and

  ii) Prostate-Specific Antigen Test for men age fifty (50) and older who are asymptomatic of prostate cancer.

- Age Forty (40) and Older- Coverage will be provided for an annual standard diagnostic examination including, but not limited to, coverage for:

  i) Digital Rectal Examination; and

  ii) Prostate-Specific Antigen Test for men age forty (40) and older with a family history of prostate cancer or other prostate cancer risk factors.

All other terms, conditions, limitations and exclusions found in your Contract or Certificate remain in full force and effect except as amended by this rider.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**INFERTILITY SERVICES RIDER**

**GROUP HEALTH INCORPORATED**

1.   This rider amends your GHI Contract or Certificate.  It adds the new terms set forth below to the sections of your Contract or Certificate entitled "Covered Inpatient Services", "Covered Outpatient Services" and/or "Covered Medical Services."

"**Infertility Services**.  GHI will cover the diagnosis and treatment of correctable medical conditions that result in infertility.  Infertility refers to the inability to conceive after one (1) year of unprotected intercourse.  A physician must prescribe the diagnosis and treatment as part of his/her overall plan of care.  The diagnosis and treatment must also be consistent with the guidelines for infertility coverage set forth by the New York State Department of Insurance.

GHI will cover the types of services set forth below.

- Surgical or medical procedures that correct malformation, disease or dysfunction resulting in infertility.
- Diagnostic tests and procedures that are necessary to determine infertility or that are necessary in connection with any surgical or medical treatments or prescription drug regimens, including:

    Hysterosalpingogram.

    Hysteroscopy.

    Endometrial biopsy.

    Laparoscopy.

    Sono-hysterogram.

    Post coital tests.

    Testis biopsy.

    Semen analysis.

    Blood tests.

    Ultrasound.

GHI will **NOT** cover the items or services set forth below.  GHI also will not cover any items or services provided to you in connection with the items or services set forth below.

- Prescription drugs for use in the diagnosis and treatment of infertility as set forth above.  (However, if you have prescription drug insurance through GHI, then GHI will cover prescription drugs for use in the diagnosis and treatment of infertility according to the terms that apply to your GHI prescription drug insurance.)
- In vitro fertilization (IVF).
- Gamete intrafallopian tube transfers.
- Zygote intrafallopian tube transfers.
- Reversal of elective sterilization.
- Sex change procedures.
- Cloning.
- Medical or surgical services or procedures that are deemed experimental pursuant to guidelines for infertility coverage set forth by the New York State Department of Insurance."

2.   All other terms, conditions, limitations, and exclusions of your GHI Contract or Certificate remain in full force and effect except as modified by this rider.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER TO AMEND**
**MAMMOGRAPHY SCREENING COVERAGE**

**GROUP HEALTH INCORPORATED**

1.    This rider amends your GHI Contract or Certificate.   It amends your mammography screening coverage.   It reduces the age at which you become eligible for benefits for an annual mammography screening from fifty (50) years of age to forty (40) years of age.   If you are forty (40) years of age or older, GHI will cover a mammography screening every year.  However, GHI will cover mammography screening more frequently if your physician recommends it.

2.    All other terms, conditions, limitations, and exclusions of your GHI Contract or Certificate remain in full force and effect except as modified by this rider

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**OSTEOPOROSIS SCREENING RIDER**

**GROUP HEALTH INCORPORATED**

1. This rider amends your GHI Contract or Certificate. It adds the new paragraph set forth below to the section entitled 'Medical Services' or 'Medical Care.'

   **"Osteoporosis Screening**. GHI will cover bone mineral density measurements or tests, including but not limited to dual-energy x-ray absorptiometry, in accordance with standards that include the criteria established by Medicare and the national institutes of health (NIH) for the detection of osteoporosis. In order to qualify for benefits, you must meet the criteria of Medicare or NIH, and to the extent consistent with such criteria, meet one or more of the conditions set forth below.

   - You must be previously diagnosed as having osteoporosis or having a family history of osteoporosis.

   - You must have symptoms or conditions indicative of the presence, or the significant risk of osteoporosis.

   - You must be on a prescribed drug regiment posing a significant risk of osteoporosis.

   - You must have lifestyle factors to such a degree as posing a significant risk of osteoporosis.

   - You must have age, gender and/or other physiological characteristics that pose a significant risk of osteoporosis.

   GHI will **NOT** cover bone mineral density prescription drugs, drugs and devices. However, if you have prescription drug insurance through GHI, then GHI will cover bone mineral density prescription drugs and devices approved by the federal food and drug administration (FDA) or generic equivalents as approved substitutes, subject to the terms that apply to your GHI prescription drug insurance. "

2. All other terms, conditions, limitations, and exclusions of your GHI Contract or Certificate remain in full force and effect except as modified by this rider.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER
TO AMEND COVERAGE FOR
CONTRACEPTIVE DRUGS & DEVICES**

**GROUP HEALTH INCORPORATED**

1.  **General**.  This rider amends your GHI prescription drug benefits.  It deletes any and all terms in your GHI prescription drug rider(s) and/or in the prescription drug section of your GHI Contract or Certificate of Insurance that address contraceptive drugs and devices.  You are covered for contraceptive drugs and devices according to the terms of this rider.

2.  **Covered Contraceptive Drugs & Devices**.  GHI will cover contraceptive drugs or devices approved by the federal food and drug administration ("FDA") or generic equivalents approved as substitutes by the FDA.  The contraceptive drug or device must be prescribed for you by a provider that is legally authorized to prescribe pursuant to applicable law.

3.  **Benefits**.  GHI will provide benefits for contraceptive drugs and devices according to the same terms and conditions that apply to other prescription drugs as set forth in your GHI prescription drug rider(s) and/or the prescription drug section of your GHI Contract or Certificate of Insurance.  For example, benefits for contraceptive drugs and devices are subject to the same cost-sharing terms (i.e. deductible(s), coinsurance and Co-Pay Charge(s)) and other terms that apply to your benefits for other prescription drugs.  They are also subject to the same annual and lifetime maximums that apply to your benefits for other prescription drugs.

Also, if your GHI prescription drug benefits cover only prescription drugs dispensed by a GHI participating pharmacy, then GHI will only cover contraceptive drugs and devices when they are dispensed by a GHI participating pharmacy.  Similarly, if your GHI prescription drug benefits include a mail order program, you may use the mail program to obtain contraceptive drugs and devices subject to the same terms and conditions that apply to other prescription drugs that you obtain through the mail order program.

Contraceptive drugs and devices are also subject to the same program requirements as other prescription drugs as set forth in your GHI prescription drug rider(s) and/or the prescription drug section of your GHI Contract or Certificate of Insurance.  For example, any terms of your prescription drug coverage that require you to use generic drugs in certain circumstances or use the mail order program apply to contraceptive drugs and devices as well.

Please consult your GHI prescription drug rider and/or the prescription drug section of your GHI Contract or Certificate of Insurance for the details applicable to your prescription drug and contraceptive drug and device benefits.

Certain contraceptive drugs and devices require an office visit, such as drugs or devices that require injection or insertion.  If you receive such a drug or device from a GHI Participating Provider during an office visit, GHI will cover the drug or device in full.  If you receive it from a non-participating Provider during an office visit, you must file a claim with GHI and GHI will reimburse you directly at the applicable in-network allowance for the drug or device.   Note, however, that if your GHI program only covers services rendered by Participating Providers, then you must receive the drug or device during an office visit to a Participating Provider.  GHI will not cover the drug or device if it is dispensed during an office visit to a non-participating Provider.

4.  **Other Terms**.  All other terms, conditions, limitations, and exclusions of your GHI Contract, Certificate of Insurance and/or prescription drug rider(s) remain in full force and effect except as modified by this rider.

# GROUP HEALTH INCORPORATED

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



## RIDER TO AMEND PRESCRIPTION DRUG COVERAGE

**RETAIL DRUG PROGRAM**

| | |
|---|---|
| Deductible: | $150.00 per person per calendar year, $450.00 per family per calendar year. |
| Generic Drugs: | After the deductible(s), you pay a $5.00 Co-pay Charge per prescription or 20% Coinsurance per prescription, whichever is greater.  If the total cost of the prescription is less than $5.00, then you must pay the full cost of the prescription. |
| Brand Name Preferred Formulary Drugs: | After the deductible(s), you pay a $25.00 Co-pay Charge per prescription or 40% Coinsurance per prescription, whichever is greater.  If the total cost of the prescription is less than $25.00, then you must pay the full cost of the prescription. |
| Brand Name Non-Formulary Drugs: | After the deductible(s), you pay a $40.00 Co-pay Charge per prescription or 50% Coinsurance per prescription, whichever is greater.  If the total cost of the prescription is less than $40.00, then you must pay the full cost of the prescription. |
| Retail Drug Program Annual Maximum: | Unlimited |

**MAINTENANCE DRUG PROGRAM**

| | |
|---|---|
| Generic Drugs: | You pay a $10 Co-pay Charge per prescription. |
| Brand Name Preferred Formulary Drugs: | You pay a $40 Co-pay Charge per prescription. |
| Brand Name Non-Formulary Drugs: | You pay a $60 Co-pay Charge per prescription. |
| Maintenance Drug Program Annual Maximum: | Unlimited. |

## GROUP HEALTH INCORPORATED

This prescription drug rider amends your GHI Certificate of Insurance. It changes your coverage for prescription drugs. It deletes the prescription drug coverage terms in your Certificate and it replaces them with the new terms set forth below.

## PRESCRIPTION DRUG COVERAGE

**1. Retail Prescription Drug Coverage.**

GHI uses a prescription benefits manager ("PBM") in order to administer its prescription drug benefit program. GHI will provide prescription drug benefits as set forth in this rider. Under the retail program, you may obtain prescription drugs from GHI participating pharmacies or from non-participating pharmacies. Note that you will save time and minimize your out of pocket expenses by using GHI participating pharmacies.

The retail program covers "acute" prescription drugs. An acute prescription drug is a prescription that is medically necessary for purposes of short-term treatment for a condition that is not chronic in nature. The quantity of an acute prescription drug dispensed cannot exceed a thirty (30) consecutive day supply.

If you require a maintenance drug, you may obtain only the initial prescription and one (1) refill for a maintenance drug at a retail pharmacy. You must obtain all subsequent refills for the maintenance drug through the PBM's home delivery program. See Section 2.

You are subject to the retail prescription drug deductible(s) shown at the front of this rider. After you have met the deductible(s), you are subject to the prescription Co-pay Charge or Coinsurance set forth on the front of this rider. These costs may vary depending upon whether you receive a drug that is part of the formulary that applies to this program. The formulary is a list of prescription drugs that are preferred for use. The formulary is subject to periodic review and modification by GHI. You will receive the preferred formulary pocket guide with your prescription drug I.D. Card. This program has an "open" formulary. This means that you are covered for preferred formulary drugs as well as non-formulary prescription drugs. The Co-pay Charge or Coinsurance may also vary depending upon whether you receive a generic drug or a brand name drug. A generic drug is a prescription drug that is marketed under its non-proprietary name after the patent of a brand name drug expires. A brand name drug refers to the proprietary name of a prescription drug before or after its patent has expired.

If you receive a formulary or non-formulary brand name drug that has a generic equivalent, you are responsible to pay the difference between the cost of the brand name drug and the generic drug, as well as the Co-pay Charge or Coinsurance that applies to the generic drug.

Insulin, glucagon, syringes and oral agents used for controlling blood sugar and other covered items listed from time to time by the Commissioner of the New York State Department of Health to be medically necessary for the treatment diabetes are not subject to the deductible or annual maximum listed on the front of this rider. These items are always subject to a five-dollar ($5) Co-pay Charge when prescribed for the purpose of diabetes management.

If you use a GHI Participating Pharmacy, you must present your GHI I.D. Card at the time of your purchase.

The pharmacist will fill your prescription and bill you for the applicable deductible(s) and/or Co-pay or Coinsurance at the point of sale.

If you use a non-participating pharmacy, you must pay the full cost of your prescription at the point of sale and then file a claim form with GHI to request benefits. After you meet the deductible(s), GHI will reimburse you for covered prescriptions at the amount that GHI would have paid to a GHI participating pharmacy for the prescription, less the applicable Co-pay Charge or Coinsurance. You are responsible to pay any difference between GHI's payment and the cost of your prescription. To obtain information about where to submit claims and to obtain a claim form, please call the PBM's Customer Service at: [Insert telephone number].

**2. Maintenance Drug Program.**

Your benefits also include coverage under a Maintenance Drug Program. This program is available only through the GHI PBM.

The GHI Maintenance Drug Program dispenses long-term maintenance prescriptions by mail. A maintenance prescription drug is a prescription that is required on an on-going basis in connection with the treatment of a chronic condition. You may obtain only the initial prescription and one (1) refill for a maintenance drug at a GHI participating pharmacy. You must obtain all subsequent refills for the maintenance drug through the home delivery program.

Under the home delivery program, you may receive a prescription drug supply of up to sixty (60) consecutive days. The program saves you time. It may also save you money by reducing the amount of the Coinsurance you must pay for a sixty (60) day supply of a maintenance drug. When you become covered, you will receive information about how to obtain a maintenance drug under this program.

You are subject to the prescription Co-pay Charge set forth at the front of this rider. The Co-pay Charge may vary depending upon whether you receive a generic drug or a brand name drug and a formulary or non-formulary drug. The formulary is a list of prescription drugs that are preferred for use. The formulary is subject to periodic review and modification. You will receive the preferred formulary pocket guide with your prescription drug I.D. Card. This program has an "open" formulary. This means that you are covered for preferred formulary drugs as well as non-formulary prescription drugs.

A generic drug is a prescription drug that is marketed under its non-proprietary name after the patent of a brand name drug expires. A brand name drug refers to the proprietary name of a prescription drug before or after its patent has expired.

Insulin, glucagon, syringes and oral agents used for controlling blood sugar and any other covered items listed from time to time by the Commissioner of the New York State Department of Health to be medically necessary for the treatment diabetes are not subject to the deductible or annual maximum listed on the front of this rider, if any. These items are subject to the lesser of the applicable Coinsurance or a five-dollar ($5) Co-pay Charge when prescribed for the purposes of diabetes management.
To take part in the Maintenance Drug Program, ask your doctor if a maintenance quantity is suitable for you. If so, have a doctor specify the maintenance quantity of the drug to be dispensed. Prescriptions should always be sent to the PBM. They should not be sent to GHI.

### 3. Covered Items.

You are covered for drugs that require a written prescription by law. A licensed pharmacist must dispense the drugs. A Provider must have written the prescription. That Provider must be legally authorized to write the prescription. Payment will be made only when the drug is prescribed for your use. Insulin is covered whether or not it is dispensed by a written prescription.
GHI will also provide coverage for enteral formulas if each of the conditions set forth below is met:

- A physician or other licensed health care provider legally authorized to prescribe under Title Eight of the New York State Education Law gave a written order or prescription for the formula;

- The formula is medically necessary; and

- The formula has been proven effective as a disease specific treatment regimen for persons who are or will become malnourished or suffer from disorders that, if left, untreated, cause chronic disability, mental retardation or death.

GHI will also cover modified solid food products that are low in protein or contain modified protein if each of the conditions set forth below is met.

- A physician or other licensed health care provider legally authorized to prescribe under Title Eight of the New York State Education Law gave a written order or prescription for the product;

- The written order or prescription must be medically necessary; and

- The product must be for the treatment of certain inherited diseases of amino acid and organic acid metabolism.

You are covered for these modified solid food products up to a maximum of $2,500 per calendar year.

GHI will cover prescription drugs approved by the federal food and drug administration (FDA) or their generic equivalents approved as substitutes by the FDA for use in the diagnosis and treatment of infertility. GHI will also cover bone mineral density prescription drugs and devices approved by the FDA or their generic equivalents approved as substitutes by the FDA.

Effective on July 1, 2005, GHI will also cover asthma and psychotropic prescription drugs under this rider.

**4. Refills.**

Unless your doctor's prescription or State or Federal laws state otherwise, you may have prescriptions refilled as needed.

**5. Annual Maximum.**

GHI will not pay more than the maximum amount(s) shown on the front of this rider in a calendar year for prescription drugs under this rider.

**6. Clinical Prior Authorization Program.**

This Program requires utilization review of certain classes of prescription drugs. These drug classes include osteo-arthritis/anti-inflammatory medications and gastrointestinal (GI) medications that block acid secretion.

If you use a GHI participating pharmacy, utilization review will occur at the point of sale. If your prescription is for a drug that is subject to the Program, your GHI participating pharmacist will inform you, and you must notify your physician. Your physician should then contact GHI's prescription benefits manager (PBM). The PBM will decide whether the prescription is medically necessary for your treatment or condition. The PBM will also decide whether the quantity or duration of the prescription is medically appropriate. The PBM will then inform you and your physician of its decision(s).

If the PBM approves the prescription, then the GHI participating pharmacist will fill your prescription and GHI will cover the prescription. If the PBM does not approve the prescription, then the PBM will notify you and your physician and pharmacist of its decision and GHI will not cover the prescription. If the PBM approves the prescription, but at a reduced quantity or duration, then the PBM will notify you and your physician of its decision and GHI will cover only the reduced quantity or duration of the drug.

If you use a non-participating pharmacy, utilization review will generally occur when GHI processes your prescription drug claim. The PBM will decide whether the prescription is medically necessary for your treatment or condition. The PBM will also decide whether the quantity or duration of the prescription is medically appropriate. The PBM will then inform you and/or your physician of its decision(s) and, if appropriate, GHI will pay benefits for your claim. If you would like to request prior authorization from the PBM before you fill your prescription, please ask the prescribing doctor to call the PBM at [1-800-417-8164] to initiate the prior authorization process. The PBM will inform you and your physician of its decision(s).

The PBM will make its utilization review decision(s) in the time periods and in accordance with the other requirements that apply to utilization review decisions as set forth in your Certificate. If you disagree with the PBM's decision(s), you may file an appeal. Please refer to your Certificate for information about how to file an appeal.

The prescription drug classes listed below require prior authorization. Examples of common drugs within each class are also listed below.

> **Osteo-Arthritis/Anti-Inflammatory Medications**
> celecoxib (Celebrex)
> rofecoxib (Vioxx)
> valdecoxib (Bextra)
>
> **GI Medications that Block Acid Secretion**
> lansoprazole (Prevacid)
> omeprazole (Prilosec)
> rabeprazole (Aciphex)
> pantoprazole (Protonix)
> esomeprazole (Nexium)

**7. Items Not Covered.**

You are not covered under this prescription drug rider for the items set forth below.

(a) Medication available as an over-the-counter (OTC) drug which does not require a prescription order or refill under Federal or State law, and any medication that is equivalent to an over-the-counter medication, except insulin.

(b) Prescription drugs that are not medically necessary.

(c) Single entity and combination products, which have questionable effectiveness under the FDA's Drug Efficacy Study Implementation ("DESI") program.

(d) Drugs dispensed while you are a bed patient in a hospital or other institution or while you are receiving covered home health care by or on behalf of a certified home health agency. Such drugs may be covered as part of your hospital, home care or other benefits.

(e) Contraceptive drugs and devices.

(f) Medications that have been prescribed for cosmetic purposes, unless otherwise medically necessary.

(g) Drugs related to a medical service, which is not covered under a member's Certificate of Insurance.

(h) Injectibles, psychotropics, asthma and chemotherapy prescription drugs dispensed by a pharmacy are not covered under this rider. These drugs are covered under the PICA program when dispensed by a pharmacy. However, commencing on July 1, 2005, asthma and psychotropic prescription drugs are covered under this rider.

Notwithstanding any of the provisions contained herein, GHI shall not provide coverage for any drug(s) that are either experimental or investigational in nature or which the FDA has not approved for your specific diagnosis or condition unless otherwise superseded by state or federal law or regulation or recommended pursuant to an external review.

**8. Other Terms.**

All other terms, conditions, limitations and exclusions found in your GHI Certificate of Insurance remain in full force and effect except as amended by this ride

EH-81          184-5340A-NYC

EH-82

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER AMENDING PRESCRIPTION DRUG BENEFITS**

**GROUP HEALTH INCORPORATED**

This rider amends your GHI Certificate of Insurance. The section of your Certificate, which addresses coverage for prescription drug benefits, is modified as follows:

Any and all references to a specific prescription drug benefits manager and any related addresses and/or phone numbers are deleted and replaced with the following:

Express Scripts, Inc.
767 Electronic Drive
Horsham, PA 19044
877-534-3682

All other terms and conditions of your Certificate remain in full force and effect.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER TO AMEND THE**
**GHI COMPREHENSIVE BENEFITS PLAN (CBP)**
**FOR**
**CITY OF NEW YORK EMPLOYEES AND RETIREES**

**Effective April 1, 2004**

**GROUP HEALTH INCORPORATED**

This rider amends your GHI Certificate of Insurance as set forth below.

A.  This rider deletes Section Three and replaces it with the new Section Three set forth below.

**"SECTION THREE. - USE OF PARTICIPATING PROVIDERS:**

**1.   Participating Providers**.  GHI Participating Providers accept GHI's Schedule of Allowances or negotiated rate(s) as payment in full for covered services.  There is no deductible or coinsurance when you use a Participating Provider.  However, certain services are subject to a Co-pay Charge as set forth below.

A $15 Co-pay Charge applies to each home or office visit and out-of-hospital consultation, except as specifically provided otherwise below.

A $20 Co-pay Charge applies to each home or office visit and out-of-hospital consultation to a specialist.  Specialists include surgeons, all surgical sub-specialties and dermatologists.  Specialists include providers who practice:  Cardiothoracic and thoracic surgery, colon and rectal surgery, general surgery, neurological surgery, ophthalmology, oral surgery, orthopaedic and hand surgery; otolaryngology, plastic surgery, podiatry and podiatric surgery, traumatic surgery, urology, vascular and veno surgery.

A $15 Co-pay Charge applies to diagnostic X-rays and laboratory tests. This Co-pay Charge will apply to each diagnostic X-ray and laboratory test performed by a Participating Provider.  A maximum of one Co-pay Charge will apply per date of service, per provider.  This means that if one Participating Provider performs two tests on the same day, you will be subject to one Co-pay Charge only.  However, if two different Participating Providers perform one or more lab tests each on the same day, you will be subject to a maximum of two Co-pay Charges.   A maximum of two diagnostic Co-pay Charges will apply per date of service.  This maximum applies regardless of the number of Participating Providers you see on that date.

Special terms apply to coverage of private duty professional nursing services, durable medical equipment, home care services, home infusion therapy and assisted reproductive technology services.  (See Section Five, Paragraphs 23, 24, 21, 22 and 27 respectively).

The use of Participating Providers controls your out-of-pocket expenses.  Consult your Directory of Participating Physicians and other Providers or phone GHI to obtain the names of Participating Providers in your area.

You must advise the Participating Provider of your GHI/CBP coverage before the service is rendered.  You must verify that the Provider is a Participating Provider.  You should not pay the provider directly for any covered services except for the Co-pay Charge when applicable.

**2.   Benefits Available**.  Most, but not all services covered under this Certificate are available through Participating Providers."

B.  This rider amends Section Four of the Certificate.  It deletes paragraph 2 and replaces it with the new paragraph 2 set forth below.

"**2.   Benefits**.  When you use a non-participating Provider, benefits are paid under the City of New York Non-Participating Provider Schedule in accordance with the Allowed Charge for all services.  (See Section Two, Paragraph 9).  Except as otherwise specifically provided, these benefits are subject to the terms below:

(a)  **Annual Deductible**.  You are subject to an annual deductible of $200 per person up to a maximum deductible for a family of three or more of $500 in each calendar year.  GHI will make payment to you after you have paid this amount.  The amount credited to your deductible shall be based on the Allowed Charge.

(b)  **Common Accident Provision**.  More than one family member may be involved in an accident.  If that occurs, only $175 in allowed expenses are required to satisfy the deductible for that accident, for all covered persons involved.  The $175 is first applied towards the Subscriber's deductible.  If the Subscriber was not involved, it is applied toward the oldest member of the family who was involved.

(c) **GHI Payments**. After you have met your deductible, GHI will pay 100% of the Allowed Charge for covered services.

(d) A**nnual Maximum**. There is no annual dollar maximum for covered services rendered by non-participating Providers. However, each person is subject to a calendar year maximum of $100,000 for Private Duty Professional Nursing Services.

(e) **Lifetime Maximum.** Each person is subject to a lifetime maximum of $2,000,000 in covered expenses.

Special terms apply to coverage of excess hospitalization coverage/inpatient hospital charges, private duty professional nursing services, durable medical equipment, home care services, home infusion therapy and certain assisted reproductive technology services. (See Section Five, Paragraphs 14, 23, 24, 21, 22 and 27 respectively)."

C. This rider amends Section Five of the Certificate. It adds the new paragraph 27 set forth below.

"27. Assisted Reproductive Technology (ART) Services. You are covered for Assisted Reproductive Technology (ART) services as set forth in this paragraph.

a. Payments. If you receive a covered ART service(s) from a GHI Participating Provider, GHI will pay 75% of the Schedule or negotiated rate to the provider. You are responsible to pay 25% of the Schedule or negotiated rate to the Participating Provider. If you receive a covered ART service(s) from a non-participating Provider, GHI will reimburse you up to 75% of the Allowed Charge after you have met the annual deductible(s) that applies to covered medical services rendered by non-participating Providers. You are responsible to pay any difference between GHI's payment and the non-participating Provider's charge for the service(s).

b. **ART Services**. In addition to infertility treatment services listed elsewhere in this Certificate, you are covered for ART services associated with infertility. Infertility is defined as the inability to conceive after twelve (12) months of unprotected intercourse. Subsequent to the twelve (12) month period, if pregnancy has not been achieved after undergoing four (4) months of less invasive infertility treatment, and you have a normal hormone level (FSH), GHI will cover one (1) or more of the ART services set forth below. GHI will not cover more than three cycles of ART per person per lifetime.

- In Vitro Fertilization (IVF).

- Gamete Intrafallopian Transfer (GIFT).

- Zygote Intrafallopian Transfer (ZIFT).

- Laboratory tests and procedures in connection with IVF, ZIFT and GIFT above. GHI will cover such tests and procedures commencing at the point of oocyte retrieval for a female and testicular sperm extraction for a male.

- Preparation of a cryo-preserved embryo for transfer and cryo-preservation of embryos for the services listed in this paragraph.

If infertility cannot be documented, the patient must undergo six (6) months of less-invasive procedures prior to ART, including three (3) unstimulated intrauterine inseminations and three (3) stimulated intrauterine inseminations (i.e. a total of six (6) treatments). The patient must undergo at least three (3) of these treatments with fertility drugs. If you have undergone an elective sterilization procedure, such as an elective tubal ligation or vasectomy, you are not eligible for benefits unless:

- You undergo a reversal of the elective sterilization procedure and have not become pregnant after one (1) year of unprotected intercourse; or

- GHI determines that reversal of the elective sterilization procedure will not improve the likelihood of conception due to multifactorial causes of infertility.

c. **Pre-certification**. You must pre-certify all Assisted Reproductive Technology (ART) services listed in paragraph (a) of this paragraph with GHI prior to the beginning of each ART cycle. To pre-certify, please call GHI (212) 615-4662 in New York and Long Island and 1-800-223-9870 outside of New York and Long Island BEFORE SERVICES ARE RENDERED TO YOU. If you use a GHI Participating Provider, the Provider will pre-certify the services on your behalf.

If you use a non-participating Provider(s) and you fail to pre-certify the services with GHI, GHI will reduce your benefits for the services by fifty percent (50%).

d. **Eligible Providers**.  In order to be eligible for benefits, you must receive services from a Provider that meets the criteria set forth below.

- Board Certification with documented experience in ART, reproductive endocrinology, or urology/andrology; and a

- Member of the Society of Assisted Reproductive Technology (SART) and who uses SART standards and criteria to track data; or

- Meet GHI's criteria for knowledge and expertise in infertility and in ART.

e. **Exclusions**.  GHI will not cover the services and/or costs set forth below.

- Donor costs.

- Cryopreservation of the egg and sperm separately.

- A reversal of elective sterilization procedures.

- Cloning.

- Surrogacy.

- Self-monitoring fertility kits, such as ovulation predictor kits.

- Storage of an embryo.

- Maternity care.  However, maternity care benefits may be covered under your hospital and/or medical/surgical coverage.

- If you are a covered female, your benefits under this rider do NOT include any procedures, items or services that are performed upon, retrieved from or rendered to the male except any semen preparation procedure, semen wash and analysis, semen testicular extraction and intra-cytoplasmic sperm injection.

- If you are a covered male, your benefits under this rider do NOT include any medical procedures, items or services that are performed upon, retrieved from or rendered to the female.

f. **Medications**.  GHI will not cover medications associated with ART services.  However, if GHI provides your prescription drug benefits, then GHI will cover medications associated with ART according to the terms that apply to other prescription drugs."

D.   All other terms, conditions, limitations and exclusions of your Certificate apply, except as specifically amended by this rider.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER TO AMEND THE**
**GHI SENIOR CARE BENEFITS**
**FOR**
**CITY OF NEW YORK EMPLOYEES AND RETIREES**

**EFFECTIVE APRIL 1, 2004**

**GROUP HEALTH INCORPORATED**

This rider amends your GHI Certificate of Insurance. It deletes Paragraph 2(A) of the Section entitled "Medicare Eligible Coverage" and replaces it with the new Paragraph 2(A) set forth below.

"A.    Covered Services. If you receive any of the services listed below, GHI will cover 20% of the reasonable charge as determined by Medicare, after Medicare has paid 80% of the reasonable charge after you meet the applicable Part B and GHI deductibles. You are not covered for the Medicare Part B (medical) deductible. After the Part B deductible has been met, Medicare will pay 80% of the reasonable charge of your covered service. After you meet an additional $50 deductible, GHI will pay the 20% balance. In certain instances, by operation of law, Medicare may reduce its payment below 80% of the Medicare reasonable charge. If this occurs, GHI will continue to reimburse you 20% of the Medicare reasonable charge. As a result, the total combined reimbursement by Medicare and GHI may be less than 100% of the Medicare reasonable charge. Charges in excess of the reasonable and customary standard set by Medicare are not covered. These charges are your responsibility. You must first file for your Medicare benefits before filing for your GHI benefits. When filing a GHI claim, please attach the Explanation of Medicare Benefits form to your GHI Claim Form. You are subject to the same standards of coverage listed throughout this Certificate. Please note that if you receive covered services from a Provider who accepts Medicare assignment or who participates with GHI, GHI will reimburse the Provider directly.

The following services are covered:

(1) Home and Office Visits (except for Chiropractic care).

(2) Surgery, Assistant Surgery, and the Administration of Anesthesia.

(3) Dental Surgery.

(4) Maternity Care.

(5) In-Hospital Medical Care.

(6) Radiation Therapy and Chemotherapy.

(7) Specialist Consultation.

(8) Diagnostic Procedures, X-ray examinations and Laboratory Tests.

(9) Shock Therapy.

(10) Intermittent Nurse Service is in your home (visiting nurse service).

Please note that routine foot care and psychiatric services are not covered. GHI does not provide coverage in those instances where Medicare denies coverage, except for services rendered outside of the United States of America."

All other terms, conditions, limitations and exclusions of your Certificate apply, except as specifically amended by this rider

# GROUP HEALTH INCORPORATED

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



## RIDER FOR CITY OF NEW YORK EMPLOYEES AND RETIREES WHO ARE MEDICARE ELIGIBLE

## GROUP HEALTH INCORPORATED

This rider amends your prescription drug coverage description set forth in your Contract or Certificate and any riders thereto as set forth below.

1. The section entitled "Optional Rider for Medicare Eligible Subscribers Covered Under Section Fourteen" is deleted in its entirety and replaced with the following new paragraph:

Coverage, including copayments, coinsurance and deductibles, is as set forth in your City of New York Medicare Part D Prescription Drug Plan Evidence of Coverage (EOC). Your EOC will also explain how your Medicare Part D prescription drug coverage coordinates with other types of prescription drug coverage you may have through another carrier or New York State, what type of prescription drug payments count towards your out-of-pocket costs and how to file an appeal or grievance related to your prescription drug coverage.

2. Other Terms. All other terms, conditions, limitations and exclusions of your Contract, Certificate and/or rider apply.

# GROUP HEALTH INCORPORATED

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



## RIDER AMENDING THE GHI CERTIFICATE OF INSURANCE
## FOR
## CITY OF NEW YORK EMPLOYEES AND RETIREES

## GROUP HEALTH INCORPORATED

This rider amends the GHI Certificate of Insurance for City of New York Employees and Retirees ("Certificate"). It changes the Behavioral Management Program (BMP) benefits for mental health care and substance abuse services as set forth below effective on and after July 1, 2010. It also replaces any other terms and/or previously issued riders relating to mental health and/or chemical dependency services effective on July 1, 2010 with the terms set forth below. This rider does not modify the benefits available to Medicare eligible retirees under the Certificate.

This rider deletes paragraph 25 entitled "The GHI Behavioral Management Program" from Section Five of the Certificate. It replaces this paragraph with new paragraph 25 set forth below. It also deletes paragraph 2(b) of the Optional Rider for Active Employees and Non-Medicare Eligible Retirees in its entirety.

## 25. The GHI Behavioral Management Program ("BMP").

You are covered under the Behavioral Management Program (BMP). The GHI Behavioral Management Plan is a mental health and substance use disorder benefits program. It was developed with the New York City Employee Benefits Program and the City's Municipal Unions. If you are a City employee or a non-Medicare eligible City retiree, the BMP is part of your coverage. Your non-Medicare eligible dependents are also covered if you have family coverage. The BMP offers a network of Participating practitioners and facilities. You may select a Participating or non-participating provider. You will reduce your out of pocket costs by using Participating providers.

**To be eligible for full benefits, you must call the Clinical Referral Line to obtain approval prior to receiving psychological testing services or non-emergency inpatient mental health or substance use disorder services. The telephone number is 1-800-NYC-CITY (1-800-692-2489).** You may also call the Clinical Referral Line to help you find a participating provider for the type of mental health or substance abuse disorder care you need. You may also call the Clinical Referral Line in case of an emergency. The clinician will refer you to the closest facility or emergency room. The Clinical Referral Line is staffed by trained clinicians. You may call 24 hours a day, 365 days a year.

To obtain prior approval, call the Clinical Referral Line at 1-800-NYC-CITY (1-800-692-2489) at the following times:

- If your doctor recommends confinement, your care must be pre-certified prior to the admission date.

- If you are hospitalized due to an emergency, you should certify the care within one (1) business day of the admission. If you are not medically able to call within that time, you should call as soon as reasonably possible.

- Participating providers will pre-certify your care if required. They cannot bill you for covered services that are not pre-certified. You are responsible to pre-certify care rendered in a non-participating facility or from a non-participating provider.

**A. Substance Use Disorder Benefits.** You are covered for inpatient and outpatient substance use disorder care as set forth below.

    **1. Outpatient Substance Use Disorder Care**.

        a. **Number of Visits Covered**. GHI will cover an unlimited number of outpatient substance use disorder visits per member per calendar year.

        b. **Payments**. The amount of GHI's payment for covered services will vary. It will depend upon whether you receive services from a Participating or non-participating Provider, and by the type of Provider.

        - **Participating Provider**. A Participating Provider has an agreement to provide care to covered persons. GHI will pay the Provider directly. Each visit is subject to the same Co-pay Charge that applies to home and office visits under the Certificate, as amended from time to time.
        - **Non-Participating Provider**. GHI will pay for covered services provided and billed by a non-participating provider or facility according to the same terms, conditions and maximums that apply to use of non-participating providers under Section Four of the Certificate, as amended from time to time, for home and office visits.

c. **Eligible Providers**. A Provider listed below must render the outpatient substance use disorder services.

- A facility issued an operating certificate by the New York State Division of Alcoholism and Alcohol Abuse or by the Division of Substance Abuse Services to provide the service. Outside of New York, a facility licensed or certified to provide the services in the state in which they are delivered or is accredited by the Joint Commission on Accreditation of Health Care Organizations (JCAHCO) to provide such services.
- A licensed physician to the extent that the physician is qualified and permitted to render such services pursuant to the Drug Addiction Treatment Act of 2000. .

2. **Inpatient Substance Use Disorder Care**.

a. **Number of Days Covered**. GHI will cover up to three hundred and sixty-five (365) days of active inpatient treatment per member per single hospital confinement. These inpatient substance use disorder benefits also include full hospitalization, partial hospitalization, intensive outpatient care, ambulatory detoxification and residential care; however, these services are not subject to the inpatient deductible(s). You must get prior authorization for all non-emergency inpatient substance use disorder services.

b. **Payments**. The amount of GHI's payment will vary. It will depend on whether you receive services in a Participating facility or a Non-participating facility.

- **Participating Provider**. You must meet a deductible of $[300] per person per continuous confinement. After you meet the deductible, GHI will provide paid in full benefits for covered services received from a GHI participating or a non-participating facility. Once the amount of the inpatient substance use disorder services deductibles you have incurred for services in Participating facilities in a calendar year reaches $[750] ("annual deductible maximum"), then you will not be subject to more deductibles for inpatient substance use disorder services for the rest of that calendar year. This inpatient deductible and annual deductible maximum is combined with the deductible and annual deductible maximum for inpatient services provided and billed by a Participating Hospital or Participating facility under your City of New York hospitalization coverage provided by [Empire Blue Cross/Blue Shield] and for inpatient mental health care services rendered by a Participating Hospital or Participating facility under this Certificate.
- **Non-Participating Provider**. You must meet a deductible of $[500] per person per continuous confinement. After you meet the deductible, GHI will cover [eighty percent (80%)] of the cost of covered services. You must pay coinsurance in the amount of [twenty percent (20%)] of the cost of covered services after you meet the deductible(s). **Care that has not been pre-certified is subject to a penalty of $[250] per day up to a maximum of $[500]. In no event, however, will the penalty exceed fifty percent (50%) of the benefit otherwise payable. To begin the pre-certification process, please call the Clinical Referral Line at 1-800-NYC-CITY (1-800-692-2489) before receiving services.** Once the amount of the inpatient deductibles you have incurred for services in rendered in non-participating facilities in a calendar year reaches $[1,250] per person ("deductible annual maximum"), then you will not be subject to more deductibles for inpatient mental health care services for the rest of that calendar year. Once your coinsurance expenses reach $[2,000] per person or $[5,000] per family in a calendar year ("coinsurance maximum"), you will not be subject to additional coinsurance for inpatient hospital services for the rest of that calendar year. This inpatient deductible and annual deductible maximum and this coinsurance maximum are combined with the deductible, annual deductible maximum and coinsurance maximum respectively for inpatient services provided and billed by a Non-Participating Hospital or Non-Participating facility under your City of New York hospitalization coverage provided by [Empire Blue Cross/Blue Shield] and for inpatient mental health care services rendered by a Participating Hospital or Non-Participating facility under this Certificate.

c. **Eligible Facilities**. In New York State, you must receive care in a facility issued an operating certificate by the New York State Division of Alcoholism and Alcohol Abuse or by the Division of Substance Abuse Services to provide the service.

EH-95

GHC-NYC-1374A

Outside of New York, a facility licensed or certified to provide the services in the state in which they are delivered or is accredited by the Joint Commission on Accreditation of Health Care Organizations (JCAHCO) to provide such services.

**B.** **Mental Health Benefits**.  You are covered for inpatient and outpatient mental health care as set forth below.  Mental health care refers to medically necessary care rendered by an eligible Provider and which, in the opinion of GHI, is directed predominately at treatable behavioral manifestations of a condition that GHI determines: a) is a clinically significant behavioral or psychological syndrome, pattern, illness or disorder; and b) substantially or materially impairs a person's ability to function in one or more major life activities; and c) has been classified as a mental disorder in the current *American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders*.  Mental health care also refers to care for biologically based mental illness and for children with serious emotional disturbances.  Biologically based mental illness refers to one (1) or more of the conditions listed below.

- Schizophrenia/psychotic disorders.
- Major depression.
- Bipolar disorder.
- Delusional disorders.
- Panic disorder.
- Obsessive-compulsive disorder.
- Bulimia.
- Anorexia.

Children with serious emotional disturbances refer to children less than eighteen (18) years of age with diagnoses of attention deficit disorders, disruptive behavior disorders, or pervasive development disorders, together with one (1) or more of the following conditions:

- Serious suicidal symptoms or other life threatening self-destructive behaviors;
- Significant psychotic symptoms (hallucinations, delusion, bizarre behaviors);
- Behavior caused by emotional disturbances that placed the child at risk of causing personal injury or significant property damage; or
- Behavior caused by emotional disturbances that placed the child at substantial risk of removal from the household.

**1.** **Outpatient Mental Health Care**.

a. **Number of Visits Covered**.  GHI will cover an unlimited number of outpatient mental health visits per member per calendar year.

b. **Payments**.  The amount of GHI's payment for covered services will vary.  It will depend upon whether you receive services from a Participating or non-participating Provider.

- **Participating Provider**.  A Participating Provider has an agreement to provide care to covered persons.  GHI will pay the Provider directly.  Each visit is subject to the same Co-pay Charge that applies to home and office visits under the Certificate, as amended from time to time.
- **Non-Participating Provider**.  GHI will pay for covered services provided and billed by a non-participating provider or facility according to the same terms, conditions and maximums that apply to use of non-participating providers under Section Four of the Certificate, as amended from time to time, for home and office visits. **You must pre-certify psychological testing services received from Non-Participating Providers by calling the Clinical Referral Line before you receive services.  The telephone number is 1-800-NYC-CITY (1-800-692-2489).  If you fail to pre-certify, your benefits for the services will be reduced by fifty percent (50%)**.

c. **Eligible Providers**. A Provider listed below must render the outpatient mental health care services.

- A facility issued an operating certificate by the New York State Commissioner of Mental Health or, outside of New York, a facility licensed or certified to provide the services in the state in which they are delivered or is accredited by the Joint Commission on Accreditation of Health Care Organizations (JCAHCO) to provide such services.
- A facility operated by the New York State Office of Mental Health.
- A licensed psychiatrist.
- A licensed psychologist.
- A licensed clinical social worker qualified for reimbursement. He or she must have at least six (6) years of post-masters' degree supervised psychotherapy experience.

The services may be rendered in a professional office, clinic, facility outpatient department or a university faculty practice corporation. GHI will not pay for the service unless it is rendered by one of the Providers set forth above. Services that are merely supervised or directed by such a Provider are not covered.

2. **Inpatient Mental Health Care**.

a. **Number of Days Covered**. GHI will cover up to three hundred and sixty-five (365) days of active inpatient treatment per member per single hospital confinement. These inpatient mental health benefits also include full hospitalization, partial hospitalization, intensive outpatient care and residential care; however, these services are not subject to the inpatient deductible(s). Two (2) partial hospitalization visits count as one (1) inpatient day. You must get prior authorization for all non-emergency inpatient mental health care services.

b. P**ayments**. The amount of GHI's payment will vary. It will depend on whether you receive services in a participating facility or a non-participating facility.

- **Participating Provider**. You must meet a deductible of $[300] per person per continuous confinement. After you meet the deductible, GHI will provide paid in full benefits for covered services received from a GHI participating or a non-participating facility. Once the amount of the inpatient mental health care deductibles you have incurred for services in participating facilities in a calendar year reaches $[750] ("annual maximum deductible"), then you will not be subject to more deductibles for inpatient mental health care services for the rest of that calendar year. This inpatient deductible and annual deductible maximum is combined with the deductible and annual deductible maximum respectively for inpatient services provided and billed by a Participating Hospital or Participating facility under your City of New York hospitalization coverage provided by [Empire Blue Cross/Blue Shield] and for inpatient substance use disorder services rendered by a Participating Hospital or Participating facility under this Certificate.
- **Non-Participating Provider**. You must meet a deductible of $[500] per person per continuous confinement. After you meet the deductible, GHI will cover [eighty percent (80%)] of the cost of covered services. You must pay coinsurance in the amount of [twenty percent (20%)] of the cost of covered services after you meet the deductible(s). **Care that has not been pre-certified is subject to a penalty of $[250] per day up to a maximum of $[500]. In no event, however, will the penalty exceed fifty percent (50%) of the benefit otherwise payable. To begin the pre-certification process, please call the Clinical Referral Line at 1-800-NYC-CITY (1-800-692-2489) before receiving services**. Once the amount of the inpatient deductibles you have incurred for services rendered in non-participating facilities in a calendar year reaches $[1,250] per person ("deductible annual maximum"), then you will not be subject to more deductibles for inpatient mental health care services for the rest of that calendar year. Once your coinsurance expenses reach $[2,000] per person or $[5,000] per family in a calendar year ("coinsurance maximum"), you will not be subject to additional coinsurance for inpatient hospital services for the rest of that calendar year. This inpatient deductible and annual deductible maximum and this coinsurance maximum are combined with the deductible, annual deductible maximum and coinsurance maximum respectively

for inpatient services provided and billed by a Non-Participating Hospital or Non-Participating facility under your City of New York hospitalization coverage provided by [Empire Blue Cross/Blue Shield] and for inpatient substance abuse services rendered by a Participating Hospital or Non-Participating facility under this Certificate.

c.   **Eligible Facilities**.  In New York State, you must receive care in a hospital as defined by Section 1.03(10) of the New York State Mental Hygiene Law.  Outside of New York State, you must receive care in a facility that is licensed or certified to provide the type of care that you receive by the state in which the facility is located or is accredited by the Joint Commission on Accreditation of Health Care Organizations (JCAHCO) to provide such care.

All other terms, conditions, limitations and exclusions of the Certificate apply to this rider.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER AMENDING THE GHI CERTIFICATE OF INSURANCE**

**FOR**

**CITY OF NEW YORK EMPLOYEES AND RETIREES**

**GROUP HEALTH INCORPORATED**

This rider amends the GHI Certificate of Insurance for City of New York Employees and Retirees ("Certificate"). It changes Section Fourteen, Medicare Eligible Coverage as set forth below effective on and after July 1, 2010.

This rider deletes the last paragraph of Section Fourteen, Paragraph 2(A), which states:

"Please note that routine foot care and psychiatric services are not covered. GHI does not provide coverage in those instances where Medicare denies coverage, except for services rendered outside the United States."

It replaces this language with the following new language:

"Please note that routine foot care is not covered. GHI does not provide coverage in those instances where Medicare denies coverage, except for services rendered outside the United States."

All other terms, conditions, limitations and exclusions of the Certificate apply to this rider.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**Rider to Group Insurance Certificate Replacing Section entitled
"CONTINUATION OF COVERAGE"**

**GROUP HEALTH INCORPORATED**

This rider amends your Certificate of Insurance with GHI. It replaces the section entitled "CONTINUATION OF COVERAGE" as set forth below:

## CONTINUATION OF COVERAGE.

**1. Continuation of Coverage.** For the purpose of this section, a Group Member is defined as an employee or retiree to whom coverage is made available. Under Federal law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), continuation of current group benefits may be available after loss of eligibility for coverage. Group Members, their spouses and their dependent children as well as any child who is born to or placed for adoption with a covered employee during a period of COBRA continuation coverage may be eligible for continuation. In order to qualify for continuation of coverage, you must no longer be eligible for health care benefits because of any of the following qualifying events:

- Termination of employment.
- A decrease in benefits due to a reduction in hours of employment.
- Loss of coverage because of a divorce; legal separation; or the death of the Group Member.
- Loss of eligibility for coverage as a dependent of a Group Member.
- Loss of Coverage of the spouse and dependents when a covered employee or a covered retiree becomes entitled to Medicare.
- Loss of eligibility for coverage as a covered retiree or covered spouse, dependent, or widow of a retiree whose employer filed for bankruptcy on or after July 1, 1986.

This coverage is available without evidence of insurability. Continuation is not available for certain non-resident aliens. However, these non-resident aliens may be entitled to continuation of coverage as provided under New York State law. See Paragraph 2 below. If you have a question regarding your status for eligibility to continue coverage under Federal law, kindly contact your group.

Continuation of coverage is subject to the following conditions:

(a) COBRA continuation coverage is not available if you are covered under the group health plan by reason of another individual's election of COBRA continuation coverage and you are not already a qualified beneficiary by reason of a prior qualifying event. COBRA continuation of coverage is not available if you become covered by another group policy that provides similar benefits. Unless, that policy contains a pre-existing condition limitation. COBRA continuation of coverage is also not available if the reason for termination of employment was gross misconduct. However, if you were terminated due to gross misconduct you may be entitled to a continuation of coverage. This is provided under New York State law. See Paragraph 2 below.

(b) A Group Member, spouse, or dependent child must notify the Plan of a divorce, legal separation, or change in dependent status. This notice must be sent to the Plan within sixty (60) days of the later of either of the following:

(i) The date of the qualifying event.

(ii) The date coverage would otherwise be lost.

(c) You must request continuation of coverage in writing within sixty (60) days of the later of either of the following:

(i) The date your coverage would otherwise terminate under your group Plan.

(ii) The date notice of your right to continue coverage is sent to you.

(d) You must pay your group contract holder one hundred and two percent (102%) of the group rate for continuation of coverage. The required premium includes two percent (2%) of the group rate to cover administration costs. If you are disabled and extend coverage from eighteen (18) to twenty-nine (29) months, you must pay a different premium for the Nineteenth (19th) through twenty-ninth (29th) month. You must pay your group contract holder one hundred and fifty percent (150%) of the group rate for the continuation of coverage. This premium may be collected on a monthly basis.

(e) Your continuation of coverage will terminate on the first of the following date.

(i) You become entitled to Medicare benefits after the date of the COBRA election. You become entitled to Medicare benefits upon the effective date of enrollment in either part A or B, whichever occurs earlier. Thus, merely being eligible to enroll in Medicare does not constitute being entitled to Medicare benefits.

(ii) You become covered under another group health care plan as an employee or dependent after the date of the COBRA election. Unless that plan contains a pre-existing condition, limitation and you had a break in coverage of more than sixty-three (63) days;

(iii) Eighteen (18) months, if the qualifying event is termination of employment or reduction of hours, unless you are disabled, as determined by Social Security. The eighteen (18) months will be measured from the date of the qualifying event. Your Plan may elect to measure the eighteen (18) months from loss of coverage;

(iv) Twenty-nine (29) months after termination of employment or reduction of hours if you are disabled. The twenty-nine (29) months will be measured from the date of the qualifying event. Your plan may elect to measure twenty-nine (29) months from the loss of coverage. You must be disabled as determined by Social Security. You must be disabled on the date of termination of employment or reduction of hours or become disabled within sixty (60) days of termination of employment. You must notify your Plan of Social Security's determination of your disability. The notice must be provided within sixty (60) days of Social Security's determination and before the end of the eighteen (18) month continuation period. If Social Security determines that you are no longer disabled, you must notify the plan administrator of this. You must notify the plan administrator of this within thirty (30) days from Social Security's final determination. If you are no longer disabled, COBRA continuation coverage may terminate earlier than twenty-nine (29) months for you and your qualified beneficiaries.

(v) Thirty-six (36) months for all other qualifying events. The thirty-six (36) will be measured from the date of the qualifying event. You may elect to measure the thirty-six (36) months from the loss of coverage;

The end of the period for which you made premium payments, if you fail to make timely payment of the required premium;

(vii) The date on which your group plan terminates coverage with GHI. However if the group plan is replaced by the group contract holder with similar coverage, you have the right to become covered under the other coverage for the balance of the period that you would have remained covered hereunder; or

(viii) At any time that your coverage is terminated for cause.

An eighteen (18) month period of continuation may be extended to a thirty-six (36) month period if a second qualifying event occurs during the eighteen (18) month period. The second qualifying event must be of the type that would allow the covered Group Member or his or her dependents to continue coverage for thirty-six (36) months. The thirty-six (36) month period in this case will be measured from the first qualifying event.

Your Plan may elect to calculate your period of continuation coverage from the date of loss of coverage instead of the date of the qualifying event. Contact your group to determine whether the group has elected this option. This option is not available if the loss of coverage occurs because a covered employee becomes entitled to Medicare. In such a case, the period of continuation coverage for the spouse and dependents begin the date the covered employee becomes entitled to Medicare.

When your continued coverage terminates, you may purchase a direct payment conversion contract from GHI. (See Direct Payment Conversion Section).

**2. Continuation of Coverage under New York State Law**. There are cases where you may lose eligibility for coverage under this Certificate but not be eligible for continuation of coverage under Federal law. If the loss of eligibility is due to termination of employment or loss of membership in the class or classes eligible for coverage, you may be entitled to continue coverage under New York State law. Continued coverage is available without evidence of insurability. If continuation is available to the Group member under Federal law, then the New York State continuation law does not apply. A spouse or dependent of a Group Member does not have a separate right to elect continuation of coverage under New York State law if continuation is

EH-103    PLA-38

available to the Group Member under Federal Law.  The New York State law does not apply if you become eligible for coverage under Medicare or another group health policy.

The following criteria apply to New York State continuation of coverage:

(a)  Continuation of coverage is not available if you are covered under Medicare or could be covered under Medicare. Continuation of coverage is also not available if you become covered or could be covered by another group policy that provide similar benefits. Unless that policy contains a pre-existing condition limitation.

(b)  You must request continuation of coverage in writing and submit your first premium payment within sixty (60) days of the later of either of the following:

(i)  The date your coverage would otherwise terminate under your group Plan.

(ii)  The date notice of your right to continue coverage is provided to you.

(iii)  The member who wants to continue coverage due to disability.

(c)  You must pay your group contract holder one hundred and two percent (102%) of the group rate for continuation of coverage. But not more frequently than on a monthly basis in advance.

(d)  Your continuation of coverage will terminate on the first of the following dates:

(i)  You become eligible for Medicare.

(ii) You become covered under another group health care plan as an employee or dependent, unless that plan contains a pre-existing condition limitation.

(iii)  Eighteen (18) months, if the qualifying event is termination of employment or membership in the class or classes eligible for coverage.

(iv)  Twenty-nine (29) months after termination of employment or membership in the class or classes eligible for coverage if you are disabled.  The twenty-nine (29) months will be measured from the date coverage would otherwise be lost. You must be disabled as determined by Social Security.  You must be disabled on the date of termination of employment or membership or become disabled within the first sixty (60) days of continuation of coverage.  You must notify your Plan of Social Security's determination of your disability.  If you are no longer disabled, continuation coverage will terminate on the later of the following:

•Eighteen (18) months from the date coverage would otherwise be lost.

•The month that begins more than thirty-one (31) days after Social Security determines that you are no longer disabled.

(v) Thirty-six (36) months if you are an eligible dependent who will otherwise lose coverage due to the death of the Group Member, divorce, legal separation, change in dependent status or the Group Member becoming eligible for Medicare. The thirty-six (36) months will be measured from the date coverage would otherwise be lost.

(vi)  The end of the period for which you made premium payments, if you fail to make timely payment of the required premium.

(vii) The date on which your group plan terminates coverage with GHI.  However, if the group plan is replaced by the group contract holder with similar coverage, you have the right to become covered under the other coverage for the balance of the period that you would have remained covered hereunder. The replacement plan must provide at least the same level of benefits provided by the prior group plan, reduced by any benefits payable under the prior group contract.  The prior group plan must provide benefits to the extent of its accrued liabilities and extension of benefits.

When your continued coverage terminates, you may purchase a direct payment conversion contract from GHI.  (See Direct Payment Conversion Section).

**3.  Special Provisions for Members of the Armed Forces on Active Duty**.  If the Group Member is a member of a reserve component of the armed forces of the United States.  This includes the National Guard, and on active duty, you may be entitled to:

(a) Supplementary continuation of current group benefits under New York State law and conversion to a direct payment contract from GHI upon termination of continued coverage. (See Paragraph A below); or

(b) Suspension of coverage during the period of active duty. (See Paragraph D below.)

**A. Eligibility**. In order to be eligible for the rights set forth in this Paragraph 3, the Group must not voluntarily maintain coverage for the Group Member during the period of active duty. Also, the Group Member must have:

(a) Voluntarily or involuntarily entered active duty (other than to determine physical fitness or for training); or

(b) Had his or her active duty voluntarily or involuntarily extended. This must occur during a period when the President of the United States is authorized to order units of the ready reserve or member of a reserve component to active duty. The extended active duty must be at the request and for the convenience of the federal government; and;

(c) Served no more than four years of active duty.

**B. Supplementary Continuation of Coverage**. If your group does not voluntarily maintain coverage for the Group Member during the period of active duty, you are eligible for supplementary continuation of coverage under the group contract. This supplementary continuation of coverage is available without evidence of insurability. Coverage available through the Federal government for active duty members and their families shall not be considered group coverage.

You must apply for supplementary continuation within sixty (60) days of being ordered to active duty. You must pay one hundred percent (100%) of the group premium on a monthly basis. But not more frequently than on a monthly basis in advance.

Continuation of coverage is not available if you are covered under Medicare or could be covered under Medicare. It is also not available if you become covered by another group policy.

The condition must have arose during the period of active duty and the condition has been determined by the secretary of veteran affairs to be a condition incurred in the line of duty.

In certain circumstances, supplementary continuation may terminate earlier. Continuation of coverage will terminate earlier on the first of the following dates:

(i) You become eligible for Medicare.

(ii) You become covered under another group health care plan as an employee or dependent.

(iii) The end of the period for which you made premium payments, if you fail to make timely payment of the required premium.

(iv) The date on which the group plan terminates coverage with GHI. However, if your group replaces the Group Contract with similar coverage, you have the right to become covered under that other coverage for the balance of the period that you would have remained covered hereunder.

(v) The Group Member has served four years of active duty.

If the Group Member dies while on active duty, supplementary continuation of coverage will terminate for the surviving spouse and covered dependents of the Group Member. In the event of divorce or annulment of the marriage to the Group Member, supplementary continuation of coverage will terminate for the former spouse. In these circumstances, the former spouse and the surviving spouse and covered dependents are eligible for conversion. (See Paragraph C below.)

When the group Member returns to civilian status and he or she is re-employed or restored to participation in the group, coverage under the group plan will be resumed. Supplementary continuation of coverage will terminate on the date that coverage under the group plan becomes effective. Coverage will not be subject to limitations, conditions, exclusions, or waiting periods unless:

(a) A waiting period was imposed and had not been completed prior to the period of suspension; or

(b) The Group Member's condition arose during the period of active duty and was incurred in the line of duty.

EH-105    PLA-38

However, in no event shall the sum of the waiting periods imposed prior to and subsequent to the period of suspension shall not exceed the length of the waiting period originally imposed.

When the Group Member returns from active duty and does not become re-employed or restored to participation in the group, the Group Member shall be entitled to:

(a) Continue coverage under New York State Law and purchase a direct payment conversion contract from GHI upon termination of continued coverage. (See Paragraph 2 of this Section.) or;

(b) Purchase a direct payment conversion contract from GHI.  (See Section Direct Payment Conversion Section).

**C.  Conversion.**

(a) **Availability**.  When your supplementary continuation of coverage terminates, you may purchase a direct payment contract from GHI.  Conversion is available to the former spouse of a Group Member upon divorce or annulment of the marriage of the Group Member.  The divorce or annulment must have occurred while the Group Member was on active duty.  In addition, conversion is available to the surviving spouse and other dependents covered under the contract upon the death of the Group Member.  The death must have occurred during the Group Member's active duty.  Conversion is also available to a dependent who is no longer within the definition of family under the contract while the Group Member is on active duty.

(b) **When to Apply for the New Conversion Contrac**t.  You must apply for the new contract within thirty-one (31) days of the later of the following:

(i) The date the Group Member's active duty terminates; or

(ii) The date the Group Member is discharged from the Hospital.  The hospitalization must have resulted from active duty.  It cannot exceed one (1) year.

Payment of the first premium must be made at the time you apply for the direct payment contract.

**D.  Suspension of Coverage**.  If the group does not voluntarily maintain coverage for the Group Member and you do not continue your group benefits, your coverage will be suspended during the period of active duty.  When the Group Member returns to participation in the group plan, coverage under the group plan will be resumed.  Coverage will be retroactive to the date active duty terminated.  Coverage will not be subject to limitations, conditions, exclusions, or waiting periods unless:

(a) A waiting period was imposed and had not been completed prior to the period of suspension; or

(b) The condition must have arose during the period of active duty and the condition has been determined by the secretary of veteran affairs to be a condition incurred in the line of duty.

However, in no event shall the sum of the waiting periods imposed prior to and subsequent to the period of suspension shall not exceed the length of the waiting period originally imposed.

If the Group Member returns from active duty and does not become re-employed or restored to participation in the group, the Group Member shall be entitled to:

(a) Continue coverage under New York State Law and purchase a direct payment conversion contract from GHI upon termination of continued coverage.  (See Paragraph 2 of this Section.); or

(b) Purchase a direct payment conversion contract from GHI.  (See Direct Payment Conversion Section).

**4.  Question**s.  The laws regarding continuation of benefits are complicated.  If your coverage under this Certificate is terminating, you should contact your Group if you are interested in continuing your benefits.

**Other Terms**.  All other terms, conditions, limitations and exclusions of your Certificate apply.

**GROUP HEALTH INCORPORATED**

(hereinafter referred to as "GHI")

441 Ninth Avenue, New York NY 10001



**RIDER TO AMEND
GHI PROCEDURES FOR DETERMINATION OF
CLAIMS, GRIEVANCES & APPEALS**

**GROUP HEALTH INCORPORATED**

**Table of Contents**                                                            **Page**

Criteria for Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

Utilization Review Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

Other Claim Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

Grievances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

Your Provider's Right to Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

Internal Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

External Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

This rider amends your GHI Contract or Certificate of Insurance. Among other changes, it sets forth GHI's new procedures for handling claims. It also gives you instructions about how to file grievances, internal appeals and external appeals.

**1.** This rider deletes the paragraph(s) entitled "Criteria for Coverage" from Section One, and replaces it with the new paragraph(s) set forth below.

"**Criteria for Coverage**. In order to request benefits, you must file a claim with GHI.

You, your authorized representative or your provider may file a claim for benefits with GHI on your behalf. For information about how to file a claim, please see the section of your Contract or Certificate entitled "Filing of Claims" or "Filing of Claims and Appeals."

GHI will provide benefits only for the services that are listed as covered in this Contract or Certificate. GHI will cover these services only if they are medically necessary and not otherwise excluded from coverage. The services must also be rendered by an eligible Provider.

Medically necessary services are health care services that are rendered by a Hospital or a licensed Provider and are determined by GHI to meet all of the criteria listed below.

- They are provided for the diagnosis, or direct care or treatment of the condition, illness, disease, injury or ailment.
- They are consistent with the symptoms or proper diagnosis and treatment of the medical condition, disease, injury or ailment.
- They are in accordance with accepted standards of good medical practice in the community.
- They are furnished in a setting commensurate with the patient's medical needs and condition.
- They cannot be omitted under the standards referenced above.
- They are not in excess of the care indicated by generally accepted standards of good medical practice in the community.
- They are not furnished primarily for the convenience of the patient, the patient's family or the Provider.
- In the case of a hospitalization, the services cannot be rendered safely or adequately on an outpatient basis and, therefore, require that the patient receive acute care as a bed patient."

**"Utilization Review Decisions.**

Utilization review is the process by which GHI decides whether or not an item or service for which you have requested benefits is medically necessary and/or experimental or investigational in nature. Utilization review is performed under the supervision of GHI's Medical Director. A clinical peer reviewer will confirm each finding by GHI that an item or service is not medically necessary or that an item or service is experimental or investigational and, therefore, not covered.

GHI will notify you of utilization review decisions as set forth below. If you disagree with GHI's decision that an item or service(s) is not medically necessary or is experimental or investigational in nature and therefore, not covered, you may file an appeal. Please see paragraph 2(C) of this rider for instructions on how to file an appeal.

**Pre-Service Claims**. A "pre-service claim" is a claim for a service that you must pre-certify with GHI under the terms of this Contract or Certificate. GHI will notify you and your Provider of its decision on a pre-service claim within the earlier of three (3) business days or five (5) calendar days after GHI's receipt of the claim. GHI will notify you in writing and by telephone.

If GHI requires more information to decide your claim, GHI will request such information within fifteen (15) days after its receipt of the claim. GHI will give you at least forty-five (45) days to supply the information. If you supply all of the requested information to GHI within the time that GHI gives you to supply it, then GHI will notify you of its decision within three (3) business days, but not later than five (5) calendar days after its receipt of the information. Otherwise, GHI will notify you of its decision within fifteen (15) days of its receipt of partial information or within fifteen (15) days of the end of the time period GHI gives you to supply it.

EH-109  PIA-58-A

If you fail to pre-certify a service when it is required by this Contract or Certificate, GHI will inform you of the proper pre-certification procedure within five (5) days (or within twenty-four (24) hours in the case of a pre-service urgent care claim) of receipt of the claim by a GHI person or unit customarily responsible for handling benefit matters.

**Post-Service Claims**.  A post service claim refers to any claim for benefits relating to a service that has already been provided to you.  GHI will notify you, and if appropriate your provider, of its decision on a post-service claim within thirty (30) days after its receipt of the claim.   GHI will notify you in writing.

If GHI requires more information to decide your claim, GHI will request such information within thirty (30) days after its receipt of the claim.  GHI will give you at least forty-five (45) days to supply the information.  If GHI requests more information, GHI will notify you of its decision on your claim within fifteen (15) days after GHI's receipt of all or part of the information or within fifteen (15) days after the end of the time period GHI gives you to supply the information.

**Urgent Care Claims**.  An urgent care claim refers to a claim that, if subjected to the other time periods set forth in this section, could seriously jeopardize the life or health of the patient or the patient's ability to regain maximum function, or subject the patient to severe pain that cannot be managed adequately.  GHI may reasonably require you or your provider to explain the medical reasons that give rise to a need for urgent care.

If care has **not** yet been initiated, GHI will notify you and your provider of its decision on your urgent care claim within seventy-two (72) hours from receipt of the claim. GHI will notify you in writing and by telephone.  If GHI requires more information to make a decision, GHI will notify you of the required information within twenty-four (24) hours after GHI's receipt of the claim. GHI will give you at least forty-eight (48) hours to supply the information.  GHI will notify you of its decision on your claim within forty-eight (48) hours of its receipt of the information or within forty-eight (48) hours of the end of the time period GHI gives you to supply the information.

If care has already been initiated and you are seeking an extension of urgent care, the time in which GHI will decide your urgent care claim will vary.  It will depend upon when GHI receives your claim.  If GHI receives your claim at least twenty-four (24) hours before the end of the previously approved treatment plan, then GHI will notify you and your provider of its decision on your urgent care claim within twenty-four (24) hours after GHI's receipt of the claim.  If GHI receives your claim less than twenty-four (24) hours before the end of the previously approved treatment plan, then GHI will notify you and your provider of its decision within the earlier of one (1) business day of its receipt of all necessary information or seventy-two (72) hours of its receipt of the claim.  GHI will notify you in writing and by telephone.

**Concurrent Care Decisions**.  A concurrent care decision refers to a claim decision by GHI that affects an on-going course of treatment taking place over a period of time or a number of treatments. If you or your provider request a non-urgent continuation, extension or addition to a previously approved plan of care, GHI will notify you and if appropriate, your provider of its decision within one (1) business day of GHI's receipt of all necessary information, but not more than fifteen (15) days after GHI's receipt of the claim. If GHI reduces or terminates a previously approved course of treatment (for reasons other than amendment or termination of this Contract or GHI your coverage), GHI will notify you and if appropriate, your provider of its decision sufficiently in advance so that you that you can appeal the decision.  GHI will notify you in writing and by telephone."

"**Other Claim Decisions**.

If your claim does not involve a determination by GHI regarding the medical necessity or  experimental or investigational nature of the requested service(s), GHI will notify you of its decision on your claim as set forth below.

**Pre-Service Claims**.  A "pre-service claim" is a claim for a service that you must pre-certify with GHI under the terms of this Contract or Certificate.  GHI will notify you and your Provider of its decision on a pre-service claim within fifteen (15) days after GHI's receipt of the claim.  GHI will notify you in writing.

If GHI requires more information to decide your claim, GHI will request such information within fifteen (15) days after its receipt of the claim.  GHI will give you at least forty-five (45) days to supply the information.  If GHI requests more information,

GHI will notify you of its decision on your claim within fifteen (15) days after its receipt of all or part of the information or within fifteen (15) days after the end of the time period GHI gives you to supply it.

If you fail to pre-certify services when it is required by this Contract or Certificate, GHI will inform you of the proper pre-certification procedures within five (5) days (or within twenty-four (24) hours in the case of a pre-service urgent care claim) of receipt of the claim by a GHI person or unit customarily responsible for handling benefit matters.

**Post-Service Claims**. A post service claim refers to any claim for benefits that is not a pre-service claim. GHI will notify you of its decision on a post-service claim within thirty (30) days of its receipt of the claim. GHI will give such notice in writing.

If GHI requires more information to decide your claim, GHI will request such information within thirty (30) days after its receipt of the claim. GHI will give you at least forty-five (45) days to supply the information. If GHI requests more information, GHI will notify you of its decision on your claim within fifteen (15) days after the earlier of GHI's receipt of all or part of the information or the end of the time period GHI gives you to supply it. GHI may combine its request for more information with a notice of denial. If GHI does not receive any information, then this denial will apply. In such a case, you will not receive a notice from GHI at the end of the time period GHI gives you to supply information.

If you receive services from a GHI participating provider, and your only liability for the service(s) is a Co-pay Charge, then the time periods above do not apply.

**Urgent Care Claims**. An urgent care claim refers to a claim that, if subjected to the other time periods set forth in this section, could seriously jeopardize the life or health of the patient or the patient's ability to regain maximum function, or subject the patient to severe pain that cannot be managed adequately. GHI may reasonably require you or your provider to explain the medical reasons that give rise to a need for urgent care.

If care has not yet been initiated, GHI will notify you of its decision on your urgent care claim within seventy-two (72) hours of its receipt of the claim. If care has already been initiated and you are seeking an extension of urgent care, the time in which GHI will decide your urgent care claim will vary. It will depend upon when GHI receives your claim. If GHI receives your claim at least twenty-four (24) hours before the end of the previously approved treatment plan, then GHI will notify you of its decision on your urgent care claim within twenty-four (24) hours after GHI's receipt of the claim. If GHI receives your claim less than twenty-four (24) hours before the end of the previously approved treatment plan, then GHI will notify you and your provider of its decision within seventy-two (72) hours of its receipt of the claim. GHI will provide such notice in writing.

If GHI requires more information to make a decision on your urgent care claim, GHI will notify you of the required information within twenty-four (24) hours after GHI's receipt of the claim. If GHI requests more information, GHI will give you at least forty-eight (48) hours to supply the information. GHI will notify you of its decision on your claim within forty-eight (48) hours of the earlier of its receipt of the information or the end of the time period GHI gives you to supply the information.

Concurrent Care Decisions. A concurrent care decision refers to a claim decision by GHI that affects an on-going course of treatment taking place over a period of time or a number of treatments. If you or your provider request a non-urgent continuation, extension or addition to a previously approved plan of care, GHI will notify you of its decision within fifteen (15) days from GHI's receipt of the claim. If GHI reduces or terminates a previously approved course of treatment (for reasons other than amendment or termination of this Contract or your GHI coverage), GHI will notify you of its decision sufficiently in advance so that you that you can appeal the decision. GHI will give such notice in writing."

**2.** This rider amends the section of your Contract or Certificate entitled "Filing of Claims" or "Filing of Claims and Appeals." It adds the new terms set forth below to that section. Any terms that appear in that section of your Contract or Certificate that are not consistent with the new terms below are hereby deleted from your Contract or Certificate.

"**A. GRIEVANCES**.

If you do not agree with a decision made by GHI (other than a decision regarding the medical necessity or experimental or investigational nature of a requested service), you may file a grievance with GHI. You may also file a grievance with GHI if you

are not satisfied with one or more aspects of this GHI insurance program. You may authorize a representative to file a grievance on your behalf. You must file the grievance within one hundred and eighty (180) days from the date that you received notice of GHI's decision.

Your grievance must include your GHI identification number and claim number(s). It must also describe your complaint. It should also include any other information that you wish GHI to consider.

Please send your grievance(s) to:

GHI - Grievance Unit
P.O. Box 4007
New York, New York 10116-4007

GHI will reply to your grievance in writing. GHI will reply to your grievance within the time period(s) set forth below.

Urgent Care Claims: seventy-two (72) hours after GHI's receipt of the grievance

Pre-Service Claims: thirty (30) days after GHI's receipt of the grievance.

Post Service Claims and Other Grievances: sixty (60) days after GHI's receipt of the grievance.

**B. YOUR PROVIDER'S RIGHT TO RECONSIDERATION.**

If GHI denies a covered service on the basis that it is not medically necessary or it is experimental or investigational in nature, and GHI does not first try to discuss the decision with your Provider, your Provider has the right to request a reconsideration by GHI. If you have not yet received the service, GHI will reconsider the decision within one (1) business day of GHI's receipt of the request.

**C. INTERNAL APPEALS.**

**STANDARD APPEALS**. If GHI denies a claim for a covered service on the basis that the service is not medically necessary or is experimental or investigational in nature, you may file an appeal with GHI. You may also authorize a representative to file an appeal on your behalf. You may file the appeal by telephone or in writing. You must file the appeal within one hundred and eighty (180) days from the date that you receive notice of GHI's denial. The appeal must include your GHI identification number and claim number(s). It should also include any medical data and comments in support of your appeal.

You must file a verbal appeal by calling GHI toll free at:

1-888-906-7668.

You must direct written appeals to:

GHI - Utilization Review Appeals
P.O. Box 2809
New York, New York 10116-2809

GHI will acknowledge receipt of your appeal within fifteen (15) days of GHI's receipt of your appeal. If GHI needs more information to decide your appeal, GHI will also notify you and your Provider of the needed information within fifteen (15) days of GHI's receipt of the appeal. The time within which GHI must respond to your appeal will vary depending upon the type of claim that you are appealing. If GHI fails to decide your appeal within these time periods, the service will be deemed approved.

**Pre-Service Claim Appeals**. In the case of a pre-service claim, GHI will decide your appeal within thirty (30) days from GHI's receipt of the appeal.

**Post-Service Claim Appeals**. In the case of a post-service claim, GHI will decide your appeal within thirty (30) business days of GHI's receipt of all necessary information, but not more then sixty (60) days from GHI's receipt of the appeal.

**Urgent Care Claim Appeals**. In the case of an urgent care claim, GHI will decide your appeal within the earlier or two (2) business days of GHI's receipt of all necessary information  or seventy-two (72) hours after GHI's receipt of the appeal.

**Concurrent Care Appeals**. If you are appealing GHI's denial of a non-urgent continuation, extension or addition to the care plan, GHI will decide your appeal within the earlier of two (2) business days of GHI's receipt of all necessary information or thirty (30) days after GHI's receipt of the appeal. If you are appealing GHI's reduction or termination of a previously approved care plan, GHI will decide your appeal within seventy-two (72) hours of GHI's receipt of the appeal.

**EXPEDITED APPEALS.** GHI offers an expedited appeal process in certain cases. An expedited appeal may be filed only in the cases below.

- Cases that involve continued or extended health care services, procedures or treatments.
- Cases that involve requests for additional services for a person undergoing a course of continued treatment.
- Cases where the Provider believes an immediate appeal is warranted due to imminent or serious threat to the health of the person.

If GHI needs more information to decide your appeal, GHI will notify you and your Provider of the needed information within twenty-four (24) hours. GHI will make a decision on your appeal within two (2) business days of GHI's receipt of the information needed for GHI to conduct a full and fair review, but not more than seventy-two (72) hours from GHI's receipt of the appeal. If GHI fails to decide your appeal within these time periods, the service will be deemed approved.

To file an expedited appeal, please call GHI toll free at 1-888-906-7668.

**D. EXTERNAL APPEALS**.

**YOUR RIGHT TO AN EXTERNAL APPEAL**.

Under certain circumstances, you have a right to an external appeal of a denial of coverage. Specifically, if GHI has denied coverage on the basis that the service is not medically necessary or is an experimental or investigational treatment, you or your representative may appeal that decision to an External appeal Agent, an independent entity certified by the State to conduct such appeals.

**YOUR RIGHT TO APPEAL A DETERMINATION THAT A SERVICE IS NOT MEDICALLY NECESSARY**.

If GHI has denied coverage on the basis that the service is not medically necessary, you may appeal to an External Appeal Agent if you satisfy the following two (2) criteria:

- The service, procedure or treatment must otherwise be a Covered Service under this Contract or Certificate; and
- You must have received a final adverse determination through GHI's internal appeal process and GHI must have upheld the denial or you and GHI must agree in writing to waive any internal appeal.

**YOUR RIGHT TO APPEAL A DETERMINATION THAT A SERVICE IS EXPERIMENTAL OR INVESTIGATIONAL**.

If you have been denied coverage on the basis that the service is an experimental or investigational treatment, you must satisfy the following two (2) criteria:

- The service must otherwise be a Covered Service under this Contract or Certificate; and
- You must have received a final adverse determination through GHI's internal appeal process and GHI must have upheld the denial or you and GHI must agree in writing to waive any internal appeal.

In addition, your attending physician must certify that you have a life threatening or disabling condition or disease. A "life-threatening condition or disease" is one, which, according to the current diagnosis of your attending physician, has a high probability of death. A "disabling condition or disease" is any medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months, which renders you unable to engage in any substantial gainful activities. In the case of a child under the age of eighteen (18), a "disabling condition or disease" is any medically determinable physical or mental impairment of comparable severity.

EH-113 PIA-58-A

Your attending physician must also certify that your life-threatening or disabling condition or disease is one for which standard health services are ineffective or medically inappropriate or one for which there does not exist a more beneficial standard service or procedure covered by GHI or one for which there exists a clinical trail (as defined by law).

In addition, your attending physician must have recommended one of the following:

- A service, procedure or treatment that two (2) documents from available medical and scientific evidence indicate is likely to be more beneficial to you than any standard Covered Service (only certain documents will be considered in support of this recommendation – your attending physician should contact the State in order to obtain current information as to what documents will be considered acceptable); or

- A clinical trial for which you are eligible (only certain clinical trials can be considered).

For the purposes of this section, your attending physician must be a licensed, board-certified or board eligible physician qualified to practice in the area appropriate to threat your life-threatening or disabling condition or disease.

**THE EXTERNAL APPEAL PROCESS**.

If, through GHI's internal appeal process, you have received a final adverse determination upholding a denial of coverage on the basis that the service is not medically necessary or is an experimental or investigational treatment, you have forty-five (45) days from receipt of such notice to file a written request for an external appeal. If you and GHI have agreed in writing to waive any internal appeal, you have forty-five (45) days from receipt of such waiver to file a written request for an external appeal. GHI will provide an external appeal application with the final adverse determination issued through GHI's internal appeal process or its written waiver of an internal appeal.

You may also request an external appeal application from New York State at 1-800-400-8882. Submit the completed application to State Department of Insurance at the address indicated on the application. If you satisfy the criteria for an external appeal, the State will forward the request to a certified External Appeal Agent.

You will have an opportunity to submit additional documentation with your request. If the External Appeal Agent determines that the information you submit represents a material change from the information on which GHI based its denial, the External Appeal Agent will share this information with GHI in order for it to exercise its right to reconsider its decision. If GHI chooses to exercise this right, GHI will have three (3) business days to amend or confirm its decision. Please note that in the case of an expedited appeal (described below), GHI does not have a right to reconsider its decision.

In general, the External Appeal Agent must make a decision within thirty (30) days of receipt of your completed application. The External Appeal Agent may request additional information from you, your physician or GHI. If the External Appeal Agent requested additional information, it will have five (5) additional business days to make its decision. The External Appeal Agent must notify you in writing of its decision within two (2) business days.

If your attending physician certifies that a delay in providing the service that has been denied poses an imminent or serious threat to your health, you may request an expedited external appeal. In that case, the External Appeal Agent must make a decision within three (3) days of receipt of your completed application. Immediately after reaching a decision, the External Appeal Agent must try to notify you and GHI by telephone or facsimile of that decision. The External Appeal Agent must also notify you in writing of its decision.

If the External Appeal Agent overturns the Plan's decision that a service is not medically necessary or approves coverage of an experimental or investigational treatment, GHI will provide coverage subject to the other terms and conditions of this Contract or Certificate. Please note that if the External Appeal Agent approves coverage of an experimental or investigational treatment that is part of a clinical trial, GHI will only cover the costs of services required to provide treatment to you according to the design of the trial. GHI shall not be responsible for the costs of investigational drugs or devices, the costs of non-health care services, the costs of managing research, or costs which would not be covered under this Contract or Certificate for non-experimental or non-investigational treatments provided in such clinical trial.

The External Appeal Agent's decision is binding on both you and GHI.  The External Appeal Agent's decision is admissible in any court proceeding.

GHI will charge you a fee for an external appeal.  The external appeal application will instruct you on the manner in which you must submit the fee.  GHI will also waive the fee if GHI determines that paying the fee would pose a hardship to you.  If the External Appeal Agent overturns the denial of coverage, the fee shall be refunded to you.

**YOUR RESPONSIBILITES**.

**It is your REPONSIBILITY to initiate the external appeal process**.  You (or your designee) may initiate the external appeal process by filing a completed application with the New York State Department of Insurance.  In the case of a final adverse determination on a post-service claim, your physician may file an external appeal application, but only if you have consented to this in writing.

Under New York State law, your completed request for appeal must be filed within forty-five (45) days of either the date upon which you receive written notification from GHI that it has upheld a denial of coverage or the date upon which you receive a written waiver of any internal appeal.  GHI has no authority to grant an extension of this deadline."

**3**.   All other terms of your Contract or Certificate apply except to the extent that they conflict with the terms of this rider.

EH-115   PIA-58-A

EH-116

# SECTION III
# Additional Program Information

The following pages are not part of your GHI City of New York CBP Certificate of Insurance. However they provide important information about your health insurance program

EH-117

EH-118

  

July 1999

Dear City of New York Employees or Non-Medicare Eligible Retirees:

We are pleased to announce a number of significant improvements to your Empire Blue Cross Blue Shield and GHI Comprehensive Benefits Plan (CBP). Through the joint efforts of the City of New York Office of Labor Relations and the City's unions, represented by the Municipal Labor Committee, you and your eligible dependents will enjoy the following program enhancements:

## Dependent Student Coverage

Effective May 1, 1999, unmarried full-time dependent students, attending an accredited college or university, are covered for both hospital and medical care until the end of the calendar year in which the dependent reaches age 23 or graduation, whichever occurs first. Students are entitled to the same coverage as the subscriber. Students or family members must call NYC Healthline at 1-800-521-9574 prior to any scheduled hospital admission, or any elective non-emergency hospital admission at least 10 days before the admission, and within 24 hours after an emergency admission, to maintain their full health insurance benefits.

## Empire Blue Cross Blue Shield Hospitalization Benefits

Effective July 1, 1999

### *Skilled Nursing Facility/Rehabilitation Benefits*

Empire Blue Cross Blue Shield provides a flexible Combined Skilled Nursing Facility /Physical Rehabilitation Benefit Program (subject to NYC Healthline pre-authorization) which includes:

A maximum of 90 days coverage for Skilled Nursing Facility Care in an Empire Blue Cross Blue Shield participating facility, including 30 inpatient days in a rehabilitation hospital primarily for physical therapy, physical rehabilitation or physical medicine. NYC Healthline will work with the member and his/her physician to approve the appropriate level of care. To be eligible to receive benefits, subscribers must contact NYC Healthline at 1-800-521-9574 prior to admission.

The Combined Skilled Nursing Facility/Physical Rehabilitation Benefit allows coverage for up to 90 days per calendar year. Inpatient hospital stays primarily for the purpose of physical therapy, physical medicine, physical rehabilitation, or a combination of these services are counted toward the skilled nursing facility benefit.

### *Cardiac Rehabilitation Benefit*

Cardiac rehabilitation through Empire Blue Cross Blue Shield's participating network facilities is available for select cardiac conditions. This benefit provides up to a maximum 12 weeks rehabilitation or 36, visits subject to prior approval. To be eligible to receive benefits, subscribers must contact NYC Healthline at 1-800-521-9574. Upon approval, NYC Healthline will provide the necessary referral to an Empire Blue Cross Blue Shield's participating Cardiac Rehabilitation Facility.

Over

### Emergency Room Physician Coverage

Emergency physician services (non-specialists) rendered in the emergency room of a hospital will be covered by Empire Blue Cross Blue Shield, provided the emergency room treatment is payable by Empire Blue Cross Blue Shield.

Services performed by consulting specialists/private physicians are not considered covered under this benefit. Services for these specialists/private physicians will be covered by GHI subject to current plan deductibles and/or co-payments.

Please note that emergency room visits remain subject to the $25 co-payment. This $25 co-payment is waived if the emergency room care results in an admission related to the care at the same hospital on the same day.

### GHI Comprehensive Benefit Plan (CBP) Medical Benefits
Effective April 1, 1999

### GHI-CBP Participating Provider Maternity Fee Schedule Enhancement
The allowance paid to GHI participating providers for vaginal and cesarean deliveries has been increased. This allows GHI to maintain as well as expand its panel of OB/GYN providers.

### Catastrophic Deductible Reduction
The catastrophic deductible has been reduced from $3,000 to $1,500 per person per calendar year. Once a member has incurred $1,500 in non-participating provider out-of-pocket expenses, GHI's catastrophic benefit will reimburse a member at 100% of the allowed charge.

### Annual Lifetime Plan Maxima
The $200,000 annual maximum per person has been eliminated and the lifetime maximum has been increased to $2 million per person. The Private Duty Nursing annual maxima will remain unchanged.

### Effective July 1, 1999

### Laboratory and X-ray Copayments

GHI participating provider lab and X-ray services $10 co-payments will be limited to one $10 co-payment for each physician's office visit per day. Members are still responsible for the $10 office visit co-payment when visiting a participating provider.

We feel the significant enhancements made throughout the past several months provide City of New York employees and non Medicare eligible retirees with important additional benefits. We are delighted to be able to provide continued improvements to your benefits plan while reducing your out-of-pocket expenses. We look forward to continuing to serve you and your family's health benefits needs.

Sincerely,

Steven Kessler
Senior Vice President, GHI

Kevin M. C Neil
Vice President, Empire Blue Cross

EH-120



www.ghi.com

February 8, 2001

Dear City of New York Employee and Non-Medicare Eligible Retiree:

The City of New York Office of Labor Relations and the City's Unions, represented by the Municipal Labor Committee, are once again pleased to announce enhancements to the GHI Comprehensive Benefit Plan (CBP). These benefit enhancements provide additional value to New York City Employees and their covered dependents. These benefit enhancements are specific to only outpatient mental health visits.

**Enhanced In-Network Benefit**
**GHI/BMP In-Network Outpatient Mental Health Visits – Effective January 1, 2001**

Outpatient mental health visits rendered by a GHI Behavioral Management Program (GHI/BMP) participating provider under the GHI/BMP Basic program, will be increased from 30 visits per person, per calendar year to an unlimited number of visits per person, per calendar year. Each visit will continue to be subject to medical necessity, precertification under GHI/BMP and a $10 office co-payment. This enhancement to the program eliminates the need to utilize the Optional Rider benefit for additional in-network visits.

**Enhanced GHI Optional Rider Benefit**
**GHI Out-of-Network Outpatient Mental Health Visits – Effective March 1, 2001**

For those employees and non-Medicare eligible retirees who purchase the Optional Rider, the GHI Optional Rider benefit will no longer have a lifetime maximum of 60 visits per person for outpatient mental health care rendered by a non-participating provider. The GHI Optional Rider annual limit of 30 visits will continue and will be subject to a $100 deductible per person, per calendar year. Reimbursement for these services will be 50% of the network allowance. This benefit is not subject to precertification.

We would like to remind you that confidential services are available through the City and Union network of Employee Assistance Programs (see Q&A for EAPs list). These programs offer assessment, referral and treatment resources for employees and covered dependents.

Please contact GHI/BMP at 1-800-NYC-City or your Employee Assistance Program to access your behavioral benefits.

To assist you in understanding these benefit changes, enclosed is a list of Questions & Answers. GHI values your membership in the GHI Behavioral Management Program and we look forward to continuing to provide health insurance protection to you and your covered dependents.

Sincerely,

Marilyn DeQuatro
Senior Vice President

  

March 1999

Dear City of New York Employee or Non-Medicare Eligible Retiree:

We are pleased to announce a number of significant improvements to your GHI Comprehensive Benefits Plan (CBP) and Empire Blue Cross Blue Shield hospital plan. Through the joint efforts of the City of New York Office of Labor Relations and the City's unions, represented by the Municipal Labor Committee, you and your eligible dependents will enjoy the following program enhancements:

## Hospitalization Benefits
## (Empire Blue Cross Blue Shield)
### *365 Day Coverage*

- Hospitalization coverage has been increased under the Basic program to a full 365 days of protection. Previously, Empire Blue Cross Blue Shield provided 75 days coverage under the Basic program with an extension to 365 days available with the purchase of the Optional Rider. City of New York active employees and non-Medicare retirees, who presently have the Optional Rider, will notice a reduced contribution level in their wage or pension checks to reflect this savings. This enhancement is effective March 1, 1999.

## Medical Benefits
## (GHI)
### *Higher Non-Participating Provider Schedule Reimbursements:*

- Optional Rider enrollees will enjoy higher out-of-network reimbursements. The reimbursement under the Enhanced Non-Participating Provider Schedule will increase, on average, an additional 8%. Further, while the benefits provided by the Enhanced Non-Participating Provider Schedule Rider have increased, your payroll or pension contribution for the Optional Rider will not increase. This enhancement is retroactive to January 1, 1999.

### *Lower Contributions for the Optional Rider:*

- Optional Rider enrollees will also realize a reduced contribution level in their wage or pension checks for the GHI Medical and Behavioral Management Program Full-Time Dependent Student portion of the Rider. This enhancement is effective March 1, 1999.

### *Enhanced Chemotherapy Coverage:*

- Chemotherapy benefits have been expanded under the basic GHI-CBP program to cover all related medications, including adjunctive therapies and anti-nauseants. This enhancement to the current chemotherapy basic plan benefit now covers cancer-related chemotherapy drugs in full, when you use a participating retail or mail-order pharmacy. No copayment will be required. This benefit is effective March 1, 1999. Please refer to the enclosed instructions for accessing this benefit.

Over



### *Asthma Medication Coverage:*

- All asthma medications will now be covered under the basic GHI-CBP program. These medications will be covered in full when you use a participating retail or mail-order pharmacy. No copayment will be required. This benefit is effective March 1, 1999. Please refer to the enclosed instructions for accessing this benefit.

### *Disease State Management Programs for Asthma and Diabetes:*

- GHI is introducing Disease State Management Programs for Asthma and Diabetes. Both programs provide free education to members to assist them in managing these conditions. Further details outlining these programs will be forthcoming.

### *The Women's Health and Cancer Rights Act of 1998 Provides the Following Benefits:*

### Hospitalization Benefits (Empire Blue Cross Blue Shield)

- Full coverage for the length of a hospital stay for covered persons who have undergone lymph node dissection, lumpectomy or mastectomy for the treatment of breast cancer. The length of the hospital stay is left completely in the discretion of the attending physician, in consultation with the patient. The insurer must cover as many days as the attending physician determines are medically appropriate.

### Medical Benefits (GHI)

- GHI will provide coverage in a manner determined in consultation between the attending physician and the patient for:
  - Reconstruction of the breast on which the mastectomy was performed.
  - Surgery and reconstruction of the other breast to produce a symmetrical appearance.
  - Prostheses and treatment of physical complications at all stages of the mastectomy, including lymphedemas.

  In addition, New York State law provides coverage for Cancer diagnosis second opinions for eligible members, whether or not the diagnosis is positive. Eligible members may visit any appropriate specialist for the second opinion.

  GHI participating providers have agreed to accept GHI's allowances as payment in full, less applicable copayments, for these covered in-network services. Should you select a non-participating provider, you must pay them directly. Reimbursement for covered services will be made directly to you according to the City of New York Non-Participating Provider Schedule. The benefits for these services will have the same deductibles and limitations applicable to your existing coverage.

We feel these significant enhancements provide City of New York employees and non-Medicare eligible retirees with important additional benefits. We are delighted to be able to provide these key improvements to your benefits plan while reducing your out-of-pocket expenses. We look forward to continuing to serve you and your family's health benefits needs.

Sincerely,

Steven Kessler
Senior Vice President

Kevin M. O'Neill
Vice President

EH-123



www.ghi.com

August 28, 2000

Dear City of New York Employee and Non-Medicare Eligible Retiree:

Keeping our commitment to offer health insurance benefits that satisfy the needs of New York City employees and their covered dependents, the City of New York Office of Labor Relations and the City's Unions represented by the Municipal Labor Committee, are pleased to announce the following benefit enhancements for the GHI Comprehensive Benefits Plan (CBP):

> *New*
> **Annual Physical Exams – Effective – September 1, 2000**
> For non-Medicare eligible employees and their eligible dependents age 45 and older, GHI CBP will provide coverage for one annual physical examination (based on a calendar year). This benefit will only be covered when services are rendered by a GHI CBP participating provider. A $10 office visit copay will apply. There will be no additional copay for lab and diagnostic radiological services when completed in the physician's office that performs the physical exam. If lab or radiological studies are performed outside the physician's office, these services are subject to the $10 copay that is currently in effect for lab and diagnostic X-Rays. This represents a completely new benefit that will contribute to safeguarding your health through preventive measures.

> *New*
> **Vaccinations for Influenza and Pneumonia – Effective – September 1, 2000**
> The cost of the immunizing agents relative to adult vaccinations for influenza and pneumonia will be covered in full. The $10 copay for the office visit will apply. This benefit will only be covered when services are rendered by a GHI CBP participating provider. This benefit is new to the GHI CBP program.

> *Enhanced*
> **Increased Visit Maximum for Allergy and Physiotherapy – Effective – August 1, 2000**
> The annual visit maximum has been increased from 16 to 30 visits for Allergy Desensitization and from 8 to 16 visits for Physiotherapy. A provider can request additional visits based on submission of medical documentation for GHI's review and approval.

**Process Regarding Grievances, Appeals & External Appeals**
In accordance with New York State requirements regarding the filing of grievances and internal/external appeals, enclosed is a rider that amends your GHI CBP Certificate of Insurance. Please review this rider and keep it with your Certificate, as it details your rights in the event you or your provider are questioning GHI's decision pertaining to a claim.

GHI appreciates your participation, and we look forward to continuing to provide you and your dependents with quality health insurance coverage.

Sincerely,

Marilyn DeQuatro
Vice President

7088A      25M      3/06

EH-124

318

  

March 26, 2004

## Hospital and Medical Benefit Changes Effective April 1, 2004

Dear City of New York Employee or Retiree:

As a result of negotiations between the City of New York Office of Labor Relations and the Unions, represented by the Municipal Labor Committee, the following benefit changes will become effective on April 1, 2004 for the Empire BlueCross BlueShield and GHI Comprehensive Benefits Plan (CBP) and Senior Care Program. Please read this notification carefully and keep it with your important papers.

### _CBP Program for Employees and Non Medicare-Eligible Retirees_

### Hospital Benefits (Empire BlueCross BlueShield)

- The hospital inpatient deductible will change to $300 per admission, with a maximum of $750 per person, per calendar year.
- The hospital emergency room copayment will change to $50 per visit (please note this copayment is waived if you are admitted to the hospital).

### Medical Benefits (GHI)

- GHI participating medical providers/practitioners and participating mental health care providers will require a $15 copayment per visit. These include practices such as Family Practice, General Practice, Internal Medicine, OB/GYN, Pediatrics, and providers such as Allergists, Cardiologists, Chiropractors and Gastroenterologists (a full list appears on www.ghi.com).
- GHI participating Surgeons, all Surgical Subspecialties, and Dermatologists will require a $20 copayment per visit. These include providers who practice: Cardiothoracic and Thoracic Surgery; Colon and Rectal Surgery; General Surgery; Neurological Surgery; Ophthalmology; Oral Surgery; Orthopaedic and Hand Surgery; Otolaryngology; Plastic Surgery; Podiatry and Podiatric Surgery; Traumatic Surgery; Urology; Vascular and Veno Surgery.
- GHI participating laboratory and radiology providers will require a $15 copayment per visit. There is a maximum of one copayment per date of service per provider.
- The non-participating provider deductible will change to $200 per individual, per calendar year. Please note that the family deductible will remain unchanged at $500 per calendar year.
- A 25% coinsurance will apply to non-mandated In-Vitro Fertilization services (a list of these services appears on www.ghi.com). The coinsurance applies to services rendered by GHI participating and non-participating providers. Additionally, services rendered by non-participating providers are subject to the non-participating provider deductible.

(See reverse side)


EH-125

7554   2561   3/06

### *Senior Care Program for Medicare-Eligible Retirees*

**Hospital Benefits (Empire BlueCross BlueShield)**

- The hospital inpatient deductible will change to $300 per admission, with a maximum of $750 per person, per calendar year.

**Medical Benefits (GHI)**

- After you have satisfied the Medicare Part B deductible (currently $100), you will be responsible for an additional $50 of covered Senior Care services per individual, per calendar year. GHI then pays the Medicare Part B coinsurance (that is, 20% of Medicare Allowed Charges) for covered services for that calendar year.

  Please note that the separate $25 calendar year deductible for private duty nursing, ambulance, and durable medical equipment will remain unchanged.

### *Enclosed Identification Cards Reflect Changes*

Enclosed are your new GHI medical and Empire BlueCross BlueShield hospital identification cards. **Please replace your current identification cards with the enclosed cards and use the enclosed cards starting April 1, 2004**.

If you have any questions regarding these changes, you may contact:

Empire BlueCross BlueShield: (800) 433-9592 or www.empireblue.com

GHI: (212) 501- 4444 or www.ghi.com

Empire BlueCross BlueShield and GHI are proud to serve City employees and retirees and look forward to continuing to meet the health benefits needs of you and your family.

Sincerely,                                                    Sincerely,

Elizabeth McManus                                    Marilyn DeQuatro
Vice President                                              Senior Vice President
Empire BlueCross BlueShield                       GHI Customer Service Division
Operations

Enclosure

EH-126



## GHI

**Prescription Drug Program Changes Effective September 1, 2004**

August 6, 2004

Dear City of New York Employee/Retiree:

This is to inform you of important changes to your prescription drug benefits provided by GHI and managed by Express-Scripts, Inc. (ESI). The following changes will take effect on **September 1, 2004.**

**Retail Pharmacy Program:**
Each new prescription or refill for up to a 30-day supply filled at a Retail Pharmacy will be subject to the following out-of-pocket costs:

- **Generic drug**s - 20% coinsurance with a minimum charge of $5 or the actual cost of the prescription if it is less than $5
- **Brand-Name Formulary drug**s - 40% coinsurance with a minimum charge of $25 or the actual cost of the prescription if it is less than $25
- B**rand-Name Non-Formulary drugs** - 50% coinsurance with a minimum charge of $40 or the actual cost of the prescription if it is less than $40.

If you choose a formulary or non-formulary brand-name medication that has a generic equivalent, you will be responsible to pay the difference between the cost of the brand-name medication and the generic medication, plus the generic coinsurance. Coinsurance will vary based on the cost of the medication. Your retail pharmacist will calculate the coinsurance amount at the time your prescription is filled.

**Mandatory Mail-Service Program:**
Prescriptions for up to a 60-day supply filled through the ESI Mail-Service Program will be subject to the following **out-of-pocket costs:**

- **Generic drugs** - $10 copayment
- **Brand-Name Formulary drugs** that are included on the 2004 GHI Formulary - $40 copayment
- **Brand-Name Non-Formulary drugs** that are not included on the 2004 GHI Formulary - $60 copayment.

As a reminder, you **MUST** use the ESI Mail-Service Program for maintenance medications. Maintenance medications (those taken regularly over an extended period of time) **will not be** filled at a retail pharmacy after two (2) fills. If you are currently taking a maintenance medication and have filled it twice at a retail pharmacy, you **MUST** then send it to the ESI Mail-Service Pharmacy. **Please note that if you pay for your prescription at a retail pharmacy after two fills, you will not be reimbursed for the cost of the medication.**

**Brand-Name Drugs Requiring Prior Authorization**
**Effective September 1, 2004,** a Prior Authorization Process will be required for certain brand-name medications. These medications require proof of medical necessity and a diagnosis from your physician in order for the prescription to be covered. The following medications currently require prior authorization:

- Nexium
- Prevacid
- Prilosec

If you are currently prescribed any of these medications your doctor must call the ESI Prior Authorization Department at 1-800-417-8164 or fax requests to 1-800-357-9577. If your diagnosis meets approved criteria for that medication and is within the scope of the coverage of the plan, a prior authorization will be set up so your prescription can be filled. If the request is approved, the drug will be covered at the non-formulary brand-name drug cost level.

---

**Group Health Incorporated**    441 Ninth Avenue, New York, NY 10001-1681 / www.ghi.com

EH-127 

## Step-Therapy Prescription Program

Select drugs on your plan now require a "Step-Therapy Program" that encourages the use of the best medication for your condition. The first steps in this process are well-established treatments known to be safe and effective. Known as first-line therapy, this treatment is the preferred therapy for most people. First-line medications include:

| | | |
|---|---|---|
| diclofenac sodium (IR and ER) | ibuprofen | naproxen |
| diclofenac potassium | indomethacin | naproxen sodium (IR and ER) |
| etodolac (IR and ER) | ketoprofen (IR and ER) | oxaprozin |
| fenoprofen | ketoralac | piroxicam |
| flurbiprofen | meclofenamate | sulindac |
| | nabumetone | tolmetin sodium |

If the first-line medication does not work or causes problems, second-line medication can be tried. The following "second-line" medications are currently part of the Step-Therapy Program:

- Vioxx
- Bextra
- Celebrex

When a prescription for a second-line medication is processed at your pharmacy, the computer system reviews your recent prescription history. If a prescription for a first-line drug was previously filled, the second-line medication will be dispensed. If the system does not find a prescription for a first-line drug, the second-line prescription will not be covered. The pharmacist will be alerted that the medication is not covered and can suggest covered first-line alternatives to your physician.

If your physician needs to request an exception, he/she must contact the ESI Prior Authorization Department at (800) 417-8164. If the second-line medication is covered, you will pay a higher cost than for a first-line drug.

## Over-the-Counter Equivalent Program

Prescription medications that have an Over-the-Counter (OTC) equivalent will not be covered under the prescription drug program. An example of one such drug is Benzoyl Peroxide - a medication used for the treatment of acne. Benzoyl Peroxide 5% gel is available both by prescription and OTC - which means it will no longer be covered under the prescription drug program.

## Convenient Online Access to Important Information:

Visit ESI online at www.express-scripts.com. All you need is your subscriber number to register. Once you register you have easy, around-the-clock Internet access, which will allow you to do the following:

- Order mail-service prescription refills
- Check the status of mail-service prescription orders
- Locate and obtain directions to any of the 56,000 participating retail pharmacies
- Order mail-service envelopes and retail-service claim forms.

If you need further information about the prescription drug benefits changes, please call the ESI Customer Service Center at 1-877-534-3682, 24 hours a day, seven days a week, or visit ESI's Web site at www.express-scripts.com. You can also visit GHI's Web site at www.ghi.com for information regarding your health care benefits coverage.

Sincerely,

Marilyn DeQuatro

Marilyn DeQuatro
Senior Vice President
Customer Service Division

EH-128

  

March 27, 2004

## Hospital and Medical Benefit Changes Effective April 1, 2004

Dear City of New York Medicare-Eligible Retiree:

The following benefit changes will become effective on April 1, 2004 for the Empire BlueCross BlueShield and GHI Senior Care Program. Please read this notification carefully and file it with your important papers.

### *Senior Care Program for Medicare-Eligible Retirees*

### Hospital Benefits (Empire BlueCross BlueShield)

- The hospital inpatient deductible will change to $300 per admission, with a maximum of $750 per person, per calendar year.

### Medical Benefits (GHI)

- After you have satisfied the Medicare Part B deductible (currently $100), you will be responsible for an additional $50 of covered Senior Care services per individual, per calendar year. GHI then pays the Medicare Part B coinsurance (that is, 20% of Medicare Allowed Charges) for covered services for that calendar year.

  Please note that the separate $25 calendar year deductible for private duty nursing, ambulance, and durable medical equipment will remain unchanged.

If you have any questions regarding these changes, you may contact:

Empire BlueCross BlueShield: (800) 433-9592 or www.empireblue.com

GHI: (212) 501-4444 or www.ghi.com

Empire BlueCross BlueShield and GHI are proud to serve City employees and retirees and look forward to continuing to meet your health benefits needs in the future.

Sincerely,

*Elizabeth McManus*

Elizabeth McManus
Vice President
Empire BlueCross BlueShield
Operations

Sincerely,

*Marilyn DeQuatro*

Marilyn DeQuatro
Senior Vice President
GHI Customer Service Division

EH-129
7563    25M    3/06    

EH-130



June 27, 2007

**IMPORTANT NOTICE
CONCERNING YOUR CITY OF NEW YORK HEALTH BENEFITS**

Dear Non-Medicare Eligible GHI Subscriber:

Effective July 1, 2007, hospital and medical benefits for certain mental health conditions will be enhanced under the GHI CBP/Empire Blue Cross Blue Shield plan. This benefit enhancement is being provided in conformity with recent New York State legislation called "Timothy's Law." Please note: your benefits for substance abuse/chemical dependency treatment are not affected by this change.

Timothy's Law requires that health insurance benefit programs operating under the insurance laws of New York State provide benefits for biologically based mental health conditions and for severe emotional disturbances in children on the same basis as benefits are provided under the plan for all covered medical conditions.

A biologically based mental health condition is defined as: A mental, nervous or emotional condition that is caused by a biological disorder of the brain resulting in a clinically significant, psychological syndrome or pattern that substantially limits the functioning of the person with the illness. The following eight conditions are specifically mentioned in the legislation: (1) Schizophrenia/Psychotic disorders, (2) Major depression, (3) Bi-polar disorder, (4) Delusional disorders, (5) Panic disorder, (6) Obsessive compulsive disorder, (7) Bulimia, (8) Anorexia.

The following diagnoses will also be covered under the expanded scope of conditions for children up to age 18 with severe emotional disturbances:

- Attention deficit disorder
- Disruptive behavior disorders
- Pervasive development disorders

In order for services to be considered as treatment of a severe emotional disturbance, and to be covered, these diagnoses must have one or more of the following conditions present:

- Serious suicidal symptoms or self-destructive behavior
- Significant psychotic symptoms – listed as hallucinations, delusions, or bizarre behavior
- Emotional disturbances that put the child at risk or cause injury to others or property
- Emotional disturbances that place the child at substantial risk for removal from the household.

The table below illustrates plan benefits that will be available for treatment of biologically based conditions and severe emotional disturbances in children vs. plan benefits for non-biologically based conditions.

| | Biologically Based | Non-Biologically Based |
|---|---|---|
| **Inpatient Hospital Mental Health** | Par and Non-Par Providers | Par and Non-Par Providers |
| Inpatient Days | 365 <br> **This is a change in benefit (previously limited to 30 days)** | 30 <br> **No change in benefit** |
| Deductible | $300 per adm/$750 max per calendar year <br> **This is a change in benefit (previously no deductible)** | |
| Coinsurance | None | Par: None <br> Non-Par: 50% of par allowance up to $4,000, then 100% of par allowance. <br> **No change in benefit** |
| Partial Hospital or Day Treatment | **Par and Non-Par:** Covered – charges to inpatient days shown above – not subject to deductible. <br> **This is a change in benefit – (previously limited to 30 days)** | **Par:** Covered – charged to inpatient days shown above – not subject to deductible. <br> **No change in benefit** <br> **Non-Par:** 50% of par allowance up to $4,000, then 100% of par allowance. <br> **No change in benefit** |
| **Outpatient Mental Health** | **Par:** Unlimited visits subject to a $15 copay per visit. <br> **No change in benefit for using par providers** <br> **Non-Par:** Unlimited visits subject to $200/$500 deductible, 100% coinsurance based on par schedule of allowances; $2 million lifetime maximum. <br> **Change in benefit for using non-par providers (previously subject to $100 deductible and 50% coinsurance)** | **Par:** Unlimited visits subject to a $15 copay per visit. <br> **Non-Par:** Subject to a $100 annual deductible and 50% coinsurance up to 30 visits per calendar year. <br> **No change in benefit** |

Mental health benefits continue to be subject to precertification. If you use a GHI/BMP participating facility, the facility will be responsible for precertifying care. If you use a non-participating facility, you must precertify care by calling GHI/BMP at 1-800-692-2489. Failure on your part to precertify care provided by a non-participating facility will result in a penalty of $500 per admission, not to exceed 50% of the benefit that would have been reimbursed if services were precertified. Services rendered by GHI/BMP participating outpatient mental health providers are subject to precertification with the responsibility for precertifying resting with the participating provider. Services rendered by non-participating outpatient mental health providers are also subject to precertification with responsibility for precertifying resting with the patient.

If you have any questions concerning this change in benefits, please call GHI/BMP at 1-800-692-2489.

Please visit GHI.com to review a list of helpful Questions and Answers about Timothy's Law. If you have any other questions, call GHI at 1-800-624-2414.

Sincerely,

Marilyn DeQuatro
Senior Vice President
Customer Service Division

EH-132

## Important Notice About Prescription Drug Benefits For Non-Medicare Eligible Employees/Retirees and Their Dependents

Please be advised that **effective July 1, 2001 the following drugs will no longer be covered** through your prescription benefits with GHI:

- Chemotherapy and Related Drugs
- Drugs to Treat Asthma
- Psychotropic Medications
- Injectable Medications

National Prescription Administrators, Inc. (NPA) and its mail service facility, CFI, Inc. will cover these drugs after 7/1/01.

For Retail Pharmacy Information, **Call NPA 1-800-467-2006**
For Mail Service Information, **Call CFI 1-800-628-0717**



441 Ninth Avenue New York, NY 10001
www.ghi.com

7075A   22M   12/07

EH-133

### Your GHI Prescription Drug Coverage

Express Scripts, Inc. (ESI) administers the retail and mail-service pharmacy benefits for City of New York members who receive their prescription drug coverage through GHI under the Optional Rider benefit described in the Certificate of Insurance. ESI manages the prescription benefits needs for one out of every six people in the United States and processes more than 270 million prescriptions annually.

As a participant in the ESI program, you can choose the fulfillment option that best suits your needs:

- **Retail Pharmacy Service**

  To obtain retail pharmacy benefits, juSt present your GHI 10 card at anyone of the more than 56,000 participating ESI pharmacies nationwide. Most major drugstores are included in this network. Please be sure to call your regular pharmacy and confirm whether they participate in this program.

- **Mail-Service Pharmacy**

  In addition to cost savings, the Express Scripts Mail Service program offers you the convenience of home or office delivery, patient education materials, and toll-free access to Customer Service Associates and registered pharmacists. You can submit your mail-service pharmacy prescription by mail, phone, or through the Internet

- **Online service at the ESI Web Site www.express-scripts.com.**
  Another convenient option is to submit your prescriptions online at www.express-scripts.com. Prescriptions submitted online will be mailed to you at the address you specify.

**For Additional Information**

  You can get answers to questions regarding your prescription drug benefits, 24 hours a day, seven days a week with your touch-tone telephone or personal computer. Contact ESI member services at 1- 877- 534-3682, or visit ESI's Web site at www.express-scripts.com.



441 Ninth Avenue New York, NY 10001
www.ghi.com

### Women's Health and Cancer Rights Act

GHI is required to inform you that The Women's Health and Cancer Rights Act of 1998 stipulates that if your GHI policy provides mastectomy coverage, GHI will also provide coverage for breast reconstruction surgery, as determined by the physician and agreed upon the patient as follows:

- Reconstruction of the breast on which the mastectomy was performed;
- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and
- Prostheses and treatment of physical complications at all stages of the mastectomy, including lymphedemas.

The benefits under this Act will have the same copayments, deductibles and/or co-insurance limitations applicable to your existing coverage.

If you have any questions regarding your GHI benefits, please call GHI Customer Service at (212) 501-4444.



441 Ninth Avenue New York, NY 10001
www.ghi.com

EH-136

# PRESCRIPTION DRUG BENEFIT

**Important Information About
Your Prescription Drug Benefit
for
City of New York Employees
and Non-Medicare Eligible Retirees**

**Changes Effective October 1, 2006**



EH-137



September 2006

Dear City of New York Employee and Non-Medicare Eligible Retiree:

This booklet outlines important changes **effective October 1, 2006**, that will occur to your Prescription Drug Benefit, which is provided by GHI and Express Scripts Inc. (ESI).

If you need further information about the prescription drug benefit changes, please call the **ESI Customer Service Center at (877) 534-3682**, 24 hours a day, seven days a week, or visit ESI's Web site at www.express-scripts.com. You can also visit GHI's Web site at www.ghi.com for information regarding your prescription drug benefit coverage.

Sincerely,

*Marilyn DeQuatro*

Marilyn DeQuatro
Senior Vice President
Group Health Incorporated

# PRESCRIPTION DRUG BENEFIT CHANGES

## Diabetes Coverage (Available in Base Plan) — Copayment Change

Generic diabetes medication copayments will remain $5.00.

Brand-name diabetes medication copayments will increase to $15.00.

The diabetes medications Symlin and Byetta will be part of the Step-Therapy program. A description of the Step-Therapy program follows.

## Prescription Drug Rider — Clinical Management Programs

The clinical guideline programs that are being implemented are: **Prior Authorization and Step Therapy,** as described below.

### A. Prior Authorization

Prior authorization is a process in which some medications must be authorized before they can be covered under the program. These medications require that the prescribing physician provide proof of medical necessity and diagnosis. Individuals currently taking drugs that are affected by this change may continue to take them. **The change is for new users of the drugs.** This prior authorization process will be required for the following medications beginning October 1, 2006:

| | |
|---|---|
| Actiq/ fentanyl | Regranex/ becaplermin |
| Botox, Myobloc/ botulinum toxin | Revatio/ sildenafil |
| Diflucan/ fluconazole | Sporanox/ itraconazole |
| Lamisil/ terbinafine | Tazorac/ tazarotene |
| Lidoderm/ lidocaine patch | Retin-A/ tretinoin |
| Novantrone/ mitoxantrone | Sutent/ sunitinib malate |
| Nexavar/ sorafenib tosylate | Xeloda/ capecitabine |
| Penlac/ ciclopirox solution | Zyvox/ linezolid |
| Provigil/ modafinil | |

In the future, if you are prescribed any of the drugs listed under **Prior Authorization,** your doctor should call the dedicated **ESI Prior Authorization Line at (866) 467-8635.** If your doctor's diagnosis meets approved guidelines for that drug and is within the scope of the coverage of the plan, a prior authorization will be set up for your prescription to be covered.

EH-138

## B. Step-Therapy Program

Certain drugs on your plan will now require Step Therapy. Individuals currently taking drugs that are affected by this change may continue to take them. **The change is for new users of the drugs.**

Step Therapy requires the use of one or more generic or first-line drugs before a second-line drug is approved. The drugs used as the "first step" are well-established treatments. Known as first-line therapy, these drugs are the preferred therapy over second-line therapies, in most cases. First-line drugs may be filled without calling ESI. If the first-line drug is not effective for you, second-line drugs can be prescribed. To do this, your doctor must call the dedicated **ESI Prior Authorization Line at (866) 467-8635.** If your doctor's assessment meets approved guidelines for that drug and is within the scope of the coverage of the plan, a prior authorization will be set up so your prescription can be filled.

In addition to Symlin and Byetta as previously mentioned, the following second-line drugs are part of the Step-Therapy program.

| Anti-inflammatory | Acid Reflux | Asthma or Allergy | Topical Medication | Anti-depressants | |
|---|---|---|---|---|---|
| **First line Drugs** | | | | | |
| Generic anti-inflammatory drugs: Ibuprofen, naproxen and others | Generic acid reflux drugs: Omperazole | Allegra Clarinex Zyrtec, and a nasal corticosteroid | Generic topical corticosteroid drugs: triamcinolone cream and others | Generic anti-depressant drugs: Fluoxetine Citalopram Paroxetine Sertraline Fluvoxamine | |
| **Second Line Drugs** | | | | | |
| Arthrotec Ponstel Mobic Prevacid NapraPAC | Protonix Prevacid Prevacid SoluTab Prilosec* Aciphex Nexium Zegerid | Singulair Accolate Zyflo | Elidel Protopic | Paxil* Paxil CR Pexeva Zoloft* Lexapro Prozac* Luvox | Celexa* Sarafem Effexor Effexor XR Cymbalta Wellbutrin XL |

| Blood Pressure | | | Cholesterol | Diabetic Drugs |
|---|---|---|---|---|
| **First Line Drugs** | | | | |
| Generic blood pressure drugs: Captopril Enalapril Fosinopril Lisinopril | Quinapril Benazepril Quinapril/hctz Benazepril/hctz | Captopril/hctz Enalapril /hctz Fosinopril/hctz Lisinopril/hctz | Generic cholesterol drugs: Lovastatin Pravastatin Simvastatin | Metformin Sulfonylureas Insulins |
| **Second Line Drugs** | | | | |
| Capoten* Vasotec* Prinivil* Zestril* Univasc Lotensin* Monopril* Accupril* Aceon Altace Mavik Capozide* | Vaseretic* Prinzide* Accuretic* Lexxel Lotrel Tarka Avapro Cozaar Diovan Atacand Micardis Teveten | Zestoretic* Lotensin HCT* Monopril HCT* Benicar Hyzaar Diovan HCT Avalide Atacand HCT Micardis HCT Teveten HCT Benicar HCT | Mevacor* Lipitor Lescol Altoprev Pravachol* Caduet Advicor Zocor* Crestor Vytorin | Byetta Symlin |
| *Indicates a generic equivalent is available | | | | |

55 Water Street, New York, New York 10041-8190 | www.emblemhealth.com



EmblemHealth insurance plans are underwritten by Group Health Incorporated (GHI), GHI HMO Select, Inc. (GHI HMO), HIP Health Plan of New York (HIP) and HIP Insurance Company of New York.

10-6410 2/13

EH-140

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

BRAINBUILDERS LLC, and H and D, by
their Attorney-in-Fact, RACHEL
SOROTOZKIN,

            Plaintiffs,

vs.

EMBLEMHEALTH, INC., GROUP
HEALTH INCORPORATED, THE CITY
OF NEW YORK, NEW YORK CITY
OFFICE OF LABOR RELATIONS, and
NEW YORK CITY DEPARTMENT OF
EDUCATION,

            Defendants.

Civil Action No.: 3:20-cv-12703-FLW-TJB

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS EMBLEMHEALTH, INC. AND GROUP HEALTH INCORPORATED'S MOTION TO DISMISS THE COMPLAINT

---

On the Brief:

Yaakov Pollak, Esq.

Burton Jacobovitch Law Group LLC
Yaakov Pollak, Esq. (236842017)
500 River Avenue, Suite 215
Lakewood, New Jersey 08701
(732) 806-8181
ypollak@nbyjlaw.com
*Attorneys for Plaintiffs*

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................iv

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ..............................................................................................................3

LEGAL STANDARD.........................................................................................................3

LEGAL ARGUMENT.........................................................................................................4

    I. Sorotzkin has standing by virtue of a valid power-of-attorney, and Plaintiffs' breach of contract claim has been well pleaded. ......................................................................................5

    II. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is a valid alternative for the claim of breach of contract. ............................................................8

    III. Estoppel is a valid alternative claim, based on Defendant's unambiguous promise to provide health insurance coverage. ......................................................................................10

    IV. Plaintiffs' claim of fraud was appropriately pleaded and should not be dismissed.......11

    V. The Civil conspiracy cause of action is a valid vehicle to charge Defendant for the tortious actions of its co-defendants...................................................................................14

    VI. The civil aiding and abetting cause of action is a valid vehicle to charge Defendant for the tortious actions of its co-defendants. ................................................................................15

    VII. Defendant violated New York's Prompt Pay Law when it processed the claims at an unreasonably low rate in bad faith. ....................................................................................15

    VIII. Defendant's deceptive practices are either widespread, in which case, they are subject to the New York Consumer Protection Law, or they specifically target Plaintiffs, in which case they are more egregious than previously thought. ......................................................16

    IX. The Plan's claim that it is in compliance with New York's Insurance Law effectively incorporates the autism mandate into the Plan, whether or not the law provides a private right of action. .........................................................................................................16

    X. The Plan's claim that it is in compliance with New York's Insurance Law effectively incorporates the New York's Parity Law into the Plan, which in turn incorporates the federal Parity Law, whether or not the law provides a private right of action....................17

    XI. Plaintiffs' request for declaratory judgment if for prospective relief, so that Defendant fulfill its obligation to cover H's vital treatment in the future. ...........................................17

## JA202

CONCLUSION ................................................................................................................ 18

iii

JA203

## **TABLE OF AUTHORITIES**

**Cases**

*Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (App. Div. 1st Dept. 2010)...................17

*Alexander & Alexander, Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986) ...........................16

*Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 454-
    455 (3d Cir. 2018) .....................................................................................................................5

*ASAH, The Children's Inst. v. N.J. Dep't of Educ.*, 2017 U.S. Dist. LEXIS 101736, at *35
    (D.N.J. 2017)............................................................................................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)..............................................................4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................4

*Bellino Schwartz Padob Advert. v. Solaris Mktg. Grp.*, 222 A.D.2d 313, 313 (App. Div. 1st
    Dept. 1995).............................................................................................................................12

*Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E.2d 1163, 1165 (N.Y. 2003)( ................8

*Cerberus Int'l, Ltd. v. BancTec, Inc.*, 16 A.D.3d 126, 127 (App. Div. 1st Dept. 2005) ..........11

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987)............................12

*Cohen v. Trump Org. LLC*, 2019 NY Slip Op 32565(U), ¶ 24 (Sup. Ct. 2019)......................20

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) ....................................4, 5

*Coppola v. Applied Elec. Corp.*, 288 A.D.2d 41, 42 (App. Div. 1st Dept. 2001) ...................15

*Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 64 (App. Div. 1st Dept. 2017)...............14

*Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995)...........................................11

*Eurycleia Partners, LP v. Seward & Kissel*, LLP, 910 N.E.2d 976, 979 (N.Y. 2009)............14

*Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) .................................................14

*Graubard Mollen Dannett & Horowitz v. Moskovitz*, 653 N.E.2d 1179, 1184 (N.Y. 1995)...15

**JA204**

*Gross v. Empire Healthchoice Assurance, Inc.*, 847 N.Y.S.2d 896, 896 (Sup. Ct. 2007..10, 11

*Home Equity Mortg. Trust Series 2006-1 v DLJ. Mortg. Capital, Inc.*, No. 156016/2012,

    2013 N.Y. Misc. LEXIS 4764 (Sup. Ct. 2013) ....................................................21

*Land v Forgione*, 177 A.D.3d 862, 864 (N.Y. App. Div. 2d Dep't 2019) ........................16, 18

*Leki Aviation A/S v. B/E Aerospace, Inc.*, 2013 NY Slip Op 31318(U), ¶¶ 10-11 .................16

*Logan Advisors, LLC v. Patriarch Partners, LLC,* ................................................................10

*Nicosia v. Bd. of Managers of the Weber House Condo.*, 77 A.D.3d 455, 456 (App. Div. 1st

    Dept.)....................................................................................................................13

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 92

    N.E.3d 743, 762 (N.Y. 2017) .................................................................................7

*People v. Ramos*, 971 N.E.2d 369, 371 (N.Y. 2012) .............................................................17

*People v. Schwimmer*, 66 A.D.2d 91, 94 (App. Div. 2nd Dept. 1978)....................................17

*Raglan Realty Corp. v. Tudor Hotel Corp.*, 149 A.D.2d 373, 375 (App. Div. 1st Dept. 1989)

    ....................................................................................................................15

*Rowe v. Great Atlantic & Pacific Tea Co.*, 46 N.Y.2d 62, 69 (1978) ..........................8, 11, 12

*Twombly*, 550 U.S. at 555 ....................................................................................................4

*Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003) ...........................8

**Statutes**

N.J.S.A. 46:2B-8.1 ..............................................................................................................5

N.Y. Gen. Oblig. L. § 5-1512 ...............................................................................................5

N.Y. Ins. L. § 3221(l)(5)(F) ................................................................................................17

N.Y. Ins. L. § 3224-a(b)......................................................................................................15

New York Insurance Law § 3221(l)(17).............................................................................3, 16

**Other Authorities**

*Attorney General of the State of New York, In the Matter of Group Health Incorporated,*

   Assurance No.: 14-181 ............................................................................................8

*Cover, Ballentine' Law Dictionary* (3rd ed.) .............................................................6

*Cover, Merriam-Webster.com*, https://www.merriam-webster.com (Nov. 23, 2020) ..............6

**Rules**

Fed. R. Civ. Proc. R. 12(b)(6) ....................................................................................3

## **PRELIMINARY STATEMENT**

Plaintiffs, H and D through their attorney-in-fact, Rachel Sorotzkin ("Sorotzkin"), and Brainbuilders LLC ("Brainbuilders" and, together with Sorotzkin, "Plaintiffs"), assignees of J and S, have brought this action to recover health benefits due to them under a health insurance policy (the "Plan") offered by defendants EmblemHealth, Inc. and Group Health Incorporated (collectively, "Defendant") to employees of defendant The City of New York (the "City"), and managed, within NYC, by New York City Office of Labor Relations ("OLR").

H is an employee of New York City Department of Education (together with the City and OLR, "NYC"), a subdivision of the City.  H is a participant in the Plan, and D is a qualified dependent therein.

D is being treated with applied behavioral analysis ("ABA") Brainbuilders, LLC ("Brainbuilders") for his autism spectrum disorder ("ASD").  Despite Defendant's undeniable obligation to cover the treatment, they have only been paying about 6% of the billed amount— well below the overhead for ABA—and Plaintiffs filed this action to recover their rightful benefits.  *See* Amended Complaint attached hereto as Exhibit A.

Defendant filed a motion to dismiss, attached hereto as Exhibit B, challenging each of Plaintiffs' causes of action, in a tone that does not match the substance.  Its arguments and their shortcomings are as follows:

First, the First Cause of Action, for breach of contract, was challenged for Brainbuilders' lack of standing and the Plan's anti-assignment clause, despite the Complaint's

1

JA207

unambiguous language that, concerning Defendant, H and D are parties in their own right through their attorney-in-fact.[1]

Second, the Second Cause of Action, breach of the implied covenant of good faith and fair dealing, was challenged as duplicative of the breach of contract cause of action, to which Plaintiffs respond that, to the extent, the obligation is not spelled out in the contract, it is not redundant.

Third, the Third Cause of Action, promissory estoppel, was wrongfully challenged as not being adequately pled.

Fourth, Plaintiff's Fourth Cause of Action, fraud, was wrongfully challenged, as well, as not being adequately pled.

Fifth, Plaintiff's Fifth Cause of Action, civil conspiracy, is properly premised and pled based on Defendant's cooperation with its co-defendants'.

Sixth, the Sixth Cause of Action, civil aiding and abetting, is, likewise, properly premised and pled based on Defendant's cooperation with its co-defendants'.

Seventh, the Seventh Cause of Action, New York's so-called Prompt Pay Law, is proper because Defendant's underpayment was premised on an unreasonable delay.

Eighth, Eighth Cause of Action, violation of Section 349 of New York's General Business Law (the "GBL"), is proper because, if given the benefit of the doubt that their reimbursement rate was not targeted specifically at H and D, their practice is consumer oriented deception.

---

[1] Plaintiffs' original Complaint indicated that Brainbuilders, and entity, was H and D's attorney-in-fact, in accordance New York law. However, to avoid having to defend Brainbuilders' status as a valid attorney-in-fact, unnecessarily, Plaintiffs' have filed an Amended Complaint, attached hereto as Exhibit A, replacing Brainbuilders with Rachel Sorotzkin, an individual.

2

    <u>Ninth</u>, the Ninth Cause of Action, New York Insurance Law § 3221(l)(17), is binding upon Defendant by way of its contractual obligation to comply with basic insurance standards.

    <u>Tenth</u>, the Tenth Cause of Action, the federal Mental Health Parity and Addiction Equity Act (the "Parity Act"), is binding upon Defendant by way of its contractual obligation to comply with basic insurance standards.

    <u>Finally</u>, the Eleventh Cause of Action, declaratory judgment, is proper to clarify Plaintiffs' right to reasonable reimbursements for its ongoing and future treatments.

## BACKGROUND

    D, a minor, has been treated for his ASD with ABA at Brainbuilders since May of 2017. Amend. Compl. ¶ 9.  His Mother, H, is an employee of NYC and a participant of the Plan, and he is a qualified dependent therein.  *Id.* ¶¶ 10,14.

    Per the Plan's certificate, or summary plan description ("SPD"), attached hereto as <u>Exhibit C</u>, ABA is a covered service.  *Id.* ¶ 19.  Brainbuilders is an out-of-network provider under the Plan, which is covered thereunder.  *Id.* ¶ 16.  Nonetheless, when Brainbuilders submitted claims for D's ABA treatment, Defendant remitted payment at a rate of approximately 6% of what was billed—well below Brainbuilders' cost for the treatment.

    Per the SPD, Exhibit C at 21, the Allowed Charges under the Plan "are based upon data collected by GHI and agreed to by the City of New York."  For that reason, Plaintiffs contend that Defendant and NYC promised health insurance and failed to deliver its benefits

## LEGAL STANDARD

    Rule 12(b)(6) provides for dismissal of a Complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. Proc. R. 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

3

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). Allegations must be enough to raise the prospect of a right to relief above the "suspicion" or "speculative" level. *Id*. A pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).

*Twombly* "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. The Rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the [] claim is and the grounds upon which it rests.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Twombly*, 550 U.S. at 555).

In short, *Twombly* and its progeny are not about the *quantity* of details left out of the pleading; they are about the *quality*, and the stage of development, of the allegations. In *Twombly*, the plaintiff did not possess evidence of a Sherman Act conspiracy; it merely alleged that a conspiracy's direct evidence would be unearthed in discovery. *Twombly*, 550 U.S. at 561. Likewise, in *Iqbal*, the plaintiff did not possess specific knowledge of discriminatory intent—an essential element in the charge. *Iqbal*, 556 U.S. at 683. In each, the deficiency was not the brevity, only that the critical facts were as yet unknown to be alleged in the pleading. In contrast, when the allegations are fully developed, as long as the pleadings give "fair notice" thereof, the requirements are met. *See Connelly*, 809 F.3d at 786.

## LEGAL ARGUMENT

## I. Sorotzkin has standing by virtue of a valid power-of-attorney, and Plaintiffs' breach of contract claim has been well pleaded.

Per the Amended Complaint, filed on November 9, 2020, attached hereto as <u>Exhibit A</u>, H and D have appointed Sorotzkin as their attorney-in-fact to pursue the herein claims. Defendant's extensive treatment of the assignment notwithstanding, Plaintiffs have not challenged the Plan's anti-assigment clause as it relates to EmblemHealth. Amend. Compl. ¶ 1. Unlike an assignment, a power-of-attorney ("POA") does not confer standing, and cannot be challenged for want of the same. *Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 454-455 (3d Cir. 2018).

H and D's power-of-attorney, which was provided to Defendant, was created in accordance with N.J.S.A. 46:2B-8.1, and is recognized in the State of New York. *See* N.Y. Gen. Oblig. L. § 5-1512.

As a matter of perspective, Defendant's casting of the POA as an attempt to "end-run the no-assignment," and as a circumvention of the normal order is itself a distortion. *See* Br. of Def. 8. Anti-assignments provide insurance carriers with a means to escape accountability by restricting their poorly-resourced and inexperienced members to fighting for themselves. POAs merely restore some level of accountability on the part of insurance carriers.

Defendant's claim that Plaintiffs' breach of contract allegation falls short, is equally unavailing. Defendant mischaracterizes Plaintiffs' claim as consisting solely of the statement: "Defendants by only covering a small fraction of the costs of [the Insured]'s treatments have breached their respective agreements," and asserts that Plaintiffs, thus, fail to "allege which purported contractual provisions were breached, how they were breached, or how those supposed breaches damaged Plaintiff." *See* Def. Br. 9.

5

JA211

Defendant's argument presumably rest upon the notion that it is not responsible for more than the Allowable Charge "based upon data collected by GHI and agreed to by the City of New York," Exhibit C at 21, and the pleading is deficient without reference to the actual Allowable Charge.  But, that is mistaken.

In their Complaint, Plaintiffs said—

> By its nature, "insurance coverage" is only worthy of being characterized as such if it, in fact, covers and protects against the costs of the services covered therein. To the extent a plan does not alleviate a substantial part of the burden of such costs, it is not "insurance coverage."

Amend. Compl. ¶ 12, and—

> Except for a short period in the beginning of 2019, GHI has been paying Brainbuilders approximately 6% of its billed amount for D's ABA. Six-percent is well below Brainbuilders' cost, forcing it to "balance bill" D's caregivers for the rest.  Meaning, despite its obligation to do so, the Plan fails to cover ABA in any meaningful sense.

Amend. Compl. ¶ 21.  The assertion that Defendant failed to "cover" D and H's expenses is more than necessary to sustain a breach of contract cause of action for several reasons.

First, in spite of Defendant's assertion that the reimbursement is consistent with the Plan's Allowable Charge, see Exhibit D, Plaintiffs' allege, upon clear information and belief, that the 6% reimbursement was not supported by a legitimate equally applied Allowable Charge.

Second, *Ballentine's Law Dictionary* defines "cover" as "[t]o overspread; as applied to insurance, it means to protect by means of insurance." *Cover, Ballentine' Law Dictionary* (3rd ed.).  Likewise, the *Merriam Webster Online Dictionary* defines the verb "cover," in relevant part, as "to afford protection or security [to insure]; to afford protection against or compensation; to lay or spread something over; to have sufficient scope to include or take into account; to deal with; to defray the cost of." *Cover, Merriam-Webster.com*,

6

JA212

https://www.merriam-webster.com (Nov. 23, 2020). "Under our well-established rules of contract interpretation, courts look to the plain language of contracts when interpreting their meaning." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 92 N.E.3d 743, 762 (N.Y. 2017) (internal citations omitted).

When Defendant said, "[it] will *cover* the screening diagnosis and treatment of [ASD]," including ABA, see Exhibit C at 70, it meant that it would protect its insureds from the unbearable burden of such treatments. A 6% reimbursement fails to afford such protection.

Third, a contract must "be read as a whole, and every part [must] be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." *Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003)(internal citation omitted). "All parts of a contract must be read in harmony to determine its meaning." *Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E.2d 1163, 1165 (N.Y. 2003) (internal citation omitted). "A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Rowe v. Great Atlantic & Pacific Tea Co.*, 46 N.Y.2d 62, 69 (1978) (internal citation omitted).

Plaintiffs believe that Defendants have breached the entire foundation and premise of the Plan, not merely a single provision thereof. As previously quoted from Plaintiffs' Complaint, there are levels of reimbursement that are inconsistent with the promise of protection inherent in an insurance policy. If Defendant reimbursed $.01 for a treatment, it would be indisputable that such reimbursement would be a breach, even if it were the documented Allowable Charge. Plaintiffs and Defendants may disagree whether a 6% reimbursement falls on the side of breach or the side of fulfillment, but that is a question of fact appropriately decided by a jury.

7

Moreover, pursuant to a 2014 agreement with the Attorney General of the State of New York (the "AG Agreement"), Defendant committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers," (the "AG Agreement"). See *Attorney General of the State of New York, In the Matter of Group Health Incorporated*, Assurance No.: 14-181. Contrary to the AG Agreement, Defendant did not make its so-called Allowable Charges for the relevant CPT/HCPCS codes available. Defendant's failure to publish the Allowable Charge suggests an absence of legitimately pre-determined Allowable Charge for the relevant codes. Whether or not that is the case is a question of fact to be determined through discovery and trial.

Finally, the Plan provides that—

> [t]here may be occasions where GHI does not have an Allowed Charge for a particular service. When this is the case, GHI will make payment based upon either Medicare guidelines and/or the Relative Value Scale to determine comparability between procedures. The Relative Value Scale is a standard of rating generally acceptable in the health insurance field.

*See* Exhibit C at 21. However, as expressed in appeal responses, the denial of additional reimbursement was premised upon an Allowable Charge, not alternative calculations. *See, e.g.*, Exhibit D. More importantly, Plaintiffs maintain that a 6% rate, which is below cost, could not have been the product of such alternative calculations. These questions are similarly purely factual and not subject to dismissal by way of a motion to dismiss.

## II.    Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is a valid alternative for the claim of breach of contract.

Defendant's argument that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing ("Good Faith") is contrary to prevailing authority. *See* Br. of Def. 10.

8

Moreover, Defendant's argument is inconsistent with how it argued for dismissal of the breach of contract claim for failure to name a specific provision. *See* Br. of Def. 9.

In New York, a breach of Good Faith occurs when a party "exercises a contractual right as part of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain," even if there is no breach of the contract's "express contractual obligations." *Gross v. Empire Healthchoice Assurance, Inc.*, 847 N.Y.S.2d 896, 896 (Sup. Ct. 2007) (internal citations omitted). A claim for breach of Good Faith "does not depend on a breach of the contract," and "a plaintiff may bring such a claim, whether or not there is a viable breach of contract claim." *Ibd.*

Defendant argues that, because Plaintiffs repeat the claim that they covered "a small fraction of D's treatment," for both breach of contract and Good Faith, the latter is "duplicative," and should be dismissed. Br. of Def. 10. If Defendant were correct, no civil or criminal defendant would be charged on multiple counts for a single action. *Logan Advisors, LLC v. Patriarch Partners, LLC,* which Defendant cites, merely states that Good Faith was duplicative in that instance, not that it always is. *See* 63 A.D.3d 440, 879 (App. Div. 1st Dept. 2009); (citing *Cerberus Int'l, Ltd. v. BancTec, Inc.*, 16 A.D.3d 126, 127 (App. Div. 1st Dept. 2005)). The notion that Good Faith is a mere duplicate of ordinary breach undermines the entire body of caselaw undergirding the Good Faith doctrine. *See Gross*, 847 N.Y.S.2d at 896.

Plaintiffs have clearly stated that defendants have both "breached their respective agreements, and "breached the covenant of good faith and fair dealing implied by their respective agreements." Compl. Amend. ¶¶ 33, 39. As if to say, if Defendant were correct that its 6% reimbursement is not a breach of the Plan's explicit terms, it is at the very least a breach of Good Faith. Defendant cannot have it both ways. Defendant contended that the

9

JA215

breach of contract count was deficient for lack of a specific provision.  Now it argues that Good Faith, which by definition only requires an implication, is duplicative of an express breach.

New York's courts have expressly recognized the existence of the implied covenant of good faith and fair dealing in insurance contracts.  *Gross*, 847 N.Y.S.2d at 896.  "A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed."  *Rowe*, 46 N.Y.2d at 69 (internal citation omitted).  Good Faith includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included.  *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) (quoting *Rowe*, 46 N.Y.2d at 69).  Every purchase of an insurance policy is with the expectation that medical expenses would be *covered*.  Nominal reimbursements do not afford protection and do not fulfill those reasonable expectations.

Finally, Defendant's deflection that there is no valid contract between Plaintiff and Defendant, which is, apparently, a reference to its earlier arguments concerning the assignment and power-of-attorney, must fail for the reasons cited in Section I.

### III.  Estoppel is a valid alternative claim, based on Defendant's unambiguous promise to provide health insurance coverage.

Defendant's contention that Plaintiffs' estoppel claim should be dismissed because there is a valid contract is baffling.  *See* Br. of Def. 11.  Does Defendant not dispute the existence of a valid contract to reimburse above 6% of claims?!  *See* Br. of Def. 8.  The cases cited by Defendant address instances where the "subject matter" of the dispute was governed by an existing contract.  *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987); *Bellino Schwartz Padob Advert. v. Solaris Mktg. Grp.*, 222 A.D.2d 313, 313 (App. Div. 1st Dept. 1995).  If Defendant's previous argument is correct that the Plan is virtually silent

10

concerning reimbursement rates, there would be no explicit contract addressing the subject matter. Accordingly, Plaintiffs argue in the alternative that Defendant is estopped from processing Plaintiffs' claims based on such a rate.

Plaintiffs believe that Defendant's offer of insurance coverage is a clear and unambiguous promise to, in fact, substantially cover D and H's medical expenses. Defendant may disagree. Who is right is a question of fact, which is not appropriate for a motion to dismiss.

**IV. Plaintiffs' claim of fraud was appropriately pleaded and should not be dismissed.**

Plaintiffs' fraud claim is grounded in a straightforward proposition: offering health insurance without intent to actually cover medical expenses is fraud. Whether that occurred and whether 6% reimbursement amounts to coverage is a question of fact to be left to the factfinder.

Defendant correctly states that a claim of fraud requires a pleading of "(1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance, and (5) damages." *Nicosia v. Bd. of Managers of the Weber House Condo.*, 77 A.D.3d 455, 456 (App. Div. 1st Dept.) (internal citation omitted). But, Defendant's assertion that Plaintiffs did not allege (i) a single specific fraudulent misrepresentation . . . , (ii) who made it and to whom was it made, (iii) when it was made, (iv) that the Defendant had knowledge of its falsity, or (v) that the Plaintiff relied on it, is contrary to the facts. *See* Br. of Def. 14–15.

Plaintiffs have, effectively, pleaded each one of the allegedly missing details: (i) the misrepresentation of the Plan as a vehicle of coverage, (ii) which was offered by Defendant to H and D, (iii) throughout the relevant period, (iv) Defendant knew or should have known that

11

it was not going to deliver actual coverage, and (v) H and D refrained from entering into an alternative arrangement for true coverage. *See* Amend. Compl. ¶¶ 14, 19, 21, 40, 44. When pleading fraud, a plaintiff is only required to "allege the basic facts to establish the elements of the cause of action." *Eurycleia Partners, LP v. Seward & Kissel*, LLP, 910 N.E.2d 976, 979 (N.Y. 2009) (internal citation omitted). The requirements are "satisfied when the facts suffice to permit a 'reasonable inference' of the alleged misconduct." *Id.* The above-mentioned allegations clearly meet that threshold.

The requirement that fraud be alleged with specificity is a function of notice, and Plaintiffs have put Defendant on notice with a full set of facts. *See Id.*; *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007). Defendant does not argue that such facts do not amount to fraud; it argues that essential elements are missing. As set forth above, all the elements of fraud are present and were pled. As such, Defendant's argument must be rejected.

In addition to the above argument, Defendant puts forth, once again, the issue of duplication. Br. of Def. 14. It should not fare better this time. Defendant's cases merely stand for the unremarkable proposition that the failure to fulfill a contractual obligation is not fraud only because it was pled as such. *Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 64 (App. Div. 1st Dept. 2017) ("Cronos's fraud claim is duplicative of its claim for breach of contract, inasmuch as the only fraud alleged is XComIP's unkept promise to perform certain of its preexisting obligations under the parties' contract . . . ."); *Coppola v. Applied Elec. Corp.*, 288 A.D.2d 41, 42 (App. Div. 1st Dept. 2001) (Plaintiff's fraud claim, based on the allegation that defendant Herman harbored the undisclosed intention from the outset to never comply with the parties' stock purchase agreement, was properly dismissed as merely duplicative of his breach of contract cause of action.). *Cronos* and *Coppola* only say that the breach itself is not

12

chargeable as fraud, not that a mere connection to a contract undermines an allegation of fraud. In other words, an aggrieved party to a contract that the breaching party never intended to fulfill, cannot claim fraud instead of ordinary breach. However, there is no impediment to an aggrieved party claiming that fraud has taken place collateral to the contract. *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 653 N.E.2d 1179, 1184 (N.Y. 1995) ("A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties.").

"It is well established that a party may plead alternative theories, even on the basis of allegations that contradict each other." *Raglan Realty Corp. v. Tudor Hotel Corp.*, 149 A.D.2d 373, 375 (App. Div. 1st Dept. 1989). Moreover, plaintiffs are not required to state that they are pleading "in the alternative" in their complaint. *Leki Aviation A/S v. B/E Aerospace, Inc.*, 2013 NY Slip Op 31318(U), ¶¶ 10-11. As stated previously, Plaintiffs believe that Defendants are in breach of an explicit contractual obligation. However, as with some of the other causes of action, Plaintiffs plead tortious fraud in the alternative. In other words, even if Defendant was not under an explicit contractual obligation, its behavior was tortious and fraudulent. There is no basis for undermining such a format.

Finally, the fraud charge should not be dismissed because, as Defendant itself stated, civil conspiracy and aiding and abetting, both pled by Plaintiffs, are not independent causes of action. *See* Br. of Def. 15, 17. However, they do implicate co-defendants for the otherwise actionable torts of each other. *Alexander & Alexander, Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986); *Land v Forgione*, 177 A.D.3d 862, 864 (N.Y. App. Div. 2d Dep't 2019). As such, the fraud claim should not be dismissed unless it is found to be unsustainable either

<p style="text-align:center">13</p>

independently or by way of civil conspiracy and/or aiding and abetting the tortious conduct of other defendants.

### V. The Civil conspiracy cause of action is a valid vehicle to charge Defendant for the tortious actions of its co-defendants.

Defendant cites the law concerning civil conspiracy correctly but errs in its application. It is true that "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander*, 503 N.E.2d at 103. However, the tortious conduct to which civil conspiracy connects a defendant is not its own, but its co-defendant's. Thus, Defendant's case for dismissal based, presumably, on its arguments concerning the fraud claims against it misses the point. As long as there is a valid tort claim against any defendant, there is no reason to dismiss the cause of action.

Moreover, if the "unilateral approach" to conspiracy is applied in New York, as it is with regard to criminal conspiracy, even if other defendants are immune to tort claims, Defendant can still be held liable. *See People v. Schwimmer*, 66 A.D.2d 91, 94 (App. Div. 2nd Dept. 1978).

As to the elements of civil conspiracy, the facts speak for themselves. The Plan states that its allowable charges "are based upon data collected by GHI and *agreed* to by the City of New York." Ex. A at 21 (emphasis added). Assuming that fraud has taken place, (1) there was an agreement between Defendant and the City of New York, (2) the agreement was an overt act,[2] (3) the parties were, presumably, acting intentionally to present a veneer of

---

[2] An agreement to commit an unlawful act does not qualify as an "overt act," at least in a criminal context. *People v. Ramos*, 971 N.E.2d 369, 371 (N.Y. 2012) ("The object of the statute [requiring an overt act] was to require something more than a mere agreement to constitute a criminal conspiracy."). However, the agreement between Defendant and the City of New York was not an agreement to commit an unlawful act, it was in furtherance of the unlawful act. The agreement was how the reimbursement rates were established.

14

coverage, all the while creating pathways to escape its costs, and (4) such actions resulted in injury to D and H. *See Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (App. Div. 1st Dept. 2010).

## VI. The civil aiding and abetting cause of action is a valid vehicle to charge Defendant for the tortious actions of its co-defendants.

As with the civil conspiracy cause of action, civil aiding and abetting serves to hold Defendant to account for participating in a tortious scheme with its co-defendant. *See Forgione*, 177 A.D.3d at 864. Plaintiffs assert that Defendant's concerted efforts with NYC to offer an insurance policy without intent to fulfill its obligations, amounts to aiding and abetting fraudulent and tortious conduct. The allegations were properly pled, and only the trier of fact can determine if that is indeed what took place.

## VII. Defendant violated New York's Prompt Pay Law when it processed the claims at an unreasonably low rate in bad faith.

Defendant's argument for the dismissal of Prompt Pay cause of action is, by its terms, inadequate. Defendant correctly cites to N.Y. Insurance Law § 3224-a(b), which permits an insurer to deny claims that are in dispute, but then goes on to state the obvious that the refusal must be for "justifiable reasons." *See* Br. of Def. 18. Indeed, the law only allows for a delay if the claim "is not reasonably clear" and if there is "a good faith dispute." N.Y. Ins. L. § 3224-a(b). Plaintiffs maintain that it is "reasonably clear" that a 6% reimbursement is *not* "justifiable," and that an insurer could not in "good faith" defend such an amount. True or false, the question is one of fact and not subject to dismissal at this stage.

As if sensing the flaw in its argument, Defendant tries to bolster it by revisiting the assignment issue, which it does at seemingly random intervals. As set forth in the Amended

<div align="center">15</div>

<div align="center">JA221</div>

Complaint, Paragraphs 1–2, and Section I herein, H and D are explicitly relying on a valid POA—not an assignment—for their claims against Defendant.

**VIII. Defendant's deceptive practices are either widespread, in which case, they are subject to the New York Consumer Protection Law, or they specifically target Plaintiffs, in which case they are more egregious than previously thought.**

Defendant's defense concerning the New York Consumer Protection Law is self-incriminating and inconsistent with Defendant's previous defenses. In response to Plaintiffs' appeals, Defendant indicated that the reimbursement rates were based on the Plan's Allowable Charge. *See, e.g.*, Ex. D. Now, Defendant asserts that the charge is not "consumer oriented" and that the matter is a "private" contract dispute," which is "unique to the parties." Br. of Def. 19. Which one is it? Either it is a rate that applies equally to all out-of-network ABA, in which case the claim is most certainly "consumer oriented," or it was crafted specifically for the Plaintiffs, in which case Defendant has definitively violated its commitment. It is axiomatic that an arbitrary and member-specific reimbursement rate is an illegitimate method of processing claims.

As to the adequacy of Plaintiffs' allegations, Plaintiffs need only reiterate its previous contentions that Defendant engaged in deceitful behavior by offering coverage and delivering anything but.

**IX. The Plan's claim that it is in compliance with New York's Insurance Law effectively incorporates the autism mandate into the Plan, whether or not the law provides a private right of action.**

Even if New York's Insurance Law and autism mandate do not provide a private right of action, Defendant is still contractually obligated to fulfill its provisions. The Plan provides: "The insurance evidenced by this Certificate meets the minimum standards for basic medical insurance as defined by the New York State Insurance Department." *See* Ex. C at 14. The

16

Plan has, thereby, effectively incorporated the Insurance Department's requirements. Included in those requirements is compliance with the autism mandate. *See* Ex. E at 12.

The autism mandate may not strictly speaking be a distinct cause of action, but it is binding nonetheless. When a plan assures its participants that it will comply with the law, those participants should be able to rely on them to follow the law. The law requires "coverage," not a nominal amount that fails to "cover" in any meaningful sense. *See* N.Y. Ins. L. § 3221(l)(17).

**X. The Plan's claim that it is in compliance with New York's Insurance Law effectively incorporates the New York's Parity Law into the Plan, which in turn incorporates the federal Parity Law, whether or not the law provides a private right of action.**

As with the autism mandate, even if the federal Parity Law does not provide a private right of action, Defendant is still contractually obligated to fulfill its provisions. The Plan provides: "The insurance evidenced by this Certificate meets the minimum standards for basic medical insurance as defined by the New York State Insurance Department." See Ex. C at 14. The Plan has, thereby, effectively incorporated the Insurance Department's requirements. Included in those requirements is compliance with the federal Parity Law. See Ex. E at 10; N.Y. Ins. L. § 3221(l)(5)(F). As to the substance of the allegation, it is simply implausible that Defendant would survive as an insurer if its reimbursements were at 6% across the board.

**XI. Plaintiffs' request for declaratory judgment if for prospective relief, so that Defendant fulfill its obligation to cover H's vital treatment in the future.**

H and D remain members of Defendant's insurance policy, and D requires further ABA treatment. "Courts have declined to dismiss declaratory judgment claims when they seek prospective relief, as distinct from the retrospective relief sought by the contract claims. *Cohen v. Trump Org. LLC*, 2019 NY Slip Op 32565(U), ¶ 24 (Sup. Ct. 2019) (citing *Home Equity*

17

JA223

*Mortg. Trust Series 2006-1 v DLJ. Mortg. Capital, Inc.*, No. 156016/2012, 2013 N.Y. Misc. LEXIS 4764 (Sup. Ct. 2013) (denying motion to dismiss declaratory judgment claim which "[b]y contrast [to contract claim] . . . contemplate[d] prospective action")); *but see ASAH, The Children's Inst. v. N.J. Dep't of Educ.*, 2017 U.S. Dist. LEXIS 101736, at *35 (D.N.J. 2017). Whether or not the request for a declaratory judgment is a distinct cause of action or a prayer for relief, it is proper in this instance and should be granted.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant's Motion to Dismiss in its entirety.

Respectfully Submitted,

____/s/ Yaakov Pollak____
Yaakov Pollak, Esq.
Burton Jacobovitch Law Group LLC
500 River Avenue, Suite 215
Lakewood, New Jersey 08701
(732) 806-8181
ypollak@nbyjlaw.com
*Attorneys for Plaintiffs*

18

JA224

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRAINBUILDERS LLC, and H and D, by their
Attorney-in-Fact, ROCHEL SOROTZKIN,

                          Plaintiffs,

         vs.

EMBLEMHEALTH, INC., GROUP HEALTH
INCORPORATED, THE CITY OF NEW YORK, NEW
YORK CITY OFFICE OF LABOR RELATIONS, and
NEW YORK CITY DEPARTMENT OF EDUCATION,

                    Defendants.

Civil Action No. 1:21-CV-04627-KPF

**DECLARATION OF HOWARD S. WOLFSON IN SUPPORT OF DEFENDANTS EMBLEMHEALTH, INC. AND GROUP HEALTH INCORPORATED'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

I, HOWARD S. WOLFSON, declare as follows:

1.      I am a Member of the law firm of Morrison Cohen LLP ("Morrison Cohen"), counsel for Defendants EmblemHealth, Inc. ("EmblemHealth") and Group Health Incorporated ("GHI" and, together with EmblemHealth, the "GHI Defendants"). I am fully familiar with the facts and circumstances set forth herein.

2.      I make this declaration in support of the GHI Defendants' motion to dismiss the Second Amended Complaint dated July 12, 2021 (the "Complaint," ECF Doc. No. 34.)

3.      On November 9, 2020, in response to my request for a copy of the power of attorney referenced in Paragraph 2 of the Amended Complaint, counsel for Plaintiffs provided us a with copy of a document entitled "Durable Power of Attorney for Health Insurance and Benefit Claims" dated November 13, 2019 (the "POA"). Annexed hereto as Exhibit "A" is a true and correct copy of the POA that was provided to us (with redactions made for privacy purposes.)

4.      Annexed hereto as Exhibit "B" is a true and correct copy of a status report for Plaintiff Brainbuilders LLC ("Brainbuilders") from the New Jersey Secretary of State, which was

1

JA225

retrieved and printed on September 7, 2021. The report indicates that Brainbuilders has two

Members, Rochel Sorotzkin and Yocheved C. Nussbaum.

     5.     I declare under penalties of perjury that the foregoing is true and correct.

Dated: New York, New York
         September 10, 2021

                                               */s/ Howard S. Wolfson*
                                               Howard S. Wolfson

# EXHIBIT A

# DURABLE POWER OF ATTORNEY

## FOR

### HEALTH INSURANCE AND BENEFIT CLAIMS

I, ⬛⬛⬛⬛⬛⬛⬛, do hereby make, constitute and appoint Rochel Sorotzkin BCBA, my true and lawful agent (hereinafter my "Agent"), for all purposes related to health insurance, health benefits and/or insurance reimbursement to which I and/or my dependents may be or may become entitled with regard to services rendered to me and/or my dependents by BRAINBUILDERS LLC, and in connection therewith to perform such acts for me and on my behalf as my Agent, in my Agent's absolute discretion, deems advisable, as fully and with the same validity as I could if I did so personally in any jurisdiction in which my Agent shall act.

**A.** **ILLUSTRATIONS OF INCLUDED POWERS**. As illustration of and not in limitation of the generality of the foregoing declaration and grant of authority, I specifically authorize my Agent:

1. <u>Submission of Claims; Appeal Any Denial of Claims</u>. To submit claims to an insurance company (or its administrator), or to a benefit plan (or its administrator), on my and/or my dependent's behalf; to appeal any denial of such claims and to submit evidence as may be required in the course of pursuing such appeals, and to request and receive all information and notices related to such claims and appeals.

2. <u>Collection of Health Benefits or Health Insurance Proceeds</u>. To collect on my and/or my dependent's behalf all benefits and proceeds owed under any insurance policy or benefit plan; to exercise all powers with respect to such insurance policies or benefit plans; to demand and receive all monies or other property due me from any such insurance policy or benefit plan; and to give receipts and releases for same.

3. <u>Pursuit of Claims and Litigation</u>. To pursue, institute, settle, appeal or terminate any claims, litigation or administrative proceedings related to the collection of monies or other property owed to me and/or my dependent under any insurance policy or benefit plan; to institute a lawsuit against any person or entity refusing to act pursuant to this Power of Attorney, to sue to compel acceptance of and reliance on this Power of Attorney and to seek damages, including punitive damages, for failure to accept and rely on this Power of Attorney; to compromise, refer to arbitration, or submit to judgment in any

such action or proceeding; and to pursue any rights to recover attorney's fees and costs with respect to any such action or proceeding.

4.  Health Information. To request and obtain documentation related to the submission and collection of insurance and benefit claims on my and/or my dependent's behalf, and in connection therewith to have all rights that I have under the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. §1320d 1 through §1320d 8 and applicable regulations), commonly referred to as "HIPAA", or under any similar statute and regulations, including, but not limited to, access to all of my or my dependent's medical records, charts, reports, results, recommendations, documentation, invoices, billing or payment information, notes and correspondence.

## B.  OTHER PROVISIONS

1.  Reliance on this Durable General Power of Attorney. Any insurance company (or its administrator) or health benefit plan (or its administrator), and other persons, firms or corporations may act in reliance hereon and shall be fully protected.

2.  Ratification and Durability. I hereby give and grant to my Agent full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done for me or on my behalf, as fully to all intents and purposes as I might or could do, if personally present. I hereby ratify and confirm all that my Agent shall lawfully do or cause to be done by virtue hereof until this Power of Attorney is duly revoked. This Power of Attorney shall not be affected by my subsequent disability or incapacity, by any subsequent uncertainty as to whether I am living or deceased, or by the lapse of time. This Power of Attorney may be accepted and relied on by anyone to whom it is presented until such person either (1) receives written notice of revocation by me or a guardian or similar fiduciary of my estate, or (2) has actual knowledge of my death. This Power of Attorney can be revoked by me by sending written notice of such revocation by certified mail, return receipt requested, or by causing such revocation to be delivered personally to my Agent or by any other means permitted by law.

3.  Compensation and Reimbursement.  My Agent shall not receive compensation for services provided under this Power of Attorney, but shall be

entitled to reimbursement for reasonable costs and expenses incurred and paid for by my Agent on my behalf and in the exercise of any authority under this Power of Attorney.

4. <u>Governing Law</u>. This Power of Attorney shall be governed by and interpreted in accordance with the laws of the State of New Jersey.

5. <u>Headings</u>. Any headings preceding the text of any paragraph of this Power of Attorney are intended for convenience only and shall not alter or limit the meaning, purpose or effectiveness of any power granted herein. It is my intention that the powers granted to my Agent shall be construed in the broadest manner possible.

IN WITNESS WHEREOF, and intending to be legally bound hereby, I have hereunto set my hand and seal.

Signed: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dated: _Nov 13_____, 2019

Signed, Sealed and Delivered
in the presence of:

ELIZABETH D. MEHLING
NOTARY PUBLIC-STATE OF NEW YORK
No. 02ME6395025
Qualified in New York County
My Commission Expires 07-22-2023

_____ (SEAL)

MZW YCNC

**STATE OF ~~NEW JERSEY~~:**
**COUNTY OF ~~MONMOUTH~~:** BRONX:

On this 13TH day of NOVEMBER, 2019, before me, the subscriber, a Notary Public, personally appeared ▮▮▮▮▮▮▮▮▮▮▮, known to me or satisfactorily proven to be the person whose name is subscribed to the within Power of Attorney, who acknowledged awareness of the contents thereof and acknowledged that such person executed the same for the purposes therein expressed.

_____
Notary Public

ACTIVE\58713729.v1-6/27/18

# EXHIBIT B

```
Status Report For:      BRAIN BUILDERS LIMITED LIABILITY COMPANY
Report Date:            9/7/2021
Confirmation Number:    212502420610
```

**IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION**

```
Business ID Number:     0400318245
Business Type:          DOMESTIC LIMITED LIABILITY COMPANY
Status:                 ACTIVE
Original Filing Date:   11/24/2009
Stock Amount:           N/A
Home Jurisdiction:      NJ
Status Change Date:     NOT APPLICABLE
```

**REVOCATION/SUSPENSION INFORMATION**

```
DOR Suspension Start    N/A
Date:
DOR Suspension End      N/A
Date:
Tax Suspension Start    N/A
Date:
Tax Suspension End      N/A
Date:
```

**ANNUAL REPORT INFORMATION**

```
Annual Report Month:    NOVEMBER
Last Annual Report      08/24/2020
Filed:
Year:                   2020
```

**AGENT/SERVICE OF PROCESS (SOP) INFORMATION**

```
Agent:                  RACHEL SOROTZKIN
Agent/SOP Address:      945 RIVER AVENUE SUITE 201 ,LAKEWOOD,NJ,08701
Address Status:         DELIVERABLE
Main Business Address:  945 RIVER AVENUE SUITE 201, LAKEWOOD, NJ,
                        08701
Principal Business      N/A
Address:
```

**ASSOCIATED NAMES**

```
Associated Name:        N/A
Type:                   N/A
```

**PRINCIPALS**

Following are the most recently reported officers/directors (corporations), managers/members/managing members (LLCs), general partners (LPs), trustees/officers (non-profits).

| | |
|---|---|
| Title: | MEMBER |
| Name: | SOROTZKIN,RACHEL |
| Address: | 780 ALBERT AVE, LAKEWOOD, NJ, 08701 |
| Title: | MEMBER |
| Name: | NUSSBAUM,YOCHEVED C |
| Address: | 205 HADASSAH LANE, LAKEWOOD, NJ, 08701 |

## FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND LIMITED LIABILITY PARTNERSHIPS

To order copies of any of the filings below, return to the service page, https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions for obtaining copies. Please note that trade names are filed initially with the County Clerk(s) and are not available through this service. Contact the Division for instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

| | |
|---|---|
| Original Filing (Certificate)Date: | 2009 |

Changes and Amendments to the Original Certificate:

| Filing Type | Year Filed |
|---|---|
| CHANGE OF AGENT AND OFFICE | 2016 |
| Annual Report Filing with address change | 2016 |
| Annual Report filing with officer/member change | 2016 |

Note:
Copies of some of the charter documents above, particularly those filed before June 1988 and recently filed documents (filed less than 20 work days from the current date), may not be available for online download.

- For older filings, contact the Division for instructions on how to order.
- For recent filings, allow 20 work days from the estimated filing date, revisit the service center at https://www.njportal.com/DOR/businessrecords/Default.aspx periodically, search for the business again and build a current list of its filings. Repeat this procedure until the document shows on the list of documents available for download.

The Division cannot provide information on filing requests that are in process. Only officially filed documents are available for download.

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAINBUILDERS LLC, and H and D, by their Attorney-in-Fact, RACHEL SOROTOZKIN,<br><br>        Plaintiffs,<br><br>vs.<br><br>EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>        Emblems. | Civil Action No.: 1:21-cv-04627-KPF<br><br>**DECLARATION OF YAAKOV POLLAK IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

I, Yaakov Pollak, declare as follows:

1.      I represent plaintiffs Brainbuilders LLC, and H and D, by their Attorney in-Fact, Rachel Sorotozkin.  I am fully familiar with the facts set forth herein.

2.      I make this declaration in opposition to the respective motions to dismiss of defendants EmblemHealth, Inc., Group Health Incorporated, the City Of New York, New York City Office of Labor Relations, and New York City Department of Education.

3.      Attached hereto as Exhibit A is a true and correct copy of the health insurance plan of defendant EmblemHealth, Inc. that is offered to New York City employees, and in which H and D participated.

4.      Attached hereto as Exhibit B is a true and correct copy of an internal appeal determination sent by defendant EmblemHealth, Inc. to plaintiff Brainbuilders LLC.

1

5.     Attached hereto as Exhibit C is a true and correct copy of the Review Standards for Basic Medical Insurance for Group Commercial Insurers Subject to Article 32, issued by the New York State Department of Financial Services.

6.     Attached hereto as Exhibit D is a true and correct copy of the Joint Intentions and Commitments evidencing certain commitments of defendant New York City Department of Education to the certain teachers' unions.

7.     I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 15, 2021

_____

Yaakov Pollak, Esq.

2

# Exhibit B

4



**Emblem**Health®

55 Water Street, New York, New York 10041-8190

May 17, 2018



945 RIVER AVE
STE 201
LAKEWOOD, NJ 087015606
==
Member ID Number:
Patient Name:
Provider:
Claim:
Date of Service:
Control Number:

Dear Provider:

Thank you for contacting EmblemHealth about a recent payment on your account. After careful review, we have confirmed the original payment was correct based on the following:

At the time of service, the provider who rendered these services was out of network. Payment of your claim was based on EmblemHealth's allowance, not the provider's submitted charge. EmblemHealth's authorized allowance for the procedure(s) performed is $252.00.

The original payment was limited by the policy maximum for this service; therefore, no additional payment can be made.

We're here to help. If you have any questions or concerns, contact Customer Service at **1-800-624-2414**, Monday to Friday, 8 am to 6 pm (excluding major holidays). If you use a TDD/TTY, please call **711**. You can also send a message through your secure, online member account, myEmblemHealth. Sign in or register at **emblemhealth.com**.

Sincerely,

*B. Martinez*
Senior Claims Adjuster

Group Health Incorporated (GHI), GHI HMO Select, Inc. (GHI HMO), HIP Health Plan of New York (HIP), HIP Insurance Company of New York and EmblemHealth Services Company, LLC are EmblemHealth companies. EmblemHealth Services Company, LLC provides administrative services to the EmblemHealth companies.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAINBUILDERS LLC and H and D, by their Attorney-in-Fact, Rochel Sorotzkin, <br><br> Plaintiffs, <br><br> -v.- <br><br> EMBLEMHEALTH, INC., GROUP HEALTH INCORPORATED, THE CITY OF NEW YORK, NEW YORK CITY OFFICE OF LABOR RELATIONS, and NEW YORK CITY DEPARTMENT OF EDUCATION, <br><br> Defendants. | 21 Civ. 4627 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Brainbuilders LLC ("Brainbuilders") and H, on behalf of herself and her minor child, D (with H, the "Members"), by the Members' attorney-in-fact Rochel Sorotzkin (together, "Plaintiffs") bring this action against EmblemHealth, Inc. ("EmblemHealth"), Group Health Incorporated ("GHI," and together with EmblemHealth, the "GHI Defendants"), the City of New York (the "City"), the New York City Office of Labor Relations ("OLR"), and the New York City Department of Education ("DOE," and together with the City and OLR, the "City Defendants"), alleging claims against all Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, civil conspiracy, and civil aiding and abetting; and against the GHI Defendants for violations of various federal and state laws. The GHI Defendants now move for dismissal of Plaintiffs' Second Amended Complaint (the "SAC") for lack of standing and for failure to state a claim. The

City Defendants also move for dismissal on the grounds that (i) OLR is a non-suable entity; (ii) Plaintiffs failed to comply with various statutory prerequisites to suing DOE; (iii) Plaintiffs' tort claims against the City Defendants are untimely; and (iv) Plaintiffs' remaining claims fail to state claims upon which relief can be granted.  For the reasons set forth in the remainder of this Opinion, the Court grants both motions to dismiss.

## BACKGROUND[1]

### A.    Factual Background

Brainbuilders, a New Jersey limited liability company, describes itself as a therapeutic intervention agency that provides services to children with

---

[1]    This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #34)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion. On a motion to dismiss, a court may consider any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  A document is integral to the complaint "where the complaint relies heavily upon its terms and effect."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

For ease of reference, the Court refers to the GHI Defendants' memorandum of law in support of their motion to dismiss as "GHI Br." (Dkt. #50); to the City Defendants' memorandum of law in support of their motion to dismiss as "City Br." (Dkt. #46-5); to Plaintiffs' consolidated brief in opposition to Defendants' motions to dismiss as "Pl. Opp." (Dkt. #51); to the GHI Defendants' reply brief as "GHI Reply" (Dkt. #53); and to the City Defendants' reply brief as "City Reply" (Dkt. #52).

The Court also refers to the Declaration of Scott P. Bridge in support of the City Defendants' motion to dismiss ("Bridge Decl." (Dkt. #46-1)) and the exhibits attached thereto, including H's June 19, 2020 notice of claim (Ex. B) and GHI's denial of appeal (Ex. C); the Declaration of Luz Campos in support of the GHI Defendants' motion to dismiss ("Campos Decl." (Dkt. #48)) and the exhibits attached thereto, including the GHI Comprehensive Benefits Plan (the "Plan" (Ex. B)); the Declaration of Howard S. Wolfson in support of the GHI Defendants' motion to dismiss ("Wolfson Decl." (Dkt. #49)) and the exhibits attached thereto, including the Power of Attorney granted by H to Sorotzkin (Ex. A); and the Declaration of Yaakov Pollak in opposition to Defendants' motion to dismiss ("Pollak Decl." (Dkt. #51-1)) and the exhibits attached thereto, including another copy of the Plan (Ex. A).

autism-spectrum-related disorders, including applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy. (SAC ¶ 1). GHI and its parent company, EmblemHealth, are each New York corporations with their principal place of business in New York City. (*Id.* at ¶¶ 3-4). D is a fourteen-year-old adolescent who has been diagnosed with autism spectrum disorder. (*Id.* at ¶ 9). He has been treated by Brainbuilders from May 2017 to the present. (*Id.*). H, D's mother, is employed by DOE. (*Id.* at ¶ 10).

Pursuant to an agreement between DOE and the United Federation of Teachers ("UFT"), of which H is a member, DOE committed "to arrange for, and make available to each day school teacher, a choice of health and hospital insurance coverage from among designated plans[.]" (SAC ¶ 11). In line with this commitment, DOE employees, like all City employees, are offered a choice of healthcare plans. (*Id.* at ¶ 13). H selected the GHI Comprehensive Benefits Plan (the "Plan"), a policy created by GHI and the City Defendants for City employees, and under which D is covered as a qualified dependent. (*Id.* at ¶ 14).

OLR is a subdivision of the City that, among other things, administers the New York City Health Benefits Program, of which the Plan is a part. (SAC ¶ 6). The Plan provides coverage for out-of-network services. (*Id.* at ¶ 16). Premiums for policies that cover out-of-network services are typically substantially higher than premiums for policies that only cover in-network services. (*Id.* at ¶ 15).

In New York State, all health insurance companies are required to provide coverage for the screening, diagnosis, and treatment of autism spectrum disorder.  (SAC ¶ 18 (citing N.Y. Ins. Law § 3221(l)(17)(A))).  Indeed, according to Plaintiffs, a rider to the Plan's Certificate of Insurance confirms that the Plan includes coverage for ABA.  (*Id.* at ¶ 19).  Per the Plan documents, the amounts that GHI will reimburse for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York."  (*Id.* at ¶ 23).  Pursuant to a 2014 agreement with the Attorney General of the State of New York, GHI committed to "create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers."  (*Id.* at ¶ 24 (quoting *In the Matter of Group Health Incorporated*, Att'y Gen. of the State of N.Y., Assurance No.: 14-181 (available at https://ag.ny.gov/pdfs/AG-GHI_Assurance_No14-181_Fully_Executed.pdf))).  In partial compliance with that agreement, GHI created a website for its members to seek information on its reimbursement amounts.  (*Id.* at ¶ 25).  However, there is no reimbursement information available on the website for the Current Procedural Terminology ("CPT") or Healthcare Common Procedure Coding System ("HCPCS") codes related to ABA.  (*Id.*).

D was diagnosed with autism spectrum disorder in 2009, and since 2017, he has been receiving ABA from Brainbuilders.  (SAC ¶ 21).  According to Plaintiffs, GHI has consistently paid Brainbuilders approximately six percent of the amount Brainbuilders bills for D's ABA, with the exception of a "short

4

period" in the beginning of 2019, during which time GHI paid approximately 60% of the billed amounts. (*Id.* at ¶ 22; Bridge Decl., Ex. B). As a result, Brainbuilders is forced to bill D's caregivers for the remaining balance. (SAC ¶ 22). Plaintiffs have repeatedly appealed GHI's reimbursement determinations in compliance with the Plan's internal appeal procedures, but GHI has ignored many of their appeals. (*Id.* at ¶ 29).

The SAC states that H, on behalf of herself and on behalf of D, executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under the Plan for the benefit of Brainbuilders. (SAC ¶ 1). The SAC also states that H appointed Rochel Sorotzkin as attorney-in-fact for H and D, with authority to pursue all legal and administrative remedies under the Plan. (*Id.* at ¶ 2).

## B. Procedural Background

On August 18, 2020, Plaintiffs filed an action against Defendants in the Superior Court of the State of New Jersey, Law Division, Monmouth County, captioned *Brainbuilders LLC, and H and D, by their Attorney-in-Fact, Brainbuilders LLC* v. *EmblemHealth, Inc., Group Health Incorporated, The City of New York, New York City Office of Labor Relations and New York City Department of Education*, Docket No. MON-L-002594-20. (Dkt. #1, Ex. 1). On September 15, 2020, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, and the matter was removed to the United States District Court for the District of New Jersey, where it was assigned to Chief Judge Freda L. Wolfson and Magistrate Judge Tonianne J. Bongiovanni.

5

(Dkt. #1, Ex. 2; Minute Entry for September 15, 2020).  Magistrate Judge
Bongiovanni scheduled an initial pretrial conference for October 20, 2020, and
granted Defendants an extension to October 21, 2020, to respond to Plaintiffs'
Complaint.  (Dkt. #5, 7).

In October of 2020, the GHI Defendants and the City Defendants filed
separate motions to dismiss the Complaint pursuant to Federal Rules of Civil
Procedure 12(b)(2) and 12(b)(6), or, in the alternative, to transfer the case to the
United States District Court for the Southern District of New York.  (Dkt. #11
(GHI Defendants' motion to dismiss, filed October 19, 2020), 13 (City
Defendants' motion to dismiss, filed October 21, 2020)).  On November 9, 2020,
Plaintiffs filed an amended complaint.  (Dkt. #16).  On November 18, 2020,
Alvin C. Lin, counsel for the GHI Defendants, filed a letter on behalf of all
Defendants, asking the court to deem the pending motions to dismiss to be
directed against Plaintiffs' Amended Complaint and to maintain the existing
briefing schedule.  (Dkt. #17).  The court granted Defendants' request the
following day.  (Dkt. #18).  Plaintiffs filed their opposition brief on
December 10, 2020, and Defendants filed their reply brief on January 12,
2021.  (Dkt. #22, 24).  The GHI Defendants filed a notice of supplemental
authority on February 25, 2021.  (Dkt. #25).  On May 21, 2021, the court
issued an Opinion and Order (i) granting the City Defendants' motion to
dismiss for lack of personal jurisdiction, (ii) denying the GHI Defendants'
motion to dismiss without prejudice, and (iii) transferring the matter to the
Southern District of New York.  (Dkt. #27).

The matter was transferred to this District on May 24, 2021, and thereafter was assigned to the undersigned. On June 4, 2021, the GHI Defendants filed a pre-motion letter seeking a conference to discuss the anticipated renewal of their motion to dismiss. (Dkt. #32). On July 13, 2021, Plaintiffs filed the SAC. (Dkt. #34).

The eleven-page SAC sets forth eleven separate causes of action. *First*, Plaintiffs allege that by covering only a small fraction of the costs of D's treatments, Defendants have breached their respective agreements. (SAC ¶ 34). *Second*, and for the same reason, Plaintiffs allege that Defendants have breached the covenant of good faith and fair dealing inherent in their respective agreements. (*Id.* at ¶ 39). *Third,* Plaintiffs allege that Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan; that Plaintiffs relied on Defendants' promises and did not accept or seek alternative employment or insurance coverage; and that Defendants did not honor their promise to cover the costs of D's treatment in a meaningful way. (*Id.* at ¶¶ 39-41). *Fourth*, Plaintiffs allege that Defendants engaged in fraud by misrepresenting that they would cover the costs of healthcare when they did not intend to cover the costs of D's treatments. (*Id.* at ¶¶ 43-44). *Fifth*, Plaintiffs allege that Defendants have conspired and agreed between and among themselves to deny substantial coverage for D's treatments to which Plaintiffs were entitled. (*Id.* at ¶ 46). *Sixth*, Plaintiffs allege that each Defendant aided and abetted the other Defendants in the breach of their

agreements. (*Id.* at 8, ¶ 39).[2] *Seventh*, Plaintiffs allege that the GHI Defendants failed to comply with Section 3224-a of the New York Insurance Law (the "Prompt Pay Law"), which requires insurers to pay the bill or claim of a medical provider within 45 days of receipt. (*Id.* at 8-9, ¶¶ 41-42). *Eighth*, Plaintiffs allege that the GHI Defendants violated Section 349 of the New York General Business Law (the "New York Consumer Protection Act"), which provides protection against "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." (*Id.* at 9, ¶¶ 44-45). *Ninth*, Plaintiffs allege that the GHI Defendants have violated a state mandate that all health policies cover autism services, including ABA. (*Id.* at ¶¶ 47-48). *Tenth*, Plaintiffs allege that the GHI Defendants have violated the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), Pub. L. No. 110-343, Div. C §§ 511-12, 122 Stat. 3861, 3881 (Oct. 3, 2008), which requires that healthcare plans cover mental health services on par with medical and surgical services. (*Id.* at ¶¶ 50-51). *Eleventh* and finally, Plaintiffs seek a declaratory judgment that they are entitled to full reimbursement from Defendants for the treatment of D going forward. (*Id.* at ¶ 53).

The day after Plaintiffs filed the SAC, the Court denied as moot Defendants' request for a pre-motion conference and directed Defendants to respond to the SAC on or before July 28, 2021. (Dkt. #35). On July 28, 2021,

---

2       There is a flaw in the numbering of paragraphs in the SAC. On page 8, paragraph 46 is followed by paragraph 38, and the numbering continues from 38. Citations to this second set of paragraphs numbered 38-46 include the relevant page number.

the GHI Defendants renewed their request for a pre-motion conference regarding their anticipated motion to dismiss.  (Dkt. #37).  That same day, the City Defendants filed their motion to dismiss.  (Dkt. #36).  The following day, the City Defendants filed a pre-motion letter in accordance with the Court's Individual Rules.  (Dkt. #38).

On July 29, 2021, the Court denied the City Defendants' motion to dismiss without prejudice, due to the motion's noncompliance with the Court's Individual Rules, and converted the August 12, 2021 initial pretrial conference into a pre-motion conference.  On August 12, 2021, the Court held a pre-motion conference and set a briefing schedule for the motions to dismiss.  Both the GHI Defendants and the City Defendants filed their opening briefs and supporting documents on September 10, 2021.  (Dkt. #46-50).  Plaintiffs filed their consolidated opposition brief on October 15, 2021.  (Dkt. #51).  Both sets of Defendants filed their reply briefs on October 29, 2021.  (Dkt. #52, 53).  Accordingly, both motions to dismiss are fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.    Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation

9

omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). While the plausibility requirement "is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B.  The Court Dismisses Plaintiffs' Claims Against the GHI Defendants**

> **1.  Plaintiffs Lack Standing to Bring Certain Claims Against the GHI Defendants**

> > **a.  Brainbuilders Lacks Standing to Sue the GHI Defendants**

The Plan contains an unambiguous no-assignment provision, which reads, "You cannot assign any benefits or monies due from GHI to any person, corporation or other organization. Any assignment by you will be void. Assignment means the transfer to another person or organization of your right to the services provided or your right to collect from GHI for those services." (Campos Decl., Ex. B at 36). The GHI Defendants argue that, given this provision, Brainbuilders lacks standing to assert a contract claim against the GHI Defendants.

Under New York Law, "an assignment is valid even where an agreement generally prohibits assignment, *unless* the agreement specifies that an assignment would be invalid or void." *Mosdos Chofetz Chaim, Inc.* v. *RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) (internal quotation marks and citation omitted) (emphasis added). "As the Second Circuit reasoned when evaluating an anti-assignment clause under New York law, 'only *express* limitations on assignability are enforceable.'" *Au New Haven, LLC* v. *YKK Corp.*, 210 F. Supp. 3d 549, 555 (S.D.N.Y. 2016) (quoting *Pravin Banker Associates, Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original)). "'[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments.'" *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 226 (quoting *Sullivan* v. *Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 237 (2d Dep't 1983)).

The anti-assignment clause at issue in this case contains a definite declaration of the invalidity of an assignment, as it provides that "[a]ny assignment by you will be void." (Campos Decl., Ex. B at 36). *See Renfrew Ctr.* v. *Blue Cross & Blue Shield of Cent. N.Y., Inc.*, No. 94 Civ. 1527 (RSP) (GJD), 1997 WL 204309, at *5 (N.D.N.Y. Apr. 10, 1997) (finding assignment to be invalid where anti-assignment provision explicitly stated that any assignments would be "void"); *cf. Semente* v. *Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117, 121 (E.D.N.Y. 2015), *on reconsideration*, No. 14 Civ. 5823 (DRH) (SIL), 2016 WL 4621076 (E.D.N.Y. Sept. 6, 2016) (concluding that assignment

11

was permitted where "[t]he anti-assignment clause at issue [did] not contain a definite declaration of the invalidity of an assignment"); *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 227 (finding assignment to be valid where plaintiff "failed to identify any [] language in this or any other agreement that specifically invalidates or prohibits an assignment"); *Sullivan*, 465 N.Y.S.3d at 237 (finding assignment to be permitted where contract "contained no provision that the assignment [of benefits] should be void, nor does it provide that an assignee would acquire no rights by reason of any such assignment, nor [does] it provide that the contractor shall not be required to recognize or accept any such assignment").  Because any purported assignment of the Members' claims to Brainbuilders is void, the Court dismisses Brainbuilders' claims against the GHI Defendants.

> **b.    The Members Have Standing to Sue the GHI Defendants for Their Own Benefit**

An assignment of a cause of action is, of course, analytically different from a power of attorney, such as the one granted by H to Rochel Sorotzkin.[3] "A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim." *Advanced Magnetics, Inc.* v. *Bayfront Partners Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997) (citing *Spencer* v. *Standard Chems. & Metals Corp.*, 237

---

[3]    In the original Complaint, Brainbuilders (but not Sorotzkin) alleged that it was relying upon an assignment of benefits from the Members and acting as the Members' attorney-in-fact.  (Dkt. #1, Ex. 1 at 2).  However, after Defendants removed the action to federal court, Brainbuilders filed an amended complaint replacing Brainbuilders with Sorotzkin as the Members' attorney-in-fact, "to avoid having to defend Brainbuilders' status as a valid attorney-in-fact, unnecessarily[.]"  (Dkt. #19 at 2 n.1).

12

N.Y. 479, 482 (1924)). "The grant of a power of attorney … is *not* the equivalent of an assignment of ownership." *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (quoting *Advanced Magnetics, Inc.*, 106 F.3d at 17-18) (emphasis added). Therefore, the no-assignment provision does not bar Sorotzkin from bringing suit on behalf of H and D.

It is true, as the GHI Defendants argue, that the power of attorney does not grant standing to Brainbuilders or to Sorotzkin to sue the GHI Defendants in their own names. (*See* GHI Br. 9). "[A] power of attorney to sue, standing alone, does *not* under the New York law operate as an assignment to vest the attorney with such title or interest as will enable him to maintain the suit in his own name." *Titus* v. *Wallick*, 306 U.S. 282, 289 (1939) (emphasis added) (citing *Spencer*, 237 N.Y. 479); *accord Raymond A. Semente, D.C., P.C.* v. *Empire Healthchoice Assurance, Inc.*, No. 14 Civ. 5823 (DRH) (SIL), 2021 WL 796613 (E.D.N.Y. Mar. 2, 2021) (holding that patient's power of attorney did not grant standing to out-of-network medical service provider to bring claims against insurer in provider's own name). Sorotzkin does not, however, bring any claims in her own name.[4] Instead, she purports to bring her claims as an "attorney-in-fact" in a representative capacity on behalf of H and D, who Sorotzkin alleges executed a power of attorney in her favor regarding any legal claims that they maintain in connection with the Plan.

---

[4] As discussed in greater detail below, the GHI Defendants accuse Sorotzkin of suing for her own benefit as one of Brainbuilders' two owners. (GHI Br. 2, 5; Wolfson Decl., Ex. B at 3). However, Paragraph 1 of the SAC defines "Plaintiffs" to include H, D, and Brainbuilders, and does *not* include Sorotzkin. (SAC ¶ 1).

13

Depending on the specific powers granted, a grant of a power of attorney may entitle the holder to bring a lawsuit in the name of the grantor. *Dennis* v. *JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 413 (S.D.N.Y. 2018). Indeed, Sorotzkin's power of attorney specifically authorizes her "[t]o pursue, institute, settle, appeal or terminate any claims, litigation or administrative proceedings related to the collection of monies or other property owed to me and/or my dependent under any insurance policy or benefit plan[.]" (Wolfson Decl., Ex. A at 2). That said, the grant of a power of attorney must be valid in order for it to confer standing upon an attorney-in-fact acting as the legal representative of a third party. The GHI Defendants argue that the power of attorney executed by the Members in favor of Sorotzkin is deficient under New Jersey law because it does not have a subscribing witness as required by New Jersey Statutes Annotated Sections 46:2B-8.9 and 46:14-2.1(b). (GHI Br. 10 (citing Wolfson Decl., Ex. A at 3 (providing that the power of attorney "shall be governed by and interpreted in accordance with the laws of New Jersey"))).

Under New Jersey law, "[a] power of attorney must be in writing, duly signed and acknowledged in the manner set forth in R.S. 46:14-2.1." N.J. Stat. Ann. § 46:2B-8.9. The GHI Defendants argue that in order for a power of attorney to be "acknowledged in the manner set forth in R.S. 46:14-2.1," a subscribing witness must appear before a notary public, and the notary public must sign a certificate stating that the witness personally appeared before the notary public. (GHI Br. 10 (citing N.J. Stat. Ann. § 46:14-2.1(b))). Here, the notary, Elizabeth Mehling, doubled as the subscribing witness, a fact that the

14

GHI Defendants claim invalidates the power of attorney under New Jersey law. (*See id.*).  However, the "subscribing witness" requirement to which the GHI Defendants refer is found in New Jersey Statutes Annotated § 46:14-2.1(b), which details the requirements to "prove" a written instrument.  Subsection (a) outlines the requirements to "acknowledge" a written instrument, and that subsection does *not* require a subscribing witness to appear.  N.J. Stat. § 46:14-2.1(a).  Therefore, the Court finds that the power of attorney in favor of Rochel Sorotzkin is valid under New Jersey law.[5]

Undeterred, the GHI Defendants argue that Sorotzkin must still be barred from bringing this lawsuit, because paragraph 1 of the SAC expressly alleges that this action was commenced "for the benefit of Brainbuilders." (GHI Reply 1 (quoting SAC ¶ 1)).  The GHI Defendants also observe that the SAC does not allege that any recovery will be given to H or D.  (*Id.*).  Further, in their prayer for relief, Plaintiffs ask the Court to order Defendants "to reimburse

---

[5]     The GHI Defendants correctly note that although the power of attorney purportedly was executed within the State of New York, it does not meet the requirements of New York General Obligations Law § 5-1501B, which requires a power of attorney to be signed by the principal's purported agent (here, Sorotzkin).  N.Y. Gen. Oblig. Law § 5-1501B(c). Further, it does not contain the statutory language required by Section 5-1501B(d)(1) ("Caution to the Principal") and Section 5-1501B(d)(2) ("Important Information for the Agent").  For these reasons, the power of attorney would be considered ineffective under New York law.  *See Berrian* v. *Siena Coll.*, 12 N.Y.S.3d 240 (2d Dep't 2015) (finding power of attorney invalid because of absence of required language and dismissing case for lack of standing).  However, the power of attorney provides that it "shall be governed by and interpreted in accordance with the laws of the State of New Jersey." (Wolfson Decl., Ex. A at 4).  "A choice of law provision in a contract governs disputes about the 'existence or validity of that contract.'"  *Gallo* v. *Inter-Con Sec. Sys. Inc.*, No. 20 Civ. 4879 (KPF), 2021 WL 3913539, at *5 n.6 (S.D.N.Y. Sept. 1, 2021) (citing *Lisa Cooley, LLC* v. *Native, S.A.*, No. 20 Civ. 5800 (VEC), 2021 WL 860591, at *2 (S.D.N.Y. Mar. 5, 2021); *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 50 (2d Cir. 2004)).

Plaintiffs for the billed amount for past treatment of D," but there is no indication that H has paid the billed amount, such that she would be the party reimbursed for those costs. (SAC ¶ 53).

Standing to assert a claim for the benefit of the attorney-in-fact can only be conferred by a valid assignment of the claim. *See W.R. Huff Asset Mgmt. Co., LLC* v, 549 F.3d at 108 (observing that "an assignment of claims transfers legal title or ownership of those claims," while a power of attorney does not). As the power of attorney does not purport to grant Sorotzkin or Brainbuilders legal or equitable title in the Members' claims — nor could it, without running afoul of the Plan's no-assignment provision — neither Sorotzkin nor Brainbuilders has standing to assert the Members' claims for the benefit of Brainbuilders. Accordingly, the fact that Plaintiffs commenced this lawsuit "for the benefit of Brainbuilders" would seem to counsel in favor of dismissing all of Plaintiffs' claims against the GHI Defendants. However, the Court need not make that determination, because even interpreting this lawsuit as validly commenced on behalf of and for the sole benefit of the Members, the Court must dismiss the Members' claims against the GHI Defendants for the reasons that follow.

### 2. Plaintiffs' Contract and Quasi-Contract Claims Against the GHI Defendants Fail to State a Claim

Plaintiffs allege claims against the GHI Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. The Court considers each claim in turn.

16

*First*, the Court addresses Plaintiffs' breach of contract claim. "To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards* v. *Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted).[6] A plaintiff must also identify the provisions of the contract that were breached. *LMEG Wireless, LLC* v. *Farro*, 140 N.Y.S.3d 593, 596 (2d Dep't 2021).

According to Plaintiffs, "Defendants[,] by only covering a small fraction of the costs of D's treatments[,] have breached their respective agreements." (SAC ¶ 34). Per the Plan documents, the amounts that GHI reimburses for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York." (*Id.* at ¶ 23). By implication, according to Plaintiffs, the GHI Defendants' failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and the City Defendants to shortchange Plaintiffs. (*Id.*). As a result, Plaintiffs allege that GHI is in breach of its agreement with H. (*Id.*).

---

[6]     The Plan contains a choice-of-law clause that states: "This Contract is in all respects governed by the laws of New York State." (Campos Decl., Ex. B at 36). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Backus* v. *U3 Advisors, Inc.*, No. 16 Civ. 8990 (GHW), 2017 WL 3600430, at *6 (S.D.N.Y. Aug. 18, 2017) (quoting *Hartford Fire Ins. Co.* v. *Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (internal quotation marks omitted)). Here, all Defendants either are New York corporations or are headquartered in New York, "H" and "D" are Members of the Plan, and "H" is a New York City employee. What is more, both parties have cited to New York law in their briefing. *See Krumme* v. *Westpoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2020) (explaining that the parties' "implied consent … is sufficient to establish choice of law"). Accordingly, the Court applies New York law.

17

Plaintiffs' allegations in the SAC, however, are inadequate to state a claim for breach of contract. Plaintiffs do not allege that any specific contractual provision was purportedly breached, let alone how or why it was breached. As the GHI Defendants observe, the SAC "can be searched in vain for any allegation that a particular provision in the [Plan] has been breached, including why the amounts paid by the GHI Defendants breached the [Plan's] terms." (GHI Br. 11). Accordingly, Plaintiffs' breach of contract claim must be dismissed for failure to state a claim. *See Gianelli* v. *RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273, 274 (2d Dep't 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached.").

*Second*, as to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, it is true that New York recognizes a covenant of good faith and fair dealing that inheres in all contracts. *Phoenix Cos., Inc.* v. *Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 587 (S.D.N.Y. 2021) (citing *511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)). "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (citing *511 W. 232nd Owners Corp.*, 98 N.Y.2d at 153 (internal citations omitted)). To state a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must establish that (i) Defendants owed Plaintiffs a duty to act in good faith and conduct fair dealing; (ii) Defendants breached that duty; and (iii) the breach of duty

18

proximately caused Plaintiffs' damages. *Id.* (citing *Washington* v. *Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)).

Critically, "[a] party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Phoenix Cos., Inc.*, 554 F. Supp. 3d at 587 (citing *Deutsche Bank Sec., Inc.* v. *Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)). Here, Plaintiffs' claim for breach of the implied covenant is, word for word, identical to Plaintiffs' breach of contract claim. It reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein. Defendants by only covering a small fraction of the costs of D's treatments have breached the covenant of good faith and fair dealing implied by their respective agreements." (SAC ¶¶ 38-39).[7] Plaintiffs' breach of contract and breach of implied covenant claims are predicated on the same allegations that Defendants covered only a small fraction of the cost of D's treatments. Accordingly, the Court dismisses the implied covenant claim as duplicative of Plaintiffs' breach of contract claim.

*Third*, the Court addresses Plaintiffs' promissory estoppel claim. "[T]o state a claim for promissory estoppel under New York law, Plaintiff must allege: '[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the

---

[7]     There is another flaw in the numbering of paragraphs in the SAC. On page 7, paragraph 34 is followed by paragraphs 38 and 39. Paragraphs 38 and 39 then repeat, and the numbering continues from there until the flaw on page 8 of the SAC, as discussed in note 2. This citation refers to the first set of paragraphs numbered 38 and 39 on page 7 of the SAC.

19

promise; and [iii] injury caused by the reliance[.]'" *Barker* v. *Bancorp, Inc.*, No. 21 Civ. 869 (KPF), 2022 WL 595954, at *14 (S.D.N.Y. Feb. 25, 2022); *accord Castellotti* v. *Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016). "Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Bader* v. *Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011). "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous." *Barker*, 2022 WL 595954, at *14 (internal citations omitted).

Promissory estoppel is a quasi-contract claim, and the law is clear that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Barker*, 2022 WL 595954, at *11 (quoting *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (internal citations omitted)). "A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Id.* (quoting *Beth Israel Med. Ctr.*, 448 F.3d at 587). "Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Id.* (quoting *Beth Israel Med. Ctr.*, 448 F.3d at 587). Only where "a bona fide dispute exists as to the existence of the contract,

20

the plaintiff may proceed on both breach of contract and quasi-contract theories." *Beth Israel Med. Ctr.*, 448 F.3d at 587 (citing *Nakamura* v. *Fujii*, 677 N.Y.S.2d 113, 116 (1st Dep't 1998)).

Plaintiffs allege that (i) Defendants, through their respective agreements, promised to cover the costs of services covered by the Plan; (ii) Plaintiffs relied on Defendants' promises and did not seek alternative employment or insurance coverage; and (iii) Defendants did not honor their promises to cover the costs of D's treatments in a meaningful way. (SAC ¶¶ 39-41).[8] The Court observes first that Plaintiffs' promissory estoppel claim is precluded by the existence of the Plan, an enforceable contract between the Members and the GHI Defendants that governs the subject matter of Plaintiffs' claim — a fact Plaintiffs seem to acknowledge by referring to the Defendants' "respective agreements." Moreover, even if no written agreement existed between the GHI Defendants and the Members, Plaintiffs fail to allege that the GHI Defendants made *any* promise to them concerning the amounts the Plan would pay for services rendered by Brainbuilders, let alone a clear and unambiguous promise upon which Plaintiffs allegedly relied. Although Plaintiffs conclusorily allege that "Defendants, through their respective agreements, promised to cover the costs of the services covered by the Plan" (SAC ¶ 39),[9] Plaintiffs allege no facts concerning this promise, such as when it was allegedly made; to whom it was allegedly made; which provision in the Plan allegedly constituted a promise; or

---

[8]    This citation refers to the second paragraph 39 appearing on page 7 of the SAC.

[9]    This citation refers to the second paragraph 39 appearing on page 7 of the SAC.

21

the amount the GHI Defendants allegedly promised to pay. "A complaint does not suffice 'if it tenders "naked assertion[s]" devoid of "further factual enhancement."'" *Cambridge Cap. LLC* v. *Ruby Has LLC*, 565 F. Supp. 3d 420, 458 (S.D.N.Y. 2021) (dismissing promissory estoppel claim where the complaint alleged that the defendant promised it would act in good faith to consummate an investment transaction, but alleged no facts as to what the defendant promised about moving forward in good faith) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the Court dismisses Plaintiffs' promissory estoppel claim.

### 3. Plaintiffs' Tort Claims Against the GHI Defendants Fail to State a Claim

The Court next considers Plaintiffs' three tort claims against the GHI Defendants, for fraud, civil conspiracy, and civil aiding and abetting. (SAC 7-8). To state a claim for fraud under New York law, a plaintiff must allege (i) a misrepresentation or omission of material fact; (ii) which the defendant knew to be false; (iii) which the defendant made with the intention of inducing reliance; (iv) upon which the plaintiff reasonably relied; and (v) which caused injury to the plaintiff. *Cambridge Cap. LLC*, 565 F. Supp. 3d at 461. Claims for fraud must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with particularity." Fed. R. Civ. P. 9(b); *see also B & M Linen, Corp.* v. *Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010). Under Rule 9(b), a plaintiff alleging that a defendant made false statements must "[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made,

and [iv] explain why the statements were fraudulent." *Cambridge Cap. LLC*, 565 F. Supp. 3d at 461 (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal citation omitted)). Particularity "means the who, what, where, when and how: the first paragraph of any newspaper story." *Id.* (quoting *Antigenics Inc.* v. *U.S. Bancorp Piper Jaffray, Inc.*, No. 03 Civ. 0971 (RCC), 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (internal citation omitted)). Rule 9(b) also requires that "the pleading 'explain why the statements were fraudulent.'" *Id.* at 463 (quoting *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (internal citation omitted)). "[P]laintiffs must do more than say that the statements ... were false and misleading; they must demonstrate with specificity why and how that is so." *Id.* (quoting *Rombach*, 355 F.3d at 174); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").

Plaintiffs' fraud claim reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein. Defendants, through their respective agreements, misrepresented that they will cover and protect against the costs of healthcare. Defendants, contrary to their representations, did not intend to truly cover the costs of D's treatments." (SAC ¶¶ 42-44). These bare allegations plainly do not meet the pleading requirements of Rule 9(b).

23

Further, Plaintiffs' fraud claim is duplicative of its breach of contract claim. "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Sussman Sales Co., Inc.* v. *VWR Int'l, LLC*, No. 20 Civ. 2869 (KPF), 2021 WL 1165077, at *11 (S.D.N.Y. Mar. 26, 2021) (quoting *EQT Infrastructure Ltd.* v. *Smith*, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) (citation omitted)), *on reconsideration in part*, No. 20 Civ. 2869 (KPF), 2021 WL 6065760 (S.D.N.Y. Dec. 21, 2021). To maintain a separate claim for fraud, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) point to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (iii) seek special damages that are unrecoverable as contract damages. *Id.* (citing *Merrill Lynch & Co.* v. *Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007)). In determining whether a fraud claim is duplicative of a contract claim, New York courts distinguish between "a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Id.* (quoting *Allegheny Energy, Inc.*, 500 F.3d at 184). Given Plaintiffs' failure to identify either a specific contractual provision that was breached or a specific misrepresentation giving rise to fraud, the Court can discern no daylight between Plaintiffs' breach of contract and fraud claims. For this reason, and for Plaintiffs' aforementioned failure to meet the heightened pleading

requirements of Rule 9(b), their fraud claim against the GHI Defendants must be dismissed.

The Court next addresses Plaintiffs' claims for civil conspiracy and civil aiding and abetting. Plaintiffs' civil conspiracy claim reads, in its entirety, "The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein. Defendants have conspired and agreed between themselves to deny substantial coverage for D's treatments, which Plaintiffs were entitled to, and together committed the actions alleged herein." (SAC ¶¶ 45-46). Plaintiffs' civil aiding and abetting claim adds, "Each Defendant aided the other Defendants in the breach of their duties." (*Id.* at 8, ¶ 39).

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action, and a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort." *ExpertConnect, L.L.C.* v. *Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *8 (S.D.N.Y. July 10, 2019) (quoting *Williams* v. *Williams*, 53 N.Y.S.3d 152, 153 (2d Dep't 2017), *leave to appeal denied*, 30 N.Y.3d 913 (2018)). "To state a claim for civil conspiracy, 'the plaintiff must allege a [i] cognizable tort, coupled with [ii] an agreement between the conspirators regarding the tort, and [iii] an overt action in furtherance of the agreement.'" *Id.* (quoting *Faulkner* v. *Yonkers*, 963 N.Y.S.2d 340, 341 (2d Dep't 2013) (internal citation omitted)). Further, to state a claim for aiding and abetting fraud under New York law, "plaintiffs must adequately allege: [i] the existence of a fraudulent scheme; [ii] that the defendant had actual knowledge of the fraud; and [iii] that the defendant

25

provided substantial assistance to advance the fraudulent scheme." *Heinert* v. *Bank of Am. N.A.*, 835 F. App'x 627, 630 (2d Cir. 2020) (summary order) (internal citation omitted). Accordingly, Plaintiffs' civil conspiracy and aiding and abetting claims both depend on the survival of the SAC's fraud claim. As that claim fails, so too do Plaintiffs' claims for civil conspiracy and civil aiding and abetting.

### 4. Plaintiffs' Statutory Claims Against the GHI Defendants Fail to State a Claim

In addition to the above-described contract and tort claims, H and D raise a series of New York state law claims against the GHI Defendants, namely for violations of (i) New York's Prompt Pay Law, N.Y. Ins. Law § 3224-a(a); (ii) New York's Consumer Protection Law, N.Y. Gen. Bus. Law § 349(a); and (iii) New York Insurance Law § 3221(l)(17)(A), which Plaintiffs refer to as the "New York Autism Mandate" (the "Autism Mandate"). (SAC 8-9, ¶¶ 40-48). Finally, Plaintiffs allege violations of the federal Mental Health Parity and Addiction Equity Act (the "MHPAEA"). (SAC ¶¶ 49-51). For the reasons stated below, the Court dismisses each of these claims for failure to state a claim.

*First*, Plaintiffs allege that GHI failed to comply with New York's Prompt Pay Law. (SAC 9, ¶ 42). That statute requires insurers to pay claims to policyholders or health care providers "within thirty days of receipt of a claim or bill for services rendered that is transmitted via the internet or electronic mail, or forty-five days of receipt of a claim or bill for services rendered that is submitted by other means, such as paper or facsimile." N.Y. Ins. Law § 3224-

26

a(a).  Where the insurer's obligation to pay the claim is "not reasonably clear due to a good faith dispute regarding … the benefits covered under a contract or agreement," the insurer must pay the undisputed portion of the claim in accordance with subsection (a), and must also notify the policyholder or health care provider, in writing, (i) whether the claim has been denied or partially approved; (ii) which claim it is not obligated to pay, stating the specific reasons why it is not liable; (iii) all additional information needed to determine liability; and (iv) the specific type of plan or product in which the policyholder is enrolled.  *Id.* § 3224-a(b).  While Plaintiffs allege that GHI has "ignor[ed]" many of Plaintiffs' appeals (SAC ¶ 29), the SAC does not allege that the GHI Defendants failed to respond to a single identifiable claim within the prescribed time period or that they failed to provide timely written notice of their adjudication of any such claim.  (*See* GHI Br. 19).  Accordingly, this claim must be dismissed for failure to state a claim.

*Second*, Plaintiffs allege that the GHI Defendants engaged in actions violating New York's Consumer Protection Law, which protects consumers against "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  (SAC 9, ¶¶ 44-45).  N.Y. Gen. Bus. Law § 349(a).  Plaintiffs' claim reads, in its entirety, "Defendants have engaged in actions that violated the foregoing provision."  (SAC ¶ 45).  Plaintiffs do not allege with specificity a single action taken by Defendants that constitutes a violation of New York's Consumer Protection Law, nor do they

explain why any of Defendants' conduct is violative of that provision.

Accordingly, the Court dismisses Plaintiffs claim for failure to state a claim.

*Third*, Plaintiffs allege that the GHI Defendants have violated the Autism Mandate. (SAC 9, ¶¶ 46-48). New York Insurance Law § 3221 provides:

> Every group or blanket accident and health insurance policy delivered or issued for delivery in this state which provides coverage for hospital or surgical care coverage shall not exclude coverage for screening, diagnosis and treatment of medical conditions otherwise covered by the policy because the treatment is provided to diagnose or treat autism spectrum disorder.

N.Y. Ins. Law § 3221(l)(17)(A). The GHI Defendants argue in the first instance that the Autism Mandate does not provide a private right of action. (GHI Br. 22-23), and so the Court begins with that analysis.

"In New York, the essential factors governing whether an implied private right of action exists are: '[i] whether the plaintiff is one of the class for whose particular benefit the statute was enacted; [ii] whether recognition of a private right of action would promote the legislative purpose; and [iii] whether creation of such a right would be consistent with the legislative scheme.'" *Bushell* v. *UnitedHealth Grp. Inc.*, No. 17 Civ. 2021 (JPO), 2018 WL 1578167, at *2 (S.D.N.Y. Mar. 27, 2018) (quoting *Sheehy* v. *Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (1989)). "The third factor is the most critical." *Id.* (citing *Carrier* v. *Salvation Army*, 88 N.Y.2d 298, 302 (1996)). Since the New York Insurance Law gives the New York Superintendent of Insurance "broad regulatory powers over the health plans at issue," courts have consistently concluded that "[the] recognition of a private right of action in favor of the

28

patients would not advance the legislative purpose and would be inconsistent with the legislative scheme." *Hudes* v. *Vytra Health Plans Long Island Inc.*, 744 N.Y.S.2d 80, 82 (3d Dep't 2002). More specifically, courts have repeatedly found that Section 3221 does not imply a private right of action. *See, e.g., Doe* v. *United Health Grp. Inc.*, No. 17 Civ. 4160 (AMD) (RL), 2018 WL 3998022, at *6-7 (E.D.N.Y. Aug. 20, 2018) (finding no implied private right of action under Section 3221(1)(5)(A)); *Bushell*, 2018 WL 1578167, at *3 (same); *Hudes*, 744 N.Y.S.2d at 82 (finding no implied private right of action for chiropractors and patients under Section 3221(k)(11)).

Plaintiffs respond that whether or not the law provides a private right of action, the Plan's claim that it is in compliance with the New York Insurance Law effectively incorporates the Autism Mandate into the Plan. (Pl. Opp. 24). In support, Plaintiffs point to the provision in the Plan's Certificate of Coverage that reads, "The insurance evidenced by this Certificate meets the minimum standards for basic medical insurance as defined by the New York State Insurance Department." (Pollak Decl., Ex. A at 2). The GHI Defendants reply that even if it is true that the Plan incorporates the Autism Mandate, Plaintiffs have nonetheless failed to allege that the GHI Defendants have "exclude[d] coverage" as required to plead a violation of New York Insurance Law § 3221(l)(17)(A). (GHI Reply 10). Instead, the SAC merely alleges that "[t]he State of New York mandates that all health insurance policies cover autism services, including ABA[.] The Plan claims to comply with the Mandate, but its actual reimbursements belie such claim." (SAC ¶¶ 47-48). Notably, Plaintiffs

29

do not allege that the GHI Defendants have "exclude[d] coverage ... because the treatment is provided to diagnose or treat autism spectrum disorder." *See* N.Y. Ins. Law § 3221(l)(17)(A). Instead, Plaintiffs merely argue that, in their opinion, the reimbursement rate for autism treatment is too low. These musings, however, fail to state a claim.

*Fourth*, Plaintiffs allege that the GHI Defendants have violated the federal MHPAEA, which requires group health plans and health insurance issuers to ensure that the financial requirements (deductibles, copays, etc.) and treatment limitations applied to mental health benefits be no more restrictive than the predominant financial requirements and treatment limitations applied to substantially all medical and surgical benefits covered by the plan or insurance. (SAC ¶¶ 49-51). *See N.Y.S. Psychiatric Ass'n, Inc.* v. *UnitedHealth Grp.*, 798 F.3d 125, 128 (2d Cir. 2015) (describing the requirements of the MHPAEA). Plaintiffs allege that the GHI Defendants have violated the MHPAEA by failing to make available the reasons for their reimbursement determinations (*id.* at ¶ 27 (citing 29 C.F.R. § 2590.712(d))), and by "not covering autism services, a mental health condition, on par with medical and surgical services" (*id.* at ¶ 51 (citing 29 U.S.C. § 1185a)).

As the GHI Defendants point out in their brief (GHI Br. 23), there is no private right of action under the MHPAEA, although portions of it are incorporated into ERISA and may be enforced using the civil enforcement provisions of ERISA contained at 29 U.S.C. § 1132. *See generally Gallagher* v. *Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y.

2018); *Munnelly* v. *Fordham Univ. Fac.*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018). Indeed, both of the provisions Plaintiffs cite in support of these allegations — 29 C.F.R. § 2590.712(d) and 29 U.S.C. § 1185a — are ERISA regulations. Significantly, as Plaintiffs concede, the Plan is not an ERISA plan. (SAC ¶ 27 (describing the Plan as a "grandfathered non-ERISA healthcare plan")). As a governmental plan, the Plan is exempt from ERISA's regulatory reach. *See* 29 U.S.C. § 1002(32) (defining "governmental plan" to include "a plan established or maintained for its employees by ... the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"); *id.* § 1003(b)(1) (exempting governmental plans from ERISA).

Similar to their Autism Mandate arguments, Plaintiffs respond that regardless of whether the MHPAEA provides a private right of action, the GHI Defendants are still contractually obligated to fulfill the MHPAEA's provisions. (Pl. Opp. 25). Just as before, however, Plaintiffs have failed to identify a single provision of the Plan demonstrating that its financial requirements or treatment limitations are any more restrictive for mental health conditions than they are for any other health condition. Accordingly, this claim, too, must be dismissed for failure to state a claim.

## C. The Court Dismisses Plaintiffs' Claims Against the City Defendants

### 1. OLR Is Not a Suable Entity

Turning now to the City Defendants' motion, the Court begins with their argument that Plaintiffs' claims against OLR must be dismissed because a City

agency is not an entity that can be sued. (City Br. 4). Plaintiffs retort that the City Charter only exempts OLR from penalties sounding in tort, not contract, and that the City Charter "acknowledges the fundamental suability of OLR." (Pl. Opp. 26-27). The Court disagrees.

The Charter is clear that OLR is a non-suable entity. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Shapiro* v. *Adam*, No. 22 Civ. 2603 (KPF), 2022 WL 1063155, at *1 (S.D.N.Y. Apr. 5, 2022) (dismissing plaintiff's claims against City agencies, including OLR); *see also Emerson* v. *City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). Accordingly, Plaintiffs' claims against OLR are dismissed.

### 2. Plaintiffs' Claims Against DOE Are Procedurally Barred

In contrast to OLR, DOE is a suable entity because "the City of New York and the Department of Education are separate legal entities." *A.V. by H.V.* v. *N.Y.C. Dep't of Educ.*, 74 Misc. 3d 1220(A), 162 N.Y.S.3d 692 (N.Y. Sup. Ct. 2022) (citing N.Y. Educ. Law § 2551); *see also Tanaysha T.* v. *City of New York*, 12 N.Y.S.3d 908, 909 (2d Dep't 2015) (observing that the City was not a proper party to an action seeking damages for the alleged negligence of DOE, "an entity from which it is separate and distinct"); *Matson* v. *Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 78 n.8 (2d Cir. 2011) ("[I]ts name as the New York City Department of Education notwithstanding, the DOE does not appear

32

to be a city department within the contemplation of the City Charter.").  In 2002, the New York Education Law was amended to provide for greater mayoral control of education matters in New York City, and a concomitant limit on the power of the Board of Education ("BOE").  *See Perez ex rel. Torres* v. *City of New York*, 837 N.Y.S.2d 571, 572 (1st Dep't 2007), *leave to appeal denied*, 10 N.Y.3d 708 (2008).[10]  Even after that amendment, the City and the Board remain separate legal entities.  *Id.* (citing *Gonzalez* v. *Esparza*, No. 02 Civ. 4175 (SWK), 2003 WL 21834970, at *2 (S.D.N.Y. Aug. 6, 2003) ("[C]hanges in the statutory scheme regarding the interplay between the Board [of Education] and the City can be best described as 'political,' with the Board continuing to exist as a separate and distinct legal entity from the City.")).

Section 3813 of the New York Education Law requires the filing of a notice of claim prior to the commencement of an action against DOE or any of its officers.  *See* N.Y. Educ. Law § 3813(1).  Specifically, under New York law, a plaintiff must file a notice of claim within ninety days after the claim arises, plead that it has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and demonstrate that in that time, the defendant either neglected or refused to satisfy the claim.  *Smith* v. *N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (citing N.Y. Educ. Law § 3813(1); N.Y. Gen. Mun. Law § 50-e).  "[T]he filing of a notice of claim within three

---

[10]    While the Board of Education ("BOE"), an entity created by New York State law, and DOE, an entity created in 2002 by the BOE, are not synonymous, *see Matson* v. *Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 77 (2d Cir. 2011) (Straub, J., dissenting in part and concurring in part), the differences between them are not relevant here.

33

months after the accrual of a claim [is] an absolute condition precedent to the filing of a lawsuit." *Fierro* v. *City of New York*, No. 20 Civ. 9966 (GHW), 2022 WL 428264, at *11 (S.D.N.Y. Feb. 10, 2022) (citing *Santiago* v. *Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006)).

"[F]ailure to present a claim within the statutory time limitation or to notify the correct party is a fatal defect[.]" *Jovasevic* v. *Mount Vernon City Sch. Dist.*, 127 N.Y.S.3d 872, 873 (2d Dep't 2020) (citing *Parochial Bus Sys., Inc.* v. *Bd. of Educ. of City of N.Y.*, 60 N.Y.2d 539, 547 (1983)), *leave to appeal denied*, 36 N.Y.3d 906 (2021). Although the New York Court of Appeals "has held that, where the school district has been sufficiently informed of the claim, all that is required is substantial compliance with the statute regarding the degree of descriptive detail in a notice of claim," it has "nevertheless, always insisted that statutory requirements mandating notification to the proper public body or official must be fulfilled." *Id.* (citing *Parochial Bus Sys., Inc.*, 60 N.Y.2d at 547). Of note, "[t]he statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." *Id.* (citing *Parochial Bus Sys., Inc.*, 60 N.Y.2d at 548). Where a plaintiff fails to comply with Section 3813's notice of claim requirement, the plaintiff's claims must be dismissed. *See, e.g., Jovasevic*, 127 N.Y.S.3d at 873 (affirming dismissal for failure to comply with Section 3813's notice of claim requirement); *Capstone Enters. of Port Chester, Inc.* v. *Valhalla Union Free Sch. Dist.*, 809 N.Y.S.2d 917, 918 (2d Dep't 2006) (same); *see also*

34

*Hardy* v. *N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) ("Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.").

Plaintiff H's notice of claim was filed by counsel and presented to the New York City Comptroller on June 19, 2020. (*See* Bridge Decl., Ex. B). When asked, "What agency/employer are you making this claim against?," H responded, "OFFICE MUNICIPAL LABOR RELATIONS." (*Id.*). The City Defendants argue that this notice did not sufficiently inform DOE of Plaintiffs' claims, and that Plaintiffs' claims against DOE must therefore be dismissed. (City Br. 5). Plaintiffs respond that the 2002 amendments to the Education Law rendered DOE a subagency of the City, under the direct control of the Mayor. (Pl. Opp. 27-28). From this, Plaintiffs reason, the City is DOE's "governing body," and it is sufficient that they served notice on the City's Comptroller. (*Id.* at 27).

The Court disagrees with Plaintiffs' contention that providing notice to the City Comptroller effectively equates to providing notice to DOE. As stated above, despite amendments made to the Education Law in 2002, the City and DOE remain separate legal entities. *See Perez*, 837 N.Y.S.2d at 572.[11] Further, as stated above, Plaintiffs' failure to notify the correct party is "a fatal

---

[11] Indeed, if Plaintiffs were correct that the 2002 amendments to the Education Law transformed DOE into a subagency of the City, DOE would no longer be a suable entity. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").

35

defect." *Jovasevic*, 127 N.Y.S.3d at 873 (affirming denial of petition for reinstatement and back pay where petitioner presented his purported notice of claim to the School District's Superintendent rather than the BOE, even though the BOE ultimately obtained actual knowledge of the letter from the Superintendent's office). In light of the foregoing, Plaintiffs' claims against DOE must be dismissed.[12]

### 3. Plaintiffs' Tort Claims Against the City Are Procedurally Barred and Fail to State a Claim

Next, the City Defendants argue that Plaintiffs' tort claims against the City — for fraud, civil conspiracy, and aiding and abetting — are untimely under New York General Municipal Law § 50-e(1)(a). (City Br. 7). This section provides, in pertinent part, that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation … the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises[.]" N.Y. Gen. Bus. Law § 50-e(1)(a). While Plaintiffs did file a notice of claim with the City on June 19, 2020, the City Defendants argue that Plaintiffs' tort claims in fact accrued two years earlier, in May 2018, when (i) H allegedly relied on the City's purported misrepresentations that the Plan would sufficiently cover Brainbuilders's

---

[12] As Plaintiffs' claims against DOE are dismissed for failure to provide a notice of claim in accordance with New York Education Law § 3813, the Court need not consider whether these claims were also untimely under this same section, which requires a verified claim to be presented to the BOE within three months of the accrual of any such claim. (*See* City Br. 8).

services and (ii) GHI denied H's payment appeal. (City Br. 7-8 (citing Bridge Decl., Ex. C)). Plaintiffs counter that the alleged tortious conduct was "continuing and ongoing," and thus fell within the statute of limitations. (Pl. Opp. 28-29). Alternatively, the City Defendants argue that Plaintiffs' claims for fraud, civil conspiracy, and civil aiding and abetting fail to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) discussed earlier. (City Br. 13). Unsurprisingly, Plaintiffs disagree. (Pl. Opp. 19-20, 33).

A claim for fraud accrues when "the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Meimaris* v. *Royce*, No. 19-3339-cv, 2021 WL 5170725, at *3 (2d Cir. Nov. 8, 2021). Stated differently, a fraud claim accrues "when a plaintiff takes detrimental action in reliance on a fraudulent statement, and not at the time the statement is made[.]" *Ramiro Aviles* v. *S & P Glob., Inc.*, 380 F. Supp. 3d 221, 275 (S.D.N.Y. 2019). However, "New York's continuing tort doctrine tolls the statute of limitations based on 'wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit.'" *Abdulaziz* v. *McKinsey & Co., Inc.*, No. 21 Civ. 1219 (LGS), 2021 WL 4340405, at *3 (S.D.N.Y. Sept. 22, 2021) (quoting *Estreicher* v. *Oner*, 49 N.Y.S.3d 530, 532 (2d Dep't 2017) (internal citation omitted)), *aff'd*, No. 21-2921, 2022 WL 2444925 (2d Cir. July 5, 2022).

"The continuing tort doctrine applies only where the 'final actionable event' of the allegedly harmful course of conduct falls within the statute of limitations." *Abdulaziz*, 2021 WL 4340405, at *3 (quoting *Estreicher*, 49

37

N.Y.S.3d at 532). "New York courts treat the 'final actionable event' as the last tortious act by the tortfeasor, not the last injury sustained by the victim." *Id.* (citing *Mintz & Gold, LLP* v. *Zimmerman*, 898 N.Y.S.2d 116, 117 (1st Dep't 2010) (holding that the plaintiff's claim was timely under the continuing tort doctrine because the defendant acted within the limitations period); *Shannon* v. *MTA Metro-N. R.R.*, 704 N.Y.S.2d 208, 209 (1st Dep't 2000) (same)). "As a general matter, the continuing [tort] doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Kubicek* v. *Westchester Cnty.*, No. 08 Civ. 372 (KMK), 2009 WL 3720155, at *6 (S.D.N.Y. Oct. 8, 2009) (quoting *Trinidad* v. *N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); *see also Bernstein* v. *Mony Grp., Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing [tort] arguments with disfavor.").

The Court agrees with the City Defendants that Plaintiffs' tort claims are untimely. Plaintiffs allege that they took detrimental action in reliance on the City Defendants' allegedly fraudulent statements by not seeking alternative employment or additional insurance coverage, and that Plaintiffs' fraud claim accrued when H detrimentally relied on the City Defendants' purported misrepresentations that they would cover the cost of healthcare. (*See* SAC ¶¶ 40, 43). While Plaintiffs do not specify a date on which this detrimental reliance occurred, a generous interpretation of the allegations in the SAC indicates that this occurred in May 2018, when the GHI Defendants denied H's appeal. (*See* Dkt. #36-4). Accordingly, Plaintiffs needed to file their notice of

38

claim with the City by August 2018, approximately 22 months prior to the date Plaintiffs actually filed their notice of claim.

Moreover, even if Plaintiffs' tort claims against the City were timely, which they were not, they would be dismissed for failure to state a claim, for the same reasons the Court dismissed Plaintiffs' tort claims against the GHI Defendants. *First*, Plaintiffs' sparse and conclusory allegations of fraud plainly do not meet the pleading requirements of Rule 9(b). *Second*, Plaintiffs' civil conspiracy and aiding and abetting claims depend on the survival of the SAC's fraud claim. *See ExpertConnect, L.L.C.*, 2019 WL 3004161, at *8 ("[A] cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort."); *Heinert*, 835 F. App'x at 630 ("To state a claim for aiding and abetting fraud under New York law, plaintiffs must adequately allege … the existence of a fraudulent scheme[.]"). However, as that claim fails, so too do Plaintiffs' claims for civil conspiracy and civil aiding and abetting. Accordingly, all of Plaintiffs' tort claims against the City Defendants must be dismissed.

### 4. Plaintiffs' Contract Claims Against the City Fail to State a Claim

Plaintiffs allege claims against the City for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Here, as with the same claims against the GHI Defendants, each claim must be dismissed for failure to state a claim.

*First*, the Court dismisses Plaintiffs' claim against the City for breach of contract, for largely the same reasons it dismissed their analogous claim

against the GHI Defendants.  To review, Plaintiffs allege that, per the Plan documents, the amounts that GHI reimbursed for the Plan's covered services "are based upon data collected by GHI and agreed to by the City of New York." (SAC ¶ 23).  By implication, according to Plaintiffs, the GHI Defendants' failure to provide reasonable reimbursement was the result of a concerted effort on the part of GHI and the City Defendants to shortchange Plaintiffs.  (*Id.*).  As a result, Plaintiffs allege, the City Defendants are in breach of their commitment to their employee and are complicit in GHI's breach.  (*Id.*).  Here, as before, Plaintiffs' allegations are inadequate to state a claim for breach of contract. While Plaintiffs allege the existence of an employment contract between DOE and its employee, H, they can point to no agreement between themselves and the City.  The allegation that "Plan documents" state that reimbursement amounts "'are based upon data collected by GHI and agreed to by the City" (*id.*), does not constitute an agreement between Plaintiffs and the City. Plaintiffs, therefore, have failed to plead the first element of their breach of contract claim.

*Second*, Plaintiffs' claim against the City for breach of the implied covenant of good faith and fair dealing must also be dismissed.  As stated above, under New York law, a covenant of good faith and fair dealing inheres in all contracts.  *Phoenix Cos., Inc.*, 554 F. Supp. 3d at 587 (citing *511 W. 232nd Owners Corp.*, 98 N.Y.2d at 153).  "Where there is no agreement, however, there can be no implied duty to act."  *Bibicheff* v. *PayPal, Inc.*, No. 17 Civ. 4679 (DRH) (AYS), 2020 WL 2113373, at *5 (E.D.N.Y. May 4, 2020) (internal citations

40

omitted), *aff'd*, 844 F. App'x 394 (2d Cir. 2021) (summary order); *accord Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *5 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) (summary order).

*Third* and finally, the Court addresses Plaintiffs' promissory estoppel claim. As stated above, "to state a claim for promissory estoppel under New York law, Plaintiff must allege: '[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the promise; and [iii] injury caused by the reliance[.]'" *Barker*, 2022 WL 595954, at *14. "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous." *Id.*

Plaintiffs allege that (i) Defendants, through their respective agreements, promised to cover the costs of services covered by the Plan; (ii) Plaintiffs relied on Defendants' promises and did not seek alternative employment or insurance coverage; and (iii) Defendants did not honor their promises to cover the costs of D's treatments in a meaningful way. (SAC ¶¶ 39-41). As with their promissory estoppel claim against the GHI Defendants, Plaintiffs fail to allege that the City Defendants made any promise to them concerning the amounts the Plan would pay for services rendered by Brainbuilders, let alone a clear and unambiguous promise upon which Plaintiffs allegedly relied. As before, "[a] complaint does not suffice 'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Cambridge Cap. LLC*, 565 F. Supp. 3d at 458 (quoting *Iqbal*,

41

556 U.S. at 678). Accordingly, the Court dismisses Plaintiffs' promissory estoppel claim as to the City Defendants.

## D. The Court Dismisses Plaintiffs' Claim for Declaratory Relief

Lastly, Plaintiffs seek a declaratory judgment, presumably under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Plaintiffs are entitled to full reimbursement from Defendants for D's ABA treatment going forward. (SAC ¶ 53). The Declaratory Judgment Act provides the procedural mechanism for granting declaratory relief in federal diversity cases. *Obra Pia Ltd.* v. *Seagrape Invs. LLC*, No. 19 Civ 7840 (RA), 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020) (citing *Am. Standard, Inc.* v. *Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007)), *appeal dismissed* (June 17, 2021), *motion for relief from judgment denied*, No. 19 Civ. 7840 (RA), 2021 WL 1978545 (S.D.N.Y. May 18, 2021). "It does not, however, provide an independent cause of action." *Id.* (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)) (internal quotation marks omitted). Rather, the Act provides "a form of relief previously unavailable," such that "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Id.* (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731); *see also Trodale Holdings LLC* v. *Bristol Healthcare Invs., L.P.*, No. 16 Civ. 4254 (KPF), 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) ("Plaintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action."). Where, as here, a plaintiff's substantive claims are dismissed, a standalone claim for a

declaratory judgment is properly dismissed as well. *See, e.g., Obra Pia Ltd.*,
2020 WL 5751195, at *17 (dismissing cause of action for declaratory judgment
because plaintiffs' substantive claims had been dismissed); *Xiaolu Peter Yu* v.
*Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015) ("Given that Yu has
failed to establish his other claims, and the declaratory relief sought rests on
those claims, his claim for declaratory judgment also fails."); *KM Enters., Inc.* v.
*McDonald*, No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y.
Sept. 25, 2012) ("As to the only remaining causes of action in the Amended
Complaint — namely, the counts for a 'declaratory judgment' and an
'injunction' — the Plaintiff cannot survive a motion to dismiss by relying on
these claims as independent causes of action."), *aff'd*, 518 F. App'x 12 (2d Cir.
2013) (summary order).

**E.    The Court Denies Leave to Amend**

Lastly, the Court considers whether to grant Plaintiffs leave to file an
amended complaint. Federal Rule of Civil Procedure 15(a)(2) provides that a
court should freely give leave to amend "when justice so requires." Fed. R. Civ.
P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d
Cir. 2007).

While leave to amend is freely granted under Rule 15, it is "within the
sound discretion of the district court to grant or deny leave to amend." *Broidy
Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Leave may be
denied where the proposed amendment would be futile. *See Olson* v. *Major
League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Amendment is

43

futile if the "amended portion of the complaint would fail to state a cause of action." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss"); *Pompey-Primus* v. *Success Acad. Charter Sch., Inc.*, No. 21 Civ. 3981 (KPF), 2022 WL 504541, at *10 (S.D.N.Y. Feb. 17, 2022) (denying leave to amend where plaintiff did not amend her pleading or request leave to do so, and amendment would have been futile). Here, Plaintiffs have already taken advantage of two opportunities to amend their complaint, including after Defendants filed motions to dismiss in the District of New Jersey, raising the very arguments that the Court has found to be dispositive here. (Dkt. #11, Ex. 5; Dkt. #13, Ex. 5). Relatedly, Plaintiffs have not identified any amendments that would alter the Court's analysis, and their prior failures to correct the deficiencies in the pleadings suggest that they are unlikely to be able to do so. Accordingly, the Court finds that amendment would be futile and denies Plaintiffs leave to amend.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiffs' claims are dismissed.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      August 8, 2022
           New York, New York

                                        KATHERINE POLK FAILLA
                                 United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRAINBUILDERS LLC and H and D, by
their Attorney-in-Fact, Rochel Sorotzkin,

                          Plaintiffs,

                    -v.-

EMBLEMHEALTH, INC., GROUP HEALTH
INCORPORATED, THE CITY OF NEW
YORK, NEW YORK CITY OFFICE OF
LABOR RELATIONS, and NEW YORK CITY
DEPARTMENT OF EDUCATION,

                          Defendants.

---

21 Civ. 4627 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Before the Court is Plaintiffs' motion for reconsideration and/or leave to

amend dated August 22, 2022.  (*See* Dkt. #58).[1]  By way of background, in an

Opinion and Order dated August 8, 2022, the Court granted two motions to

dismiss Plaintiffs' Second Amended Complaint — one filed by defendants

EmblemHealth, Inc. ("Emblem") and Group Health Incorporated ("GHI," and

together with Emblem, the "GHI Defendants"), and another filed by defendants

City of New York, New York City Office of Labor Relations, and New York City

Department of Education (together, the "City Defendants" and, together with

---

[1]     The Court continues to use the naming conventions defined in its Opinion and Order of
August 8, 2022.  The Court refers to that Opinion and Order as the "August 8, 2022
Opinion" or "Op." (Dkt. #56); to Plaintiffs' omnibus opposition to Defendants' motions to
dismiss as "Pl. Opp." (Dkt. #51); to Plaintiffs' memorandum of law in support of their
motion for reconsideration and/or leave to amend as "Pl. Recon. Br." (Dkt. #58); to
Defendants' memorandum in opposition as "Def. Recon. Opp." (Dkt. #59); and to
Plaintiffs' reply memorandum in further support of reconsideration and/or leave to
amend as "Pl. Recon. Reply" (Dkt. #62).  Additionally, in the absence of page numbers
in Plaintiffs' papers, the Court has cited to what it understands to be the proper page
numbers based on Plaintiffs' tables of contents.

the GHI Defendants, "Defendants"). *See Brainbuilders LLC* v. *EmblemHealth, Inc.*, No. 21 Civ. 4627 (KPF), 2022 WL 3156179, at *1 (S.D.N.Y. Aug. 8, 2022). The Clerk of Court entered judgment for Defendants on August 10, 2022. (Dkt. #57). Twelve days later, Plaintiffs filed the instant motion for reconsideration. (Dkt. #58). The GHI Defendants filed a brief in opposition to that motion on September 6, 2022. (Dkt. #59). Subsequently, the Court granted Plaintiffs' request for leave to file a reply brief (Dkt. #60-61), and Plaintiffs filed that reply on September 14, 2022 (Dkt. #62).

Plaintiffs ask the Court to reconsider only a portion of the August 8, 2022 Opinion — namely, the Court's dismissal of Plaintiffs' claim against the GHI Defendants for breach of the implied covenant of good faith and fair dealing (the "Good Faith Claim"). (Pl. Recon. Br. 3-5). Plaintiffs further request that the Court definitively rule that the suit was properly commenced as to the GHI Defendants by Rochel Sorotzkin on behalf of H and D, and not on behalf of Brainbuilders. (*Id.* at 5-6). Finally, Plaintiffs seek leave to amend their complaint for a third time to replead the Good Faith Claim and clarify the individuals for whose benefit the suit was commenced. (*Id.* at 6; Pl. Recon. Reply 2, 6). The Court has considered the motion pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the relevant caselaw. For the reasons set forth in the remainder of this Opinion, the motion is denied.

2

**DISCUSSION**

**A.    The Court Denies Plaintiffs' Motion for Reconsideration of the Good Faith Claim**

**1.    Applicable Law**

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). "A movant may not rely upon facts, issues, or arguments that were previously available but not presented to the court." *Franza* v. *Stanford*, No. 16 Civ. 7635 (KMK), 2021 WL 2650512, at *1 (S.D.N.Y. June 28, 2021) (internal quotation marks and citations omitted); *see also Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (noting that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks and citations omitted)). Nor is a motion for reconsideration "the proper avenue for the submission of new material." *Sys. Mgmt. Arts Inc.* v. *Avesta Tech., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000). Rather, under Local Rule 6.3, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (noting that the standard for granting motions for reconsideration is "strict"); *accord Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

3

Compelling reasons for granting a motion for reconsideration are limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013). Indeed, because Rule 6.3 is intended to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters,'" *S.E.C.* v. *Ashbury Cap. Partners, L.P.,* No. 00 Civ. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting *Carolco Pictures, Inc.* v. *Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988)), "[t]he manifest injustice standard is, by definition, deferential to district courts and provide[s] relief only in the proverbial rare case," *Corsair Special Situations Fund, L.P.* v. *Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (summary order) (quoting *United States* v. *Rigas*, 583 F.3d 108, 123 (2d Cir. 2009) (internal quotation marks omitted)).

### 2. Analysis

In opposing the motions to dismiss, Plaintiffs clarified that they were pleading alternative contractual and quasi-contractual legal theories with respect to the Plan:

> As stated previously, Plaintiffs believe that Emblem is in breach of an explicit contractual obligation. However, as with some of the other causes of action, Plaintiffs [plead] breach of the implied covenant of good faith and fair dealing in the alternative. In other words, even if Emblem was not under an explicit contractual

4

> obligation to perform as stated, not doing so was in
> breach its Good Faith obligations.

(Pl. Opp. 17; *see also id.* at 16-18). With particular respect to Plaintiffs' express

breach of contract claim, the Court found that "Plaintiffs d[id] not allege that

any specific contractual provision was purportedly breached, let alone how or

why it was breached." (Op. 18 (citing *Gianelli* v. *RE/MAX of New York, Inc.*, 41

N.Y.S.3d 273, 274 (2d Dep't 2016) ("A breach of contract cause of action fails

as a matter of law in the absence of any showing that a specific provision of the

contract was breached."))). Turning to Plaintiffs' alternative quasi-contractual

theory, the Court found that "Plaintiffs' breach of contract and breach of

implied covenant claims are predicated on the same allegations that

Defendants covered only a small fraction of the cost of D's treatments.

Accordingly, the Court dismisses the implied covenant claim as duplicative of

Plaintiffs' breach of contract claim." (*Id.* at 19).

Plaintiffs now claim that the Court clearly erred in dismissing the Good

Faith Claim as duplicative of Plaintiffs' breach of contract claim. As support,

Plaintiffs present for the first time a series of cases suggesting that a plaintiff

may plead a good faith and fair dealing claim as an alternative to a breach of

contract claim — even when predicated on identical facts — "where there is a

*bona fide* dispute concerning [the] existence of a contract or whether the

contract covers the dispute in issue." (*See* Pl. Recon. Br. 3-4 (quoting *Courtien

Commc'ns, Ltd.* v. *Aetna Life Ins.*, 193 F. Supp. 2d 563, 571 (E.D.N.Y. 2002)

(internal quotation marks and citations omitted)); *see also* Pl. Recon. Reply 2

(citing *LCM XXII Ltd.* v. *Serta Simmons Bedding, LLC*, No. 21 Civ. 3987 (KPF),

5

2022 WL 953109 (S.D.N.Y. Mar. 29, 2022))). As is clear from the summary above — and as acknowledged by Plaintiffs (*see* Pl. Recon. Br. 2 (conceding that Plaintiffs "did not previously cite to any authority" supporting this proposition)) — this argument was not raised by Plaintiffs originally, and their motion for reconsideration can be denied on this basis alone. *Gun Hill Rd. Serv. Station, Inc.* v. *ExxonMobil Oil Corp.*, No. 08 Civ. 7956 (PKC), 2013 WL 1804493, at *1 (S.D.N.Y. Apr. 18, 2013) (noting that "arguments raised for the first time on a motion for reconsideration … are generally considered waived" (citing *Official Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003))).[2]

However, even if this argument had been properly raised, it would not require a contrary result because there exists no *bona fide* dispute as to either the existence or applicability of a contract to the claims at issue. In the only paragraph in which Plaintiffs expand on this alleged dispute, they claim that

> Defendants argued — and the Court accepted — that the insurance policy in question does not explicitly commit to a specific level of coverage. In other words, the Court ruled that the contract does not cover the contested issue and that the matter is outside the scope or enforceability of the putative contract.

---

[2]    Indeed, "[t]he reason for the rule confining reconsideration to matters that were overlooked is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Sikhs for Just.* v. *Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Were it otherwise, "disappointed litigants would be forever raising new arguments and there would be no end to litigation." *Assoc. Press* v. *U.S. Dep't of Def.*, 410 F. Supp. 2d 147, 152 (S.D.N.Y. 2006); *see also Anwar* v. *Fairfield Greenwich Ltd.*, 164 F. Supp. 3d 558, 561 (S.D.N.Y. 2016) ("A court must narrowly construe and strictly apply Rule 6.3 so as to … prevent [the Rule] from being used to advance different theories not previously argued or as a substitute for appealing a final judgment.").

6

(Pl. Recon. Reply 3 (citing *LCM XXII Ltd.*, 2022 WL 953109, at *15) (internal quotation marks omitted)).  Plaintiffs' claim is a rhetorical sleight of hand: whether a contract "cover[s]" the contested issue in a litigation is distinct from the degree to which Plaintiffs' insurance claim is *covered* by the insurer.  Here, it is uncontested that (i) the Plan "includes coverage for [applied behavioral analysis]" (SAC ¶19); (ii) "the amounts that GHI will reimburse for the Plan's covered services 'are based upon data collected by GHI and agreed to by the City of New York'" (SAC ¶ 23); and (iii) the contract makes no assurances as to a sum certain that will be paid by GHI (*see* SAC ¶¶ 15-23).  As such, Plaintiffs' claim could fall within the scope of the Plan, but the Plan may only require reimbursement of a small percentage of that claim.

Accordingly, unlike the cases on which Plaintiffs "primarily" rely (Pl. Recon. Reply 4), there is no *bona fide* "dispute concerning [the] existence of a contract or whether the contract covers the dispute in issue." *Fantozzi* v. *Axsys Techs., Inc.*, No. 07 Civ. 2667 (LMM), 2008 WL 4866054, at *1-3, 7 (S.D.N.Y. Nov. 6, 2008) (determining that dispute existed as to which parties were entitled to funds under the express terms of an agreement); *see also LCM XXII Ltd.*, 2022 WL 953109, at *2-4, 15 (determining that dispute existed as to whether a defendant's actions in amending the definition of certain terms under an agreement without the plaintiffs' consent violated the express terms of the agreement); *Hard Rock Cafe Int'l* v. *Hard Rock Hotel Holdings*, 808 F. Supp. 2d 552, 567-68 (S.D.N.Y. 2011) (determining that disputes existed as to (i) whether certain parties had authority to sub-license trademarks under the

7

terms of a trademark agreement and (ii) whether one party lied to its business partners in attempting to stop the other party from proceeding under the terms of the contract).

For the foregoing reasons, and because there was neither clear error nor manifest injustice stemming from the Court's Opinion, the Court will not alter its Opinion on this ground.

## B. The Court Denies Plaintiffs' Request to Confirm Sorotzkin's Power of Attorney to Sue on Behalf of H and D

As to the power-of-attorney issue, Plaintiffs request that the Court rule definitively that the suit was properly commenced for the benefit of H and D — that is, that Rochel Sorotzkin had a valid power of attorney to bring claims on behalf of H and D and brought claims on their behalf. The August 8, 2022 Opinion made clear that H and D had standing to sue the GHI Defendants for their own benefit, and that Rochel Sorotzkin, as holder of H and D's power of attorney under New Jersey law, could similarly sue the GHI Defendants on their behalf. (*See* Op. 12-13). It also explained that, in light of the no-assignment provision of the Plan, Sorotzkin could not sue on her own behalf, nor on behalf of Brainbuilders. (*Id.* at 16). Further, the Court found that the power of attorney did not grant Sorotzkin or Brainbuilders legal or equitable title in the Members' claims. (*Id.*). Plaintiffs' motion does not give the Court any reason to reconsider or supplement these holdings.

The Court was, and remains to be, troubled by (i) the SAC's language indicating that "H, on behalf of herself and on behalf of … D … executed an assignment of benefits and an assignment of the right to pursue legal and

8

administrative remedies under their health insurance plan *for the benefit of Brainbuilders*, which assignment is valid *at least* as it pertains to NYC Defendants" (SAC ¶¶ 1-2 (emphases added)); and (ii) the SAC's failure to identify which Plaintiffs were entitled to reimbursement — H, D, Brainbuilders, or Sorotzkin (*see* SAC 10 (B)). However, these pleading deficiencies were in no way dispositive. In fact, while the Court noted its concern, it made clear that such information was immaterial to its ultimate decision "because *even interpreting this lawsuit as validly commenced on behalf of and for the sole benefit of the Members*, the Court must dismiss the Members' claims against the GHI Defendants" for the remaining reasons upon which it relied. (Op. 16 (emphasis added)). Indeed, had the Court thought these issues to be dispositive, it would have granted Plaintiffs leave to amend their Complaint to identify the beneficiary of the judgment, and to clarify that the claims against GHI Defendants were not made for the benefit of Brainbuilders. Instead, the Court (as it does again below), found that future amendments would be futile, and that Plaintiffs' prior failures to correct the deficiencies in the pleadings only confirmed that fact. (*See* Op. 43-44). Put simply, the Court will not now resolve in the context of a motion for reconsideration a fact that was not dispositive of any issue in the underlying motion. *See Friends of Gateway* v. *Slater*, 257 F.3d 74, 83 (2d Cir. 2001) (denying motion for reconsideration requesting that the court take judicial notice of an issue that was "irrelevant to [its] determination").

**C.  The Court Denies Plaintiffs' Request for Leave to File a Third Amended Complaint**

While acknowledging that they "did not previously find it necessary" to amend their complaint to clarify the nature of their claims, Plaintiffs now request leave to amend their Complaint for a third time to "elucidate the difference between the ordinary breach claim and the Good Faith Claim and the beneficiary of a future judgment."  (Pl. Recon. Br. 6).  Although leave to amend complaints should be "freely give[n]" under Rule 15(a) of the Federal Rules of Civil Procedure, leave need not be granted where the party waits to make the proposed amendment until after judgment has been entered, or where the proposed amendment would be futile.  *See, e.g.*, *Janese* v. *Fay*, 692 F.3d 221, 229 (2d Cir. 2012) ("[A]mendment of a complaint becomes significantly more difficult when a plaintiff waits … until after judgment has been entered."); *Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020) (noting that "[i]f the proposed amendments would be futile," a court may deny a party's leave to amend on that basis).  Because Plaintiffs waited until after a judgment was entered and amendment would be futile, the Court denies Plaintiffs' request.

On the first ground, this Circuit has long held that "[o]nce judgment is entered[,] the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)."  *Janese*, 692 F.3d at 229 (quoting *Nat'l Petrochemical Co. of Iran* v. *M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991)); *accord Ruotolo* v. *City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) ("A party seeking to file an amended complaint postjudgment must

first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).").  "The merit of this approach is that '[t]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.'"  *Janese*, 692 F.3d at 229 (quoting *Nat'l Petrochemical Co. of Iran*, 930 F.2d 240, 245 (citation omitted)).

Accordingly, where a district court denies reconsideration, a motion for leave to amend is rendered moot.  *See Janese*, 692 F.2d at 225; *accord Smith* v. *Hogan*, 794 F.3d 249, 256 (2d Cir. 2015) ("[The plaintiff] sought leave to replead only after judgment had been entered. Because he did not succeed in having the judgment vacated, he was not entitled to replead at this stage of the case." (citing *Nat'l Petrochemical Co. of Iran*, 930 F.2d at 244-45)).  Since Plaintiffs only now seek to amend on issues that the Court itself considered before issuing its Opinion (and on which Plaintiffs elected not to speak in their opposition to Defendants' motions to dismiss), the Court denies Plaintiffs' motion for leave to amend.

Additionally, leave to amend is denied on the basis of futility. Amendment is futile if the "amended portion of the complaint would fail to state a cause of action[.]"  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).  Here, the Court already *sua sponte* considered the need for leave to amend in its August 8, 2022 Opinion, noting that (i) "Plaintiffs have already taken advantage of two opportunities to amend their complaint, including after Defendants filed motions to dismiss in the District of New

11

JA294

Jersey, raising the very arguments that the Court has found to be dispositive here"; and (ii) "Plaintiffs have not identified any amendments that would alter the Court's analysis, and their [two] prior failures to correct the deficiencies in the pleadings suggest that they are unlikely to be able to do so." (Op. 44).

A sister court in this District once observed that "pleading is not a game of skill in which one misstep may be decisive to the outcome, [but] neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (internal quotation marks and citations omitted), *aff'd sub nom. Capital Mgmt. Select Fund Ltd.* v. *Bennett*, 680 F.3d 214 (2d Cir. 2012). Plaintiffs' belated inclusion of a request for leave to amend only underscores the fact that their present arguments are not a basis for reconsideration. Plaintiffs themselves admit that they "did not previously find it necessary" to amend their complaint to clarify the issues raised here (Pl. Recon. Br. 6), thereby raising the precise tennis match *In re Refco* counseled against. For this additional reason, the Court denies Plaintiffs' motion for leave to amend.

12

JA295

## CONCLUSION

The Court DENIES Plaintiffs' motion for reconsideration and/or leave to amend.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     November 22, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

13

**Federal Rules of Appellate Procedure Form 1.   Notice of Appeal to a Court of Appeals From a Judgment or Order of a District Court.**

United States District Court for the District of
 Southern District of New York

File Number  1:21-cv-04627

| | | |
|---|---|---|
| BRAINBUILDERS LLC, | ) | |
| and H and D, by their Attorney-in-Fact, | ) | |
| RACHEL SOROTOZKIN, | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | Notice of Appeal |
| EMBLEMHEALTH, INC., GROUP | ) | |
| HEALTH INCORPORATED, THE CITY | ) | |
| OF NEW YORK, NEW YORK CITY | ) | |
| OFFICE OF LABOR RELATIONS, | ) | |
| and NEW YORK CITY DEPARTMENT OF | ) | |
| EDUCATION, | ) | |
| *Defendants.* | ) | |
| | ) | |

Notice is hereby given that H and D, by their Attorney-in-Fact, Rachel Sorotzkin, plaintiffs
in the above-named case, hereby appeal to the United States Court of Appeals for the Second
Circuit from an order entered in this action on the 8th day of August, 2022, dismissing the
Second Amended Complaint and granting the Motion to Dismiss the Second Amended
Complaint filed by Group Health Incorporated and EmblemHealth Inc., and from an order
entered in this action on the 22nd day of November, 2022, denying Plaintiffs' Motion for
Reconsideration and/or Leave to Amend.

/s/  Yaakov Pollak
 Yaakov Pollak, Esq.

Attorney for Plaintiffs
Address:  55 Rena Lane
            Lakewood, NJ 08701